IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| RALPH HOLMES, et al., | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| v. | ) | No. | 11 C 2961 |
| | ) | | |
| SALVADOR A. GODINEZ, et al., | ) | Hon. Marvin E. Aspen | |
| | ) | | |
| Defendants. | ) | Mag. Judge Sheila M. Finnegan | |

**DEFENDANT'S STATEMENT OF UNCONTESTED FACT
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Defendant SALVADOR A. GODINEZ, by his attorney LISA MADIGAN, Attorney General of Illinois, pursuant to Local Rule 56.1, hereby submits the following statements of uncontested fact in support of his motion for summary judgment:

**LIST OF EXHIBITS[1]**

1. Plaintiff's Class Action Complaint for Declaratory and Injunctive Relief
2. Illinois Department of Corrections' ("IDOC") website printout for Plaintiff Daniel Baxter
3. Deposition of Plaintiff George Childress
4. Deposition of Plaintiff Billy Johnson
5. Deposition of Plaintiff Aaron Winfert
6. Rule 30(b)(6) Deposition of Louis Shicker, M.D.
7. Rule 30(b)(6) Deposition of Alan Pasley
8. Rule 30(b)(6) Deposition of Kimberly Butler
9. IDOC Administrative Directive 04.01.111 (ADA Accommodations)
10. Communication Plan (blank form)
11. Communication Plans for the Plaintiffs
12. Virtual Remote Imaging contract
13. Deposition of Plaintiff Jason Wright
14. Deposition of Plaintiff Hannibal Eason
15. Deposition of Plaintiff Wendell Lancaster
16. IDOC Administrative Directive 04.01.105 (Facility Orientation)

---

[1] Names of offenders (except the named Plaintiffs) have been redacted from the exhibits to preserve the confidentiality of any protected health information.

17. Deposition of Deborah Denning
18. Western Correctional Center Offender Orientation Manual
19. Example of Memoranda Approving Sign Language Interpreter for Adult Basic Education Classes
20. Deposition of Plaintiff Ralph Holmes
21. Deposition of Plaintiff Daniel Lord
22. Deposition of Plaintiff Curtis Foster
23. Example of Memoranda Approving Sign Language Interpreters for Medical Services
24. Deposition of Plaintiff Curtis Halterman
25. Example of Memoranda Approving Sign Language Interpreters for Religious Services
26. Example of Memoranda Regarding TTY Use
27. Deposition of Michael Brown
28. IDOC Administrative Directive 05.03.150 (Offender Telephone System)
29. Deposition of Plaintiff Daniel Baxter
30. Alternative Notification of Auditory Announcements for Plaintiffs
31. Grievance Form (blank)
32. Example of Letters to the Prisoner Review Board

## PARTIES

1. Ralph Holmes, one of the proposed representatives of the putative class in this matter, is incarcerated in the Illinois Department of Corrections ("IDOC") at the Dixon Correctional Center. (Exhibit 1, pg. 4, ¶13.) He has hearing loss, and he does not know American Sign Language ("ASL"). *Id*.

2. Daniel Baxter, one of the proposed representatives of the putative class in this matter, has hearing loss. (Exhibit 1, pg. 4, ¶14.) He is not fluent in ASL. (*Id*.) He was incarcerated at the time this matter was filed, but he is currently on parole and living in another state. (Exhibit 2).

3. George Childress, one of the proposed representatives of the putative class in this matter, is incarcerated in IDOC at Graham Correctional Center. (Exhibit 3, pg. 1.) He has hearing loss. (Exhibit 1, pg. 5, ¶15.)

4. Hannibal Eason, one of the proposed representatives of the putative class in this matter, is incarcerated in IDOC at Stateville Correctional Center. (Exhibit 1, pg. 5, ¶16.) He has hearing loss. *Id*.

5. Curtis Foster, one of the proposed representatives of the putative class in this matter, is incarcerated in IDOC at Stateville Correctional Center. (Exhibit 1, pg. 5, ¶17.) He has hearing loss. *Id*.

6. Curtis Halterman, one of the proposed representatives of the putative class in this matter, is incarcerated in IDOC at Jacksonville Correctional Center. (Exhibit 1, pg. 5, ¶18.) He has hearing loss but does not communicate through ASL. *Id*.

7. Billy Johnson, one of the proposed representatives of the putative class in this matter, is incarcerated in IDOC at Stateville Correctional Center. (Exhibit 4, pg. 1.) He has hearing loss. (Exhibit 1, pg. 6, ¶19.)

8. Wendell Lancaster, one of the proposed representatives of the putative class in this matter, is incarcerated in IDOC at Dixon Correctional Center. (Exhibit 1, pg. 6, ¶20.) He has hearing loss. *Id*.

9. Daniel Lord, one of the proposed representatives of the putative class in this matter, is incarcerated in IDOC at Dixon Correctional Center. (Exhibit 1, pg. 6, ¶21.) He has hearing loss. *Id*.

10. Aaron Winfert, one of the proposed representatives of the putative class in this matter, is incarcerated in IDOC at Menard Correctional Center. (Exhibit 5, pg. 1.) He has hearing loss. *Id*.

11. Jason Wright, one of the proposed representatives of the putative class in this matter, is incarceratedin IDOC at Graham Correctional Center. (Exhibit 1, pg. 6, ¶23.) He has hearing loss. *Id*.

12. Salvador Godinez, the Defendant in this matter, is the Director of the Illinois Department of Corrections, and he is named solely in his official capacity. (Exhibit 1, pg. 6, ¶24.)[2]

## JURISDICTION

13. The parties do not contest jurisdiction or venue. (Exhibit 1, pg. 3-4, ¶8-11).

## IDOC POLICY AND PROCEDURE FOR PROVIDING ADA ACCOMMODATIONS FOR HEARING IMPAIRED OFFENDERS

**Reception and Classification Centers**

14. Upon admission to IDOC after being criminally sentenced by judge, an offender first goes to a Reception and Classification Center ("RNC") where they participate in an intake process which includes a screening by a nurse. (Exhibit 6, 9:2 to 9:24). This is usually done within the first 24 hours of admission to RNC. (Exhibit 6, 10:4 to 10:10.) At the screening, the offender is asked if they have a hearing issue, and the nurse will also make a note in the medical record if there is a

---

[2] Plaintiffs originally named L. Rachel McKinzie as a Defendant as well, but she was dismissed from this action upon agreement of the parties. (Docket No. 190.)

communication problem. (Exhibit 6, 11:5 to 11:9; 14:20 to 15:5.)

15. After the nurse's screening, offenders are seen by a medical doctor, physician's assistant or nurse practitioner (collectively "medical provider") who takes a medical history and performs a physical examination. (Exhibit 6, 11:17 to 12:7.) The history and physical are clinically designed to detect a variety of medical issue (Exhibit 6, 21:8:19), including if the patient has a hearing issue. (Exhibit 6, 13:11 to 14:2; 21:20 to 22:10.)

16. If a hearing issue is detected, the medical provider orders a screening test for the offender using a screening machine. (Exhibit 6, 17:9 to 17:20.) If the screening test indicates significant hearing loss, then the medical provider refers the offender for formal audiometry testing to occur outside of the prison after the offender is assigned to his permanent facility which can include a recommendation for the offender to obtain hearing aids. (*Id*; 18:5 to 18:10.)

17. The medical provider then makes the Health Care Unit Administrator and the Warden's staff aware of the issue in order to provide reasonable accommodations for the offender. (Exhibit 6, 18:11 to 19:13.)

18. In addition to the nurse's screening and the physical examination, offenders are also interviewed by a non-medical staff member called a Correctional Counselor, usually within the first 24 hours of entering a RNC. (Exhibit 7, 13:7 to 14:8.) If the counselor notices a hearing issue, then the issue is noted in the counselor's report and forwarded up the prison's chain of command to, among others, the prison's ADA Coordinator. (Exhibit 7, 15:5 to 16:4.)

19. Beyond informing the medical providers or counselors about their hearing issues, offenders can tell any staff member at any time that the offender has a hearing issue (Exhibit 7, 13:12 to 13:21), any staff member can fill out an incident report to document a hearing issue and inform other staff about it (Exhibit 7, 17:3 to 17:8; 14:9 to 14:19), staff from the county jail transferring the offender to IDOC custody can inform IDOC if the offender has a hearing issue (Exhibit 7, 12:9 to 13:3), or family members could call to tell IDOC that an offender has a hearing issue (Exhibit 8, 11:17 to 12:6).

20. All IDOC staff are trained annually regarding the rights of hearing disabled offenders, how to communication with such offenders, and to notify the chain of command when issues arise. regarding hearing. (Exhibit 7, 20:21 to 21:7.)

21. No matter how the IDOC is informed about a hearing issue, the information is sent up the chain of command and the prison's ADA Coordinator is informed. (Exhibit 7, 18:8 to 19:15; 25:24 to 26:9.)

**Communication Plans**

22. If an offender is identified or referred to a facility's ADA Coordinator as needing

accommodations for hearing loss, beyond the assistance of a hearing aid, such accommodations are provided for and documented by completing a Communication Plan. (Exhibit 8, 10:14 to 11:6; 12:11 to 12:24; Exhibit 9, pg. 4, II(G)(4)(b).)

       23.      The process to provide accommodations for an offender's hearing loss begins by the ADA Coordinator at the facility where the offender currently resides having a face-to-face, interactive meeting with the offender. (Exhibit 8, 11:7 to 11:16.) During the meeting, the ADA Coordinator and the offender discuss each of the specific accommodations listed on a Communication Plan form, and any others that may be relevant, to determine if the offender needs that accommodation or not. (Exhibit 8, 14:2 to 14:15; Exhibit 10.) Examples of possible accommodations that are discussed during this interactive meeting are alternative methods of notifying the offender of activities, identifying the offender as deaf or hard-of-hearing on his or her identification card, and providing auxiliary aids such as vibrating watches or headphones or sign language interpreters. (Exhibit 10.)

       24.      Accommodations are determined based upon an individual assessment of each offender's needs by the offender, the ADA Coordinator, and the warden of the prison. (Exhibit 8, 15:19 to 16:15). The warden has the ultimate approval for all things that occur within the prison. (Exhibit 8, 32:22 to 33:1.) The offender's preferences are always a factor in determining the exact accommodations needed. (Exhibit 8, 22:16 to 22:21.)

       25.      When the Communication Plan is filled out, the ADA Coordinator and the offender then discuss how to implement the Plan. (Exhibit 8, 14:2 to 14:15.) Part of the ADA Coordinator's job is to monitor the approved accommodations to ensure they are effectively implemented. (Exhibit 9, pg. 5, II(G)(4)(c).)

       26.      Once this process is completed, a copy of the Communication Plan is given to the offender, and it also becomes part of his permanent master file, his medical file, the ADA Coordinator's file, and a copy is sent to the IDOC ADA Compliance Officer. (Exhibit 8, 16:20 to 17:9.) The offender is free to show the Communication Plan to any staff member to demonstrate that he or she is entitled to accommodations. (Exhibit 8, 32:11 to 32:14.)

       27.      If an offender with a Communication Plan is transferred to another prison, a new Communication Plan is completed. (Exhibit 8, 19:7 to 19:14.) Also, if an offender requests something different or if circumstances change, the Communication Plan can be updated or modified at any point. (Exhibit 8, 14:20 to 15:6; 18:7 to 18:19; 19:15 to 19:23.)

       28.      One use for Communication Plans is to keep track of accommodations for offenders. (Exhibit 8, 31:8 to 31:16.) Communication Plans have been completed for all of the currently-incarcerated Plaintiffs named in this matter. (Group Exhibit 11.)

## ACCOMMODATIONS IN SITUATIONS ALLEGED BY PLAINTIFFS

**Reception and Classification**

29. The IDOC has contracted for Video Remote Interpreting ("VRI") at all of its facilities, and VRI is available at Reception and Classification facilities for use when necessary for classification purposes. (Exhibit 12.) VRI is a videotelecommunication service that uses web cameras to provide sign language interpreting services for an offender. *Id*.

30. It is the policy of IDOC that a live sign language interpreter can also be brought in for classification purposes to be used along with all the other accommodations on the offender's Communication Plan. (Exhibit 10.)

31. Certain Plaintiffs in this matter have "Deaf" marked on the back of their Identification Cards which they use to resolve problems by showing it to staff members. (Exhibit 3, 9:3 to 9:13; Exhibit 5, 58:22 to 58:25; Exhibit 13, 21:6 to 22:2; Exhibit 14, 42:5 to 42:23; Exhibit 15, 19:8 to 19:18.)

**Orientation**

32. It is IDOC policy that when an offender enters IDOC and when the offender is transferred to a different facility, the offender goes through an orientation process. (Exhibit 16, pg. 2, II(F)(3).) The process involves watching a video, and the IDOC provides ASL interpretation for the video. (Exhibit 17, 87:22 to 88:18.)

33. The orientation process can also involve providing information that is specific to that facility. (Exhibit 16, pg. 2, II(F)(3).) It is the policy of the IDOC that the offender's Communication Plan is in effect for this process and all of his or her accommodations are available in order for the offender to effectively participate during any verbal portion of orientation. (Exhibit 9, pg. 5, II(G)(4)(b)(1)(d).)

34. Additionally, the information is provided to the offenders in writing through the facility's Offender Orientation Manual. (Exhibit 16, pg. 2, II(G); *for an example see* Exhibit 18.)

35. An ASL interpreter was utilized for Plaintiff Jason Wright for his orientation at Graham Correctional Center. (Exhibit 13, 43:16 to 43:21.)

**Educational and Vocational Programs**

36. It is the policy of the IDOC that if an offender with a disability is qualified to participate in an educational program, the IDOC will provide accommodations for that offender subject to reasonable alternatives and security issues. (Exhibit 9, pg. 5, II(G)(4)(b)(1)(d).)

37. ASL interpreters are being provided for offenders attending Adult Basic Education classes. (Exhibit 19.)

38. Similarly, it is IDOC policy that if an offender is otherwise qualified to participate in a vocational program, accommodations will be provided. (Exhibit 9, pg. 5, II(G)(4)(b)(1)(d).)

39. An ASL interpreter was provided for Plaintiff Jason Wright's vocational construction class. (Exhibit 13, 54:7 to 55:12.)

40. An ASL interpreter was provided for Plaintiff Ralph Holmes' "Inside Outside Dad" classes, though the interpreter was unable to be there for every single class. (Exhibit 20, 77:18 to 78:8.)

41. Plaintiff Daniel Lord was provided an ASL interpreter in 1998 for part of his Adult Basic Education Class. (Exhibit 21, 7:16 to 8:9.)

**Job Assignments**

42. Plaintiffs Aaron Winfert (Exhibit 5, 13:21 to 14:1), Jason Wright (Exhibit 13, 58:13 to 58:23), Ralph Holmes (Exhibit 20, 35:5 to 35:15), Daniel Lord (Exhibit 21, 10:16 to 10:22), and Curtis Halterman (Exhibit 24, 28:11 to 28:18) have job assignments.

**Speaking with Counselors**

43. Offenders can communicate with their Correctional Counselor through writing notes. (Exhibit 4, 23:21 to 23:23; Exhibit 13, 25:17 to 25:19; Exhibit 14, 40:22 to 41:4.)

44. It is the policy of the IDOC that the accommodations provided for in the offenders' Communication Plans can be utilized, if necessary, for more substantive conversations with a Correctional Counselor. (Exhibit 9, pg. 5, II(G)(4)(b)(1)(d).) This includes VRI, live interpreting, and all other accommodations provided for in the individualized Communication Plan. (*Id*.; Exhibit 10.)

**Medical and Mental Health Services**

45. It is the policy of the IDOC that accommodations are made according to the individualized Communication Plan when necessary for offenders to be treated for medical and mental health issues. (Exhibit 9, pg. 5, II(G)(4)(b)(1)(d).)

46. VRI services have been provided to offenders in the Health Care Unit (Exhibit 4, 35:15 to 36:2), and they have been used in the past with no problems. (Exhibit 22, 29:23 to 30:16.)

47. Live ASL interpretation services have been provided to offenders in the Health Care

7

Unit. (Exhibit 23). Written communication is also used in the Health Care Unit. (Exhibit 4, 34:21 to 35:7; Exhibit 13, 10:21 to 10:24.)

48. Plaintiff Aaron Winfert has never had a communication problem in the Health Care Unit resulting in wrong medication or an issue that went untreated. (Exhibit 5, 20:14 to 20:20.)

49. Offenders who are clinically prescribed hearing aids are provided with both hearing aids and batteries through the Health Care Unit. (Exhibit 3, 19:12 to 19:14; Exhibit 4, 38:17 to 39:4; Exhibit 5, 15:12 to 15:19; Exhibit 21, 6:15 to 6:20; Exhibit 24, 11:12 to 12:4.)

50. It can be too loud in prison for hearing aids to be useful. (Exhibit 13, 8:1 to 8:10; Exhibit 21, 6:1 to 6:6.)

**Religious Services**

51. It is the policy of the IDOC that the accommodations in an offender's Communication Plan are available to him for religious services. (Exhibit 9, pg. 5, II(G)(4)(b)(1)(d).) This includes providing an ASL interpreter when necessary. (Exhibit 25.)

52. Plaintiffs Billy Johnson (Exhibit 4, 39:20 to 40:11) and Aaron Winfert (Exhibit 5, 43:22 to 44:1) asked the ADA Coordinators at Stateville and Menard, respectively, for ASL interpreters for religious services, and the ADA Coordinators agreed that this was a proper accommodation and are working to provide interpreting services. *Id*.

**Telephone Service**

53. It is the policy of the IDOC to provide access to TTY equipment for offenders who have hearing disabilities. (Exhibit 9, pg. 3, II(G)(3)(c); Exhibit 26.)

54. Some TTY equipment requires an open, direct outside line, unlike the regular telephones that offenders without hearing disabilities use. (Exhibit 27, 91:8 to 92:6; Exhibit 18, pg. 37-38.) In certain facilities, outside lines are only available in administrative parts of the facility. (Exhibit 27, 91:14 to 92:6.) Plaintiff Curtis Halterman is usually able to go to the administrative office at Jacksonville Correctional Center where the TTY is located and use it within 30 minutes of asking to use it. (Exhibit 24, 18:2 to 18:10.)

55. The TTY equipment is brought to Plaintiff Curtis Foster at his cell in Stateville Correctional Center within 5-15 minutes of him asking for it. (Exhibit 22, 12:22 to 13:24; 16:23 to 17:10; 60:15 to 60:19.)

56. It is the policy of the IDOC that offenders are given thrice the amount of time that offenders are given to use the regular phones. (Exhibit 28, pg. 3, II(G)(1)(b)(3); Exhibit 20, 58:11 to 58:13.)

57. As an accommodation Plaintiff Daniel Baxter uses an amplification device to hear on the regular telephone. (Exhibit 29, 26:22 to 27:5.)

**Law Library**

58. Plaintiffs Aaron Winfert (Exhibit 5, 50:12 to 50:17), Jason Wright (Exhibit 13, 42:10 to 42:13), Daniel Baxter (Exhibit 29, 17:21 to 18:8), Curtis Foster (Exhibit 22, 46:14 to 46:21), and Curtis Halterman (Exhibit 24, 34:5 to 34:9) have no complaints about using the law library.

**Closed Captioning and Subtitles**

59. It is the policy of the IDOC to turn on the closed captioning for all televisions in common areas where a hearing-disabled offender resides. (Exhibit 9, pg. 2, II(F)(8).)

60. Closed captioning is turned on by staff and hearing-disabled offenders, but it can be turned off by other offenders. (Exhibit 13, 17:5 to 17:15; Exhibit 15, 54:3 to 55:3; Exhibit 21, 33:19 to 34:3; Exhibit 24, 20:11 to 20:20.)

61. Subtitles or closed captioning are played on some movies but may not be available on all movies. (Exhibit 5, 26:12 to 26:17; Exhibit 13, 29:6 to 29:12; Exhibit 15, 86:13 to 86:15.)

**Disciplinary Hearings**

62. It is the policy of the IDOC that accommodations are made when necessary for offenders who are having a disciplinary hearing. (Exhibit 9, pg. 5, II(G)(4)(b)(1)(d).)

63. Plaintiff Jason Wright communicated during multiple disciplinary hearings without ASL interpreters and he was not disciplined. (Exhibit 13, 19:12 to 20:19.)

64. Plaintiff Billy Johnson communicated during two different disciplinary hearings without ASL interpreters and he was not disciplined. (Exhibit 4, 43:11 to 44:12.)

65. Plaintiff Daniel Baxter communicated during multiple disciplinary hearings without ASL interpreters and he was not disciplined. (Exhibit 29, 34:9 to 35:5; 56:18 to 20.)

**Notification of Activities and Emergencies**

66. It is the policy of the IDOC to provide staff members the identifying information of hearing-disabled offenders in order for staff to provide those offenders with alternative methods of notification of auditory announcements. (Exhibit 9, pg. 5, II(G)(4)(b)(1)(b); Exhibit 8, 17:10 to 17:24; Exhibit 20, 82:2 to 82:15.)

67. Each time an auditory announcement is made such as meal time, gym or yard time,

medical appointments, school assignments, visitors, and other programming announcements, staff is to notify the hearing-disabled offender via face-to-face communication. (Exhibit 30; Exhibit 8, 27:18 to 28:1.)

68. There is an alternative notification of auditory announcements memorandum for each of the currently-incarcerated Plaintiffs named in this matter. (Group Exhibit 30.)

69. In the past, staff has directly notified Plaintiff Jason Wright that he has a visitor (Exhibit 13, 16:20 to 17:4) and for fire drills (*Id.*, 29:14 to 29:20; 40:11 to 40:15.)

70. Plaintiff Billy Johnson has not missed a visitor since he arrived at Stateville in 2012 due to the fact that he is deaf. (Exhibit 4, 33:13 to 33:16.)

71. Staff members have directly notified Plaintiff Aaron Winfert (Exhibit 5, 52:10 to 52:19) and Daniel Baxter (Exhibit 29, 50:25 to 52:4) when there were emergency drills.

72. Plaintiff Hannibal Eason is informed by staff when his church services are starting. (Exhibit 14, 49:7 to 49:13.)

73. Plaintiff Wendell Lancaster is informed directly by staff when he has a visitor (Exhibit 15, 39:6 to 39:12) and during an evacuation drill (*Id.*, 42:7 to 42:9.)

74. Vibrating watches are provided to offenders with hearing disabilities in order for them to set the alarm to inform them when activities or programs are starting. (Exhibit 15, 46:6 to 46:10; Exhibit 20, 69:19 to 71:1.)

75. When offenders see all offenders around them "hit the deck" when a warning gunshot is fired, hearing-disabled offenders follow what they see the other offenders do. (Exhibit 4, 45:2 to 45:7; Exhibit 5, 57:6 to 57:9.)

**Grievance System**

76. In IDOC, the grievance procedure provides for written grievances. (20 Ill. Admin. Code §504.810; Exhibit 18, pg. 30-31; Exhibit 31.)

**Pre-Release/Parole Information**

77. The IDOC sends the Prisoner Review Board a memorandum regarding each hearing-disabled offender to inform the Board that a sign language interpreter will be needed for any Prisoner Review Board meetings with the offender. (Exhibit 32.)

**Further Uncontested Facts**

78. Other inmates, both hearing and hearing-disabled, sometimes assist the hearing-disabled Plaintiffs. (Exhibit 3, 15:18 to 16:14; Exhibit 13, 75:21 to 76:3.)

79. Other accommodations that have been provided to Plaintiffs include sitting in the front of a classroom (Exhibit 24, 25:16 to 25:19; 31:20 to 32:3) and using small, quiet rooms for communication (Exhibit 24, 30:10 to 30:23).

80. From at least February 6, 2013 through February 6, 2014 when he was deposed, Plaintiff Wendell Lancaster was provided with an ASL interpreter every time he requested one. (Exhibit 15, 59:2 to 59:5.)

Respectfully Submitted,

LISA MADIGAN  
Attorney General of Illinois

 s/ Kevin Lovellette  
KEVIN LOVELLETTE  
Assistant Attorney General  
General Law Bureau  
100 W. Randolph, 13th Floor  
Chicago, Illinois 60601  
(312) 814-3720