## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RALPH HOLMES, DANIEL BAXTER, GEORGE CHILDRESS, HANNIBAL EASON, CURTIS FOSTER, CURTIS HALTERMAN, BILLY JOHNSON, WENDELL LANCASTER, DANIEL LORD, AARON WINFERT, and JASON WRIGHT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SALVADOR A. GODINEZ, Acting Director of Illinois Department of Corrections; and L. RACHEL MCKINZIE, Americans with Disabilities Act Coordinator, Illinois Department of Corrections,<br><br>Defendants. | Case No. 11 C 2961<br><br><br>Honorable Marvin E. Aspen |

### EXHIBITS TO PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

| | |
|---|---|
| Ex. 1 | IDOC Administrative ADA Directive, 04.01.111 |
| Ex. 2 | Excerpts from Deposition of T. Hendrix, 12/17/13 *FILED UNDER SEAL* |
| Ex. 3 | Defendant's Supplemental Answers to Plaintiffs' First Set of Interrogatories *FILED UNDER SEAL* |
| Ex. 4 | Administrative Directive for "Offender Physical Examination," IDOC_EMAIL010031-38 *FILED UNDER SEAL* |
| Ex. 5 | Excerpts from Deposition of R. McKinzie, Vol. II, 1/13/14 *FILED UNDER SEAL* |
| Ex. 6 | Excerpts from Deposition of R. McKinzie, Vol. I, 1/13/14 |
| Ex. 7 | Excerpts from Deposition of C. Halterman, 3/10/14 |
| Ex. 8 | Excerpts from Deposition of R. Holmes, 12/8/14 |
| Ex. 9 | Excerpts from Deposition of C. Foster, 6/24/14 |
| Ex. 10 | J. Wright's Response to Defendants' First Set of Interrogatories |
| Ex. 11 | D. Lord's Response to Defendants' First Set of Interrogatories |

| Ex. 12 | Excerpts from Deposition of A. Winfert, 3/7/14 |
| Ex. 13 | A. Winfert's Response to Defendants' First Set of Interrogatories |
| Ex. 14 | B. Johnson's Response to Defendants' First Set of Interrogatories and B. Johnson's Supplemental Response to Defendants' First Set of Interrogatories |
| Ex. 15 | Excerpts from Deposition of C. Boyd, 3/20/14 *FILED UNDER SEAL* |
| Ex. 16 | Excerpts from Deposition of D. Denning, 2/21/14 |
| Ex. 17 | D. Baxter's Response to Defendants' First Set of Interrogatories |
| Ex. 18 | G. Childress's Response to Defendants' First Set of Interrogatories |
| Ex. 19 | Excerpts from Deposition of L. Shicker, 4/9/14 *FILED UNDER SEAL* |
| Ex. 20 | WEXFORD000003-4 *FILED UNDER SEAL* |

# EXHIBIT 1

CONFIDENTIAL

| **Illinois** | | Number | **04.01.111** |
|---|---|---|---|
| Department of | ***ADMINISTRATIVE DIRECTIVE*** | Page | **1 of 6** |
| **Corrections** | | Effective | **12/1/2012 Amended 7/1/2013** |

| Section | **04** | **Programs and Services** |
|---|---|---|
| Subsection | **01** | **General Provisions** |
| Subject | **111** | **ADA Accommodations** |

## I. POLICY

### A. Authority

42 USC 12101, et seq., Americans with Disabilities Act Amendments of 2008

730 ILCS 5/3-2-2

504 Rehabilitation Act of 1973

### B. Policy Statement

The Department shall not discriminate against offenders with known disabilities and shall provide reasonable accommodations to ensure access to programs, activities, and services in accordance with the Americans with Disabilities Act and the provisions established in this Directive.

## II. PROCEDURE

### A. Purpose

The purpose of this directive is to provide instructions to staff for providing accommodations to offenders with disabilities.

### B. Applicability

This directive is applicable to all correctional facilities within the Department.

### C. Facility Review

A facility review of this directive shall be conducted annually.



### D. Designees

Individuals specified in this directive may delegate stated responsibilities to another person or persons unless otherwise directed.

### E. Definitions

ADA disability accommodation – means a modification or adjustment to the process or environment that will enable offenders with a disability, who are otherwise qualified, to access a program, activity, or service provided by the Department.

CONFIDENTIAL

*Illinois Department of* **Corrections**

| ADMINISTRATIVE DIRECTIVE | Effective | 12/1/2012 Amended 7/1/2013 | Page | 2 of 6 | Number | 04.01.111 |
|---|---|---|---|---|---|---|

Americans with Disabilities Act (ADA) – means 42 USC 12101, et seq., Title II of the Americans with Disabilities Act Amendments of 2008.

Deaf – for the purpose of this directive means a condition where auditory function is not sufficient to process speech and language.

Hard of hearing – for the purpose of this directive means a condition where auditory function may or may not be sufficient to hear sound and where there is a difficulty distinguishing specific speech patterns in conversation.

Interactive dialogue – for the purpose of this directive means a face-to-face communication in response to an offender's request for ADA disability accommodation used to identify the precise limitations resulting from the disability and potential reasonable accommodations that could be provided to enable the offender to effectively access programs, activities, and services provided by the Department for which he or she would otherwise be qualified.

Teletypewriter equipment (TTY) - An electromechanical typewriter or device that either transmits or receives messages whereby an operator acts as facilitator between individuals by converting spoken conversation to text or text to audible conversation.

F.  **General Provisions**

1. All decisions regarding ADA accommodation shall be made on an individual case-by-case basis. Approval of an accommodation request shall not constitute a precedent for other requests.

2. Requests that cause undue hardship on the Department, including those that would be unduly costly, extensive, substantial, or disruptive; requests that would result in a threat to the safety or security of the facility or health of any person; or requests that fundamentally alter the nature or operation of the facility shall be denied.

3. Disabled offenders shall not be permanently housed in an infirmary unit unless medical treatment is otherwise required.

4. Offenders requiring the use of a wheelchair shall be housed in cells or dormitories that are wheelchair accessible.

5. Offenders requiring the use of a wheelchair shall be transported in wheelchair accessible vehicles.

6. Removal of security restraints during communication for deaf or hard of hearing offenders, who utilize their hands as a primary means of communication, including gesturing, sign language, or written communication, shall be evaluated on a case-by-case basis. Factors including, but not limited to, security risk shall be considered prior to removal of the restraints.

7. Offender property shall be controlled in accordance with Administrative Directives 05.10.110, 05.10.115, and 05.10.120, as applicable; however, the Facility ADA Coordinator may approve requests for special permit items such as vibrating watches, talking books, and amplifying headphones.

021184

CONFIDENTIAL                    *Illinois Department of Corrections*

| ADMINISTRATIVE DIRECTIVE | Effective 12/1/2012 Amended 7/1/2013 | Page 3 of 6 | Number 04.01.111 |
|---|---|---|---|

8.     In facilities or units that house offenders that are deaf or hard of hearing, closed captioning shall be activated for day room televisions and recreational DVD programming.

G.    **Requirements**

    1.    The Director shall:

        a.    Designate facilities that based on structural design or modification are wheelchair accessible.

        b.    Designate an individual to serve as the Department's ADA Compliance Officer who shall coordinate the Department's compliance with ADA. Additional employees may be designated as Agency ADA Coordinators to assist the ADA Compliance Officer as necessary.

    2.    The Office of the Transfer Coordinator shall:

        a.    Maintain a list of those facilities designated as wheelchair accessible.

        b.    Maintain a list of preferred facilities for housing offenders who are deaf or hard of hearing; however, facility assignment shall not be limited to those facilities.

    3.    The Chief Administrator of each facility shall:

        a.    Designate at least one individual to serve as the Facility ADA Coordinator. The name of the Facility ADA Coordinator shall:

            (1)    Be reported to the Agency ADA Compliance Officer and be updated as necessary.

            (2)    Be provided to offenders via methods such as Warden's Bulletins or posted notices.

        b.    Ensure offenders are provided with information regarding ADA disability accommodations. Procedures for requesting ADA disability accommodations shall be provided to offenders in the Orientation Manual.

            (1)    Requests for accommodation shall be submitted on the Offender Request, DOC 0286.

            (2)    All requests shall be submitted to the Facility ADA Coordinator.

            **NOTE:** Offenders who are unable or need assistance completing the DOC 0286 may request assistance.

        c.    Establish a procedure for offender access to TTY equipment. Procedures for the offender telephone system shall be in accordance with Administrative Directive 05.03.150.

            (1)    Offenders who require the use of TTY equipment shall not be restricted

CONFIDENTIAL          *Illinois* Department of **Corrections**

| ADMINISTRATIVE DIRECTIVE | Effective | 12/1/2012 Amended 7/1/2013 | Page | 4 of 6 | Number | 04.01.111 |
|---|---|---|---|---|---|---|

from using standard telephones.

    (2)    Offenders who normally utilize standard telephone equipment shall not be restricted from using TTY equipment when making calls to approved persons who require the use of TTY equipment.

    (3)    Procedures requiring advanced scheduling for access to TTY equipment shall be approved by the Agency ADA Compliance Officer.

    d.    Ensure all emergency evacuation plans include provisions for evacuating offenders with disabilities.

4.    The Facility ADA Coordinator shall:

    a.    Upon receipt of DOC 0286 for ADA disability accommodation:

    (1)    Review the request and meet with the offender for interactive dialogue.

    (2)    Consult with the facility's operational and administrative staff and the Agency ADA Compliance Officer, as necessary, to ensure the proposed ADA disability accommodations are feasible or to identify effective alternatives.

    (3)    If required, schedule an individualized assessment with a licensed specialist for recommendations of auxiliary aids or services that may assist in providing effective communication.

    (4)    Approve or deny the request; and in writing:

        (a)    Notify the Agency ADA Compliance Officer of the determination.

        (b)    Notify the offender of the determination.

        **NOTE**: If a reasonable accommodation is offered to the offender and is subsequently rejected, the Department shall not be required to offer an alternative accommodation.

    (5)    Document the determination and, if applicable, the approved accommodations in the Case Notes on Offender 360.

    b.    Upon identification or referral of a deaf or hard of hearing offender:

    (1)    If the offender requires accommodation beyond the assistance of a hearing aid, develop an ADA Individualized Communication Plan, DOC 0401. The original DOC 0401 shall be maintained in the offender's master file and a copy shall be placed in the offender's medical file. Copies shall also be provided to the Agency ADA Compliance Officer and to the offender. The communication plan may include, but shall not be limited to:

        (a)    Authorization for optional identification showing the offender as deaf or hard of hearing.

CONFIDENTIAL

*Illinois Department of Corrections*

| *ADMINISTRATIVE DIRECTIVE* | Effective | 12/1/2012 Amended 7/1/2013 | Page | 5 of 6 | Number | 04.01.111 |
|---|---|---|---|---|---|---|

(b)     Alternative notification methods for auditory announcements.

(c)     Authorization for special permit items and auxiliary aids such as visual aids, written material, flashcards, word processing hardware, TTY, closed caption televisions, assistive listening system or devices used to amplify sound, or qualified sign language interpreters.

(d)     Coordination of communication accommodations when the information being relayed is complex, exchanged for a lengthy period of time, or involves legal due process. This may include, but is not limited to, communications such as:

    i.     Orientation;

    ii.     Counseling;

    iii.     Educational and vocational programming;

    iv.     Medical and mental health services;

    v.     Religious services;

    vi.     Due process hearings, including disciplinary hearings;

    vii.     Pre-release instructions.

(2)     Provide notification to vendors, community partners, and other service providers with whom the offender interacts to inform them when they need to provide accommodation. Such notification shall include the need for a sign interpreter for medical writs, Prisoner Review Board hearings, custodial interviews with state agencies, and court writs.

c.     Monitor approved ADA disability accommodations and individualized communication plans to ensure effective implementation and continuance after implementation.

d.     Submit to the Agency ADA Compliance Officer an annual compliance report. The report shall:

(1)     Be submitted by June 30th of each year.

(2)     Contain facility specific ADA information as required by the Agency ADA Compliance Officer.

021187

CONFIDENTIAL          *Illinois Department of* **Corrections**

| *ADMINISTRATIVE DIRECTIVE* | Effective | 12/1/2012 Amended 7/1/2013 | Page | 6 of 6 | Number | 04.01.111 |
|---|---|---|---|---|---|---|

**H.**     <u>Training</u>

   1.     All staff with regular contact with offenders shall receive annual ADA training.  Training may be provided during annual cycle training.

   2.     Facility ADA Coordinators shall receive additional specialized training on accommodation needs of deaf and hard of hearing offenders.

   **NOTE**:  All training curricula shall be developed by the Office of Staff Development and Training and approved by the Agency ADA Compliance Officer.

**Authorized by:**

S.A. Godinez
Director

021188

# EXHIBIT 2

**<u>FILED UNDER SEAL</u>**

# EXHIBIT 3

**<u>FILED UNDER SEAL</u>**

# EXHIBIT 4

**FILED UNDER SEAL**

# EXHIBIT 5

**<u>FILED UNDER SEAL</u>**

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| RALPH HOLMES, DANIEL BAXTER, | ) | |
| GEORGE CHILDRESS, HANNIBAL | ) | |
| EASON, CURTIS FOSTER, CURTIS | ) | |
| HALTERMAN, BILLY JOHNSON, | ) | |
| WENDELL LANCASTER, DANIEL | ) | |
| LORD, AARON WINFERT, and | ) | |
| JASON WRIGHT, on behalf of | ) | |
| themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 11 C 2961 |
| | ) | |
| SALVADOR A. GODINEZ, Acting | ) | Judge Marvin Aspen |
| Director of Illinois | ) | |
| Department of Corrections; | ) | Magistrate Sheila |
| and L. RACHEL MCKINZIE, | ) | Finnegan |
| Americans with Disabilities | ) | |
| Act Coordinator, Illinois | ) | |
| Department of Corrections, | ) | |
| | ) | |
| Defendants. | ) | |

DEPOSITION OF L. RACHEL MCKINZIE,

called for examination pursuant to the Rules of

Civil Procedure for the United States District

Courts pertaining to the taking of depositions at

33 West Wacker Drive, Suite 3500, Chicago,

Illinois, on January 13, 2014, at the hour of 10:08

o'clock a.m.


REPORTED BY:  Nohemi Salazar, CSR
LICENSE NO.:  084-4648

Page 122

1          (Whereupon, Deposition Exhibit P92
2          was marked for identification.)
3     BY MR. MOTTO:
4          Q.   The court reporter has just handed you
5     what we have marked as Exhibit P92.  Take a moment
6     to review it, please, and then once you've had a
7     moment, let me know whether you recognize this
8     document?
9          A.   Yes, I do recognize this document.
10         Q.   What is it?
11         A.   This is the ADA individualized
12    communication plan and permit.
13         Q.   What role, if any, did you have in
14    creating this document?
15         A.   I helped to draft it.
16         Q.   Who else helped in drafting it?
17         A.   There was input from Patrick Keane, who
18    is the ADA compliance officer.
19         Q.   Anyone else?
20         A.   Gosh, I can't remember her name, but
21    there was a, I think a healthcare unit
22    administrator who helped us by trying to put
23    together one of these forms, do a communication
24    plan and see what problems she had with dealing

Page 123

1     with it and what she thought should be included or
2     rejected.  I think that's probably it.
3          Q.   I just have one thing I want to focus on
4     here.  Down at the bottom under the signature line.
5          A.   Yes.
6          Q.   Focusing on the second sentence that
7     begins with "Upon transfer."
8          A.   Uh-huh.
9          Q.   It reads, "Upon transfer, offender must
10    request renewal from the facility's ADA coordinator
11    at the new facility."
12         A.   Right.
13         Q.   What does that mean?
14         A.   That means that he should contact the
15    facility ADA coordinator at the new facility and
16    get a revised plan.
17         Q.   And upon transfer, what happens to the
18    accommodations that were being provided according to
19    this communication plan that was in place for the
20    inmate?
21         A.   He needs to get a new one.
22         Q.   So those accommodations would be revoked?
23         A.   Those accommodations are for that
24    particular facility.  So although he'll still have

Page 124

1     it in his hand to show people what the past
2     accommodations would be, he does need to get a new
3     one.
4          Q.   For example, would that include the
5     hearing aid if he had been provided --
6          A.   The hearing aid is a medical
7     determination, so, you know -- and the healthcare
8     unit will still provide battery replacement.
9          Q.   Okay.  And alternative notifications of
10    auditory announcements, he would have to re-request
11    such notifications even though it had been
12    determined at the prior facility that those were
13    appropriate?
14         A.   Yes.  The facilities are all built
15    differently and laid out -- well, they're not all,
16    you know, there's different versions, but they need
17    to revisit this at the new facility as to how it's
18    going to occur.
19         Q.   Okay.  I'm done with that one.
20              Are you familiar with what a video phone
21    is in the context of talking about the communication
22    needs of deaf or hard of hearing inmates?
23         A.   I have never seen a video phone.
24         Q.   That probably anticipates the answer to

Page 125

1     my next question, but do IDOC facilities, to your
2     understanding, or did they as of the time you
3     retired, make video phones available for use by deaf
4     or hard of hearing inmates?
5          A.   There are no phones available for
6     inmate -- no personal phones available for inmates.
7          Q.   At the time you had retired, to your
8     understanding, had IDOC, any facilities, made video
9     phones available for use by deaf or hard of hearing
10    inmates?
11         A.   Not to my knowledge.
12         Q.   But you are aware that video phones are
13    often used in the community for the deaf and hard of
14    hearing, correct?
15         A.   Yes, I am.
16         Q.   Do you recall any discussion concerning
17    whether IDOC might make video phones available for
18    use by deaf or hard of hearing inmates?
19         MR. LOVELLETTE:  I'm going to object to the
20    extent that the question calls for any
21    attorney-client privileged communications you may
22    have had on the issue.
23              Outside of that, please go ahead and
24    answer the question.

32 (Pages 122 to 125)

Thompson Court Reporters, Inc
(312) 421-3377

# EXHIBIT 7

CURTIS L. HALTERMAN
HOLMES, ET AL. -vs- GODINEZ, ET AL.

March 10, 2014

1—4

Page 1

```
1          IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3   RALPH HOLMES, DANIEL BAXTER,  )
    GEORGE CHILDRESS, HANNIBAL    )
4   EASON, CURTIS FOSTER,         )
    CURTIS HALTERMAN, BILLY       )
5   JOHNSON, WENDELL LANCASTER,   )
    DANIEL LORD, AARON WINFERT,   )
6   and JASON WRIGHT, on behalf   )
    of themselves and all         )
7   others similarly situated,    )
                                  )
8        Plaintiffs,              )
                                  )  No. 11-C-2961
9        -vs-                     )
                                  )
10  SALVADOR A. GODINEZ, Acting   )
    Director of Illinois          )
11  Department of Corrections,    )
    and L. RACHEL McKINZIE,       )
12  Americans with Disabilities   )
    Act Coordinator, Illinois     )
13  Department of Corrections,    )
                                  )
14       Defendants.              )

15
            THE DEPOSITION OF CURTIS L.
16  HALTERMAN, the plaintiff herein, called by the
    Defendants for examination pursuant to notice and
17  pursuant to the provisions of the Code of Civil
    Procedure and the Rules of the Supreme Court
18  thereof pertaining to the taking of depositions,
    taken before me, Jill A. Bleskey, CSR-RPR, License
19  No. 084-004430, a Notary Public in and for the
    State of Illinois, at Jacksonville Correctional
20  Institution, 2268 East Morton Avenue, in the City
    of Jacksonville, County of Morgan, and State of
21  Illinois on the 10th day of March, A.D., 2014,
    commencing at 10:25 a.m.
22  -----------------------------------------
                  Jill A. Bleskey, RPR
23                CSR #084-004430
```

Page 2

```
1                    APPEARANCES

2   For the Plaintiffs:

3       EQUIP FOR EQUALITY
        Attorneys at Law
4       1 West Old State Capitol Plaza, Suite 816
        Springfield, Illinois 62801
5       (217)303-8541
        BY:  Mr. Barry Lowy
6
    For the Defendant:
7
        OFFICE OF THE ATTORNEY GENERAL
8       General Law Bureau
        100 West Randolph Street
9       Chicago, Illinois 60601
        (312)814-3720
10      BY:  Mr. Kevin Lovellette

11                     INDEX

12  EXAMINATION CONDUCTED BY            PAGE

13  Mr. Lovellette                        3
    Mr. Lowy                             44
14  Mr. Lovellette                       46
    Mr. Lowy                             46
15  Mr. Lovellette                       48

16                INDEX OF EXHIBITS

17  EXHIBIT NUMBER                      PAGE

18  NOTE:  No Exhibits were marked.

19

20

21

22

23
```

Page 3

```
1              CURTIS L. HALTERMAN,
2        The witness, having been first duly
3   sworn upon his oath, testified as follows:
4            EXAMINATION CONDUCTED
5            BY:  MR. LOVELLETTE
6       Q.    Mr. Halterman, my name again is Kevin
7   Lovellette and I'm representing the Department of
8   Corrections in this lawsuit, okay.  I have some
9   questions for you.  If -- today if at any time you
10  don't hear me or if you don't understand what I'm
11  asking, please just let us know and I'll re-ask the
12  question, okay?
13      A.    Okay.
14      Q.    All right.  Have you ever been
15  through a deposition before?
16      A.    A who?
17      Q.    A deposition.  Like sitting here with
18  a Court Reporter, somebody asking you questions.
19      A.    No.
20      Q.    Okay.  Well, I've got some questions
21  for you.  The Court Reporter has sworn you in to
22  tell the truth.  That's the same oath you take
23  court so you have to tell the truth obviously.  If
```

Page 4

```
1   you need to take a break today at any time just let
2   us know and we can take a break, okay?
3       A.    Okay.
4       Q.    The only thing is if I've asked a
5   question you need to answer the question then we
6   can take the break, all right?
7       A.    Okay.
8       Q.    If you can keep all of your answers
9   out loud instead of shaking or nodding your head
10  because the Court Reporter's taking down everything
11  we're saying and she needs to have something out
12  loud in order to type it down, okay?
13      A.    Okay.
14      Q.    And I will do my best not to ask a
15  question while you're still giving an answer and
16  I'll ask you to wait for me to ask the entire
17  question before you start giving your answer, all
18  right?
19      A.    Yes.
20      Q.    Thanks.  Will you -- will you state
21  and spell your last name for the record?
22      A.    First name Curtis, middle initial
23  Lee, last name Halterman, H-A-L-T-E-R-M-A-N.
```



CURTIS L. HALTERMAN                                    March 10, 2014
HOLMES, ET AL. -vs- GODINEZ, ET AL.                              5–8

Page 5

1    Q.    All right.  Mr. Halterman, when did
2  you first come into the Department of Corrections?
3    A.    1994, February.
4    Q.    Okay.  Since February of '94 have you
5  been with the Department of Corrections
6  continuously?
7    A.    Yes, sir.
8    Q.    Okay.  Obviously you're at
9  Jacksonville now, right?
10   A.    Yes, sir.
11   Q.    How long have you been at
12  Jacksonville?
13   A.    Six years.
14   Q.    Okay.  So since 2007 or so?
15   A.    2008.
16   Q.    Okay.  2008.  Unless I ask
17  specifically for a different time frame all of my
18  questions today are going to be just about when you
19  were at Jacksonville since 2008, okay?
20   A.    Yes, sir.
21   Q.    Okay.  But please feel free, if you
22  want to clarify a time frame just ask me, all
23  right?

Page 6

1    A.    Yes.
2    Q.    Okay.  I do notice that you're
3  wearing a hearing aid?
4    A.    Yes, sir.
5    Q.    Do you have one or two?
6    A.    One.  And it's iffy.
7    Q.    It doesn't work properly, is that
8  what you're saying?
9    A.    Cuts in and out.
10   Q.    Okay.  That's in your left ear?
11   A.    Yes.
12   Q.    Have you ever been prescribed a
13  hearing aid for your right ear?
14   A.    No, sir.
15   Q.    Okay.  Can you hear out of your right
16  ear?  Can you hear noise out of your right ear?
17   A.    I can hear.  It's real low though but
18  it's enough to where I can understand a little.
19   Q.    Okay.  How long have you had the
20  hearing aid in your left ear?
21   A.    Over 20 years.
22   Q.    Did you have it before you came into
23  the Department of Corrections?

Page 7

1    A.    Right when I came in.
2    Q.    All right.  How long have had you
3  that specific hearing aid?
4    A.    Over 20 years.
5    Q.    Oh, it's the same hearing aid?
6    A.    Yes, sir.
7    Q.    Have you ever asked for it to be
8  checked since it goes in and out?
9    A.    They replaced it, sent out for repair
10  six, seven times, a little over that.  But I sweat
11  a lot and it causes it to go out constantly.
12   Q.    When was the last time they sent it
13  out, do you remember?
14   A.    Around August, October, right in
15  there.
16   Q.    Of last year, 2013?
17   A.    2013.
18   Q.    All right.  Did it -- when it came
19  back did it -- was it -- did it work properly?
20   A.    Yes, sir.
21   Q.    Then how long did it work properly
22  before it --
23   A.    About two, three weeks.

Page 8

1    Q.    All right.  Have you asked since then
2  for it to be fixed?
3    A.    Yes, sir.
4    Q.    When was the last time you asked for
5  it to be fixed?
6    A.    Right before Christmas of 2013.
7    Q.    Got it.  Do you recall -- who'd you
8  ask?
9    A.    Ms. Chapel.
10   Q.    And who is she?
11   A.    She's the lady that's in health care
12  in charge of hearing aids and medical stuff like
13  that.
14   Q.    Okay.  What was her response when you
15  asked her?
16   A.    Send a request slip.
17   Q.    All right.  Did you send a request
18  slip?
19   A.    No, sir.
20   Q.    Why not?
21   A.    Because I got irritated because it
22  was like they caught an attitude with it.
23   Q.    Okay.  Have you -- since that time



CURTIS L. HALTERMAN
HOLMES, ET AL. -vs- GODINEZ, ET AL.

March 10, 2014
17—20

Page 17

1    Q.    That's a very good answer.
2    A.    I mean, I don't mean to --
3    Q.    No, no, no, no.  It was a bad
4    question, it was my fault.
5         MR. LOWY:  He deserved that answer.
6         MR. LOVELLETTE:  Yeah, I did.  I
7    really did.
8         BY:  MR. LOVELLETTE
9    Q.    Can you estimate how many times a
10   month on a regular month you'd ask to use the TTY
11   machine?
12   A.    Three, four, maybe five times.
13   Q.    Okay.  Every time you ask to use the
14   TTY machine are you able to use it?
15   A.    Half the time they don't have an
16   officer on hand, a lot of officers don't know how
17   to operate the switchboard to run the TTY.
18   Q.    Okay.  When there is somebody there,
19   are you able to go over and use it right away?
20   A.    Yes, sir.
21   Q.    If there's no staff there or if
22   there's no staff that knows how to operate it, what
23   happens?

Page 18

1    A.    They'll try to get somebody.
2    Q.    Okay.  How often are they able to
3    find somebody that same day?
4    A.    As far as time frame?
5    Q.    Yeah.
6    A.    Maybe tops 30 minutes.
7    Q.    Oh, okay.  So it's usually the same
8    day that you ask that you're able to use the
9    machine?
10   A.    Yes, sir.
11   Q.    All right.  Has there ever been a
12   time, let's say in the last year, that you've asked
13   to use the TTY machine and you were told you
14   couldn't and you never got a chance to use it that
15   day?
16        MR. LOWY:  I'm going to object on the
17   compound question.  I think, you know, asked to use
18   it, couldn't on that day.  Are you saying that, you
19   know, have you in the last year asked to use the
20   TTY and then weren't able to use it that day, is
21   that what you're asking?
22        MR. LOVELLETTE:  That's a much better
23   way to ask that question.

Page 19

1         MR. LOWY:  Okay.
2         BY:  MR. LOVELLETTE
3    Q.    Let's ask it that way.  In the last
4    year here at Jacksonville have you asked to use the
5    TTY machine but were not able to use it that same
6    day?
7    A.    One time.
8    Q.    Okay.  Do you know why you weren't
9    able to use it?
10   A.    They didn't have nobody on hand to
11   run it.
12   Q.    Okay.  Were you able to use it the
13   next day?
14   A.    Yes, sir.
15   Q.    Okay.  Other than at times not having
16   the staff to operate the machine, do you have any
17   other problems using the TTY here at Jacksonville?
18   A.    No, sir.
19   Q.    All right.  Other than the hearing
20   aid, the TTY, vibrating watch, and headphones, have
21   you asked for any other technology or equipment or
22   devices because of your hearing loss?
23   A.    No, sir.

Page 20

1    Q.    All right.  Do you have a television
2    in your cell?
3    A.    Yes, sir.
4    Q.    Do you use closed captioning at all?
5    A.    I have a personal television, I keep
6    it on closed captioning.  In the dayroom you ask
7    for closed captioning but it's always a problem
8    with the closed captioning because somebody's
9    saying that they can't see the TV because of closed
10   captioning.
11   Q.    Has there been times that you've
12   asked to have the common TV turned to -- the closed
13   caption on the common TV turned on?
14   A.    Yes, sir.
15   Q.    And has it always been turned on?
16   A.    The officers turn them on all the
17   time, yes, sir.
18   Q.    Okay.  But then do the inmates then
19   turn it off?
20   A.    Yes, sir.
21   Q.    All right.  When you first got to
22   Jacksonville back in 2008, did you go through an
23   orientation program for Jacksonville?



CURTIS L. HALTERMAN
HOLMES, ET AL. -vs- GODINEZ, ET AL.

March 10, 2014

21—24

Page 21

1    A.    Yes, sir.
2    Q.    Were you able to hear and understand
3    what was being said during the orientation program?
4    A.    No, sir.
5    Q.    Okay.  Did you mention to anybody
6    that -- did you tell anybody that you were having a
7    hard time?
8    A.    I asked them could they repeat the
9    question and it seemed like that they was upset in
10   repeating.
11   Q.    Did they repeat?
12   A.    Yes, sir.
13   Q.    Okay.  Did they give you an
14   orientation manual?
15   A.    Yes, sir.
16   Q.    All right.  Did you have any -- if
17   you are -- and I know this is years ago.  So to the
18   extent you remember did you have any questions for
19   them at the end of the orientation process?
20   A.    No, sir.
21   Q.    All right.  Would it be fair to say
22   that you know the grievance process, how to file a
23   grievance?

Page 22

1    A.    Talking about as far as the chain of
2    command of a grievance?
3    Q.    Yeah.
4    A.    Yes, sir.
5    Q.    Okay.  Have you ever asked for help
6    in filing a grievance anywhere in the chain of
7    command because of your hearing loss?
8    A.    Yes, sir.  At Jacksonville.
9    Q.    At Jacksonville?
10   A.    Yes.
11   Q.    When was that?
12   A.    '09, when I filed a grievance Becky
13   Subrak, health care administration at Jacksonville
14   Correctional Center, called me over to the health
15   care unit, discussed the grievance with me and
16   specifically said that I lied on the grievance and
17   wrote a disciplinary ticket on the grievance.
18   Q.    What was your grievance about?
19   A.    That hearing aid wasn't working
20   properly, headphones, all accommodations to assist
21   with the hearing.
22   Q.    Okay.  And why -- what was the ticket
23   for?

Page 23

1    A.    The ticket said it was false
2    information on the grievance.
3    Q.    Okay.  Would it be fair to say that
4    you disagree with that ticket?
5    A.    Most definitely.  That's retaliation
6    on a grievance proceeding.
7    Q.    Okay.  Did you go to a hear --
8    disciplinary hearing on the ticket?
9    A.    No, sir.
10   Q.    Did you -- were you disciplined on
11   the ticket?
12   A.    Be specific in what you mean
13   discipline.
14   Q.    Did you receive any discipline?
15   A.    Did I receive a ticket?
16   Q.    Yeah.  Actually, did you get a -- did
17   you get a copy of the ticket?
18   A.    Got a copy of the ticket and the
19   incident report.
20   Q.    And the incident -- okay.  The
21   incident report was for the meeting that you had
22   with Ms. Subrak?
23   A.    Yes, sir.

Page 24

1    Q.    All right.  Did you ever -- were you
2    ever disciplined because you got that ticket?
3    A.    No, sir.
4    Q.    Okay.  Has there ever been a time at
5    Jacksonville when you've asked for -- well,
6    actually I'm going to strike that question and ask
7    you another one.  It's my understanding that you
8    don't use American Sign Language; is that right?
9    A.    Yes, sir.
10   Q.    Okay.  So would it be fair to say
11   that you've never asked for a sign language
12   interpreter for any reason here at Jacksonville?
13   A.    No, sir.
14   Q.    Okay.
15        MR. LOWY:  Can we go off the record
16   for one quick second?
17        MR. LOVELLETTE:  Sure.
18        (At this point in the proceedings an
19   off the record discussion was held, after which the
20   Court Reporter read aloud the aforesaid question
21   and answer, and the following proceedings were
22   conducted;)
23        BY: MR. LOVELLETTE



CURTIS L. HALTERMAN                                          March 10, 2014
HOLMES, ET AL. -vs- GODINEZ, ET AL.                              33—36

Page 33

1  understand what's going on in a religious service
2  due to your hearing loss?
3      A.     A mic, they got a mic system but they
4  don't use it.
5      Q.     Have you asked them to use it?
6      A.     Yes, sir.
7      Q.     And who'd you ask?
8      A.     The person that's running it.
9      Q.     Okay.  Is that a DOC employee or is
10 that like a volunteer from outside?
11     A.     An inmate.
12     Q.     Oh, it's an inmate, okay.  What was
13 their response?
14     A.     They didn't know how to run it.
15     Q.     Okay.  Are -- here at Jacksonville,
16 do they have a law library?
17     A.     Yes, sir.
18     Q.     Do they have another library other
19 than a law library?
20     A.     As far as -- be more specific with
21 that.
22     Q.     Where you can get like a novel, a
23 book.

Page 34

1      A.     Like a regular library and then -- a
2  regular library and a law library?
3      Q.     Right.
4      A.     It's all combined into one.
5      Q.     Oh.  It's all one, okay.  One
6  library.  Do you have any problem using the
7  library, either with the law books or the other
8  books, because of your hearing issues?
9      A.     No, sir.
10     Q.     Okay.  Since you've been at
11 Jacksonville have you gone through a disciplinary
12 committee hearing?
13     A.     Disciplinary action?
14     Q.     Yeah.
15     A.     Yes, sir.  I was -- received -- may I
16 produce this here?
17     Q.     Sure.
18     A.     I received a disciplinary ticket on
19 September of 2013.  The officer called chow line, I
20 did not hear him call it because the distance is
21 from here to on the other side of the door, which
22 is a long hallway, I'd say maybe about 50, 75 feet.
23 I did not hear the officer give out an order that

Page 35

1  the chow line was called and when I asked to go to
2  chow the officer stated that yes, sir, I can't deny
3  you to go to chow, I can send you, but I have to
4  write you a ticket.
5      Q.     I'm sorry, I don't get it.  They
6  called the chow line and you didn't hear it?
7      A.     I did not hear it.
8      Q.     Okay.  Where were you?  Were you in
9  your cell?
10     A.     In the room.  And it's a dorm and I'm
11 way in the back.
12     Q.     Okay.  So everyone else who wanted to
13 go to chow was going to chow and then the officer,
14 he came up to you?
15     A.     No, sir.
16     Q.     What happened at that point?
17     A.     He just yelled at the door chow line.
18     Q.     Okay.
19     A.     And it's -- you know, from the door
20 to where I'm at is a good -- anywhere between 50,
21 75 feet.  It's impossible for someone who has a
22 hearing disability to hear somebody just say chow
23 line, it's impossible.

Page 36

1      Q.     All right.  So -- well, are you
2  allowed to refuse to go to chow?
3      A.     You have an option to go or not to go
4  when they call it.
5      Q.     And in this case -- well, you didn't
6  hear?
7      A.     Did not hear him.
8      Q.     So then why did you get a ticket?
9  I'm sorry, I'm just not understanding.
10     A.     I was given a ticket for missing the
11 chow line when he had called it.  So if you want to
12 go to chow and I say chow line out the door and you
13 miss it and you still want to go to chow I cannot
14 deny you not to eat, I have to send you to chow
15 line but I have to write you a ticket for
16 unauthorized movement.
17     Q.     Okay.  So after the chow line left
18 you said I want to go eat?
19     A.     Yes, sir.
20     Q.     And they let you eat but they gave
21 you a ticket for --
22     A.     Gave me a ticket for unauthorized
23 movement.



# EXHIBIT 8

Page 1

```
1            IN THE UNITED STATES DISTRICT COURT
2           FOR THE NORTHERN DISTRICT OF ILLINOIS
3                     EASTERN DIVISION
4
5    RALPH HOLMES, et al.,        )
                                  )
6               Plaintiffs,       )
                                  )
7        vs.                      )  No. 11 C 2961
                                  )
8    SALVADOR A. GODINEZ, et      )
     al.,                         )
9                                 )
                Defendants.       )
10
11        BE IT REMEMBERED that pursuant to notice under the
12   Federal Rules of Civil Procedure and on the 8th day of
13   December, 2014, commencing at the hour of 12:16 p.m., at
14   2600 North Brinton Avenue, Dixon, Illinois, before me,
15   BECKY L. DAWSON, CSR, a Notary Public in and for the County
16   of Winnebago, State of Illinois, personally appeared
17                 RALPH HOLMES,
18   a witness herein, called as a witness by the Defendant, who,
19   being by me first duly sworn, was thereupon examined and
20   interrogated as hereinafter set forth.
21
22
23
```

Page 2

```
1                     APPEARANCES:
2
     EQUIP FOR EQUALITY
3    Attorneys at Law
     BY:  MS. RACHEL WEISBERG
4    BY:  MS. AMY F. PETERSON
     20 North Michigan Avenue
5    Suite 300
     Chicago, Illinois  60602
6    (312) 341-0022
7         appearing on behalf of the Plaintiffs;
8
9    STATE OF ILLINOIS
     OFFICE OF THE ATTORNEY GENERAL
10   BY:  MR. KEVIN LOVELLETTE
     Assistant Attorney General
11   100 West Randolph Street
     Chicago, Illinois  60601
12   (312) 814-3720
13        appearing on behalf of the Defendant.
14
15        THE SIGN LANGUAGE INTERPRETERS:
16                 MS. ANN GRONLUND
                   MR. ROBERT GRINDROD
17                 MS. ERIN KIRK
18
     ALSO PRESENT:
19
     MS. KAYLA HIGGINS
20   MS. AMY PETERSON
     MS. ANNE P. RAYHILL
21   MS. ABIGAIL DERKA
22
23
```

Page 3

```
1                  INDEX
                                               PAGE
2    Direct Examination by Mr. Lovellette        4
3    Cross-Examination by Ms. Weisberg          84
4    Redirect Examination by Mr. Lovellette     98
5
6    Exhibit No. 1 marked                       75
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
```

Page 4

```
1        RALPH HOLMES, called as a witness herein, upon
2    being first duly sworn under oath, was examined and
3    testified as follows:
4              (Sign language interpreters sworn.)
5              (Witness sworn.)
6            DIRECT EXAMINATION
7    BY MR. LOVELLETTE:
8    Q    Mr. Holmes, my name again is Kevin Lovellette.  I
9    have some questions for you regarding a lawsuit that you are
10   a plaintiff in, that's pending in Chicago.  Are you familiar
11   with that lawsuit?  Do you remember it?
12   A    Yes.
13   Q    Okay.  Have you ever been deposed before?  Have
14   you ever been deposed before at all?
15   A    No.
16   Q    Okay.  Let me just explain a little bit.  Your
17   attorneys might have, but I will explain a little bit about
18   how this works.  I am going to be asking you questions, and
19   the two interpreters will interpret, and then you have been
20   sworn to tell the truth, and you have to tell the truth when
21   you answer, okay?
22   A    Yes.
23   Q    If you don't understand one of my questions or
```



RALPH HOLMES                                    December 08, 2014
HOLMES v. GODINEZ                                          13–16

Page 13

1 is something, whatever how you say, vibration or make me --
2    Q    You will know that something --
3    A    Okay.
4    Q    -- but you can't understand what the words are?
5    A    Yes.
6    Q    Any other problems with getting batteries here at
7 Dixon?
8    A    No.
9    Q    How long have you been at Dixon?
10   A    Since '08.
11   Q    '08.  Okay.  Are there other types of
12 announcements other than med call or sick call that you
13 can't hear and staff doesn't come to tell you that it is
14 being made?
15   A    Yes.
16   Q    What other types of announcements?
17   A    Chow --
18   THE REPORTER:  I'm sorry, I didn't understand.
19   THE WITNESS:  Chow line.
20   MR. LOVELLETTE:  Chow line.
21   THE WITNESS:  Meal line, whatever you call it,
22 visitations, gym.
23 BY MR. LOVELLETTE:

Page 14

1    Q    Gym?
2    A    I typically have -- I don't be able to hear
3 because I can't hear them.  They don't just come down the
4 hallway and tell me.  I guess more so, the people -- I see
5 them.  I don't know what they call for, so I ask, "Where are
6 you going?"  And they go.  I have to let them know,
7 "I didn't hear you.  I am deaf.  Can I go?"
8    Q    Do they let you go then?
9    A    No.  They tell me it is too late.
10   Q    Too late.  Do you know if you have ever missed a
11 visit -- somebody has been here to visit you, and you
12 weren't told that they were here?
13   A    Yes.
14   Q    When did that occur?
15   A    Like last year.
16   Q    In this past year or in 2013?
17   A    '13.
18   Q    Who was it that was here to visit you?
19   A    My father and my sons.
20   Q    And you didn't see them at all that day?
21   A    No.
22   Q    I'm sorry, I assumed it was -- was it one time or
23 was it more than one time?

Page 15

1    A    It was more than one time.  I don't remember
2 approximately when, but I just know I didn't get to see
3 them.
4    Q    Okay.  Do you know why you didn't get to see them
5 those days?
6    A    Well, one, because the announcement.  Nobody told
7 me they was here, and they had to leave.  Other times it was
8 another whole different situation.
9    Q    I am not going to ask you any questions about
10 this other situation.  We just want to focus on the ones
11 where you didn't know they were here.
12   A    Yes.
13   Q    And in those times, nobody came to tell you, no
14 staff member came to tell you you had a visitor?
15   A    No.
16   Q    Have there been any other times other people
17 would come to visit you, and staff members would tell you
18 you had a visitor?
19   A    I'm going to say, yes.
20   Q    Do you know how many times you missed visits
21 solely because you didn't hear the announcement, and nobody
22 came to tell you?
23   A    Just a few.  I don't remember how many over the

Page 16

1 period of time it happened.  There has been a few.
2    Q    If you know, was it always your father and your
3 sons?
4    A    My father and sons are the people that come to
5 visit me.
6    Q    Okay.  For gym, what house are you in here at
7 Dixon?
8    A    61.
9    Q    When does 61 go to gym?
10   A    I don't know that.
11   Q    Does that change from week to week?
12   A    No, it is an announcement, like the time
13 schedule.
14   Q    Does the whole house go to gym at the same time?
15   A    I don't know what you mean by that.
16   Q    Does everybody in the house in 61 go to gym?
17   A    I don't know.
18   Q    You don't know?  Okay.  Have there been times
19 when a staff member has come up to you and said, "Hey, it's
20 gym time.  Do you want to go?"
21   A    They never say it.
22   Q    Never?  Okay.  How about yard time?  Do you have
23 yard time here at Dixon?



RALPH HOLMES                                        December 08, 2014
HOLMES v. GODINEZ                                              33—36

Page 33

1    A    Yeah, every ticket was found guilty.  I got the
2    copies.
3    Q    Oh, okay.  Okay.  All of the times you can
4    remember, will you tell us all the times that you were
5    disciplined or you got a ticket because you couldn't hear
6    what the officer was saying?
7    A    I didn't understand.  I didn't understand what he
8    was saying because the moment it was in.  We were trying to
9    explain.  I tried to talk to him.  I didn't understand him,
10   so it was a frustrating moment, I guess.
11   Q    Has there been any other -- you have told us two
12   different times.  Have there been any other times where that
13   has happened, and you got a ticket for it?
14   A    I can't say.  I don't have all of the tickets to
15   remember what happened, what actually happened, but I just
16   know the confrontation between me and the officer, and I
17   tried to handle the situation.  I got -- what do you want to
18   say -- disciplinary --
19   Q    Okay.  In the last two years, have you gotten a
20   ticket?
21   A    I don't recall.  I mean, I believe I have,
22   probably one ticket maybe last year, the earliest on
23   November the 15th when I had my job at X-House, and the

Page 34

1    officer claimed that I never gave him an assignment card,
2    and I was fired for not -- he said I needed to sign my
3    assignment card, and this is the same officer, Dietrich.
4    Q    Were you -- what was your job at X-House?
5    A    I was a cook, fixing trays and stuff.
6    Q    Okay.  And that was November 2013 or so that you
7    were fired from that job?
8    A    No, of this year.  I was fired this year.  I was
9    at the job November 15th when I got the ticket.
10   Q    Of 2014?  Just last month?
11   A    This is --
12   Q    2014.
13   A    2013, yes.
14   Q    2013.  2013, okay.  Since November of 2013, have
15   you had another job?
16   A    Yeah, the one I am in now.
17   Q    What do you do now?
18   A    General.
19   Q    You work in the general store?
20   A    Yes.
21   Q    And for the record, he showed the back of his ID
22   tag, which says, "General store."  What do you do in the
23   general store?

Page 35

1    A    Stock and delivery.
2    Q    So when they bring in the stuff, you put it on
3    the shelves?
4    A    Every day, whatever they want me to put there.
5    Q    Do you have any problems doing your job because
6    you are deaf?
7    A    No.  My boss knows my situation, so he points out
8    what he needs, or I tell him they need me to help him do
9    this, so he takes the time out to basically tell me what he
10   needs me to do.
11   Q    So is that working out with him taking the extra
12   time to help you understand?
13   A    I guess it's working.
14   Q    You haven't gotten fired?
15   A    Yes.
16   MS. WEISBERG:  And for the record, Mr. Holmes just made
17   the sign language sign for "help me" when he was
18   demonstrating his answer.
19   BY MR. LOVELLETTE:
20   Q    How long have you worked in the general store?
21   A    You say since when?
22   THE SIGN LANGUAGE INTERPRETER:  When you were in that
23   store, how long?

Page 36

1    THE WITNESS:  Oh, I am going to say August of 2014.
2    BY MR. LOVELLETTE:
3    Q    So about three months or so?
4    A    At the most.
5    Q    Okay.  From November of last year until August of
6    this year, when you started in the general store, were you
7    working anywhere?
8    A    No.  I just said they fired me.
9    Q    So it just took that long before you got another
10   job?
11   A    Yes.
12   Q    Okay.  Do you attend any religious services here
13   at Dixon?
14   A    They don't have none for us.
15   Q    They don't have any for your religion or --
16   A    Not just our religion.  They don't have no
17   services for hearing impaired.
18   Q    Okay.  Did they used to have a service for
19   hearing impaired here at Dixon?
20   A    I think somebody was volunteering, but me and him
21   didn't have the same religion, so it didn't work out.
22   Q    Okay.  For your religion here at Dixon, do they
23   have religious services?



RALPH HOLMES
HOLMES v. GODINEZ

December 08, 2014

41–44

Page 41

1 asking if you know it.

2 A I don't know. I go talk to who I was supposed to

3 talk to, and they help me.

4 Q Okay. All right. So I think the first person

5 you have to go talk to is your counselor; is that right?

6 A Yes, that's what they told me.

7 Q Does the counselor help you out, and if they are

8 on -- well, if the counselor is not able to fix your

9 problem, what do you do then?

10 A I try to talk to the lieutenant.

11 Q Go up the chain? Do you ever write on a

12 grievance form, write a grievance on a grievance form?

13 A Yes.

14 Q Okay. Who do you give that to?

15 A Well, before I was giving it to the officer, but

16 they said don't give it to him, give it to the counselor.

17 Q Counselor. Okay! All right. Have you ever sent

18 a grievance to Springfield?

19 A Yes.

20 Q Why did you do that, if you remember?

21 A When they came back, they told me that's who I

22 sent it to.

23 Q Okay. All right.

Page 42

1 A But I didn't send it. The counselor helped me

2 send it off.

3 Q Your counselor at the time?

4 A I didn't know what to do with that. They helped

5 me and told me what to do, and then we sent it off together.

6 Me and the inmate or me and the counselor.

7 Q Okay.

8 A It was definitely not me.

9 Q When you first came to Dixon -- I'm sorry, did

10 you say 2008? Was that in Dixon?

11 A Yeah, yeah, 2008.

12 Q In 2008, did you go through an orientation class

13 about Dixon?

14 A I don't understand what he means.

15 THE SIGN LANGUAGE INTERPRETER: Did you go to a class

16 where they explained to you the rules, explaining life and

17 things?

18 THE WITNESS: Who?

19 THE SIGN LANGUAGE INTERPRETER: Anyone? Did they have

20 a class for you?

21 THE WITNESS: Yes.

22 BY MR. LOVELLETTE:

23 Q Okay. Were you able to understand what they were

Page 43

1 saying?

2 A No. I was -- I am sitting here like this, and he

3 was explaining -- I guess, the speaker was explaining, and

4 he kept walking back and forth, so I never caught a lot of

5 what he said. If I kept telling him, he would talk to me,

6 so it is -- that's how I got the orientation manual.

7 Q Okay. I want to make sure I understood. Did you

8 say you did or didn't tell him that you couldn't -- you were

9 deaf?

10 A I told him when I came there, I told the speaker,

11 each one, that I was hearing impaired.

12 Q Okay.

13 A They had it on the table.

14 Q Okay. Did that help at all when you told them

15 you were deaf?

16 A Told who?

17 Q Told the speaker?

18 A He said he don't have time, "Read the manual."

19 Q The manual? Okay. When you go to sick call, is

20 there an interpreter when you go talk to the nurses?

21 A No.

22 Q Is there an interpreter when you talk to the

23 doctor?

Page 44

1 A No. I don't know what you call it, the TV

2 screen.

3 Q Is there an interpreter on the TV?

4 A Yes.

5 Q Okay. Does that help you understand what the

6 doctor is saying?

7 A No.

8 Q Why not?

9 A Because I read lips. I don't see the person on

10 the TV that well, so we are not able to communicate

11 effectively because, I guess, they freeze up the screen.

12 Q Okay.

13 A So --

14 Q Okay. How often does it freeze up?

15 A I don't know because they tell me something is

16 wrong with it, or she don't understand what I am signing. I

17 don't see what she is doing on the -- so it is not helpful

18 with the TV screen.

19 Q Okay. I just don't understand. When you say it

20 freezes up, does it freeze up just like forever and you have

21 to unplug it?

22 A I don't know it. I don't touch it.

23 Q Okay. When you were watching it, what happens?



RALPH HOLMES
HOLMES v. GODINEZ

December 08, 2014

89–92

Page 89

1   questions?

2      A    Yes.  She is an authority.  She is not going to

3   do that.  She just want to -- I don't know how to take the

4   meeting because I have never been in situations like that,

5   so I took what she gave me.  "What'd you say, Ralph?"  I

6   told her my side, and that was it.  But she told back what

7   the police wrote.  If I wanted to ask her questions, I just

8   didn't understand why she would just go on with what she

9   said, but there was nobody there to mediate for us so we

10  could understand what she was saying to me, so she is just

11  like --

12     Q    When you say there wasn't anyone else there, do

13  you mean like an interpreter?

14     A    Interpreter.  Somebody was there for her, but not

15  for me.

16     Q    Okay.  You told us that you were fired from your

17  position in November of 2013 -- -

18     A    X-House.

19     Q    -- at the X-House.  Did you receive a

20  disciplinary ticket for that?

21     A    Yes.

22     Q    You told us that you were fired in November of

23  2013, and you started a new job in August 2014

Page 90

1   approximately.  Did you apply for any jobs between those two

2   dates?

3      A    Yes, I requested jobs.

4      Q    Requested jobs.  Did you receive any offers?

5      A    No, they don't offer you.  They do --

6      Q    Assignments?  I am using the wrong term, so as

7   you use the words that actually apply in prison.

8      A    That's why they do the worksheet and offer

9   requests.  You say, "I want to be a janitor."  They do a

10  worksheet.  All of a sudden you might get a call or in the

11  mail saying you're hired or not.  They say it is a

12  privilege, not mandatory that they give you a job.

13     Q    Do you know why you didn't get any of those other

14  positions?

15     A    They never said.

16     Q    To your knowledge, are sign language interpreters

17  provided at any religious service here at Dixon?

18     A    Not that I know of.  I was trying to explain to

19  them earlier.  They don't have no interpreters.  When I be

20  there at Saturday, it is called a prayer room, and it can be

21  any denomination, and the pastor they have for the other

22  service, they don't have no interpreters.

23     Q    Okay.

Page 91

1                    (Whereupon, there was banging noise

2                     on the radiator.)

3      MR. LOVELLETTE:  Hey, it is working.

4   BY MS. WEISBERG:

5      Q    When you go see a doctor, and you have that TV

6   screen with the interpreter, is it a problem for you to

7   understand because the interpreter on the screen doesn't

8   understand how you effectively communicate?

9      A    I would say, yes.

10     Q    And could you explain -- can you explain a little

11  bit more about that.  Is it because you need someone to be

12  clear in lip reading and have an interpreter for a complex

13  conversation?

14     A    Yeah, like I am doing now, her there and you

15  here, I can see that, but when they are on the screen, it is

16  difficult for me to understand.  And then the doctor or

17  nurse or whatever said, "Do you understand what the person

18  is saying?"  I am like, "No, I don't."  So they write it

19  down and tell me what's going on with the situation, but I

20  don't get what is going on.  They say, "What do you need

21  help with?"  And I am thinking like, okay, my hearing aid,

22  no, that's not what we talked about.  What am I here for?

23  What did we talk about, like blood pressure.  There is too

Page 92

1   many things asking me -- I don't understand what I am here

2   for, you know.

3      Q    Because of the complexity of the conversation?

4      A    Yes.  I guess you could say how to understand

5   what they are asking me for.

6      Q    Is it easier for you to communicate in writing

7   about something simple than it is at a doctor's appointment?

8      A    I said, again, if they write it down and explain

9   to me, it is hands-on.  I understand better than before when

10  I had my -- I could understand a lot more, but now it is

11  difficult.

12     Q    So it is helpful to have a combination of

13  techniques?

14     A    Yes.

15     Q    So to clarify, the day room has telephones for

16  hearing inmates, correct?

17     A    They have them there.

18     Q    But does it have any TTY's for deaf inmates?

19  Does the day room have a TTY for you to use?

20     A    Where?

21     Q    In the day room.

22     A    Our building?

23     Q    Right.



RALPH HOLMES
HOLMES v. GODINEZ

December 08, 2014
93—96

Page 93

1    A    In our unit?

2    Q    Correct.

3    A    No.  They have one phone at health care.

4    MS. RAYHILL:  Are you serious?

5              (Whereupon, Ms. Rayhill stepped out

6              of the deposition room.)

7  BY MS. WEISBERG:

8    Q    I wanted to ask you a couple of questions about

9  your communication plan.  Now, you had this meeting with

10 Troy Hendrix.

11    THE SIGN LANGUAGE INTERPRETER:  Would you show it to

12 him?

13    MS. WEISBERG:  This?  Okay.  I am going to keep it, but

14 if you want to look at it at any point, let me know.

15              (Whereupon, Ms. Rayhill returned to

16              the deposition room.)

17    MR. LOVELLETTE:  For the record, you are talking about

18 Exhibit 1.

19    MS. WEISBERG:  Thank you.  I appreciate it.

20    MS. RAYHILL:  Ridiculous!

21  BY MS. WEISBERG:

22    Q    You had this meeting with Troy Hendrix in April

23  of 2013, correct?

Page 94

1    A    Yes.

2    Q    And you testified earlier that it was approved

3  that there would be a memorandum sent to staff regarding

4  alternative notification of auditory announcements?

5    A    Yes.

6    Q    Do you remember that testimony?

7    A    Yes.

8    Q    Okay.  Since April, have the correctional

9  officers come to notify you of anything that has been --

10 that is usually announced through the auditory system, such

11 as chow or Med Line?

12    A    No.

13    Q    Never?

14    A    No, not since me and him talked about this paper.

15    Q    So since April of 2014, a guard has never

16 notified you?

17    A    Not in our building.

18    Q    Okay.  During this meeting, did Mr. Hendrix tell

19 you that you would receive a second hearing aid?

20    A    Yes.

21    Q    And when did you receive that second hearing aid?

22    A    Um, no more than about, I would say, three

23 months, two or three months.

Page 95

1    Q    On Exhibit -- I'm sorry --

2    A    This is December?

3    Q    Correct.

4    A    Between the months of August and October, so

5  about 90 days.

6    Q    Between August and October is when you had the

7  hearing aid?  Do you mean April?

8    A    No, no, you asked me when I got the hearing aid.

9  When I went in and got it.

10    Q    Correct.

11    A    Because I got this this year.

12    Q    Right.

13    A    Yes.

14    Q    So you only had one hearing aid from April 2014

15 until October of 2014?

16    A    Yes.

17    Q    Okay.  When you had this meeting with Troy

18 Hendrix, did you request that closed captioning be provided

19 in the day room?

20    A    Yes.

21    Q    Do you know why it states that closed captioning

22 is not needed at this time on your communication plan?

23    A    No.

Page 96

1    Q    Did you tell Mr. Hendrix that you did not want

2  closed captioning in the day room?

3    A    No.  I am saying that it needs to be on the TVs

4  in the day room.

5    Q    Okay.  It states in this communication plan that

6  you will be provided with large head phones.  Have you ever

7  received large head phones from the IDOC?

8    A    No.

9    Q    It states on this communication plan that you

10 will be provided sign language interpreter services as

11 requested necessary.  Since April of 2014, have you

12 requested sign language interpreting services for classes?

13    A    Yes.

14    Q    Are those the classes we talked about earlier,

15 the Discipleship classes?

16    A    Yes.

17    Q    Okay.  Have you requested sign language

18 interpreting services for meetings with your psychiatrist or

19 with your doctor since April of 2014?

20    A    Yes.

21    Q    Have you received any sign language interpreting

22 services?

23    A    No.



# EXHIBIT 9

Page 1

```
1              IN THE UNITED STATES DISTRICT COURT
2              NORTHERN DISTRICT OF ILLINOIS
3                     EASTERN DIVISION
4  RALPH HOLMES, et al.,          )
5                  Plaintiffs,    )
6        -vs-                     ) No. 11 C 2961
7  SALVADOR A. GODINEZ,           )
8  ACTING DIRECTOR OF THE         )
9  ILLINOIS DEPARTMENT OF         )
10 CORRECTIONS, et al.,           )
11                 Defendants.    )
12             The deposition of CURTIS FOSTER, called
13 for examination, taken pursuant to the Federal
14 Rules of Civil Procedure of the United States
15 District Courts pertaining to the taking of
16 depositions, taken before GAIL LIVIGNI, CSR No.
17 84-1965, a Notary Public within and for the County
18 of Will, State of Illinois, and a Certified
19 Shorthand Reporter of said state, at Stateville
20 Correctional Center, Joliet, Illinois, on the 24th
21 day of June, A.D. 2014.
22
23
24
```

Page 2

```
1  PRESENT:
2        EQUIP FOR EQUALITY,
3        (20 North Michigan Avenue, Suite 300,
4        Chicago, Illinois 60602,
5        (312) 341-0022), by:
6        MS. RACHEL WEISBERG,
7        MS. AMY PETERSON,
8             appeared on behalf of the Plaintiffs,
9
10       OFFICE OF THE ATTORNEY GENERAL,
11       STATE OF ILLINOIS,
12       (100 West Randolph Street, 12th floor,
13       Chicago, Illinois 60601,
14       (312) 814-3720), by:
15       MR. KEVIN LOVELLETTE,
16            appeared on behalf of the Defendants.
17 ALSO PRESENT:
18       MS. ERIN KIRK, Sign language interpreter.
19       MS. HANNAU WALSH, Legal intern.
20       MS. DONNA STANTON, Sign language interpreter.
21       MR PAUL GEORGE, Sign language interpreter.
22
23 REPORTED BY:  GAIL LIVIGNI, CSR
24            CSR No. 84-1965.
```

Page 3

```
1              DONNA STANTON,
2  was thereupon sworn to interpret the proceedings of
3  the deposition from English to American Sign
4  Language and from American Sign Language into
5  English.
6              PAUL GEORGE,
7  was thereupon sworn to interpret the proceedings of
8  the deposition from English to American Sign
9  Language and from American Sign Language into
10 English.
11             (WHEREUPON, the witness was duly
12             sworn.)
13             CURTIS FOSTER,
14 called as a witness herein, having been first duly
15 sworn, was examined and testified as follows:
16             DIRECT EXAMINATION
17 BY MR. LOVELLETTE:
18    Q.  Mr. Foster, hello.  My name is Kevin
19 Lovellette, L-o-v-e-l-l-e-t-t-e.  I represent the
20 Defendants.  I believe we might have met last
21 month, but I wanted to reintroduce myself.  I have
22 some questions for you today about your time here
23 in the Department of Corrections.
24             Before we get started, do you have any
```

Page 4

```
1  questions that you want to ask?
2     A.  Yes.
3     Q.  Please, go ahead.
4     A.  18 years I've never had any interpreters
5  here.  Sometimes there is trouble using the TDD,
6  the printer isn't working, sometimes print doesn't
7  come out, Basically the TDD is not working
8  correctly.  I haven't asked them to fix it.  I just
9  give it to them and tell them it's their job to get
10 it working.
11    MS. WEISBERG:  Mr. Foster, I am just going to
12 interrupt you really quickly.  Counsel for the IDOC
13 had asked you if you had any questions.  I think
14 what he meant was do you have any questions about
15 today, questions specifically for him.  We're going
16 to spend a lot of time today talking about your
17 experience here.  So if you have questions for him,
18 now is the chance, but otherwise, you know, he'll
19 ask you specific questions.
20    THE WITNESS:  Okay.
21 BY MR. LOVELLETTE:
22    Q.  But thank you.  Is this working okay
23 with the Interpreter sitting here?
24    A.  Yes, no problem at all.
```



CURTIS FOSTER
HOLMES, ET AL. -vs- GODINEZ, ET AL.

June 24, 2014
17–20

Page 17

1 the next day?
2    A.   I would yell to the guard and say, hey,
3 I need the phone, and I kind of gesture like a
4 telephone and say I need to make a call.  So then
5 the guard saw me, they make a phone call to someone
6 and bring it in five minutes.  They have it there
7 in five minutes.  So then I might use it for about
8 30 minutes, make my phone call, wrap up the cord
9 and what not, and give it back to the lieutenant,
10 and then I'd leave.  That was it.
11    Q.   Do you know how long you're allowed to
12 use the TTY machine per call?
13    A.   30 minutes.  It's a 30 minute limit, and
14 that's usually enough.
15    Q.   Have you ever been told you have to get
16 off the phone?
17    A.   No.
18    Q.   Have you ever been automatically just
19 cut off, the line goes dead?
20    A.   Yes.
21    Q.   Do you know why that happened?
22    A.   The operator would disconnect it and
23 then the screen would go off, and that was the end
24 of the call.  I don't know if it was the operator

Page 18

1 or what.
2    Q.   How many times did that happen?
3    A.   The officer will first get the number
4 and tell the operator what number it is that we're
5 going to call out to; and then once they put that
6 phone down on the TTY, then I wait.  And then they
7 ask me for the number I want to put in my name,
8 what not.  Then after about 30 minutes, it just
9 kind of shuts off.  I'm like, oh, wait, wait, is
10 there a problem, and I don't know exactly why.  I
11 think it's the operator that just kind of cuts it
12 off, and then I have to give that unit back to the
13 lieutenant.
14    Q.   About how many times has that happened
15 that you were cut off after approximately 30
16 minutes?
17    A.   One time that happened.  I don't know,
18 the other times it might have been because of
19 battery trouble or something, that happened twice.
20    Q.   You said that there were four machines
21 here at Stateville.  How do you know there is four
22 machines?
23    A.   At the Control Center, I could see them
24 there.  I know what the machines are and I

Page 19

1 recognize them.  So there was -- over at C-House,
2 they would bring in the machine, and I liked the
3 one machine the one time.  When I was over at B,
4 that machine had a lot of trouble, and the one in
5 E-House, that was the one that had the messed up
6 printer and the keys not working.  So I think,
7 between the four units, they have four TTYs.  I
8 don't know exactly how many are in the Control
9 Center, but I do know that there were four
10 different ones that I've seen.
11    Q.   I didn't write it down.  Are you in
12 E-House now?
13    A.   Yes, I'm in E-House, E312.
14    Q.   When was the last time since you have
15 been in E-House that you asked to use the TTY
16 machine?
17    A.   I've been there since February, March,
18 twice.
19    Q.   When was the last time?
20    A.   June, just June I asked to make a phone
21 call.  I said I needed the TDD, so it was in June,
22 just recently.
23    Q.   Is that the time the printer wasn't
24 working?

Page 20

1    A.   Yes.
2    Q.   The first time when you were in E-House
3 that you asked to use it, did it work then?
4    A.   Yes, it worked, and then later the
5 printer broke.  The second time I started using it
6 the printer broke, they brought in another machine,
7 and that second machine the printer broke.
8    Q.   You doing okay?
9    A.   Yes, I'm okay.
10    Q.   So am I, but nobody cares if attorneys
11 are doing all right.
12         When you first came to Stateville
13 13 years ago, did you go through an orientation
14 program?
15    A.   No, no, nothing.  With all the rules,
16 the explanation of -- no, nothing at all.  Now, at
17 Menard, they had, you know, where everyone sat
18 down, but there was no interpreter, just like here,
19 no interpreter for that proceeding.  So for
20 18 years I've never had an interpreter.
21    Q.   When you first came to Stateville, were
22 you given an offender orientation manual?
23    A.   No, no.
24    Q.   Have you ever received an offender



# EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RALPH HOLMES, DANIEL BAXTER, GEORGE CHILDRESS, HANNIBAL EASON, CURTIS FOSTER, CURTIS HALTERMAN, BILLY JOHNSON, WENDELL LANCASTER, DANIEL LORD, AARON WINFERT, and JASON WRIGHT, on behalf of themselves and all others similarly situated, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 11 C 2961<br>) |
| SALVADOR A. GODINEZ, Acting Director of Illinois Department of Corrections; and L. RACHEL MCKINZIE, American with Disabilities Act Coordinator, Illinois Department of Corrections, | ) Judge Marvin Aspen<br>)<br>) Magistrate Sheila Finnegan<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFF JASON WRIGHT'S RESPONSE TO DEFENDANTS'
FIRST SET OF INTERROGATORIES**

Plaintiff, Jason Wright, by his attorneys, pursuant to the applicable Rules of Civil

Procedure, in response to Defendants' First Set of Interrogatories, states as follows:

**GENERAL STATEMENTS AND OBJECTIONS**

Plaintiff asserts the following general objections, which are incorporated by reference

into each of Plaintiff's responses set forth below:

1.  Plaintiff objects to the Interrogatories to the extent that they seek information and

    documents protected from disclosure by the attorney-client privilege, the work

    product doctrine, and any other applicable privilege or immunity from discovery.

1

2.  Plaintiff makes these responses to the best of his current knowledge, information, and belief. Plaintiff reserves the right to produce and rely upon evidence, facts, documents, and information which have not yet been discovered or the relevance of which has not yet been determined. Plaintiff reserves the right to supplement or amend his response to these Interrogatories.

3.  Plaintiff reserves all objections to the admissibility and relevance of any information produced in response to these Interrogatories. Identification of any information does not constitute an admission by Plaintiff that such information is relevant or material to this action.

4.  In addition to the responses below, Plaintiff refers IDOC to all grievances Plaintiff filed while in IDOC custody and all responses thereto by IDOC, all of which are available in IDOC's possession.

5.   Plaintiff responds to these Interrogatories subject to the limitations created by Plaintiff's hearing loss and IDOC's failure to provide appropriate accommodations that would have allowed Plaintiff to have effective expressive and receptive communication.

**Interrogatory 1**

State the name and address of each individual (other than an attorney) who has provided any information to the Plaintiff which was used to answer any Interrogatory.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 1 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Subject to the limitations created by Plaintiff's hearing loss and IDOC's failure to provide appropriate accommodations that would have allowed Plaintiff to have effective expressive and receptive communication, Plaintiff received information from numerous

2

IDOC personnel at the IDOC Reception and Classification Center and at the correctional facilities where he has resided since July 29, 2008 in regards to interactions which are responsive to these Interrogatories. It is impossible for Plaintiff to recall the names of all individuals with whom he has interacted during this time regarding the subject matter of these Interrogatories. The individuals with whom Plaintiff interacted regarding the subject matter of these Interrogatories include Wexford medical staff and personnel; instructors in various educational, vocational, substance abuse programs, and work programs who may or may not be IDOC employees; religious services providers at IDOC facilities; medical personnel and hearing specialists encountered prior to Plaintiff's incarceration; and all IDOC staff encountered with respect to the subject matter of these Interrogatories. Plaintiff obtained information from other named plaintiffs while he was incarcerated at Dixon Correctional Center including Daniel Lord, Wendell Lancaster, and George Childress. In addition he has obtained information from his mother, Joy Wright, 7 Wedgewood Ct., Murphysboro, IL 62966. Plaintiff also obtained information from his counselor at Graham Correctional Facility, Kevin Simburger, as well as from previous cell mates and counselors.

**Interrogatory 2**

State whether the Plaintiff is able to communicate with individuals working at the IDOC or any of the prisons or facilities operated by the IDOC through writing. If the answer to this interrogatory is in the negative, state why the Plaintiff believes he is not able to communicate through writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 2 as overly broad, vague and unduly burdensome.

Subject to the foregoing objections, Plaintiff states that, while "communicate" is a broad and vague term, generally "communicate" is a concept that involves both one party attempting to convey something and the other party understanding what is being conveyed. When Plaintiff has attempted to convey something to individuals working at the IDOC or any of the prisons or facilities operated by the IDOC, in some instances he believes that the party to which he is conveying something may have understood him at least in part, but in many instances he is unable to determine if the party has understood what he was conveying, and in many other instances he believes that the party has not understood what he has attempted to convey. Likewise, when individuals working at the IDOC or any of the prisons or facilities operated by the IDOC have attempted to convey something to Plaintiff, in some instances Plaintiff believes that he may have understood (at least in part) what the party was conveying, but in many instances he has been unable to determine if he has understood what the party was conveying, and in many other instances he believes that he has not understood what the other party was attempting to convey. Plaintiff further states that, even in instances where he has been able to "communicate" at some level with individuals working at the IDOC or any of the prisons or facilities operated by the IDOC, such communications often have not been "effective

3

communication," within the meaning of that term generally or under the Americans with Disabilities Act.

Whether Plaintiff is able to communicate effectively in writing depends upon the specific circumstances and purpose of the communication. In some instances, such as in some cases where Plaintiff is making a short and simple request to IDOC staff in a non-emergency setting without any other complicating circumstances, Plaintiff can communicate effectively with IDOC staff in writing. However, in many other instances, such as for longer or more complex communications, in emergency situations, and in other circumstances, communication through writing becomes difficult and is not effective. In addition, because Plaintiff's first language is ASL, when he writes he does so in ASL, with the result that IDOC staff sometimes do not appear to understand what he is conveying. Likewise, because his education is limited, Plaintiff may not always understand what IDOC staff conveys to him in writing. Written communication is not possible when IDOC staff refuse to read and/or respond to a note. Written communication is not always possible because there are times when paper and pencil are not available.

**Interrogatory 3**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a meal because of his hearing loss, including the facility where this occurred, the approximate date, which daily meal was missed, the name and title of any individual that the Plaintiff informed that a meal was missed, the approximate date when such communication occurred, and whether the communication was in person or in writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 3 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall all of the specific dates, individuals and details involved when he missed a meal because of his hearing loss. Nor would Plaintiff necessarily know in all instances when he missed a meal because of his hearing loss, as he may have missed a meal and was unaware that the meal was missed because he was not made aware of the announcement for the meal by IDOC personnel. In any event, Plaintiff missed a few meals at Dixon Correctional Center for the first few days because IDOC staff did not realize he was deaf when meal times were announced. At Logan CC the situation was much worse. Guard Tucker would always forget Plaintiff was deaf when he would announce the meals verbally. Plaintiff missed approximately 20 meals while at Logan because of this. Plaintiff is not aware of missing any meals at Graham Correctional Center.

4

**Interrogatory 4**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a visit because of his hearing loss, including the facility where this occurred, the approximate date, who the visitor(s) was (were), the name and title of any individual that the Plaintiff informed that a visit was missed, the approximate date when such communication occurred, and whether the communication was in person or in writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 4 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall the specific dates and all individuals and details involved when he missed a visit because of his hearing loss. Nor would Plaintiff necessarily know in all instances when he missed a visit because of his hearing loss, as he may have missed a visit and was unaware that the visit was missed because he was not made aware of the announcement for the visit by IDOC personnel.

There have been occasions at Dixon CC, Logan CC, and Graham CC where it is verbally announced that Plaintiff has a visit, which he cannot hear. However, Plaintiff does not believe that he has missed visits because other inmates will tell him he has a visitor.

**Interrogatory 5**

State each time since January 1, 2007 (if any) that the Plaintiff requested an "auxiliary aid" as defined by the Plaintiff in paragraph 39 of his Complaint, with the exception of a request for sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, what "auxiliary aid" what [sic] requested, the circumstances for which the request was made, whether the request was in writing or in person, and whether he received the "auxiliary aid."

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 5 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall the specific dates and all individuals and details involved when he requested an "auxiliary aid" as defined by the Plaintiff in paragraph 39 of his Complaint. However, Plaintiff recalls the following:

Plaintiff uses a hearing aid in his left ear that assists him to hear loud noises. When he was remanded to Dixon CC he was not in possession of his hearing aid. His mother

brought it for him but IDOC staff would not allow him to have it. During a medical visit following his mother's visit he requested to have his hearing aid as well as to be examined by an audiologist but the physician refused for the reason he did not need it.

Plaintiff has requested a video phone at Dixon, Logan and Graham. The requests were made to the counselors and then to the assistant warden. At Dixon he was told by the assistant warden that a video phone would be installed but that never occurred. At Logan, Plaintiff requested the use of a video phone to his counselor. His counselor advised him that the request was made to the warden. Plaintiff never received a final decision on this request. At Graham, Plaintiff asked his counselor, Kevin, for a video phone. Kevin consulted with head counselor Beck who indicated it was a good idea.

Plaintiff was advised that Beck met with an assistant warden who stated that a video phone would not be provided because the facility did not have the internet service necessary to support a video phone and the request was denied. Plaintiff also filed a grievance about the lack of accessibility of the TTY at Dixon because he did not receive equal access to telephone calls as hearing inmates and would sometimes have to wait hours to access the TTY.

## Interrogatory 6

State each time since January 1, 2007 (if any) that the Plaintiff requested a sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, the circumstances for which the request was made, whether the request was in writing or in person, whether he received a sign language interpreter and if not, whether another form of communication was used during the circumstances.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 6 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall specific dates and all individual details involved in each incident in which he requested a sign language interpreter. Plaintiff has requested interpreters on many occasions.

In 2008 at Dixon, Plaintiff requested an interpreter at orientation. This was requested by a note that was handed to the counselor as well as to the principal. The principal then made   a telephone call and Plaintiff believes the call was to the warden. Plaintiff was then told "Sorry, you are not getting one". At TRAC inmates were able to raise their hands and ask questions if they had any. Plaintiff was denied that opportunity due to the lack of an interpreter.

Prior to every medical visit at Dixon, Plaintiff would first make a request for an interpreter to his counselor, then the nurse and finally to the physician. Every time an interpreter was denied and the reason given was that he did not need it because he and the medical staff could write notes to each other. Plaintiff tried to communicate that he could not read much of the doctor's writing nor could he comprehend many of the terms that were exchanged in the notes. It did not matter. He was told he did not need an interpreter. Plaintiff estimates that he had approximately 30 medical visits at Dixon. Plaintiff also made written requests to the warden at Dixon stating his need for interpreter services when seeing the physician, but no interpreter was ever provided.

Plaintiff was transferred to Logan CC and was given a physical examination. He asked the counselor, the warden and medical staff for an interpreter. The head nurse handed him a note that stated "we do not provide interpreters." The warden told him there was no money available to pay for an interpreter. At Logan CC there was one instance approximately one month prior to his transfer from Logan CC to Graham CC, in which IDOC hired an interpreter for another inmate who was undergoing a psychological examination. Plaintiff had hurt his wrist and was suffering from migraine headaches and had an appointment to see the physician. He noticed that there was an interpreter at the office and asked if he could interpret. Plaintiff was granted an interpreter on this one medical visit. The physician commented to Plaintiff that the communication was much better with an interpreter and Plaintiff replied that is the reason he needs an interpreter during medical visits. Plaintiff estimates that he made 6-7 requests for an interpreter at Logan CC.

At Graham CC Plaintiff has seen the physician approximately 20 times and on approximately half of those visits he has requested, first to his counselor, then to the nurse and then to the physician, to have an interpreter provided. The requests for an interpreter for medical visits were made in writing on the form for requesting medical visits. Requests to medical staff for an interpreter during a visit were made by a written note.

At Graham, Plaintiff has been able to work on his GED. During the GED class he made a request to the instructor for an interpreter for classes. An interpreter was granted one time to help him prepare for the test. After obtaining his GED he was allowed to enroll in a construction class that meets four times per week. Plaintiff asked the instructor for an interpreter and his request was partially granted to allow him to have an interpreter once per week.

At Dixon there was a church service available led by three persons who signed but were not professional interpreters. At Logan there were no church services for deaf inmates. Plaintiff requested in a note to his counselor and then to the chaplain that a deaf interpreter be provided for services. His request was denied. No alternative form of communication was offered.

At Graham there are no church services for inmates who are deaf. Plaintiff requested in a note to his counselor and then to the chaplain that a deaf interpreter be provided for

services. His request was denied. He was told that as an alternative he could watch church on television with the captioning enabled.

Except for religious services and the orientation/TRAC at Dixon, each time Plaintiff has been denied an interpreter he has been told by IDOC that communication can be by note writing.

Additional specifics regarding requests for interpreters that were denied are contained in the grievances that Plaintiff filed which are in the possession, control and custody of IDOC.

**Interrogatory 7**

State each time (if any) that the Plaintiff believes he was disciplined for taking an action or not taking an action because he could not hear orders made by IDOC personnel, including the facility where this occurred, the approximate date, the name and title of the individual who gave the order, the circumstances during which the order was given, and what discipline the Plaintiff received.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 7 as overly broad and unduly burdensome. Plaintiff further objects as the question is not limited in time and is oppressive. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall specific dates and all individual details involved in each incident in which he was disciplined for taking an action or not taking an action because he could not hear orders made by IDOC personnel. Plaintiff does not recall being formally disciplined for not following an order.

**Interrogatory 8**

State whether the Plaintiff informed an IDOC employee or anyone else working at a Reception and Classification Center that the Plaintiff was deaf or hard of hearing when the Plaintiff first entered the Illinois corrections system, including the name and title of the individual informed, and how the Plaintiff informed the individual of this fact. If the Plaintiff has had multiple admissions to the correctional system, please answer this interrogatory for each admission to a Reception and Classification Center.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 8 as overly broad and unduly burdensome. Plaintiff further objects that this question is not limited in time and is thereby also oppressive. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall all of the specifics of all communications he had with IDOC personnel when he first entered the Illinois corrections system.

Plaintiff informed guards, the warden and the principal at Menard CC, which was his Reception and Classification Center, that he was deaf. He was issued an identification card that indicates he is deaf.

### Interrogatory 9

State each time (if any) since January 1, 2007 that the Plaintiff believes he was injured or did not receive medical treatment because he could not effectively communicate with medical personnel at any prison or facility operated by the IDOC (including mental health personnel), including the facility where the incident occurred, the approximate date of the incident, the medical staff involved, how the Plaintiff and the medical staff attempted to communicate with each other, what injury occurred or what treatment the Plaintiff sought, and whether the Plaintiff received medical care for the same issues at a later time, supplying the date and location of that medical care.

### ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 9 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he may have been injured or did not receive medical treatment because he could not effectively communicate with medical personnel at any prison or facility operated by the IDOC. Plaintiff filed a grievance in the past regarding not being provided an interpreter for medical visits. He does not have a copy of that grievance.

Plaintiff has not received appropriate medical care for what he believes to be a hernia. In approximately January 2013 he was lifting weights and felt a bad pop in his lower abdomen which causes him much pain. Plaintiff requested a medical visit. He wrote in his note that he hurt and pointed to where it was. The doctor consulted his chart and noted that he was prescribed ibuprofen for migraine headaches. The doctor assumed that the Ibuprofen was causing stomach troubles and changed his medication to Tylenol. The pain persists and Plaintiff cannot get the doctor to understand that he is injured, not suffering stomach aches, because he is unable to effectively communicate his condition through note-writing with the physician and has been denied an interpreter for medical visits.

**Interrogatory 10**

State whether the Plaintiff has received an IDOC orientation manual for any facility, what facility that was, the approximately date that he received the manual, and state whether Plaintiff was able to read the manual. If the Plaintiff was unable to read the manual, state the reason(s) why he could not read it.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 10 as overly broad and unduly burdensome, including because it is not limited in time. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff has been provided with an orientation manual at each facility where he has been incarcerated. He has been able to read and comprehend some portions of the manuals. The manuals contained some words that he did not understand, and described rules and procedures in a manner that Plaintiff did not always fully or clearly comprehend due to the fact that written English is not his primary form of communication. Thus, the manuals did not constitute adequate or "effective communication" within the meaning of those terms under the Americans with Disabilities Act.

**Interrogatory 11**

State each time (if any) since January 1, 2007 that the Plaintiff was unable to attend or participate in an educational, vocational or substance abuse treatment program because he is deaf or hard of hearing. For each such time, state the facility where this occurred, the approximate date, what educational or vocational or substance abuse treatment program the Plaintiff sought to attend or participate in, and list the individual(s) (if any) that the Plaintiff informed that he was unable to attend or participate because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 11 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he was unable to attend or participate in an educational, vocational or substance abuse treatment program because he is deaf or hard of hearing. Nor would Plaintiff necessarily know of all such instances, as he may have been denied such opportunities without his knowledge, because he may not have heard of or otherwise been effectively informed of such opportunities.

See Plaintiff's Answer to Interrogatory 6.

10

**Interrogatory 12**

State each time (if any) since January 1, 2007 that the Plaintiff has been unable to earn credit toward his sentence in any way because of his hearing loss, including how the Plaintiff sought to earn the credit, the facility where this occurred, the approximate date, and the individual(s) (if any) that the Plaintiff informed that he was unable to earn credit toward his sentence because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 12 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have been unable to earn credit toward his sentence in any way because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances.

**Interrogatory 13**

State each time (if any) since January 1, 2007 that the Plaintiff has been denied employment or participation in a work program within an IDOC prison or facility because of his hearing loss, including the approximate date, what employment or work program was denied to the Plaintiff, the facility where this occurred, and the individual(s) (if any) that the Plaintiff informed that he was denied employment or participation in a work program because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 13 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

At Logan CC, Plaintiff requested employment mowing lawns using the riding mowers. He made the request to the grounds crew staff approximately 30 days after he was transferred to Logan. Plaintiff was told that a deaf individual was hurt at Dixon and that IDOC implemented a policy that deaf inmates could not be employed using the mowers.

See Plaintiff's Answer to Interrogatories 6 and 11.

**Interrogatory 14**

State how the Plaintiff communicates with his currently assigned Counselor.

11

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 14 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff communicates to some degree with his counselor through written notes. Many of Plaintiff's attempts to communicate with his counselor are not effective and do not result in adequate understanding between Plaintiff and his counselor.

See also Plaintiff's Answer to Interrogatory 2.

**Interrogatory 15**

State the name of the Plaintiff's current cell mate, state whether his current cell mate is deaf or hard of hearing, state how the Plaintiff communicates with his current cell mate, state whether any of Plaintiff's cell mates since January 1, 2007 were deaf or hard or hearing, and state how the Plaintiff communicated with the cell mates he has had since January 1, 2007.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 15 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff's current cell mate is Oscar Herra. Plaintiff is not qualified to diagnose another individual as deaf or hard of hearing, but he believes that Herra is hard of hearing. Plaintiff and Herra use sign language to communicate with each other.

Plaintiff has had numerous roommates/cell mates over the years at IDOC. Plaintiff is not qualified to diagnose another individual as deaf or hard of hearing, he believes that some have been deaf and he communicated with those persons using American Sign Language. With roommates or cell mates whom Plaintiff believes were not deaf or hard of hearing, the communication was very minimal through written notes. Many of Plaintiff's attempts to communicate with those persons were not effective or successful.

**Interrogatory 16**

State each time (if any) since January 1, 2007 that the Plaintiff believes he was denied participation in a religious service because of his hearing loss, including the facility where this occurred, the approximate date, and the name and title of the individual(s) that the Plaintiff informed that he was being denied participation in a religious service because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 16 as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have been denied participation in a religious service because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances.

See Plaintiff's Answer to Interrogatory 6.

**Interrogatory 17**

State whether there is a television in the Plaintiff's current cell, whether the television has closed captioning, whether the Plaintiff has turned on the closed captioning and if not, why not, whether the Plaintiff ever requested headphones for the television, the approximate date of the request, the facility where the request for headphones was made, whether the Plaintiff received the requested headphones, and whether the Plaintiff ever bought headphones without making a request for them.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 17 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

The television in Plaintiff's room has closed captioning and it is turned on.

**Interrogatory 18**

Since January 1, 2007, state whether the Plaintiff has requested that a television in a common area of a prison have its closed captioning turned on, including the facility where this occurred, the approximate date, the individual(s) to whom the Plaintiff made the request, whether the closed captioning was turned on.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 18 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he requested that a television in a common area of a prison have its closed captioning turned on.

13

Plaintiff has at times been capable of turning on the closed captioning televisions in the facilities where he has been incarcerated.

See Plaintiff's Answer to Interrogatory 23.

**Interrogatory 19**

State each time (if any) that the Plaintiff has been evacuated from his cell due to any type of emergency situation including but not limited to a drill, including the facility where this occurred, the approximate date, and how the Plaintiff was informed that there was an emergency evacuation.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 19 as unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he may have been evacuated from his cell due to any type of emergency situation. There is no formal mechanism to notify Plaintiff about emergency situations, such as weather emergencies, fires or lockdowns. There was one drill at Dixon CC. There were no flashing alarms and so a guard had to come and get him out of his cell by motioning for him to come.

At Graham there have been drills. Plaintiff has figured out what to do by following others. The drills are all voice announced and the facility does not have flashing alarms except for the school which is equipped with them.

**Interrogatory 20**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a shower because of his hearing loss, including the facility where this occurred, the approximate date, and the names and titles of any individuals he informed that he missed a shower due to his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 20 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does know or recall the specifics of all instances in which he may have missed a shower because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances.

Plaintiff may have missed a shower and was unaware that the shower was missed because he was not made aware of the announcement for the shower by IDOC personnel.

**Interrogatory 21**

State each time (if any) since January 1, 2007 that the Plaintiff believes his request to be transferred to a different IDOC facility was denied because the Plaintiff was deaf or hard of hearing, including the facility from which the Plaintiff asked to be transferred, the facility to which the Plaintiff asked to be transferred, the approximate date of the request, and the individual(s) (if any) that the Plaintiff informed that his request was denied because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 21 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff requested at Dixon that he be transferred to Vienna CC so that he could be closer to his mother to facilitate more frequent visits. He was denied for the reason that Vienna CC is not on IDOC's list of ADA facilities and because he is deaf he is required to be placed in one of IDOC's ADA correctional centers.

**Interrogatory 22**

State each time (if any) since January 1,2007, that the Plaintiff was unable to file a grievance because he was hard of hearing, including the facility where this occurred, the approximate date when this occurred, why the Plaintiff believes his hearing loss was the cause, and the individual(s) that the Plaintiff contacted for assistance in filing a grievance.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 22 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.
Plaintiff does not believe that he has been unable to file a grievance because he is deaf.

**Interrogatory 23**

State each time since January 1,2007 (if any) that the Plaintiff has requested an accommodation not mentioned previously in the answers to these interrogatories from any individual employed by or working at the Illinois Department of Corrections ("IDOC") or any prison or facility operated by the IDOC, which relates to the Plaintiffs hearing loss, including a description of the accommodation, the approximate date the request was made, the facility where the accommodation was requested, all individuals

asked for the accommodation, whether the request was made in writing, and the response to the request for the accommodation.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 23 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have requested an accommodation not mentioned previously in the answers to these interrogatories, or the details of the results of any such request.

On approximately 6 occasions, Plaintiff has requested in writing to counselor Beck to put on the close captioning on Channel 22 which shows DVD movies. He has made even more of the same requests in person to counselor Beck. Beck refuses and makes excuses such as "I don't know how" and "I don't think it will work." The first request was made approximately 3 months after coming to Graham CC and the last request was made in Spring 2011.

In the past Plaintiff requested a vibrating alarm from IDOC but was never provided one.

**Interrogatory 24**

State when the Plaintiff was first diagnosed with hearing loss, who made the diagnosis, the facility or office where this occurred, and the reason for the Plaintiff's hearing loss, if known.

**ANSWER:**

Plaintiff asserts the general objections set forth above. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff was born deaf. Plaintiff is not certain when he was first diagnosed as deaf or by whom.

**Interrogatory 25**

Before the Plaintiff was sentence to the custody of the IDOC, what (if any) auxiliary aids did the Plaintiff use to communicate with individuals in his family? What auxiliary aids (if any) did the Plaintiff use to communicate with individuals in the community? What auxiliary aids (if any) did the Plaintiff use to communicate at his employment? Does the Plaintiff believe that any of the auxiliary aids that the Plaintiff used before being sentenced to the custody of the IDOC are not available to him within the IDOC system?

16

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 25 as overly broad and unduly burdensome.  Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all auxiliary aids he has used to communicate in the past.  Plaintiff communicates with his family using ASL.

For 10 years prior to his incarceration, Plaintiff was employed at the University of Illinois in Springfield as a janitor.  UIS provided interpreters for all necessary meetings and trainings.

Plaintiff further affirmatively states that auxiliary aids that he used before being sentenced to IDOC custody are not available to him within the IDOC system.

Respectfully submitted,
(as to Objections only)


s/ Amy F. Peterson
Amy F. Peterson
One of the Attorneys for Plaintiff

Robert L. Michels
Nicole E. Wrigley
Kevin P. McCormick
Joseph L. Motto
Mary T. McCarthy
Ryan M Dunigan
Winston & Strawn LLP
35 W. Wacker Dr.
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
rmichels@winston.com
NWrigley@winston.com
KMcCormick@winston.com
JMotto@winston.com
MMcCarthy@winston.com
RDunigan@winston.com

17

Alan S. Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, Illinois 60640
Telephone: (773) 769-1411
Facsimile: (773) 769-2224
alanmills@comcast.net

Barry C. Taylor
Amy F. Peterson
Laura J. Miller
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Facsimile: (312) 341-0295
BarryT@equipforequality.org
Amy@equipforequality.org
Laura@equipforequality.org

Howard A. Rosenblum
National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
Facsimile: (301) 587-1791
howard.rosenblum@nad.org

*Counsel for Plaintiffs*

## SIGNATURE PAGE

In accordance with 28 U.S.C. § 1746, the undersigned, Jason Wright, one of the named plaintiffs in the case of Holmes v Godinez, 11 C 2961, signs this document and declares under penalty of perjury under the laws of the United States of America that Plaintiff's Answers to Defendants' First Set of Interrogatories to Plaintiff Jason Wright are true and correct to the best of his knowledge and belief.

Jason Wright

19

## **CERTIFICATE OF SERVICE**

Please take notice that the undersigned, an attorney, on oath, states she served the attached Plaintiff Jason Wright's Response to Defendants' First Set of Interrogatories by sending via e-mail and regular mail to Kevin Lovellette, Assistant Attorney General, General Law Bureau, 100 W. Randolph Street, 13th Floor, Chicago, Illinois 60601 and KLovellette@atg.state.il.us on April 10, 2013.


s/ Amy F. Peterson

# EXHIBIT 11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RALPH HOLMES, DANIEL BAXTER, GEORGE CHILDRESS, HANNIBAL EASON, CURTIS FORSTER, CURTIS HALTERMAN, BILLY JOHNSON, WENDELL LANCASTER, DANIEL LORD, AARON WINFERT, and JASON WRIGHT, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 2961 |
| SALVADOR A. GODINEZ, Acting Director of Illinois Department of Corrections; and L. RACHEL MCKINZIE, American with Disabilities Act Coordinator, Illinois Department of Corrections, | ) ) ) ) ) ) ) | Judge Marvin Aspen  Magistrate Sheila Finnegan |
| Defendants. | ) ) | |

**PLAINTIFF DANIEL LORD'S RESPONSE TO DEFENDANTS'**
**FIRST SET OF INTERROGATORIES**

Plaintiff, Daniel Lord, by his attorneys, pursuant to the applicable Rules of Civil Procedure, in response to Defendants' First Set of Interrogatories, states as follows:

**GENERAL STATEMENTS AND OBJECTIONS**

Plaintiff asserts the following general objections, which are incorporated by reference into each of Plaintiff's responses set forth below:

1.  Plaintiff objects to the Interrogatories to the extent that they seek information and

    documents protected from disclosure by the attorney-client privilege, the work

    product doctrine, and any other applicable privilege or immunity from discovery.

1

2.  Plaintiff makes these responses to the best of his current knowledge, information, and belief. Plaintiff reserves the right to produce and rely upon evidence, facts, documents, and information which have not yet been discovered or the relevance of which has not yet been determined. Plaintiff reserves the right to supplement or amend his response to these Interrogatories.

3.  Plaintiff reserves all objections to the admissibility and relevance of any information produced in response to these Interrogatories. Identification of any information does not constitute an admission by Plaintiff that such information is relevant or material to this action.

4.  In addition to the responses below, Plaintiff refers IDOC to all grievances Plaintiff filed while in IDOC custody and all responses thereto by IDOC, all of which are available in IDOC's possession.

5.  Plaintiff responds to these Interrogatories subject to the limitations created by Plaintiff's hearing loss and IDOC's failure to provide appropriate accommodations that would have allowed Plaintiff to have effective expressive and receptive communication.

**Interrogatory 1**

State the name and address of each individual (other than an attorney) who has provided any information to the Plaintiff which was used to answer any Interrogatory.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 1 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Subject to the limitations created by Plaintiff's hearing loss and IDOC's failure to provide appropriate accommodations that would have allowed Plaintiff to have effective expressive and receptive communication, Plaintiff received information from numerous

2

IDOC personnel at the IDOC Reception and Classification Center and at the correctional facilities where he has resided since January 1, 2007 in regards to interactions which are responsive to these Interrogatories. It is impossible for Plaintiff to recall the names of all individuals with whom he has interacted regarding the subject matter of these Interrogatories since January 1, 2007. The individuals with whom Plaintiff interacted regarding the subject matter of these Interrogatories include Wexford medical staff and personnel; instructors in various educational and vocational programs who may or may not be IDOC employees; religious services providers at IDOC facilities, who may or may not be IDOC employees; medical personnel and hearing specialists encountered prior to Plaintiff's incarceration; and all IDOC staff encountered with respect to the subject matter of these Interrogatories. Plaintiff also obtained information from Ferdinand Dizon, Plaintiff's cell mate at Dixon, and Mr. Martens, Plaintiff's counselor at Dixon.

**Interrogatory 2**

State whether the Plaintiff is able to communicate with individuals working at the IDOC or any of the prisons or facilities operated by the IDOC through writing. If the answer to this interrogatory is in the negative, state why the Plaintiff believes he is not able to communicate through writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 2 as overly broad, vague and unduly burdensome.

Subject to the foregoing objections, Plaintiff states that, while "communicate" is a broad and vague term, generally "communicate" is a concept that involves both one party attempting to convey something and the other party understanding what is being conveyed. Plaintiff states that he cannot effectively communicate in writing. He does not know English grammar, so writes using the word order of ASL. His English vocabulary is very limited. When Plaintiff has attempted to convey something to individuals working at the IDOC or any of the prisons or facilities operated by the IDOC, it is his impression that many of the people reading his notes have not understood his writing, since they often do not respond to the notes. Moreover, if they respond in writing, Plaintiff often cannot understand the response, as he has a very low reading level and cannot even read a newspaper. In other instances, he has been unable to determine if he has understood what the party was conveying. If people respond orally, he cannot hear them. *See* DL 000002-000005. Plaintiff further states that, even in instances where he has been able to "communicate" at some level with individuals working at the IDOC or any of the prisons or facilities operated by the IDOC, such communications often have not been "effective communication," within the meaning of that term generally or under the Americans with Disabilities Act.

**Interrogatory 3**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a meal because of his hearing loss, including the facility where this occurred, the approximate date, which daily meal was missed, the name and title of any individual that the Plaintiff informed that a meal was missed, the approximate date when such communication occurred, and whether the communication was in person or in writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 3 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall all of the specific dates, individuals and details involved when he missed a meal because of his hearing loss. Nor would Plaintiff necessarily know in all instances when he missed a meal because of his hearing loss, as he may have missed a meal and was unaware that the meal was missed because he was not made aware of the announcement for the meal by IDOC personnel. Plaintiff knows that he has missed meals due to his inability to hear. Guards seldom notify him that it is meal time. The only way he knows it is mealtime is if he sees a lot of people walking by or another prisoner lets him know.

See also documents identified as: DL 000006-000009.

**Interrogatory 4**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a visit because of his hearing loss, including the facility where this occurred, the approximate date, who the visitor(s) was (were), the name and title of any individual that the Plaintiff informed that a visit was missed, the approximate date when such communication occurred, and whether the communication was in person or in writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 4 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall the specific dates and all individuals and details involved when he missed a visit because of his hearing loss. Nor would Plaintiff necessarily know in all instances when he missed a visit because of his hearing loss, as he may have missed a visit and was unaware that the visit was missed because he was not made aware of the announcement for the visit by IDOC personnel. Plaintiff states that he has missed visits due to his deafness, including a visit with his mother last summer because the guard did not notify him that she was at the prison.

4

See also documents identified as: DL 000006-000009.

**Interrogatory 5**

State each time since January 1,2007 (if any) that the Plaintiff requested an "auxiliary aid" as defined by the Plaintiff in paragraph 39 of his Complaint, with the exception of a request for sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, what "auxiliary aid" what [sic] requested, the circumstances for which the request was made, whether the request was in writing or in person, and whether he received the "auxiliary aid."

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 5 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall the specific dates and all individuals and details involved when he requested an "auxiliary aid" as defined by the Plaintiff in paragraph 39 of his Complaint. However, Plaintiff recalls the following:

Plaintiff has asked for a hearing aid for each ear on a number of occasions. He has been provided with only one hearing aid and told by a doctor that he could not benefit from a second hearing aid because he is too deaf in the second ear.

Plaintiff has asked for, but never received, Video Relay Interpreting (VRI) to make phone calls to family members. Plaintiff has asked for VRI in the infirmary. He has been provided inconsistent access. In addition, the VRI has been of limited help, due to its repeatedly freezing.

Plaintiff has asked for, but never received, access to the TTY that is comparable to phone access for hearing inmates.

Plaintiff repeatedly asked for a vibrating watch, which he finally received last year.

With respect to closed captioning on the television in the common room, hearing inmates turn it off and IDOC staff has failed to ensure that it remains on. In addition, English subtitles (needed for movies without closed captioning) are sometimes not turned on.

Plaintiff has asked for, but never received, visual alarm systems to alert him to meals, visits and emergencies.

See also documents identified as: DL 000006-000009; DL 000037-40; DL 000041-44; DL 000046-48.

**Interrogatory 6**

State each time since January 1, 2007 (if any) that the Plaintiff requested a sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, the circumstances for which the request was made, whether the request was in writing or in person, whether he received a sign language interpreter and if not, whether another form of communication was used during the circumstances.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 6 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall specific dates and all individual details involved in each incident in which he requested a sign language interpreter. Plaintiff requires a sign language interpreter for effective communication. He does not communicate effectively through writing, due to his low level of written and oral communication (see answer to Interrogatory #2). He cannot lipread for receptive communication, nor does he use speech for expressive communication. Because of his need for a sign language interpreter, he has requested one on numerous occasions while at Dixon. Although particular Dixon staff members know limited sign language, Plaintiff has not been provided with sign language interpreter services by IDOC.

Plaintiff has requested from IDOC – but never received – a sign language interpreter on numerous occasions, including for: HIV education in late 2012; Sunday church services; a program entitled God's Ways in Church (2012); ABE; disciplinary and parole hearings; medical appointments; job training and work programs; meetings with his counselor; information about being successful after release from prison; and meetings with the ADA Coordinator.

See also documents identified as: DL 000001; DL 000002-000005; DL 000006-000009; DL 000028-000030; DL 000037-40; DL 000045; DL 000046-000048; DL 000049-000052; DL 000053-000054; DL 000055; DL 000057; DL 000063.

**Interrogatory 7**

State each time (if any) that the Plaintiff believes he was disciplined for taking an action or not taking an action because he could not hear orders made by IDOC personnel, including the facility where this occurred, the approximate date, the name and title of the individual who gave the order, the circumstances during which the order was given, and what discipline the Plaintiff received.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 7 as overly broad and unduly burdensome. Plaintiff further objects as the question is not limited in time and is oppressive. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall specific dates and all individual details involved in each incident in which he was disciplined for taking an action or not taking an action because he could not hear orders made by IDOC personnel. Plaintiff has received at least three tickets for not following orders that he could not hear, such as orders for all inmates to return to their cells.

See also documents identified as: DL000006-000009.

**Interrogatory 8**

State whether the Plaintiff informed an IDOC employee or anyone else working at a Reception and Classification Center that the Plaintiff was deaf or hard of hearing when the Plaintiff first entered the Illinois corrections system, including the name and title of the individual informed, and how the Plaintiff informed the individual of this fact. If the Plaintiff has had multiple admissions to the correctional system, please answer this interrogatory for each admission to a Reception and Classification Center.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 8 as overly broad and unduly burdensome. Plaintiff further objects that this question is not limited in time and is thereby also oppressive. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall all of the specifics of all communications he had with IDOC personnel when he first entered the Illinois corrections system. Plaintiff entered the IDOC through the Joliet Reception Center (the "Annex"). There was no sign language interpreter. One IDOC staff member knew very limited sign (which Plaintiff was unable to understand) and was aware that Plaintiff was deaf. Plaintiff remained in the Reception Center for three weeks and then was sent to Joliet Correctional Center, where there were no sign language interpreters for anything. Plaintiff was transferred to Dixon in 1995. There was no interpreter at the orientation for Dixon.

See also documents identified as: DL 000006-000009.

## Interrogatory 9

State each time (if any) since January 1, 2007 that the Plaintiff believes he was injured or did not receive medical treatment because he could not effectively communicate with medical personnel at any prison or facility operated by the IDOC (including mental health personnel), including the facility where the incident occurred, the approximate date of the incident, the medical staff involved, how the Plaintiff and the medical staff attempted to communicate with each other, what injury occurred or what treatment the Plaintiff sought, and whether the Plaintiff received medical care for the same issues at a later time, supplying the date and location of that medical care.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 9 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he may have been injured or did not receive medical treatment because he could not effectively communicate with medical personnel at any prison or facility operated by the IDOC. Plaintiff has been provided inconsistent access to VRI in the infirmary. In addition, the VRI is of limited utility due to its repeatedly freezing. Plaintiff may not be receiving appropriate medical diagnosis and treatment as he cannot fully communicate with medical staff without an interpreter.

See also documents identified as: DL 000006-000009; DL 000037-40; DL 000046-000048.

## Interrogatory 10

State whether the Plaintiff has received an IDOC orientation manual for any facility, what facility that was, the approximately date that he received the manual, and state whether Plaintiff was able to read the manual. If the Plaintiff was unable to read the manual, state the reason(s) why he could not read it.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 10 as overly broad and unduly burdensome, including because it is not limited in time. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff received a manual when he arrived at Dixon. He was not able to comprehend it because he has a very low reading level.

See also documents identified as: DL 000002-000005; DL 000006-000009 and Plaintiff's Answer to Interrogatory 2.

## Interrogatory 11

State each time (if any) since January 1, 2007 that the Plaintiff was unable to attend or participate in an educational, vocational or substance abuse treatment program because he is deaf or hard of hearing. For each such time, state the facility where this occurred, the approximate date, what educational or vocational or substance abuse treatment program the Plaintiff sought to attend or participate in, and list the individual(s) (if any) that the Plaintiff informed that he was unable to attend or participate because of his hearing loss.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 11 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he was unable to attend or participate in an educational, vocational or substance abuse treatment program because he is deaf or hard of hearing. Nor would Plaintiff necessarily know of all such instances, as he may have been denied such opportunities without his knowledge, because he may not have heard of or otherwise been effectively informed of such opportunities. Plaintiff has been unable to attend or participate in numerous programs at Dixon since January 1, 2007 due to the lack accommodations. These programs include: HIV education in late 2012; Sunday church services; a program entitled God's Ways in Church (2012); ABE; disciplinary and parole hearings; movies; job training and work programs; meetings with his counselor and with ADA coordinator.

See also documents identified as: DL 000002-000005; DL 000006-000009; DL 000028-000030; DL 000037-40; DL 000041-44; DL 000045; DL 000046-000048; DL 000049-000052; DL 000053-000054; DL 000055; DL 000057; DL 000063.

## Interrogatory 12

State each time (if any) since January 1, 2007 that the Plaintiff has been unable to earn credit toward his sentence in any way because of his hearing loss, including how the Plaintiff sought to earn the credit, the facility where this occurred, the approximate date, and the individual(s) (if any) that the Plaintiff informed that he was unable to earn credit toward his sentence because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 12 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have been unable to earn credit toward his sentence in any way because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances. For example, Plaintiff was unable to participate in either the ABE or the HIV education program, but does not know whether participation would have earned him credit towards his sentence. He made inquiries about the length of his sentence, but was not provided an interpreter during these inquiries.

See also documents identified as: DL000055; DL 000057.

**Interrogatory 13**

State each time (if any) since January 1, 2007 that the Plaintiff has been denied employment or participation in a work program within an IDOC prison or facility because of his hearing loss, including the approximate date, what employment or work program was denied to the Plaintiff, the facility where this occurred, and the individual(s) (if any) that the Plaintiff informed that he was denied employment or participation in a work program because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 13 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff was denied the job of driving the stocking forklift in the general store. He was told that, because he was deaf, it would be too dangerous for him to perform that job.

See also documents identified as: DL 000006-000009 and Plaintiff's Answer to Interrogatory 11.

**Interrogatory 14**

State how the Plaintiff communicates with his currently assigned Counselor.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 14 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff communicates to some degree with his current counselor by exchanging notes. However, due to Plaintiff's poor ability to read and write, this communication is not effective for him and does not result in adequate understanding between Plaintiff and his counselor.

 See also documents identified as:  DL 000002-000005; DL 000006-000009 and Plaintiff's Answer to Interrogatory 2.

**Interrogatory 15**

State the name of the Plaintiff's current cell mate, state whether his current cell mate is deaf or hard of hearing, state how the Plaintiff communicates with his current cell mate, state whether any of Plaintiff's cell mates since January 1, 2007 were deaf or hard or hearing, and state how the Plaintiff communicated with the cell mates he has had since January 1, 2007.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 15 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff's cellmate is Ferdinand Dizon. Plaintiff is not qualified to diagnose another individual as deaf or hard of hearing, but does not believe that Mr. Dizon is deaf or hard of hearing. Plaintiff communicates with Mr. Dizon through gestures and through some sign language that Mr. Dizon has learned. Many of Plaintiff's attempts to communicate with Mr. Dizon are not effective or successful.

**Interrogatory 16**

State each time (if any) since January 1, 2007 that the Plaintiff believes he was denied participation in a religious service because of his hearing loss, including the facility where this occurred, the approximate date, and the name and title of the individual(s) that the Plaintiff informed that he was being denied participation in a religious service because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 16 as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have been denied participation in a religious service because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances.

Plaintiff is unable to participate in Sunday church services due to the lack of a sign language interpreter. In addition, he was unable to participate in a program entitled God's Ways in Church, which took place in 2012.

See also documents identified as: DL 000006-000009.

**Interrogatory 17**

State whether there is a television in the Plaintiff s current cell, whether the television has closed captioning, whether the Plaintiff has turned on the closed captioning and if not, why not, whether the Plaintiff ever requested headphones for the television, the approximate date of the request, the facility where the request for headphones was made, whether the Plaintiff received the requested headphones, and whether the Plaintiff ever bought headphones without making a request for them.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 17 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff has a television in his cell and he uses the closed captioning feature.

**Interrogatory 18**

Since January 1, 2007, state whether the Plaintiff has requested that a television in a common area of a prison have its closed captioning turned on, including the facility where this occurred, the approximate date, the individual(s) to whom the Plaintiff made the request, whether the closed captioning was turned on.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 18 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he requested that a television in a common area of a prison have its closed captioning turned on. Hearing inmates often turn off the closed captioning and IDOC staff has failed to ensure that it remains on. In addition, English subtitles (needed for movies without closed captioning) are sometimes not turned on.

See also documents identified as: DL 000006-000009; DL000041-44 and Plaintiff's Answer to Interrogatory 5.

**Interrogatory 19**

State each time (if any) that the Plaintiff has been evacuated from his cell due to any type of emergency situation including but not limited to a drill, including the facility where this occurred, the approximate date, and how the Plaintiff was informed that there was an emergency evacuation.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 19 as unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he may have been evacuated from his cell due to any type of emergency situation. There is no formal mechanism to notify Plaintiff about emergency situations, such as weather emergencies, fires or lockdowns. Last summer, there was a weather emergency. Plaintiff learned about if only from seeing people around him running.

See also documents identified as: DL 000006-000009.

**Interrogatory 20**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a shower because of his hearing loss, including the facility where this occurred, the approximate date, and the names and titles of any individuals he informed that he missed a shower due to his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 20 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does know or recall the specifics of all instances in which he may have missed a shower because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances. Plaintiff may have missed a shower and was unaware that the shower was missed because he was not made aware of the announcement for the shower by IDOC personnel.

Plaintiff is aware of missing at least one shower since 2007.

See also documents identified as: DL000006-000009.

**Interrogatory 21**

State each time (if any) since January 1, 2007 that the Plaintiff believes his request to be transferred to a different IDOC facility was denied because the Plaintiff was deaf or hard of hearing, including the facility from which the Plaintiff asked to be transferred, the facility to which the Plaintiff asked to be transferred, the approximate date of the request, and the individual(s) (if any) that the Plaintiff informed that his request was denied because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 21 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff has not requested a transfer to a different facility since January 1, 2007.

**Interrogatory 22**

State each time (if any) since January 1,2007, that the Plaintiff was unable to file a grievance because he was hard of hearing, including the facility where this occurred, the approximate date when this occurred, why the Plaintiff believes his hearing loss was the cause, and the individual(s) that the Plaintiff contacted for assistance in filing a grievance.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 22 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Many of Plaintiff's grievances have been lost, ignored, or not returned in a timely fashion, including some that have been returned after the period to appeal the decision has expired.

See also documents identified as: DL000006-000009.

**Interrogatory 23**

State each time since January 1, 2007 (if any) that the Plaintiff has requested an accommodation not mentioned previously in the answers to these interrogatories from any individual employed by or working at the Illinois Department of Corrections ("IDOC") or any prison or facility operated by the IDOC, which relates to the Plaintiffs hearing loss, including a description of the accommodation, the approximate date the request was made, the facility where the accommodation was requested, all individuals asked for the accommodation, whether the request was made in writing, and the response to the request for the accommodation.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 23 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have requested an accommodation not mentioned previously in the answers to these interrogatories, or the details of the results of any such request. Plaintiff requested that he receive speech therapy. Plaintiff has requested interpreters for disciplinary and parole hearings.

See also documents identified as: DL000033-000036.

**Interrogatory 24**

State when the Plaintiff was first diagnosed with hearing loss, who made the diagnosis, the facility or office where this occurred, and the reason for the Plaintiff's hearing loss, if known.

**ANSWER:**

Plaintiff asserts the general objections set forth above. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff believes that he was diagnosed with hearing loss at about age three. He was too young to know who diagnosed his hearing loss or at what facility or office. Additional information may be contained in the documents being produced by the IDOC and in Plaintiff's medical records, which are in the possession, custody and control of IDOC.

**Interrogatory 25**

Before the Plaintiff was sentence to the custody of the IDOC, what (if any) auxiliary aids did the Plaintiff use to communicate with individuals in his family? What auxiliary aids (if any) did the Plaintiff use to communicate with individuals in the community? What auxiliary aids (if any) did the Plaintiff use to communicate at his employment? Does the Plaintiff believe that any of the auxiliary aids that the Plaintiff used before being sentenced to the custody of the IDOC are not available to him within the IDOC system?

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 25 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all auxiliary aids he has used to communicate in the past.

American Sign Language is Plaintiff's primary (and only) language and he relies on it for effective communication. Plaintiff's mother, who is hearing, knows some sign language; Plaintiff and his mother communicate through sign language. Plaintiff went to special schools for the deaf, where sign language was used. Because of Plaintiff's young age when he entered the IDOC (22) he did not have a long employment history before incarceration. He did have one job laying tile, which preceded the passage of the Americans with Disabilities Act. His mother, even though she is not a trained interpreter, accompanied him to the job for training and meetings, signing to him important information. Plaintiff believes that the auxiliary aids that he used before being sentenced to the custody of the IDOC are not available to him within the IDOC system.

Respectfully submitted,
(as to Objections only)


s/ Laura J. Miller
One of the Attorneys for Plaintiff

Robert L. Michels
Nicole E. Wrigley
Kevin P. McCormick
Joseph L. Motto
Mary T. McCarthy
Ryan M Dunigan
Winston & Strawn LLP
35 W. Wacker Dr.
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
rmichels@winston.com
NWrigley@winston.com
KMcCormick@winston.com
JMotto@winston.com
MMcCarthy@winston.com
RDunigan@winston.com

Alan S. Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, Illinois 60640
Telephone: (773) 769-1411
Facsimile: (773) 769-2224
alanmills@comcast.net

Barry C. Taylor
Amy F. Peterson
Laura J. Miller
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Facsimile: (312) 341-0295
BarryT@equipforequality.org
Amy@equipforequality.org
Laura@equipforequality.org

Howard A. Rosenblum
National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
Facsimile: (301) 587-1791
howard.rosenblum@nad.org

*Counsel for Plaintiffs*

17

## **SIGNATURE PAGE**

In accordance with 28 U.S.C. § 1746, the undersigned, Daniel Lord, one of the named plaintiffs in the case of Holmes v Godinez, 11 C 2961, signs this document and declares under penalty of perjury under the laws of the United States of America that Plaintiff's Answers to Defendants' First Set of Interrogatories to Plaintiff Daniel Lord are true and correct to the best of his knowledge and belief.

Daniel Lord

**CERTIFICATE OF SERVICE**

Please take notice that the undersigned, an attorney, on oath, states she served the attached Plaintiff Daniel Lord's Response to Defendants' First Set of Interrogatories by sending via e-mail and regular mail to Kevin Lovellette, Assistant Attorney General, General Law Bureau, 100 W. Randolph Street, 13th Floor, Chicago, Illinois 60601 and KLovellette@atg.state.il.us on April 11, 2013.


s/ Amy F. Peterson

# EXHIBIT 12

Case: 1:11-cv-02961 Document #: 250-1 Filed: 02/13/15 Page 75 of 178 PageID #:2848

AARON WINFERT
HOLMES, ET AL. vs. GODINEZ, ET AL.

March 07, 2014
1—4

**Page 1**

1  IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS
2  EASTERN DIVISION

3

4
5  RALPH HOLMES, DANIEL BAXTER, GEORGE CHILDRESS,
   HANNIBAL EASON, CURTIS POSTER, CURTIS HALTERMAN,
   BILLY JOHNSON, WENDELL LANCASTER, DANIEL LORD, AARON
6  WINFERT, and JASON WRIGHT, on behalf of themselves
   and all others similarly situated,

7

8  PLAINTIFFS

9
   VS.            CASE NO.  11-C-2961
10
   SALVADOR A. GODINEZ, ACTING DIRECTOR OF ILLINOIS
11 DEPARTMENT OF CORRECTIONS, and L. RACHEL McKINZIE,
   AMERICANS WITH DISABILITIES ACT COORDINATOR,
12 ILLINOIS DEPARTMENT OF CORRECTIONS

13

14 DEFENDANTS

15

16          DEPOSITION OF AARON WINFERT
17          TAKEN ON BEHALF OF THE DEFENDANTS
            MARCH 7, 2014
18

19

20

21

22

23

24

25

**Page 2**

1              INDEX
2  EXAMINATION                    PAGE
3
4  QUESTIONS BY MR. LOVELLETTE    5/74/77/81
5  QUESTIONS BY MS. ASCHEMANN     72/75/81
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Page 3**

1  IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS
2  EASTERN DIVISION

3  RALPH HOLMES, DANIEL BAXTER, GEORGE CHILDRESS,
   HANNIBAL EASON, CURTIS POSTER, CURTIS HALTERMAN,
4  BILLY JOHNSON, WENDELL LANCASTER, DANIEL LORD, AARON
   WINFERT, and JASON WRIGHT, on behalf of themselves
5  and all others similarly situated,

6          PLAINTIFFS,

7  vs.                    No. 11-C-2961

8  SALVADOR A. GODINEZ, ACTING DIRECTOR OF ILLINOIS
   DEPARTMENT OF CORRECTIONS, and L. RACHEL McKINZIE,
9  AMERICANS WITH DISABILITIES ACT COORDINATOR,
   ILLINOIS DEPARTMENT OF CORRECTIONS,
10
11          DEFENDANTS.

12

13        Deposition of AARON WINFERT, produced, sworn,
   and examined on the 7th day of March, 2014, between
14 the hours of 10:29 o'clock in the forenoon and 12:02
   o'clock in the afternoon, at the offices of Menard
15 Correctional Center, 711 Kaskaskia Street, in
   Chester, Illinois, before Pamela K. Needham, CCR,
16 CSR (MO, IL), in a certain cause now pending IN THE
   UNITED STATES DISTRICT COURT, FOR THE NORTHERN
17 DISTRICT OF ILLINOIS, EASTERN DIVISION, wherein
   RALPH HOLMES, ET AL.S, are the Plaintiffs, and
18 SALVADOR A. GODINEZ, ET AL., are the Defendants.

19

20

21

22

23

24

25

**Page 4**

1  APPEARANCES:

2
   FOR THE PLAINTIFF:
3

4      Ms. Stacey Aschemann
       Equip For Equality, Inc.
5      300 East Main Street, Suite 18
       Carbondale, IL  62901
6      (618) 457-7930, Ext. 5001
       stacey@equipforequality.org
7

8  FOR THE DEFENDANTS:

9
       Mr. Kevin Lovellette
10     Office of the Attorney General
       100 West Randolph Street, 13th Floor
11     Chicago, IL  60601
       (312) 814-3720
12     klovellette@atg.state.il.us

13 INTERPRETING FOR THE WITNESS:

14     Ms. Lottie Smith
       Independent Interpreter
15     3470 Friendship School Road
       Anna, IL  62906
16     (618) 520-9924

17

18 ALSO PRESENT:

19     Ms. Brandi Evans
       Ability Interpreting
20     600 Christopher Drive
       St. Louis, MO
21     (618) 622-3320

22
   The Court Reporter:
23     Pamela K. Needham, IL CSR, MO CCR
       Midwest Litigation Services
24     711 North 11th Street
       St. Louis, MO  63101
25     314-644-2191



AARON WINFERT
HOLMES, ET AL. vs. GODINEZ, ET AL.

March 07, 2014
13–16

Page 13

1 accommodation, I need to know specifically.
2 Q (By Mr. Lovellette) Have you ever asked
3 for anything, any help to do your job in the Health
4 Center here at Menard because, for your deafness?
5 A. (Witness signs answer.)
6 MS. SMITH: Yes.
7 Q (By Mr. Lovellette) What was that? What
8 did you ask for?
9 A. (Witness signs answer.)
10 MS. SMITH: Maybe, for example, like a
11 map, or if I need something from another worker I
12 would have to ask, you know, as far as what they
13 were saying.
14 Q. All right. Do you sometimes write
15 things out then?
16 A. (Witness signs answer.)
17 MS. SMITH: Yeah, sometimes.
18 Q. Okay.
19 A. (Witness signs answer.)
20 MS. SMITH: But mostly I read lips.
21 Q. Have you ever asked for something in
22 order to do your job here at Menard that was --
23 because of your deafness, that was not provided to
24 you?
25 A. (Witness signs answer.)

Page 14

1 MS. SMITH: No.
2 Q. How long have you had the job at Health
3 Care Unit?
4 A. (Witness signs answer.)
5 MS. SMITH: Seven, six months, six or
6 seven months. I started in August.
7 Q. Okay.
8 THE REPORTER: I'm sorry.
9 MS. SMITH: I started in August. Six or
10 seven months.
11 Q (By Mr. Lovellette) Did you have a job
12 before that?
13 A. (Witness signs answer.)
14 MS. SMITH: Yes.
15 Q. What did you do then?
16 A. (Witness signs answer.)
17 MS. SMITH: Kitchen.
18 Q. Did, did you ever ask for anything from
19 Menard in order to do that job because of your
20 deafness that wasn't provided to you?
21 A. (Witness signs answer.)
22 MS. SMITH: No.
23 Q (By Mr. Lovellette) Okay. I'm going to
24 switch gears. A different topic is what I mean.
25 And I notice you are wearing a hearing aid.

Page 15

1 A. (Witness signs answer.)
2 MS. SMITH: Yes.
3 Q (By Mr. Lovellette) How long -- was that
4 given to you or issued to you by the Menard medical
5 staff?
6 A. (Witness signs answer.)
7 MS. SMITH: Yes.
8 Q. All right. Can you estimate how long
9 the battery lasts in the hearing aid?
10 A. (Witness signs answer.)
11 MS. SMITH: Two months.
12 Q. When you need a new battery, what's the
13 procedure here at Menard in order to get one?
14 A. (Witness signs answer.)
15 MS. SMITH: I ask for one. I ask for
16 more batteries.
17 Q. From whom?
18 A. (Witness signs answer.)
19 MS. SMITH: Health care.
20 Q. All right. Have you, in the last two
21 years, have you ever had a problem getting
22 replacement batteries for your hearing aid?
23 A. (Witness signs answer.)
24 MS. SMITH: When I ask for it, it takes
25 a while to get it.

Page 16

1 Q. Do you know why?
2 A. (Witness signs answer.)
3 MS. SMITH: I don't know.
4 Q. All right. But when you say a while,
5 can you estimate it, a week? A day? A month?
6 A. (Witness signs answer.)
7 MS. SMITH: One week.
8 Q. Okay. Have you had any other issues
9 with your hearing aid other than having to wait to
10 get a battery sometimes?
11 A. (Witness signs answer.)
12 MS. SMITH: He's asking for
13 clarification.
14 Q. Yeah, nevermind, I'll withdraw that
15 question.
16 Have you been to the Health Care Unit at
17 Menard?
18 A. (Witness signs answer.)
19 MS. SMITH: Yes.
20 Q. When you are at the Health Care Unit,
21 how do you usually talk with the staff there?
22 A. (Witness signs answer.)
23 MS. ASCHEMANN: I'm going to just
24 object, the question might be a little bit vague,
25 given there's, talking about working in the Health



AARON WINFERT                                      March 07, 2014
HOLMES, ET AL. vs. GODINEZ, ET AL.                      17—20

Page 17

1  Care Unit versus receiving services in the Health
2  Care Unit.
3           MR. LOVELLETTE: Yes, yes, yes.
4           MS. ASCHEMANN: It might be important to
5  clarify.
6           MR. LOVELLETTE: That is very true.
7      Q. I'm not talking about your job, I'm
8  talking about when you are at the Health Care Unit
9  for, to see a doctor or a nurse, how do you
10  communicate with them? How do you talk with them?
11     A. (Witness signs answer.)
12          MS. SMITH: Like I said, we write.
13          THE REPORTER: I'm so sorry, I ...
14          MS. SMITH: We write back and forth.
15     Q. (By Mr. Lovellette) To the extent you
16  know, has there ever been a time when you were
17  completely unable to explain what your issue was to
18  the health care staff?
19     A. (Witness signs answer.)
20          MS. SMITH: Sometimes that does happen.
21     Q. Is there anything you do to try to fix
22  the problem?
23     A. (Witness signs answer.)
24          MS. SMITH: Mmm, I just try my best to
25  explain myself.

Page 18

1      Q. Have you ever had an interpreter, a live
2  interpreter like we have here today come and help
3  you with the health care, interpret while you go to
4  health care for services?
5      A. (Witness signs answer.)
6           MS. SMITH: Hold on. So you mean a deaf
7  interpreter?
8      Q. Yes, like we have here today.
9      A. (Witness signs answer.)
10          MS. SMITH: No.
11     Q. Are you aware if the Health Care Unit at
12  Menard can have an interpreter appear via video?
13     A. (Witness signs answer.)
14          MS. SMITH: Where?
15     Q. At -- in health care.
16     A. (Witness signs answer.)
17          MS. SMITH: No, they don't have a video
18  phone or any type of equipment to provide that
19  service.
20     Q. Okay. If the Health Care Unit was able
21  to have a video American sign language translator,
22  do, in your opinion, would that be helpful when
23  you're talking to the staff for medical services?
24     A. (Witness signs answer.)
25          MS. SMITH: As long as the interpreter

Page 19

1  is there.
2      Q. Video or live, either way?
3      A. (Witness signs answer.)
4           MS. SMITH: Um...um... I guess, yes, as
5  long as they're, an interpreter is there and the
6  interpreter is signing clearly, yeah.
7      Q. You said a little earlier that you could
8  think of a time, or you remembered a time when you
9  had a problem talking with the staff in the Health
10  Care Unit. Can you explain what the issue was and
11  what the, how you tried to tell them what the issue
12  was?
13     A. (Witness signs answer.)
14          MS. SMITH: Well, I just would tell them
15  how I feel.
16     Q. Okay. Would you write, do you write it
17  down for them?
18     A. (Witness signs answer.)
19          MS. SMITH: Yes.
20     Q. Okay. And then when they -- I'm
21  assuming they ask you questions then?
22     A. (Witness signs answer.)
23          MS. SMITH: Well, really, whenever the
24  staff would ask a question, it would either be
25  verbally or written.

Page 20

1      Q. Oh, okay. And when they verbally ask
2  you a question, are you, are you able to read lips?
3      A. (Witness signs answer.)
4           MS. SMITH: I'm pretty good at reading
5  lips, yes.
6      Q. Okay.
7      A. (Witness signs answer.)
8           MS. SMITH: But, but I prefer an
9  interpreter.
10     Q. And I --
11          MS. SMITH: That way my understanding is
12  much clearer.
13     Q. Okay. And I understand that completely.
14          Have -- again, to the extent that you
15  know, has there ever been a time that, due to a
16  problem communicating with health care staff,
17  that you haven't gotten the right medication, or you
18  had an issue that went without any treatment?
19     A. (Witness signs answer.)
20          MS. SMITH: No.
21     Q. Okay. I'm going to switch topics a
22  little bit and talk, ask you about how you talk with
23  your counselor.
24          I guess, first of all, I want to it make
25  sure, do you have a counselor?



AARON WINFERT
HOLMES, ET AL. vs. GODINEZ, ET AL.

March 07, 2014
33–36

Page 33

1    A.   (Witness signs answer.)
2         MS. SMITH:  I'm not really sure, I think
3    in 2011.
4    Q.   All right.  I'm just going to ask again,
5    is there any other technology that you can remember
6    that you've asked for to help communicate because of
7    your deafness?
8         MS. ASCHEMANN:  Can you give a
9    timeframe?
10   Q   (By Mr. Lovellette) Oh, yeah, let's say
11   in the last two years.
12   A.   (Witness signs answer.)
13        MS. SMITH:  I'm sorry.  So the last two
14   years, and what?
15   Q   (By Mr. Lovellette) Have you had --
16   A.   (Witness signs answer.)
17        MS. SMITH:  Equipment?
18   Q   (By Mr. Lovellette) Right, equipment, a
19   device, anything like that.
20   A.   (Witness signs answer.)
21        MS. SMITH:  That I've asked for it?
22   Q.   Yeah.
23   A.   (Witness signs answer.)
24        MS. SMITH:  Yes.
25   Q.   What was that?  Due to your deafness.

Page 34

1    A.   (Witness signs answer.)
2         MS. SMITH:  Well, the hearing aids.
3    Q.   Okay.
4    A.   (Witness signs answer.)
5         MS. SMITH:  Head phones.
6    A.   (Witness signs answer.)
7         MS. SMITH:  I did ask for a vibrating
8    watch.
9    Q.   Anything else that you remember?
10   A.   (Witness signs answer.)
11        MS. SMITH:  No.
12   Q.   Do you have a vibrating watch?
13   A.   (Witness signs answer.)
14        MS. SMITH:  No.
15   Q   (By Mr. Lovellette) When did you ask for
16   that?  Approximately.
17   A.   (Witness signs answer.)
18        MS. SMITH:  Last year.
19   Q.   Do you still want a vibrating watch?
20   A.   (Witness signs answer.)
21        MS. SMITH:  Yes, that would be nice.
22   Q.   Let's talk about education and
23   vocational programs and classes.  Are you --
24   A.   (Witness signs answer.)
25        MS. SMITH:  Yes.

Page 35

1    Q.   Are you currently in any education or
2    vocational class or program?
3    A.   (Witness signs answer.)
4         MS. SMITH:  Yes.
5    Q.   What is that?
6    A.   (Witness signs answer.)
7         MS. SMITH:  GED.
8    Q.   Okay.  Do you have an interpreter during
9    the GED class?
10   A.   (Witness signs answer.)
11        MS. SMITH:  No.
12   Q.   Did you ask for one?
13   A.   (Witness signs answer.)
14        MS. SMITH:  Yes.
15   Q.   All right.  What was the response?
16   A.   (Witness signs answer.)
17        MS. SMITH:  I asked, but they, they
18   never provided one.
19   Q.   Are you able to understand the
20   instruction in, what's being said in the GED
21   classes?
22   A.   (Witness signs answer.)
23        MS. SMITH:  It's not an instructor, it's
24   us, so it, the inmates, themselves, are teaching us,
25   and no, I'm not able to understand.

Page 36

1    Q.   Is this, is this an official class
2    that's, that's offered by Menard?
3    A.   (Witness signs answer.)
4         MS. SMITH:  I think so.
5    Q.   Okay.  How long have you been in the GED
6    class?
7    A.   (Witness signs answer.)
8         MS. SMITH:  Mmm, I'd say about eight
9    months.
10   Q.   Okay.  Do you plan on taking the GED
11   test?
12   A.   (Witness signs answer.)
13        MS. SMITH:  Yes, I did get one.
14   A.   (Witness signs answer.)
15        MS. SMITH:  And I failed.
16   Q.   All right.  Are you currently in any
17   other vocational or educational classes or programs?
18   A.   (Witness signs answer.)
19        MS. SMITH:  Just the GED class.
20   Q.   Since you've been at Menard, have you
21   taken any other educational or vocational classes or
22   programs?
23   A.   (Witness signs answer.)
24        MS. SMITH:  No.
25   Q.   Have you ever asked to be in an --



AARON WINFERT

March 07, 2014

HOLMES, ET AL. vs. GODINEZ, ET AL.

65—68

Page 65

1    MS. SMITH:  I, I'm, I'm not good enough.
2  I write at ASL structure syntax, so a lot of times
3  people, hearing people don't understand what I'm
4  saying.
5    Q.  When they write back to you or if they
6  write back to you, are you able to read what they're
7  writing to you?
8    A.  (Witness signs answer.)
9    MS. SMITH:  Sometimes.
10   Q.  I'm assuming that if a doctor is writing
11 to you, you can't read his writing?
12   A.  (Witness signs answer.)
13   MS. SMITH:  Yes.
14   Q.  Yeah.  Me either.
15   Has there been a time that you've been
16 at Menard that you lost your hearing aid and had a
17 problem getting it replaced?
18   A.  (Witness signs answer.)
19   MS. SMITH:  I did lose it for the first
20 time, and I asked for another one, they denied it.
21 And then later on they told me that I would go to a
22 specialist to get one.
23   MS. EVANS:  They'd give me one
24 exception.
25   MS. SMITH:  One exception?

Page 66

1    A.  (Witness signs answer.)
2    MS. SMITH:  One exception, excuse me,
3  not a specialist.  So at that time I was really
4  struggling with being able to hear, because I didn't
5  have the hearing aid.
6    Q.  Okay.  For about how long did you not
7  have a hearing aid?
8    A.  (Witness signs answer.)
9    MS. SMITH:  A year and a half, I'd say
10 about.
11   Q.  Okay.  And how long have you had the
12 hearing aid now?
13   A.  (Witness signs answer.)
14   MS. SMITH:  How, from -- from now?
15   Q.  You lost it, you eventually got a new
16 one.  When was that?  When did you get the new one?
17   A.  (Witness signs answer.)
18   MS. SMITH:  I'm not sure.  I can't
19 remember.  It wasn't too long ago.
20   Q.  Okay.  Maybe sometime in 2013?
21   A.  (Witness signs answer.)
22   MS. SMITH:  Yeah.
23   Q.  Okay.
24   A.  (Witness signs answer.)
25   MS. SMITH:  But -- yeah.

Page 67

1    Q.  (By Mr. Lovellette) I'm asking -- I know
2  I'm asking you to guess, I know.
3    A.  (Nods affirmatively.)
4    Q.  Are there any other -- we talked about
5  meal times.  Are there any other announcements that
6  are routine announcements that you know you've
7  missed because you're deaf?
8    A.  (Witness signs answer.)
9    MS. SMITH:  Yes.
10   Q.  What are those?
11   A.  (Witness signs answer.)
12   MS. SMITH:  It's just like I said, they,
13 they walk past our cells and make announcements.
14   Q.  Okay.  About, about what?  I don't know,
15 I honestly don't know what they are.  Can you give
16 us some examples?
17   A.  (Witness signs answer.)
18   MS. SMITH:  Announcements to go to the
19 chow hall, sometimes to go to the yard, the gym, but
20 mostly the yard, the gym.  I know the schedule, but
21 the chow hall, that schedule can vary from
22 day-to-day.
23   Q.  Okay.  So for the yard or the gym,
24 that's more consistent schedule?
25   MS. SMITH:  Yes, it's consistent.

Page 68

1    Q.  Okay, I'm going to show you the caption
2  of the lawsuit that we're here today, and it says --
3  I can't read it upside down.  Aaron Winfert.  Is
4  that, is that you?
5    A.  (Witness signs answer.)
6    MS. SMITH:  Yes.
7    Q.  Okay.  As one of the plaintiffs.  What
8  are you asking the Department of Corrections or
9  Menard does through this lawsuit?  What relief are
10 you seeking?
11   A.  (Witness signs answer.)
12   MS. SMITH:  I would like to have
13 interpreters provided.
14   A.  (Witness signs answer.)
15   MS. SMITH:  I would like to have more
16 access to the TTY.
17   A.  (Witness signs answer.)
18   MS. SMITH:  And as well as having a TTY
19 in the yard.
20   Q.  In the yard.
21   A.  (Witness signs answer.)
22   MS. SMITH:  Yes.
23   Q.  Why in the yard?
24   A.  (Witness signs answer.)
25   MS. SMITH:  So I can use it.



# EXHIBIT 13

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RALPH HOLMES, DANIEL BAXTER, | ) | |
| GEORGE CHILDRESS, HANNIBAL | ) | |
| EASON, CURTIS FORSTER, CURTIS | ) | |
| HALTERMAN, BILLY JOHNSON, | ) | |
| WENDELL LANCASTER, DANIEL | ) | |
| LORD, AARON WINFERT, and JASON | ) | |
| WRIGHT, on behalf of themselves and | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 11 C 2961 |
| | ) | |
| SALVADOR A. GODINEZ, Acting | ) | Judge Marvin Aspen |
| Director of Illinois Department of | ) | |
| Corrections; and L. RACHEL MCKINZIE, | ) | Magistrate Sheila Finnegan |
| American with Disabilities Act | ) | |
| Coordinator, Illinois Department of | ) | |
| Corrections, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF AARON WINFERT'S RESPONSE TO DEFENDANTS'
FIRST SET OF INTERROGATORIES**

Plaintiff, Aaron Winfert, by his attorneys, pursuant to the applicable Rules of Civil

Procedure, in response to Defendants' First Set of Interrogatories, states as follows:

**GENERAL STATEMENTS AND OBJECTIONS**

Plaintiff asserts the following general objections, which are incorporated by reference

into each of Plaintiff's responses set forth below:

1.  Plaintiff objects to the Interrogatories to the extent that they seek information and

documents protected from disclosure by the attorney-client privilege, the work

product doctrine, and any other applicable privilege or immunity from discovery.

1

2. Plaintiff makes these responses to the best of his current knowledge, information, and belief. Plaintiff reserves the right to produce and rely upon evidence, facts, documents, and information which have not yet been discovered or the relevance of which has not yet been determined. Plaintiff reserves the right to supplement or amend his response to these Interrogatories.

3. Plaintiff reserves all objections to the admissibility and relevance of any information produced in response to these Interrogatories. Identification of any information does not constitute an admission by Plaintiff that such information is relevant or material to this action.

4. In addition to the responses below, Plaintiff refers IDOC to all grievances Plaintiff filed while in IDOC custody and all responses thereto by IDOC, all of which are available in IDOC's possession.

5. Plaintiff responds to these Interrogatories subject to the limitations created by Plaintiff's hearing loss and IDOC's failure to provide appropriate accommodations that would have allowed Plaintiff to have effective expressive and receptive communication.

**Interrogatory 1:**

State the name and address of each individual (other than an attorney) who has provided any information to the Plaintiff which was used to answer any Interrogatory.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 1 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Subject to the limitations created by Plaintiff's hearing loss and IDOC's failure to provide appropriate accommodations that would have allowed Plaintiff to have effective expressive and receptive communication, Plaintiff received information from numerous

2

IDOC personnel at the IDOC Reception and Classification Center and at the correctional facilities where he has resided in regards to interactions which are responsive to these Interrogatories. It is impossible for Plaintiff to recall the names of all individuals with whom he has interacted regarding the subject matter of these Interrogatories. The individuals with whom Plaintiff interacted regarding the subject matter of these Interrogatories include Wexford medical staff and personnel; instructors in various educational, vocational, substance abuse programs, and work programs who may or may not be IDOC employees; religious services providers at IDOC facilities; medical personnel and hearing specialists encountered prior to Plaintiff's incarceration; and all IDOC staff encountered with respect to the subject matter of these Interrogatories. Plaintiff also obtained information from his cell mate, T.J. and his counselor, Ms. Cowan.

**Interrogatory 2:**

State whether the Plaintiff is able to communicate with individuals working at the IDOC or any of the prisons or facilities operated by the IDOC through writing. If the answer to this interrogatory is in the negative, state why the Plaintiff believes he is not able to communicate through writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 2 as overly broad, vague and unduly burdensome.

Subject to the foregoing objections, Plaintiff states that, while "communicate" is a broad and vague term, generally "communicate" is a concept that involves both one party attempting to convey something and the other party understanding what is being conveyed. When Plaintiff has attempted to convey something to individuals working at the IDOC or any of the prisons or facilities operated by the IDOC, in some instances he believes that the party to which he is conveying something may have understood him at least in part, but in many instances he is unable to determine if the party has understood what he was conveying, and in many other instances he believes that the party has not understood what he has attempted to convey. Likewise, when individuals working at the IDOC or any of the prisons or facilities operated by the IDOC have attempted to convey something to Plaintiff, in some instances Plaintiff believes that he may have understood (at least in part) what the party was conveying, but in many instances he has been unable to determine if he has understood what the party was conveying, and in many other instances he believes that he has not understood what the other party was attempting to convey. Plaintiff further states that, even in instances where he has been able to "communicate" at some level with individuals working at the IDOC or any of the prisons or facilities operated by the IDOC, such communications often have not been "effective communication," within the meaning of that term generally or under the Americans with Disabilities Act.

3

Whether Plaintiff is able to communicate effectively in writing depends upon the specific circumstances and purpose of the communication. In some instances, such as in some cases where Plaintiff is making a short and simple request to IDOC staff in a non-emergency setting without any other complicating circumstances, Plaintiff can communicate effectively with IDOC staff in writing. However, IDOC staff almost never write back to him when Plaintiff chooses to write notes. The majority of staff at Menard will ask him to read their lips instead. Further, in many other instances, such as for longer or more complex communications, in emergency situations, and in other circumstances, communication through writing becomes difficult and is not effective. In addition, because Plaintiff's first language is ASL, when he writes he does so in ASL, with the result that IDOC staff sometimes do not appear to understand what he is conveying. Likewise, because his education is limited and he has limited reading and writing skills, Plaintiff may not always understand what IDOC staff conveys to him in writing.

See also Plaintiff's medical records in the possession, custody and control of IDOC.

**Interrogatory 3:**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a meal because of his hearing loss, including the facility where this occurred, the approximate date, which daily meal was missed, the name and title of any individual that the Plaintiff informed that a meal was missed, the approximate date when such communication occurred, and whether the communication was in person or in writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 3 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall all of the specific dates, individuals and details involved when he missed a meal because of his hearing loss. Nor would Plaintiff necessarily know in all instances when he missed a meal because of his hearing loss, as he may have missed a meal and was unaware that he meal was missed because he was not made aware of the announcement for the meal by IDOC personnel. In any event. Plaintiff believes that he has missed a meal at least fifteen times since January 1, 2007 because of his hearing loss. The most recent occasion was in 2012. He has complained to the Gallery Officer orally, and has written kites to Lieutenant Arrington, but nothing was done to remedy the problem. When he missed many meals due to his hearing loss in 2006, Plaintiff had also complained to Correctional Officer Smith orally and in writing. Plaintiff also complained to Smith orally about missing meals due to his hearing loss after 2007. See also documents identified as: AW000003-AW000006.

4

**Interrogatory 4:**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a visit because of his hearing loss, including the facility where this occurred, the approximate date, who the visitor(s) was(were), the name and title of any individual that the Plaintiff informed that a visit was missed, the approximate date when such communication occurred, and whether the communication was in person or in writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 4 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall the specific dates and all individuals and details involved when he missed a visit because of his hearing loss. Nor would Plaintiff necessarily know in all instances when he missed a visit because of his hearing loss, as he may have missed a visit and was unaware that the visit was missed because he was not made aware of the announcement for the visit by IDODC personnel. Plaintiff states that he may have missed a visit and was unaware that the visit was missed because he did not hear the announcement for the visit by IDOC personnel. Plaintiff is not aware of missing any visits due to his hearing loss.

**Interrogatory 5:**

State each time since January 1,2007 (if any) that the Plaintiff requested an "auxiliary aid" as defined by the Plaintiff in paragraph 39 of his Complaint, with the exception of a request for sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, what "auxiliary aid" what [sic] requested, the circumstances for which the request was made, whether the request was in writing or in person, and whether he received the "auxiliary aid."

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 5 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall the specific dates and all individuals and details involved when he requested an "auxiliary aid" as defined by the Plaintiff in paragraph 39 of his Complaint. However, Plaintiff recalls the following:

Hearing aid: Plaintiff has requested hearing aids. He received one in 2009 or 2010, but had an accident and lost it. He had an oral discussion with his counselor at the time on North 1 explaining what happened and requesting a new hearing aid but was told that

5

nothing could be done and he would have to pay for a new one. Plaintiff filed a grievance about not having a hearing aid, but did not receive a response. On about September 12, 2012 he was informed that Menard Correctional Center would make an exception and he could have a new hearing aid. He is waiting to get fitted for the hearing aid, which he expects will likely occur in Spring or Summer 2013.

Headphones: Plaintiff requested head phones so that he can hear sound effects from the television as the available ear buds do not work for him due to his hearing loss. He made this request to his counselor in 2007 or 2008, and the counselor denied it and Plaintiff made a formal grievance that went to the Correctional Officer, who denied it, and then to Springfield, which denied it.

Closed captioning: In 2007 Plaintiff asked a Correctional Officer to put closed captioning on the television in the "media room" for movie night. The officer did not put on closed captioning and instead turned it up. This did not correct the situation. Plaintiff filed a grievance about closed captioning and the grievance was denied.

TTY: Plaintiff has been allowed to use TTY twice a month compared to hearing inmates who can use the standard phones about 8 times a week. Sometimes his TTY appointment was cancelled due to a lock-down or other scheduling issue and it was not rescheduled. He is not allowed to use both TTY and the standard telephone available to hearing inmates. In 2009 he was put in segregation for 60 days because he tried to call his hearing father using the standard phone available to hearing inmates despite the fact that he had previously elected TTY so that he could communicate with his sister, who is also deaf. After leaving segregation, he chose to use the standard phone instead of TTY. He explained why he needed access to both phones (he can understand his father on a standard phone due to his familiarity with his voice and his father is not good at TTY, and his sister is not able to communicate with him by standard phone), but that option was not offered to him. Plaintiff filed a grievance about the TTY / standard telephone issue before receiving the ticket and he did not receive a response. His Counselor, Ms. Cowan, recently offered Plaintiff use of TTY, but he does not know if that is to the exclusion of the standard telephone and does not want to get in trouble again.

See also documents identified as: AW000001-AW000012.

**Interrogatory 6:**

State each time since January 1, 2007 (if any) that the Plaintiff requested a sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, the circumstances for which the request was made, whether the request was in writing or in person, whether he received a sign language interpreter and if not, whether another form of communication was used during the circumstances.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 6 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall specific dates and all individual details involved in each incident in which he requested a sign language interpreter.

Plaintiff asked for a qualified interpreter for chapel services at least five times but it was not provided. He asked the Lutheran Pastor for an interpreter in 2008 and he asked another Lutheran Pastor as well. The requests were oral. They each stated that they would look into it but they never got back to him and he never received an interpreter or other hearing assistance for chapel services.

Plaintiff requested an interpreter at the health care unit when he first arrived. Health care unit staff told him "no, you can read my lips". He has asked for an interpreter in the health care unit about 20 times from 2007 to 2011. The requests were oral. He does not know the names of the people he asked because their names are on badges that they wear on their hips.

See also documents identified as: AW000003-AW000008.

**Interrogatory 7:**

State each time (if any) that the Plaintiff believes he was disciplined for taking an action or not taking an action because he could not hear orders made by IDOC personnel, including the facility where this occurred, the approximate date, the name and title of the individual who gave the order, the circumstances during which the order was given, and what discipline the Plaintiff received.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 7 as overly broad and unduly burdensome. Plaintiff further objects as the question is not limited in time and is oppressive. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall specific dates and all individual details involved in each incident in which he was disciplined for taking an action or not taking an action because he could not hear orders made by IDOC personnel. Plaintiff does not recall being formally disciplined in relation to not hearing an order.

See also documents identified as: AW000001-AW000006.

7

**Interrogatory 8:**

State whether the Plaintiff informed an IDOC employee or anyone else working at a Reception and Classification Center that the Plaintiff was deaf or hard of hearing when the Plaintiff first entered the Illinois corrections system, including the name and title of the individual informed, and how the Plaintiff informed the individual of this fact. If the Plaintiff has had multiple admissions to the correctional system, please answer this interrogatory for each admission to a Reception and Classification Center.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 8 as unduly burdensome. Plaintiff further objects that this question is not limited in time and is thereby also oppressive. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall all of the specifics of all communications he had with IDOC personnel when he first entered the Illinois corrections system. When Plaintiff first arrived at Menard Correctional Center he told the staff involved with intake process that he was deaf. Two years after he arrived at Menard, his identification card reflected that he is deaf. When Plaintiff arrived at Taylorville Correctional Center in 2002 they appeared to know that he was deaf and likely obtained that information from his medical records.

**Interrogatory 9:**

State each time (if any) since January 1, 2007 that the Plaintiff believes he was injured or did not receive medical treatment because he could not effectively communicate with medical personnel at any prison or facility operated by the IDOC (including mental health personnel), including the facility where the incident occurred, the approximate date of the incident, the medical staff involved, how the Plaintiff and the medical staff attempted to communicate with each other, what injury occurred or what treatment the Plaintiff sought, and whether the Plaintiff received medical care for the same issues at a later time, supplying the date and location of that medical care.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 9 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Early in his incarceration at Menard Correctional Center, Plaintiff was sick with a fever and felt that the health care unit did not fully understand what he was saying due to communication problems and lack of an interpreter. Although he received some treatment it was not sufficient and his illness was prolonged due to the lack of effective communication and adequate treatment.

Plaintiff asked about flu shots in the health care unit in around 2010 or 2011 and prior, but did not receive any responses. He received a flu shot in 2012.

See also documents identified as: AW000003-AW000006.

**Interrogatory 10:**

State whether the Plaintiff has received an IDOC orientation manual for any facility, what facility that was, the approximately date that he received the manual, and state whether Plaintiff was able to read the manual. If the Plaintiff was unable to read the manual, state the reason(s) why he could not read it.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 10 as overly broad and unduly burdensome, including because it is not limited in time. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff received a manual when he got to Menard Correctional Center in 2006 and was able to understand only some of it. Plaintiff received a manual about two months after he arrived at Taylorville Correctional Center in 2002 and was able understand only some of it.

See documents identified as: AW000003-AW000006. See also Plaintiff's Answer to Interrogatory 2.

**Interrogatory 11:**

State each time (if any) since January 1, 2007 that the Plaintiff was unable to attend or participate in an educational, vocational or substance abuse treatment program because he is deaf or hard of hearing. For each such time, state the facility where this occurred, the approximate date, what educational or vocational or substance abuse treatment program the Plaintiff sought to attend or participate in, and list the individual(s) (if any) that the Plaintiff informed that he was unable to attend or participate because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 11 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he was unable to attend or participate in an educational, vocational or substance abuse treatment program because

he is deaf or hard of hearing. Nor would Plaintiff necessarily know of all such instances, as he may have been denied such opportunities without his knowledge, because he may not have heard of or otherwise been effectively informed of such opportunities. Plaintiff was not able to participate in substance abuse treatment and anger management classes because he is deaf. Around the Summer of 2011, Amanda approached him about these classes and he stated he was interested but would need an interpreter. He believes that Amanda is a therapist or psychologist, but he does not think she works in the health care unit. He put this request in writing. At the time he was working and would have to transfer to a different house in order to take the classes. He was willing to do this but Amanda stated that she doubted that she would be able to get an interpreter for him. Plaintiff complained to his counselor, he believes Ms. Cowan. Ms. Cowan stated that she would see what she could do, but did not get back to Plaintiff.

Plaintiff has not been able to participate in GED classes due to being deaf. He passed the adult test, a pre-requisite to the GED class, over 5 years ago. As a result, he has been on the list for GED classes for over 5 years. Hearing inmates who passed this test at the same time he did completed the GED class about 2 years ago. Plaintiff inquired about the GED class after being on the list for about 2 years, and was told that he remained on the list.

Plaintiff has not had as many vocational opportunities as hearing inmates, because he is deaf. He asked for jobs and was turned down many times. Initially they said his aggression level was too high. In around 2009 his aggression level decreased and he was approved for work. He wrote to Counselor Cowan regarding the kind of jobs he would like and the counselor would write back whether he was approved or disapproved for the jobs. He requested two different kitchen jobs, but he first got a position in November 2011. After getting the job, the policy changed requiring that an inmate could only hold a particular job for 1 year at a time at which time you would have to work another job before you could go back to the job you held previously, so Plaintiff was laid off in November 2012. While he was waiting for jobs in the past, he would inquire but was told that he was "on the list." He is currently not employed though he has been approved for a job. See also documents identified as: AW000003-AW000006.

**Interrogatory 12:**

State each time (if any) since January 1, 2007 that the Plaintiff has been unable to earn credit toward his sentence in any way because of his hearing loss, including how the Plaintiff sought to earn the credit, the facility where this occurred, the approximate date, and the individual(s) (if any) that the Plaintiff informed that he was unable to earn credit toward his sentence because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 12 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have been unable to earn credit toward his sentence in any way because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances. Plaintiff believes that he is not eligible for credit towards his sentence due to the nature of his crime.

**Interrogatory 13:**

State each time (if any) since January 1, 2007 that the Plaintiff has been denied employment or participation in a work program within an IDOC prison or facility because of his hearing loss, including the approximate date, what employment or work program was denied to the Plaintiff, the facility where this occurred, and the individual(s) (if any) that the Plaintiff informed that he was denied employment or participation in a work program because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 13 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

See Plaintiff's Answer to Interrogatory 11.

**Interrogatory 14:**

State how the Plaintiff communicates with his currently assigned Counselor.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 14 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff communicates to some degree with his current counselor orally, though he does not understand her well. He has asked that she slow down and speak more slowly but she forgets to do so soon after he reminds her. Many of Plaintiff's attempts to communicate with his counselor are not effective and do not result in adequate understanding between Plaintiff and his counselor.

See also Plaintiff's Answer to Interrogatory 2.

11

**Interrogatory 15:**

State the name of the Plaintiff's current cell mate, state whether his current cell mate is deaf or hard of hearing, state how the Plaintiff communicates with his current cell mate, state whether any of Plaintiff's cell mates since January 1, 2007 were deaf or hard or hearing, and state how the Plaintiff communicated with the cell mates he has had since January 1, 2007.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 15 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff's current cell mate is TJ. They generally communicate in writing and sometimes orally. Plaintiff is not qualified to diagnose another individual as deaf or hard of hearing, but does not believe that TJ has any hearing loss. Before that, his cell mates have included Guyo, an individual who goes by the name of Pops, and Daniel. He communicated with each of these people, in writing and sometimes orally. Plaintiff also had a cell mate named Mark who knew some sign language that Plaintiff taught him, and they also communicated in writing and sometimes orally. Plaintiff also had a cell mate who goes by the name of Hat. Plaintiff communicated mostly orally with Hat. Plaintiff is not qualified to diagnose another individual as deaf or hard of hearing, but he does not believe that any of the persons identified in this paragraph were deaf or hard of hearing. Plaintiff also shared a cell with Billy Johnson, who Plaintiff does believe to be deaf although Plaintiff is not qualified to diagnose another individual as deaf or hard of hearing, and they communicated using sign language.

**Interrogatory 16:**

State each time (if any) since January 1, 2007 that the Plaintiff believes he was denied participation in a religious service because of his hearing loss, including the facility where this occurred, the approximate date, and the name and title of the individua1(s) that the Plaintiff informed that he was being denied participation in a religious service because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 16 as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have been denied participation in a religious service because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing

impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances.

See Plaintiff's Answer to Interrogatory 6.

Plaintiff is unable to participate in church services due to the lack of a sign language interpreter.  This is true for every week that church services have been offered to Menard inmates since January 1, 2007.  Plaintiff further states that he wants to go to church services but cannot follow them without an interpreter so he does not attend.

See also documents identified as:  AW000003-AW000006.

**Interrogatory 17:**

State whether there is a television in the Plaintiff s current cell, whether the television has closed captioning, whether the Plaintiff has turned on the closed captioning and if not, why not, whether the Plaintiff ever requested headphones for the television, the approximate date of the request, the facility where the request for headphones was made, whether the Plaintiff received the requested headphones, and whether the Plaintiff ever bought headphones without making a request for them.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 17 as overly broad and unduly burdensome.  Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

See answer to Interrogatory 5.  Plaintiff has a television in his cell with closed captioning turned on.  Plaintiff has not attempted to purchase the headphones that would accommodate his hearing loss because the commissary does not sell them.

**Interrogatory 18:**

Since January 1, 2007, state whether the Plaintiff has requested that a television in a common area of a prison have its closed captioning turned on, including the facility where this occurred, the approximate date, the individual(s) to whom the Plaintiff made the request, whether the closed captioning was turned on.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 18 as overly broad and unduly burdensome.  Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he requested that a television in a common area of a prison have its closed captioning turned on. See Plaintiff's Answer to Interrogatory 5.

See also documents identified as: AW000011-AW000012.

**Interrogatory 19:**

State each time (if any) that the Plaintiff has been evacuated from his cell due to any type of emergency situation including but not limited to a drill, including the facility where this occurred, the approximate date, and how the Plaintiff was informed that there was an emergency evacuation.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 19 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he may have been evacuated from his cell due to any type of emergency situation. There is no formal mechanism to notify Plaintiff about emergency situations, such as weather emergencies, fires or lockdowns. See also documents identified as: AW000003-AW000008.

**Interrogatory 20:**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a shower because of his hearing loss, including the facility where this occurred, the approximate date, and the names and titles of any individuals he informed that he missed a shower due to his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 20 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does know or recall the specifics of all instances in which he may have missed a shower because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances. Plaintiff may have missed a shower and was unaware that the shower was missed because he was not made aware of the announcement for the shower by IDOC personnel.

From the time Plaintiff arrived at Menard until he moved to South Lower housing unit in 2009, he missed showers about once a week. There were two shower opportunities each week. He complained to various Correctional Officers, including Correctional Officer Smith in East House, that he was missing the showers because he could not hear. They did not respond to Plaintiff's complaints.

See also documents identified as: AW000003-AW000006.

**Interrogatory 21:**

State each time (if any) since January 1, 2007 that the Plaintiff believes his request to be transferred to a different IDOC facility was denied because the Plaintiff was deaf or hard of hearing, including the facility from which the Plaintiff asked to be transferred, the facility to which the Plaintiff asked to be transferred, the approximate date of the request, and the individual(s) (if any) that the Plaintiff informed that his request was denied because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 21 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff did not make a formal request for a transfer since January 1, 2007. See documents identified as: AW000003-AW000006.

**Interrogatory 22:**

State each time (if any) since January 1,2007, that the Plaintiff was unable to file a grievance because he was hard of hearing, including the facility where this occurred, the approximate date when this occurred, why the Plaintiff believes his hearing loss was the cause, and the individual(s) that the Plaintiff contacted for assistance in filing a grievance.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 22 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall being unable to file a grievance.

**Interrogatory 23:**

State each time since January 1,2007 (if any) that the Plaintiff has requested an accommodation not mentioned previously in the answers to these interrogatories from

any individual employed by or working at the Illinois Department of Corrections ("IDOC") or any prison or facility operated by the IDOC, which relates to the Plaintiffs hearing loss, including a description of the accommodation, the approximate date the request was made, the facility where the accommodation was requested, all individuals asked for the accommodation, whether the request was made in writing, and the response to the request for the accommodation.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 23 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have requested an accommodation not mentioned previously in the answers to these interrogatories, or the details of the results of any such request.

In around 2007 or 2008, Plaintiff asked his counselor Vicki Howie for the accommodation of socialization such that he would have time in the yard and/or meals with other people at the prison who are deaf. Ms. Howie stated that she did not know much about deaf people and that there was nothing she could do about his request.

See also documents identified as: AW000003-AW000008.

**Interrogatory 24:**

State when the Plaintiff was first diagnosed with hearing loss, who made the diagnosis, the facility or office where this occurred, and the reason for the Plaintiff's hearing loss, if known.

**ANSWER:**

Plaintiff asserts the general objections set forth above. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff had a very bad ear infection at the age of three or four and he was in a hospital in Chicago. He became deaf as a result of this infection. Plaintiff was too young to know who diagnosed his hearing loss or at what facility or office.

**Interrogatory 25:**

Before the Plaintiff was sentence to the custody of the IDOC, what (if any) auxiliary aids did the Plaintiff use to communicate with individuals in his family? What auxiliary aids (if any) did the Plaintiff use to communicate with individuals in the community? What auxiliary aids (if any) did the Plaintiff use to communicate at his employment? Does the Plaintiff believe that any of the auxiliary aids that the Plaintiff used before

being sentenced to the custody of the IDOC are not available to him within the IDOC system?

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 25 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information. Plaintiff does not recall the specifics of all auxiliary aids he has used to communicate in the past.

Plaintiff would bring his own interpreter to doctor visits in the community and the doctor's office would pay for the interpreter. The Social Security office had an interpreter available for him. When he attended GED classes at Louis & Clark Community College an interpreter was present. As noted above, Plaintiff has not been provided interpreters within the IDOC system. Plaintiff had a hearing aid when he was in the community. He had a hearing aid while in IDOC's custody, but there was delay in it being provided, and when it broke he was not provided a new one for an extended period of time. He has recently learned that he will be fitted for a new hearing aid, likely in Spring 2013. Plaintiff also used Wintel (a hand-held texting electronic device that predated smart phones) and then a Sidekick (one of the first smart phones) to communicate with friends and family via texting and sometimes e-mail with the Sidekick. E-mail and texting are not available to Plaintiff within the IDOC system.

Plaintiff further affirmatively states that auxiliary aids that he used before being sentenced to IDOC custody are not available to him within the IDOC system.

Respectfully submitted,
(as to Objections only)


s/ Amy F. Peterson
Amy F. Peterson
One of the Attorneys for Plaintiff

17

Robert L. Michels
Nicole E. Wrigley
Kevin P. McCormick
Joseph L. Motto
Mary T. McCarthy
Ryan M Dunigan
Winston & Strawn LLP
35 W. Wacker Dr.
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
rmichels@winston.com
NWrigley@winston.com
KMcCormick@winston.com
JMotto@winston.com
MMcCarthy@winston.com
RDunigan@winston.com

Alan S. Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, Illinois 60640
Telephone: (773) 769-1411
Facsimile: (773) 769-2224
alanmills@comcast.net

Barry C. Taylor
Amy F. Peterson
Laura J. Miller
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Facsimile: (312) 341-0295
BarryT@equipforequality.org
Amy@equipforequality.org
Laura@equipforequality.org

Howard A. Rosenblum
National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
Facsimile: (301) 587-1791
howard.rosenblum@nad.org

*Counsel for Plaintiffs*

## SIGNATURE PAGE

In accordance with 28 U.S.C. § 1746, the undersigned, Aaron Winfert, one of the named plaintiffs in the case of Holmes v Godinez, 11 C 2961, signs this document and declares under penalty of perjury under the laws of the United States of America that Plaintiff's Answers to Defendants' First Set of Interrogatories to Plaintiff Aaron Winfert are true and correct to the best of his knowledge and belief.

Aaron Winfert

19

## <u>CERTIFICATE OF SERVICE</u>

Please take notice that the undersigned, an attorney, on oath, states she served the attached Plaintiff Aaron Winfert's Response to Defendants' First Set of Interrogatories by sending via e-mail and regular mail to Kevin Lovellette, Assistant Attorney General, General Law Bureau, 100 W. Randolph Street, 13th Floor, Chicago, Illinois 60601 and <u>KLovellette@atg.state.il.us</u> on April 23, 2013.

<u>s/ Amy F. Peterson</u>

# EXHIBIT 14

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RALPH HOLMES, DANIEL BAXTER, GEORGE CHILDRESS, HANNIBAL EASON, CURTIS FORSTER, CURTIS HALTERMAN, BILLY JOHNSON, WENDELL LANCASTER, DANIEL LORD, AARON WINFERT, and JASON WRIGHT, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 2961 |
| SALVADOR A. GODINEZ, Acting Director of Illinois Department of Corrections; and L. RACHEL MCKINZIE, American with Disabilities Act Coordinator, Illinois Department of Corrections, | ) ) ) ) ) ) ) | Judge Marvin Aspen

Magistrate Sheila Finnegan |
| Defendants. | ) ) ) | |

**PLAINTIFF BILLY JOHNSON'S RESPONSE TO DEFENDANTS'
FIRST SET OF INTERROGATORIES**

Plaintiff, Billy Johnson, by his attorneys, pursuant to the applicable Rules of Civil

Procedure, in response to Defendants' First Set of Interrogatories, states as follows:

**GENERAL STATEMENTS AND OBJECTIONS**

Plaintiff asserts the following general objections, which are incorporated by reference

into each of Plaintiff's responses set forth below:

1. Plaintiff objects to the Interrogatories to the extent that they seek information and

documents protected from disclosure by the attorney-client privilege, the work

product doctrine, and any other applicable privilege or immunity from discovery.

1

2. Plaintiff makes these responses to the best of his current knowledge, information, and belief. Plaintiff reserves the right to produce and rely upon evidence, facts, documents, and information which have not yet been discovered or the relevance of which has not yet been determined. Plaintiff reserves the right to supplement or amend his response to these Interrogatories.

3. Plaintiff reserves all objections to the admissibility and relevance of any information produced in response to these Interrogatories. Identification of any information does not constitute an admission by Plaintiff that such information is relevant or material to this action.

4. In addition to the responses below, Plaintiff refers IDOC to all grievances Plaintiff filed while in IDOC custody and all responses thereto by IDOC, all of which are available in IDOC's possession.

5. Plaintiff responds to these Interrogatories subject to the limitations created by Plaintiff's hearing loss and IDOC's failure to provide appropriate accommodations that would have allowed Plaintiff to have effective expressive and receptive communication.

## Interrogatory 1

State the name and address of each individual (other than an attorney) who has provided any information to the Plaintiff which was used to answer any Interrogatory.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 1 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Subject to the limitations created by Plaintiff's hearing loss and IDOC's failure to provide appropriate accommodations that would have allowed Plaintiff to have effective expressive and receptive communication, Plaintiff received information from numerous

2

IDOC personnel at the IDOC Reception and Classification Center and at the correctional facilities where he has resided since January 1, 2007 in regards to interactions which are responsive to these Interrogatories. It is impossible for Plaintiff to recall the names of all individuals with whom he has interacted regarding the subject matter of these Interrogatories since January 1, 2007. The individuals with whom Plaintiff interacted regarding the subject matter of these Interrogatories include Wexford medical staff and personnel; instructors in various educational, vocational, substance abuse programs, and work programs who may or may not be IDOC employees; religious services providers at IDOC facilities; medical personnel and hearing specialists encountered prior to Plaintiff's incarceration; and all IDOC staff encountered with respect to the subject matter of these Interrogatories. Plaintiff also obtained information from Brian Ramsey, Plaintiff's cell mate at Menard, and Neal Schwartz, Plaintiff's counselor at Menard.

**<u>Interrogatory 2</u>**

State whether the Plaintiff is able to communicate with individuals working at the IDOC or any of the prisons or facilities operated by the IDOC through writing. If the answer to this interrogatory is in the negative, state why the Plaintiff believes he is not able to communicate through writing.

**<u>ANSWER</u>:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 2 as overly broad, vague and unduly burdensome.

Subject to the foregoing objections, Plaintiff states that, while "communicate" is a broad and vague term, generally "communicate" is a concept that involves both one party attempting to convey something and the other party understanding what is being conveyed. When Plaintiff has attempted to convey something to individuals working at the IDOC or any of the prisons or facilities operated by the IDOC, in some instances he believes that the party to which he is conveying something may have understood him at least in part, but in many instances he is unable to determine if the party has understood what he was conveying, and in many other instances he believes that the party has not understood what he has attempted to convey. Likewise, when individuals working at the IDOC or any of the prisons or facilities operated by the IDOC have attempted to convey something to Plaintiff, in some instances Plaintiff believes that he may have understood (at least in part) what the party was conveying, but in many instances he has been unable to determine if he has understood what the party was conveying, and in many other instances he believes that he has not understood what the other party was attempting to convey. Plaintiff further states that, even in instances where he has been able to "communicate" at some level with individuals working at the IDOC or any of the prisons or facilities operated by the IDOC, such communications often have not been "effective communication," within the meaning of that term generally or under the Americans with Disabilities Act.

3

Whether Plaintiff is able to communicate effectively in writing depends upon the specific circumstances and purpose of the communication. In some instances, such as in some cases where Plaintiff is making a short and simple request to IDOC staff in a non-emergency setting without any other complicating circumstances, Plaintiff can communicate effectively with IDOC staff in writing. However, in many other instances, such as for longer or more complex communications, in emergency situations, and in other circumstances, communication through writing becomes difficult and is not effective. In addition, because Plaintiff's first language is ASL, when he writes he does so in ASL, with the result that IDOC staff sometimes do not appear to understand what he is conveying. Likewise, because his education is limited, Plaintiff may not always understand what IDOC staff conveys to him in writing.

**Interrogatory 3**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a meal because of his hearing loss, including the facility where this occurred, the approximate date, which daily meal was missed, the name and title of any individual that the Plaintiff informed that a meal was missed, the approximate date when such communication occurred, and whether the communication was in person or in writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 3 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall all of the specific dates, individuals and details involved when he missed a meal because of his hearing loss. Nor would Plaintiff necessarily know in all instances when he missed a meal because of his hearing loss, as he may have missed a meal and was unaware that the meal was missed because he was not made aware of the announcement for the meal by IDOC personnel. In any event, Plaintiff believes that he has missed a number of meals due to his inability to hear, perhaps the equivalent of 3 to 4 meals each week since being at Menard Correctional Center. Plaintiff attempted to speak with IDOC staff in 2008 about this problem but nothing changed. He does not have the names of the staff to whom he complained, including because IDOC staff at times scratch out their names on their badges and if inmates ask for a staff person's name there are repercussions.

See also document identified as: BJ000004-BJ000009, and BJ000013-BJ000015.

**Interrogatory 4**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a visit because of his hearing loss, including the facility where this occurred, the approximate date, who the visitor(s) was (were), the name and title of any individual that the Plaintiff

4

informed that a visit was missed, the approximate date when such communication occurred, and whether the communication was in person or in writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 4 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall the specific dates and all individuals and details involved when he missed a visit because of his hearing loss. Nor would Plaintiff necessarily know in all instances when he missed a visit because of his hearing loss, as he may have missed a visit and was unaware that the visit was missed because he was not made aware of the announcement for the visit by IDOC personnel.

**Interrogatory 5**

State each time since January 1,2007 (if any) that the Plaintiff requested an "auxiliary aid" as defined by the Plaintiff in paragraph 39 of his Complaint, with the exception of a request for sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, what "auxiliary aid" what [sic] requested, the circumstances for which the request was made, whether the request was in writing or in person, and whether he received the "auxiliary aid."

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 5 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall the specific dates and all individuals and details involved when he requested an "auxiliary aid" as defined by the Plaintiff in paragraph 39 of his Complaint. However, Plaintiff recalls the following:

Hearing aid: In 2010, Plaintiff requested a hearing aid from a nurse. He did not receive a response to his request. On 8/31/11 he filed a grievance and received hearing aids at times thereafter. See also documents identified as: BJ000013-BJ000015 and BJ000011-BJ000012.

Head phones: Plaintiff requested head phones to assist him in watching television. He made the request because the ear buds he was provided did not work due to his level of deafness in that they broke due to the volume level that he required. He first asked for the headphones around October 2008. He made the request to Betsy Spitzer, head of counseling, in writing. She stated that the commissary has ear buds for sale and he did not receive the requested head phones. He also had an exchange with a Lieutenant about

head phones, including where he could get them and how. He filed a grievance over the issue on 2/10/09 and was not provided the head phones. He also filed a grievance on this issue in March or June 2008 but does not have a copy. IDOC responded that the captioning on his TV was sufficient. See also documents identified as: BJ000002-BJ000003.

Video phone: Plaintiff has asked for video phone technology in 2008, 2009, and 2010. He has broached it with every counselor he has had, as well as Ms. Cowan and Betsy Spitzer. He attempted to explain why he needed it, i.e., why TTY would not work if the person on the other end did not have TTY (such as his grandmother who is hearing and his friends who are deaf who do not have TTY because it is considered old technology), and why TTY was not effective (in that it is subject to typing mistakes, which can use up the limited time that Johnson is permitted on the TTY phone). These IDOC staff acted as if they did not know what he was requesting but did not attempt to bring in an interpreter so that they could understand his request. He has not been provided the option of video phone. The discussions between Plaintiff and the referenced individuals were via written notes back and forth.

TTY: Plaintiff has requested greater access to TTY because he did not receive equal access to telephone calls as hearing inmates. He made this request to Kimberly Butler in 2011, first orally and then in writing. Plaintiff had been allowed access to the TTY phone once or twice a month. Individuals who are hearing have access to the telephone three times a week. Ms. Butler stated she would contact the counselors and beginning in 2011, he had access to TTY phone once every week. Plaintiff filed a grievance around February 2008 requesting a transfer to Dixon Correctional Center so that he would have greater access to TTY and interpreters, but it was denied. He does not have a copy of the grievance. See also documents identified as: BJ000004-BJ000010 and BJ000001.

Closed captioning: Plaintiff has asked IDOC staff to turn on the closed captioning when IDOC shows movies in the common area. Staff has stated to him that he has his own television. He has written to his counselor Lawrence and possibly Gina about this issue. Has has also written a "kite" which has his name on it, and put it in the suggestion box. He has made these requests 6 to 7 times throughout the time he has been at Menard, all through the kite system. 2011 was the last time. The closed captioning on the television in the common area was not turned on at any point. See also documents identified as: BJ000006-BJ000009.

## Interrogatory 6

State each time since January 1, 2007 (if any) that the Plaintiff requested a sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, the circumstances for which the request was made, whether the request was in writing or in person, whether he received a sign language interpreter and if not, whether another form of communication was used during the circumstances.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 6 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall specific dates and all individual details involved in each incident in which he requested a sign language interpreter. Plaintiff asked for a qualified interpreter at the library at Menard around 2008. He went to the law library and tried to communicate with the staff person there so that he could use the library services but she was unable to understand him. He wrote to his counselor at the time and asked for an interpreter but he did not receive a response. This counselor (name unknown) was a short male and is no longer there. He also made a request for an interpreter for the law library to a counselor named Gina. In addition he made a request for an interpreter for the law library in 2009 to a counselor named Lawrence. He never received an interpreter.

Plaintiff also requested a qualified interpreter for church services at Menard. He made this request of counselors Gina and/or Lawrence in 2008 and/or 2009. The request was made by him writing back and forth with his counselor. He did not receive an interpreter.

Plaintiff further requested a qualified interpreter for GED classes around Summer 2011. The request was made by him writing back and forth with his counselor, Ms. Cowan. He explained that he wanted to go to school for his GED and that he would need an interpreter. The counselor asked why and he tried to explain, but the counselor did not appear to understand. She said it was not likely but that she would ask the head of counselors, Betsy Spitzer. This discussion was in written notes back and forth between Johnson and his counselor. He did not receive a reply to his request. He had taken the GED class in 2010 and said he needed an interpreter but did not receive one. He failed that GED class as a result.

Plaintiff filed a grievance around February 2008 requesting a transfer to Dixon Correctional Center so that he would have greater access to TTY and interpreters, but it was denied. He does not have a copy of the grievance. See also documents identified as: BJ000001 and BJ000004-BJ000009.

**Interrogatory 7**

State each time (if any) that the Plaintiff believes he was disciplined for taking an action or not taking an action because he could not hear orders made by IDOC personnel, including the facility where this occurred, the approximate date, the name and title of the individual who gave the order, the circumstances during which the order was given, and what discipline the Plaintiff received.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 7 as overly broad and unduly burdensome. Plaintiff further objects as the question is not limited in time and is oppressive. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall specific dates and all individual details involved in each incident in which he was disciplined for taking an action or not taking an action because he could not hear orders made by IDOC personnel. Plaintiff does not recall being formally disciplined for not following an order. He has been verbally reprimanded for not following an order he could not hear on many occasions over his time in custody at IDOC. For instance, Plaintiff may have been verbally reprimanded for: not walking in the correct direction because he did not hear that IDOC personnel wanted him to go a different direction, not stopping where expected by IDOC personnel because he did not know that they changed the place to stop because he did not hear, not leaving the area of a fight in the yard as quickly as expected by IDOC personnel because he did not become immediately aware of the fight due to his hearing disability. Even when Plaintiff showed the correctional officers the back of his I.D. which shows that he is deaf, the correctional officers still expressed their displeasure with his actions.

Plaintiff further states that he received one ticket at East Moline and it was for arguing with another inmate. During the disciplinary hearing on this ticket, he was handcuffed behind his back and then handcuffed to the chair. He was unable to sign or otherwise communicate. No interpreter was made available for the hearing. He understood nothing and communicated nothing at the hearing. As a result of this hearing, he was transferred to a more restrictive prison, Logan Correctional Center. See also documents identified as: BJ000004-BJ000009.

**Interrogatory 8**

State whether the Plaintiff informed an IDOC employee or anyone else working at a Reception and Classification Center that the Plaintiff was deaf or hard of hearing when the Plaintiff first entered the Illinois corrections system, including the name and title of the individual informed, and how the Plaintiff informed the individual of this fact. If the Plaintiff has had multiple admissions to the correctional system, please answer this interrogatory for each admission to a Reception and Classification Center.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 8 as overly broad and unduly burdensome. Plaintiff further objects that this question is not limited in time and is thereby also oppressive. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall all of the specifics of all communications he had with IDOC personnel when he first entered the Illinois

8

corrections system. When Plaintiff arrived at East Moline Correctional Center in 2001 he told IDOC personnel he is deaf. When he arrived at Logan Correctional Center in 2002 he told IDOC personnel that he is deaf. When he arrived at Menard Correctional Center around 2008 he was asked a lot of medical questions upon admission and they appeared to know when he arrived that he is deaf. Shortly after his arrival at Menard, he had a conversation with a female nurse about the fact that he is deaf.

**Interrogatory 9**

State each time (if any) since January 1, 2007 that the Plaintiff believes he was injured or did not receive medical treatment because he could not effectively communicate with medical personnel at any prison or facility operated by the IDOC (including mental health personnel), including the facility where the incident occurred, the approximate date of the incident, the medical staff involved, how the Plaintiff and the medical staff attempted to communicate with each other, what injury occurred or what treatment the Plaintiff sought, and whether the Plaintiff received medical care for the same issues at a later time, supplying the date and location of that medical care.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 9 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

In 2010 Johnson requested a hearing aid from a nurse. He did not receive a response to his request. On 8/31/11 he filed a grievance and received hearing aids some time thereafter. See also documents identified as: BJ000013-BJ000015 and BJ000011-BJ000012.

Plaintiff does not recall the specifics of all instances in which he may have been injured or did not receive medical treatment because he could not effectively communicate with medical personnel at any prison or facility operated by the IDOC.

See also documents identified as: BJ000006-BJ000009.

**Interrogatory 10**

State whether the Plaintiff has received an IDOC orientation manual for any facility, what facility that was, the approximately date that he received the manual, and state whether Plaintiff was able to read the manual. If the Plaintiff was unable to read the manual, state the reason(s) why he could not read it.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 10 as overly broad and unduly burdensome, including because it is

not limited in time.  Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff received the IDOC orientation manual for each of his IDOC admissions: 2001 East Moline Correctional Center, 2002 Logan Correctional Center, 2008 Menard Correctional Center. At Menard, Plaintiff was able to read and comprehend some portions of the manual. The manual contained some words that he did not understand, and described rules and procedures in a manner that Plaintiff did not always fully or clearly comprehend.  Thus, the manual did not constitute adequate or "effective communication" within the meaning of those terms under the Americans with Disabilities Act.

See also documents identified as:  BJ000004-BJ000009.  See also Plaintiff's Answer to Interrogatory 2.

## Interrogatory 11

State each time (if any) since January 1, 2007 that the Plaintiff was unable to attend or participate in an educational, vocational or substance abuse treatment program because he is deaf or hard of hearing. For each such time, state the facility where this occurred, the approximate date, what educational or vocational or substance abuse treatment program the Plaintiff sought to attend or participate in, and list the individual(s) (if any) that the Plaintiff informed that he was unable to attend or participate because of his hearing loss.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 11 as overly broad and unduly burdensome.  Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he was unable to attend or participate in an educational, vocational or substance abuse treatment program because he is deaf or hard of hearing.  Nor would Plaintiff necessarily know of all such instances, as he may have been denied such opportunities without his knowledge, because he may not have heard of or otherwise been effectively informed of such opportunities.  Plaintiff was removed from a vocational program in December 2012 related to his hearing. Correctional Officer Mott assigned Plaintiff to perform a job that required him to be on the other side of the wall from other workers and as a result he could not see where he was supposed to perform his portion of the job (it involved pulling a cable cord out of the wall and Correctional Officer Mott told him it was cell 30 and 31, but one of the cells was supposed to be cell 32). Correctional Officer Mott stated that because Plaintiff could not hear he would not be able to keep the job.   Hearing individuals have not been automatically fired from prison jobs when they made a single mistake, and instead have received warnings.   Plaintiff spoke with Correctional Officer Mave about the situation and he said he could not do anything about it and suggested that Plaintiff put in for another job. This was Plaintiff's first job while others have held 6 to 7 jobs.  Plaintiff also

10

spoke with Lieutenant Best about the situation, but he said that he could not do anything about it.

See also documents identified as: BJ000004-BJ000009 and BJ000016-BJ000018.

**Interrogatory 12**

State each time (if any) since January 1, 2007 that the Plaintiff has been unable to earn credit toward his sentence in any way because of his hearing loss, including how the Plaintiff sought to earn the credit, the facility where this occurred, the approximate date, and the individual(s) (if any) that the Plaintiff informed that he was unable to earn credit toward his sentence because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 12 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have been unable to earn credit toward his sentence in any way because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances. In fact, Plaintiff has not previously heard about earning credits toward his sentence and believes that if he had no hearing disability then he would know about the possibility of receiving such credits.

**Interrogatory 13**

State each time (if any) since January 1, 2007 that the Plaintiff has been denied employment or participation in a work program within an IDOC prison or facility because of his hearing loss, including the approximate date, what employment or work program was denied to the Plaintiff, the facility where this occurred, and the individual(s) (if any) that the Plaintiff informed that he was denied employment or participation in a work program because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 13 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

See Plaintiff's Answer to Interrogatory 11.

**Interrogatory 14**

State how the Plaintiff communicates with his currently assigned Counselor.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 14 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff communicates to some degree with his current counselor to some extent both orally and in writing. Most of the time they communicate in writing. Many of Plaintiff's attempts to communicate with his counselor are not effective and do not result in adequate understanding between Plaintiff and his counselor.

See also Plaintiff's Answer to Interrogatory 2.

**Interrogatory 15**

State the name of the Plaintiff's current cell mate, state whether his current cell mate is deaf or hard of hearing, state how the Plaintiff communicates with his current cell mate, state whether any of Plaintiff's cell mates since January 1, 2007 were deaf or hard or hearing, and state how the Plaintiff communicated with the cell mates he has had since January 1, 2007.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 15 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff's current cell mate is Brian Ramsey. Plaintiff is not qualified to diagnose another individual as deaf or hard of hearing, but does not believe that Ramsey is deaf or hard of hearing. Plaintiff has taught Ramsey some basic sign language and they sometimes attempt to communicate via sign language. They also sometimes communicate orally or in writing. Many of Plaintiff's attempts to communicate with Mr. Ramsey were not effective or successful. Plaintiff's prior cell mate was Aaron Winfert. Again, Plaintiff is not qualified to diagnose another individual as dead or hard of hearing, but Plaintiff believes that Mr. Winfert is deaf. Plaintiff communicated with Mr. Winfert largely through sign language.

See also documents identified as: BJ000006-BJ000009.

## Interrogatory 16

State each time (if any) since January 1, 2007 that the Plaintiff believes he was denied participation in a religious service because of his hearing loss, including the facility where this occurred, the approximate date, and the name and title of the individua1(s) that the Plaintiff informed that he was being denied participation in a religious service because of his hearing loss.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 16 as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have been denied participation in a religious service because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances.

Plaintiff is unable to participate in church services due to the lack of a sign language interpreter. This is true for every week that church services have been offered to Menard inmates since January 1, 2007. See documents identified as BJ000004-BJ000009. See also Plaintiff's Answer to Interrogatory 6.

## Interrogatory 17

State whether there is a television in the Plaintiff s current cell, whether the television has closed captioning, whether the Plaintiff has turned on the closed captioning and if not, why not, whether the Plaintiff ever requested headphones for the television, the approximate date of the request, the facility where the request for headphones was made, whether the Plaintiff received the requested headphones, and whether the Plaintiff ever bought headphones without making a request for them.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 17 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff's cell presently has a television with closed captioning which is turned on. Plaintiff has not attempted to purchase the headphones that would accommodate his hearing loss because the commissary does not sell them. Plaintiff learned in 2010 or 2011 that after receiving multiple approvals inmates used to be able to order the type of headphones he needs, but that this practice stopped around 2009. See also Plaintiff's Answer to Interrogatory 5.

**Interrogatory 18**

Since January 1, 2007, state whether the Plaintiff has requested that a television in a common area of a prison have its closed captioning turned on, including the facility where this occurred, the approximate date, the individual(s) to whom the Plaintiff made the request, whether the closed captioning was turned on.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 18 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he requested that a television in a common area of a prison have its closed captioning turned on. See Plaintiff's Answer to Interrogatory 5.

**Interrogatory 19**

State each time (if any) that the Plaintiff has been evacuated from his cell due to any type of emergency situation including but not limited to a drill, including the facility where this occurred, the approximate date, and how the Plaintiff was informed that there was an emergency evacuation.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 19 as unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he may have been evacuated from his cell due to any type of emergency situation. There is no formal mechanism to notify Plaintiff about emergency situations, such as weather emergencies, fires or lockdowns. See also documents identified as: BJ000005-BJ000009 and BJ000013-BJ000015.

**Interrogatory 20**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a shower because of his hearing loss, including the facility where this occurred, the approximate date, and the names and titles of any individuals he informed that he missed a shower due to his hearing loss.

14

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 20 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does know or recall the specifics of all instances in which he may have missed a shower because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances. Plaintiff may have missed a shower and was unaware that the shower was missed because he was not made aware of the announcement for the shower by IDOC personnel.

Plaintiff is aware that on a number of occasions he has missed shower-time due to his hearing loss. Showers are offered Monday, Wednesday and Friday and he regularly misses shower-time 2 times each week. This has happened throughout his time at Menard CC. He has tried to explain to many correctional officers and Lieutenants that he cannot hear and needs for them to let him know that it is time to leave his cell for showers, but they do not take adequate steps to ensure that he knows it is shower time. He has also complained to his counselors over the years, and believes that he filed a grievance regarding this.

See also documents identified as: BJ000004-BJ000009 and BJ000013-BJ000015.

**Interrogatory 21**

State each time (if any) since January 1, 2007 that the Plaintiff believes his request to be transferred to a different IDOC facility was denied because the Plaintiff was deaf or hard of hearing, including the facility from which the Plaintiff asked to be transferred, the facility to which the Plaintiff asked to be transferred, the approximate date of the request, and the individual(s) (if any) that the Plaintiff informed that his request was denied because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 21 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Around 2008, Johnson requested a transfer to Dixon Correctional Center. He discussed it with his counselor, Gina, orally, and wrote a kite to the Assistant Warden at the time, who he believes was named Gary Conder. His request was denied. Although Plaintiff was not told that the request was denied due to his hearing disability, Plaintiff believes that the denial of the transfer may be based at least in part on the fact that he is deaf.

See also documents identified as: BJ000001 and BJ000004-BJ000009.

15

**Interrogatory 22**

State each time (if any) since January 1,2007, that the Plaintiff was unable to file a grievance because he was hard of hearing, including the facility where this occurred, the approximate date when this occurred, why the Plaintiff believes his hearing loss was the cause, and the individual(s) that the Plaintiff contacted for assistance in filing a grievance.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 22 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Johnson did not understand about the ability to file grievances until around 2009. He believes that he would have understood about the grievance procedure earlier if he was not deaf, and that the failure of IDOC to effectively communicate the grievance procedure to him resulted in denying him the opportunity to file grievances prior to 2009. See also document identified as: BJ000006.

**Interrogatory 23**

State each time since January 1,2007 (if any) that the Plaintiff has requested an accommodation not mentioned previously in the answers to these interrogatories from any individual employed by or working at the Illinois Department of Corrections ("IDOC") or any prison or facility operated by the IDOC, which relates to the Plaintiffs hearing loss, including a description of the accommodation, the approximate date the request was made, the facility where the accommodation was requested, all individuals asked for the accommodation, whether the request was made in writing, and the response to the request for the accommodation.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 23 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have requested an accommodation not mentioned previously in the answers to these interrogatories, or the details of the results of any such request. In 2011, while Correctional Officer Kings was temporarily assigned to Plaintiff's housing area (South Lower), Plaintiff asked Kings if she would be agreeable to him making a request to a Major for Kings to be assigned to South Lower because she can use some sign language. Kings stated that she did not want him to make this request because she did not want to have to sign as part of her job, so Plaintiff did not make the request of the Major.

16

See documents identified as: BJ000004-BJ000005 in which Plaintiff requests that staff be trained to deal with people who are deaf. See also documents identified as: BJ000006-BJ000009. That grievance states that when Plaintiff tried to explain to guards that he is deaf, they have either ignored him or made fun of him. Further, using sign language at Menard is dangerous due to the high number of gang members incarcerated there who may mistake his signs for gang signs. See also documents identified as: BJ000021-BJ000022 in which IDOC notes that there are no grievances in Plaintiff's Master File. Plaintiff further states that grievances that he filed get lost by IDOC.

Plaintiff states that he had no communication access or interpreters for medical appointments at Menard other than written communications with his doctor but that those notes are inadequate. See also documents identified as: BJ000006-BJ000009 and BJ000019-BJ000020.

**Interrogatory 24**

State when the Plaintiff was first diagnosed with hearing loss, who made the diagnosis, the facility or office where this occurred, and the reason for the Plaintiff's hearing loss, if known.

**ANSWER:**

Plaintiff asserts the general objections set forth above. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff is not certain when he was first diagnosed with hearing loss. Plaintiff's grandmother has told him that he was sick when he was about one and one-half years old and that shortly after that he developed a hearing disability. Plaintiff believes he has suffered from a hearing disability since he was approximately 1 or 1 and a half years old.

**Interrogatory 25**

Before the Plaintiff was sentence to the custody of the IDOC, what (if any) auxiliary aids did the Plaintiff use to communicate with individuals in his family? What auxiliary aids (if any) did the Plaintiff use to communicate with individuals in the community? What auxiliary aids (if any) did the Plaintiff use to communicate at his employment? Does the Plaintiff believe that any of the auxiliary aids that the Plaintiff used before being sentenced to the custody of the IDOC are not available to him within the IDOC system?

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 25 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all auxiliary aids he has used to communicate in the past.

Plaintiff states that his grandmother, even though she is not a trained interpreter, would assist him in communicating to his doctor at appointments as well as with others such as at the Social Security Administration. Plaintiff has been provided interpreters when he has appeared in court. As noted above, he has not been provided qualified and licensed interpreters within the IDOC system. He has communicated with family and friends in some instances through TTY, e-mail and texting. E-mail and texting are not available to Plaintiff within the IDOC system. Plaintiff had hearing aids in both ears when he lived in the community, and he used those hearing aids to assist in communication efforts although such devices do not by themselves provide effective communication for Plaintiff. In Plaintiff's 8/31/11 grievance with IDOC, Plaintiff requested two hearing aids, but in response to the grievance IDOC's health care unit informed him in January 2012 that IDOC could afford to provide him with only one hearing aid, and that he could take it or leave it.

Plaintiff further affirmatively states that auxiliary aids that he used before being sentenced to IDOC custody are not available to him within the IDOC system.

Respectfully submitted,
(as to Objections only)


s/ Amy F. Peterson
Amy F. Peterson
One of the Attorneys for Plaintiff

Robert L. Michels
Nicole E. Wrigley
Kevin P. McCormick
Joseph L. Motto
Mary T. McCarthy
Ryan M Dunigan
Winston & Strawn LLP
35 W. Wacker Dr.
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
rmichels@winston.com
NWrigley@winston.com
KMcCormick@winston.com
JMotto@winston.com
MMcCarthy@winston.com
RDunigan@winston.com

Alan S. Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, Illinois 60640
Telephone: (773) 769-1411
Facsimile: (773) 769-2224
alanmills@comcast.net


Barry C. Taylor
Amy F. Peterson
Laura J. Miller
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Facsimile: (312) 341-0295
BarryT@equipforequality.org
Amy@equipforequality.org
Laura@equipforequality.org


Howard A. Rosenblum
National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
Facsimile: (301) 587-1791
howard.rosenblum@nad.org

*Counsel for Plaintiffs*

## SIGNATURE PAGE

In accordance with 28 U.S.C. § 1746, the undersigned, Billy Johnson, one of the named plaintiffs in the case of Holmes v Godinez, 11 C 2961, signs this document and declares under penalty of perjury under the laws of the United States of America that Plaintiff's Answers to Defendants' First Set of Interrogatories to Plaintiff Billy Johnson are true and correct to the best of his knowledge and belief.

Billy Johnson

## CERTIFICATE OF SERVICE

Please take notice that the undersigned, an attorney, on oath, states she served the attached Plaintiff Billy Johnson's Response to Defendants' First Set of Interrogatories by sending via e-mail and regular mail to Kevin Lovellette, Assistant Attorney General, General Law Bureau, 100 W. Randolph Street, 13th Floor, Chicago, Illinois 60601 and KLovellette@atg.state.il.us on April 3, 2013.


s/ Amy F. Peterson

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RALPH HOLMES, DANIEL BAXTER, GEORGE CHILDRESS, HANNIBAL EASON, CURTIS FORSTER, CURTIS HALTERMAN, BILLY JOHNSON, WENDELL LANCASTER, DANIEL LORD, AARON WINFERT, and JASON WRIGHT, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 2961 |
| SALVADOR A. GODINEZ, Acting Director of Illinois Department of Corrections; and L. RACHEL MCKINZIE, American with Disabilities Act Coordinator, Illinois Department of Corrections, | ) ) ) ) ) ) ) | Judge Marvin Aspen<br><br>Magistrate Sheila Finnegan |
| Defendants. | ) ) ) | |

**PLAINTIFF BILLY JOHNSON'S FIRST SUPPLEMENTAL ANSWERS TO
DEFENDANTS' FIRST SET OF INTERROGATORIES**

Plaintiff, Billy Johnson, by his attorneys, pursuant to the applicable Rules of Civil

Procedure, in response to Defendants' First Set of Interrogatories, states as follows:

**GENERAL STATEMENTS AND OBJECTIONS**

Plaintiff asserts the following general objections, which are incorporated by reference

into each of Plaintiff's responses set forth below:

1.  Plaintiff objects to the Interrogatories to the extent that they seek information and

    documents protected from disclosure by the attorney-client privilege, the work

    product doctrine, and any other applicable privilege or immunity from discovery.

1

2. Plaintiff makes these responses to the best of his current knowledge, information, and belief. Plaintiff reserves the right to produce and rely upon evidence, facts, documents, and information which have not yet been discovered or the relevance of which has not yet been determined. Plaintiff reserves the right to supplement or amend his response to these Interrogatories.

3. Plaintiff reserves all objections to the admissibility and relevance of any information produced in response to these Interrogatories. Identification of any information does not constitute an admission by Johnson that such information is relevant or material to this action.

4. In addition to the responses below, Plaintiff refers IDOC to all grievances Plaintiff filed while in IDOC custody and all responses thereto by IDOC, all of which are available in IDOC's possession.

5. Plaintiff responds to these Interrogatories subject to the limitations created by Plaintiff's hearing loss and IDOC's failure to provide appropriate accommodations that would have allowed Plaintiff to have effective expressive and receptive communication.

## FIRST SUPPLEMENTAL ANSWERS

### Interrogatory 5

State each time since January 1, 2007 (if any) that the Plaintiff requested an "auxiliary aid" as defined by the Plaintiff in paragraph 39 of his Complaint, with the exception of a request for sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, what "auxiliary aid" what [sic] requested, the circumstances for which the request was made, whether the request was in writing or in person, and whether he received the "auxiliary aid."

### ANSWER:

In addition to the objections and answers identified in Plaintiff Billy Johnson's Response to Defendants' First Set of Interrogatories, Plaintiff provides the following information.

Hearing aid: Plaintiff states that he has made repeated requests to Stateville CC's health care unit for a second hearing aid. In response to his requests, a doctor or nurse at Stateville CC told Plaintiff that according to IDOC policy, he could have only one hearing aid. On or around April 2, 2014, Plaintiff was sent to an outside audiologist. This audiologist recommended that Plaintiff receive two hearing aids. Despite this recommendation by a medical professional, IDOC has not provided Plaintiff with two hearing aids. Further, even though Plaintiff has one hearing aid, he frequently is unable to benefit from it because IDOC fails to provide him with hearing aid batteries on a sufficient basis. Plaintiff receives batteries for his hearing aid every seven to nine days; however, the battery for his hearing aid usually dies after about three to four days, leaving him without a working hearing aid every four to five days.

TTY: Plaintiff states that he has made repeated requests to use the TTY while at Stateville CC, and is regularly told that the TTY is broken, or that the officers do not know how to use the TTY. The officers have also told Plaintiff that his TTY use is limited to 30 minutes. Further, as a result of miscommunications regarding the TTY, IDOC has sentenced Plaintiff to unnecessary disciplinary action. Specifically, on May 6, 2014, Plaintiff asked Lieutenant Bishop to use the TTY. In response to his request, Lt. Bishop commented about Stateville CC's TTY schedule, a schedule that applies only to deaf inmates, as hearing inmates have no schedule regulating their phone use. Plaintiff became frustrated, and a used curse word. He did not, however, engage in any physical conduct. Plaintiff regularly signs while he speaks, as ASL is his first language. During this conversation, Plaintiff was signing words to the effect of "I want you to get the TTY," a phrase that caused Plaintiff to clench his fists. Lt. Bishop, however, seeing Plaintiff's use of ASL, reacted as if Plaintiff was threatening her. As a result, IDOC issued Plaintiff a ticket, and sent him to a disciplinary hearing. As noted in Plaintiff's supplemental answer to Interrogatory No. 7, Plaintiff was not provided with effective communication during the disciplinary hearing, as his request for an ASL interpreter, either an on-site interpreter or a remote interpreter, was denied. As a result of the hearing, Plaintiff was sentenced to two months of segregation, all for using his native language when expressing himself.

**<u>Interrogatory 6</u>**

State each time since January 1, 2007 (if any) that the Plaintiff requested a sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, the circumstances for which the request was made, whether the request was in writing or in person, whether he received a sign language interpreter and if not, whether another form of communication was used during the circumstances.

**<u>ANSWER</u>:**

3

In addition to the objections and answers identified in Plaintiff Billy Johnson's Response to Defendants' First Set of Interrogatories, Plaintiff provides the following information.

Plaintiff states that he requested an ASL interpreter for a disciplinary hearing that occurred on May 13, 2014. Plaintiff's request was for either an in-person interpreter or a ASL interpreter. IDOC denied Plaintiff's request. Plaintiff was told that his request was denied because he "can read lips" and because he "speaks." Plaintiff did not understand everything that occurred during the disciplinary hearing. Plaintiff attempted to call two officers to testify as witnesses in support of his testimony, but neither were called, most likely due to the communication difficulties.

Plaintiff further states that he has requested an ASL interpreter on various occasions at Stateville CC, specifically for church services, for his Adult Basic Education class, and for disciplinary hearings. Interpreters have not been provided to Plaintiff for these programs.

**Interrogatory 11**

State each time (if any) since January 1, 2007 that the Plaintiff was unable to attend or participate in an educational, vocational or substance abuse treatment program because he is deaf or hard of hearing. For each such time, state the facility where this occurred, the approximate date, what educational or vocational or substance abuse treatment program the Plaintiff sought to attend or participate in, and list the individual(s) (if any) that the Plaintiff informed that he was unable to attend or participate because of his hearing loss.

**ANSWER:**

In addition to the objections and answers identified in Plaintiff Billy Johnson's Response to Defendants' First Set of Interrogatories, Plaintiff provides the following information.

Plaintiff states that in 2014, he was enrolled in an Adult Basic Education (ABE) class at Stateville CC. Plaintiff has made repeated requests for interpreters for ABE, and each request has been denied. Without effective communication, however, Plaintiff has been unable to benefit from this educational program.

Respectfully submitted,
(as to Objections only)

s/ *Rachel M. Weisberg*
Rachel M. Weisberg
One of the Attorneys for Plaintiff

Robert L. Michels
Nicole E. Wrigley
Kevin P. McCormick
Joseph L. Motto
Mary T. McCarthy
Ryan M Dunigan
Winston & Strawn LLP
35 W. Wacker Dr.
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
rmichels@winston.com
NWrigley@winston.com
KMcCormick@winston.com
JMotto@winston.com
MMcCarthy@winston.com
RDunigan@winston.com

Alan S. Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, Illinois 60640
Telephone: (773) 769-1411
Facsimile: (773) 769-2224
alanmills@comcast.net

Barry C. Taylor
Amy F. Peterson
Laura J. Miller
Rachel M. Weisberg
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Facsimile: (312) 341-0295
BarryT@equipforequality.org
Amy@equipforequality.org
Laura@equipforequality.org
RachelW@equipforequality.org

Howard A. Rosenblum
National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
Facsimile: (301) 587-1791

howard.rosenblum@nad.org
*Counsel for Plaintiffs*

## **SIGNATURE PAGE**

In accordance with 28 U.S.C. § 1746, the undersigned, Billy Johnson, one of the named plaintiffs in the case of Holmes v Godinez, 11 C 2961, signs this document and declares under penalty of perjury under the laws of the United States of America that Plaintiff Billy Johnson's Answers to Defendants' First Set of Interrogatories are true and correct to the best of his knowledge and belief.

Billy Johnson

## **CERTIFICATE OF SERVICE**

Please take notice that the undersigned, an attorney, on oath, states that on October 21, 2014, she served the attached **Plaintiff Billy Johnson's First Supplemental Answers to Defendants' First Set of Interrogatories** by sending via e-mail and U.S. mail to

Kevin Lovellette
Assistant Attorney General
General Law Bureau
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
KLovellette@atg.state.il.us

_s/ Rachel M. Weisberg_
Rachel M. Weisberg
One of the Attorneys for Plaintiff

# EXHIBIT 15

**<u>FILED UNDER SEAL</u>**

# EXHIBIT 16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RALPH HOLMES, DANIEL
BAXTER, GEORGE CHILDRESS,
HANNIBAL EASON, CURTIS
FOSTER, CURTIS HALTERMAN,
BILLY JOHNSON, WENDELL
LANCASTER, DANIEL LORD,
AARON WINFERT, and JASON
WRIGHT, on behalf of
themselves and all others
similarly situated,

   Plaintiffs,

   vs.                     CASE NO. 11 C 2961

SALVADOR A. GODINEZ,
Acting Director of
Illinois Department of
Corrections; and L.
RACHEL McKINZIE,
Americans with
Disabilities Act
Coordinator, Illinois
Department of
Corrections,

   Defendants.
_____/

VIDEOTAPED
DEPOSITION OF:          Deborah Denning

DATE:               February 21, 2014

TIME:               9:32 a.m. to 12:38 p.m.

LOCATION:          Bonita Brighton Center
                     8891 Brighton Lane
                     Bonita Springs, FL

TAKEN BY:          Plaintiffs

REPORTER:          Lori L. Bundy,
                     RMR, FPR, RPR, CRR, CLR

Page 18

1  Q.  Was it sometime after Patrick Keane took on the
2  position of the program compliance officer you described
3  earlier?
4  **A.  No, it's prior to that.**
5  Q.  Okay.  Did -- the position you described with
6  regard to Mr. Keane, did someone hold that position before
7  he took it on?
8  **A.  No.**
9  Q.  Has the Department of Corrections always made
10  interpreters available for educational and vocational
11  services in the manner you just described?
12  **A.  To my knowledge.**
13  Q.  Over time while you were at the Department of
14  Corrections, including before you were chief of programs
15  and services, did the Department of Corrections change the
16  extent to which it made educational or vocational programs
17  available to deaf or hard of hearing inmates?
18  MR. LOVELLETTE:  Objection to the form of the
19  question.  Go ahead.
20  THE WITNESS:  I'm not aware of that.
21  BY MR. MOTTO:
22  Q.  During your tenure as chief of programs and
23  support services, were there any occasions when
24  interpreters were not available for educational or

Page 19

1  vocational services for deaf or hard of hearing inmates?
2  **A.  I can't recall a specific occasion.**
3  Q.  Generally speaking, what do you recall about
4  that?
5  MR. LOVELLETTE:  Objection to the form of the
6  question.  Go ahead.
7  THE WITNESS:  I do recall that there was an issue
8  with the contract in terms of always having someone
9  readily available that oftentimes things had to be
10  postponed until we could get an ASL interpreter in
11  certain regions of the state.
12  BY MR. MOTTO:
13  Q.  What contract are you referring to?
14  **A.  I don't know the name of it, but I do know that**
15  **we had a contract with a vendor that provided our ASL**
16  **interpreters.**
17  Q.  And what was the nature of the issue with the
18  contract, to your recollection?
19  **A.  I believe they didn't have enough interpreters in**
20  **the southern region.**
21  Q.  Any other issues related to the contract with the
22  vendor?
23  **A.  That's all I recall.**
24  Q.  Do you recall any issues with involving lack of

Page 20

1  payment?
2  **A.  Not directly, no.**
3  Q.  What do you mean by not directly?
4  **A.  Well, there were always contract issues in other**
5  **areas where payment was an issue, but I had never -- no**
6  **one had ever talked to me about this contract or payment.**
7  Q.  Okay.  As concerns contracting for interpreters
8  for deaf inmates, you don't regard -- you don't recall any
9  contractual issues concerning payment as to that contract?
10  **A.  I was not made aware of anything.**
11  Q.  Okay.  Concerning the availability of contractors
12  in certain portions of the state -- I'm sorry.  Strike the
13  question.
14  Concerning the availability of interpreters in
15  certain areas of the state which you just described, how
16  was that issue resolved, to your recollection?
17  **A.  I know that oftentimes it was that the contract**
18  **was not communicated or the resources that we really did**
19  **have was not communicated appropriately.  In the instance**
20  **that I'm thinking of was Menard, and Menard found their**
21  **own ASL person from the streets to come in and take care**
22  **of that.  Oftentimes they would reach out to colleges to**
23  **assist them.**
24  Q.  Are you aware of whether the vendor ultimately

Page 21

1  began providing interpreters in parts of the state where
2  the vendor had not been providing interpreters?
3  **A.  I am not aware.**
4  Q.  With regard to your description of the incident
5  or the events at Menard, are you saying that Menard
6  contracted on its own for an interpreter service?
7  **A.  I believe the service was free.**
8  Q.  Okay.  During your tenure as chief of programs
9  and support services, did the Department of Corrections
10  change in any way its policy or practice concerning making
11  ASL interpreters available for educational or vocational
12  services?
13  **A.  I believe the only change that I know of was that**
14  **we communicated better what was available.**
15  Q.  And what do you mean by communicated better?
16  **A.  In terms of education or vocational services, we**
17  **let people know we had what we called a SharePoint site,**
18  **and we allowed people to go to that SharePoint site to**
19  **look at the CMS site that helped in ASL interpretation as**
20  **well as bilingual interpretation, and also to make people**
21  **aware of Mr. Keane's role and that he was there to assist.**
22  Q.  Do you recall any other changes as to the
23  Department of Corrections policy or practice with regard
24  to making educational and vocational services available to

6  (Pages 18 to 21)

Page 106

1   for any type of disability or any type of language.
2       Q.  So it's preferably obviously for the state to
3   have someone else pay for the service?
4       A.  It's reasonable to assume that they -- if they're
5   providing the service that they provide it to everyone.
6       Q.  So in your view, the vendors were ultimately
7   responsible for supplying, for example, interpreters when
8   needed for deaf inmates?
9           MR. LOVELLETTE:  Objection.  Misstates prior
10  testimony.  Go ahead and answer.
11          THE WITNESS:  In my view, that would be the first
12  step.  If for some reason we weren't able to get the
13  vendors to provide that, then we had a second step,
14  and that was to use the contract that we had
15  available.
16  BY MR. MOTTO:
17      Q.  The statewide contract with an entity whose name
18  you can't remember but whom I suggested might be?
19      A.  Right, or to use the CMS through BICS, that
20  service to help us provide.
21      Q.  So is it your testimony that in the first
22  instance, the Department of Corrections would seek that
23  the vendor who's subcontracted would supply the needed ADA
24  service and then as a backup if that was not done, the

Page 107

1   Department of Corrections would try to obtain the service
2   through one of its other contracts?
3       A.  That is my -- that's my testimony.
4       Q.  Okay.  Was that always the case while you were at
5   the Department of Corrections?
6       A.  To be honest, I don't know.  I did not deal with
7   that process directly, so I can't answer that.
8       Q.  What about during your tenure as chief of
9   programs and support services?
10      A.  Yes.
11      Q.  It was always as you just described?
12      A.  Well, that's why I inquired.  It wasn't --
13  obviously I didn't know the answer to that.
14      Q.  You attempted to make it that way?
15      A.  Yes, I asked that it -- if we could negotiate
16  that or if it was already in their contract.
17      Q.  Ms. Denning, the court reporter has handed you
18  what we've marked as Exhibit P 184.  Please take a moment
19  to review it, let me know once you've done so.
20          (Exhibit Number P 184, IDOC_email013378 to 80,
21          was marked for identification.)
22  BY MR. MOTTO:
23      Q.  For the record this is a three page e-mail chain
24  labeled IDOC underscore e-mail 013378 through 80.

Page 108

1       A.  I'm familiar with this.
2       Q.  What's the subject of discussion in this e-mail
3   chain?
4       A.  Again, it's a Lincoln offender that we were
5   trying to obtain a vibrating watch for.
6       Q.  What's an ASR?
7       A.  I believe it's called an additional service
8   request.
9       Q.  And Mr. Geckler, what was his title at the time?
10      A.  He was the chief financial officer.
11      Q.  To whom did he report in that capacity?
12      A.  To the director.
13      Q.  What were his responsibilities as chief financial
14  officer, to your understanding?
15      A.  He was in charge of the fiscal budget.
16      Q.  What does that mean?
17      A.  Balancing the checkbook.  I mean, he had the
18  budget for the State of Illinois Department of Corrections
19  and he authorized purchases, he authorized purchases, he
20  authorized budget -- because each facility had their own
21  budget, so he would authorize budget adjustments, he would
22  monitor the spending.
23      Q.  Did he have authority over the extent to which
24  facilities made expenditures concerning accommodations for

Page 109

1   ADA issues?
2           MR. LOVELLETTE:  Objection.  Lack of foundation.
3   Go ahead.
4           THE WITNESS:  It's my understanding he did.
5   BY MR. MOTTO:
6       Q.  And, in fact, he would personally approve or
7   disapprove requests of accommodations for deaf inmates; is
8   that right?
9           MR. LOVELLETTE:  Objection.  Lack of foundation.
10  Go ahead.
11          THE WITNESS:  He personally approved all ASRs.
12  BY MR. MOTTO:
13      Q.  To include ASRs related to accommodations for to
14  deaf inmates?
15      A.  That is my understanding.
16      Q.  So Mr. Geckler had apparently denied a request by
17  this inmate with a hearing impairment to obtain a
18  vibrating wristwatch; is that right?
19      A.  Yes.
20      Q.  Did you agree with Mr. Geckler's decision in that
21  regard?
22      A.  I was frustrated by it.
23      Q.  What do you mean by that?
24      A.  I felt that it was an accommodation that would

Page 110

1  assist the offender, and that's why I had a discussion
2  with Patrick that we had two options, one was to sell them
3  to the offender because it was something that would assist
4  them, or to go ahead and buy a big pool of these and be
5  able to sign them in and out.
6      Q.  Mr. Geckler -- looking at the front page of the
7  first page of the e-mail chain, Mr. Geckler states
8  January 17th, 2013, e-mail to Melody Hulett in which you
9  and other people are copied, states in part, what I don't
10 understand is why a hearing impaired inmate is in need of
11 a vibrating watch.
12     Did I read that correctly?
13     A.  Yes.
14     Q.  Did you explain to Mr. Geckler why it might be
15 that a hearing impaired inmate would need a vibrating
16 watch?
17     A.  Yes, I did.
18     Q.  Do you recall his reaction to your explanation?
19     A.  I don't recall.
20     Q.  Are you aware of whether Mr. Geckler received any
21 training with regard to accommodating deaf or hard of
22 hearing inmates?
23     A.  He would have received it in annual cycle
24 training.

Page 111

1      Q.  To the extent ADA training was provided in annual
2  cycle training?
3      A.  Yes, sir.
4      Q.  Do you recall the outcome of this ASR?
5      A.  I do not recall, no, I don't know.
6      Q.  Is it possible this inmate never received the
7  vibrating wristwatch despite the fact that you felt it was
8  an appropriate accommodation?
9      A.  It is possible.
10     Q.  Do you recall any other circumstances in which
11 you were in favor of making an accommodation for a deaf or
12 hard of hearing inmate and Mr. Geckler disapproved of that
13 accommodation?
14     A.  No, no, I don't.
15     Q.  What about aside from Mr. Geckler, do you recall
16 any circumstances in which you were in favor of supplying
17 an accommodation for a deaf or hard of hearing inmate and
18 that request was denied?
19     A.  No, I don't.
20     Q.  What's Mr. Geckler's current position -- or
21 position at the time you left the department?
22     A.  He was the chief financial officer.
23     Q.  Still in that capacity?  Okay.
24     A.  Oh, I'm sorry, when I left the department he was

Page 112

1  the chief of staff.
2      Q.  And to whom did he report in that capacity?
3      A.  To the director.
4      Q.  In what way did, to your understanding, did
5  Mr. Geckler's responsibilities change when he transitioned
6  from chief financial officer to chief of staff?
7          MR. LOVELLETTE:  Objection to the form of the
8  question.  Go ahead.
9          THE WITNESS:  I'm sure that the departments that
10 he supervised changed, but I couldn't give you much
11 more information than that.
12 BY MR. MOTTO:
13     Q.  Who replaced him as chief financial officer, if
14 anyone?
15     A.  Jared Brunk.
16     Q.  Do you recall when that occurred?
17     A.  No, sir, I believe it was as I was exiting, but I
18 don't remember.
19     Q.  Approximately the fall of 2013?
20     A.  I believe so.
21     Q.  Okay.  Ms. Denning, I've handed you what has been
22 marked previously as Exhibit P 105.  Please take a moment
23 to review and let me know once you've done so.
24     A.  Okay.

Page 113

1      Q.  Do you recognize this e-mail chain?
2      A.  No.
3      Q.  In your role as chief of programs and support
4  services, the office of health services was within your
5  purview; is that correct?
6      A.  That's correct.
7      Q.  Dr. Louis Shicker was head of that office; is
8  that right?
9      A.  That's correct.
10     Q.  Did he report to you?
11     A.  Yes.
12     Q.  Okay.  Looking at the first page, an e-mail from
13 Ms. McKinzie to Cheri Laurent and others, midway through
14 the first paragraph Ms. McKinzie states, you advised that
15 Dr. Shicker in yesterday's meeting that to date, Wexford
16 has not provided any ASL interpreter services since the
17 effective date of the new contract.
18     Did I read that correctly?
19     A.  Yes.
20     Q.  What do you recall about that subject?
21     A.  I don't recall.
22     Q.  Do you recall modifying the contract with
23 Wexford?
24     A.  No.

# EXHIBIT 17

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RALPH HOLMES, DANIEL BAXTER, GEORGE CHILDRESS, HANNIBAL EASON, CURTIS FOSTER, CURTIS HALTERMAN, BILLY JOHNSON, WENDELL LANCASTER, DANIEL LORD, AARON WINFERT, and JASON WRIGHT, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 2961 |
| SALVADOR A. GODINEZ, Acting Director of Illinois Department of Corrections; and L. RACHEL MCKINZIE, American with Disabilities Act Coordinator, Illinois Department of Corrections, | ) ) ) ) ) ) ) ) | Judge Marvin Aspen<br><br>Magistrate Sheila Finnegan |
| Defendants. | ) ) | |

**PLAINTIFF DANIEL BAXTER'S RESPONSE TO DEFENDANTS'
FIRST SET OF INTERROGATORIES**

Plaintiff, Daniel Baxter, by his attorneys, pursuant to the applicable Rules of Civil

Procedure, in response to Defendants' First Set of Interrogatories, states as follows:

**GENERAL STATEMENTS AND OBJECTIONS**

Plaintiff asserts the following general objections, which are incorporated by reference

into each of Plaintiff's responses set forth below:

1.  Plaintiff objects to the Interrogatories to the extent that they seek information and

   documents protected from disclosure by the attorney-client privilege, the work

   product doctrine, and any other applicable privilege or immunity from discovery.

1

2. Plaintiff makes these responses to the best of his current knowledge, information, and belief. Plaintiff reserves the right to produce and rely upon evidence, facts, documents, and information which have not yet been discovered or the relevance of which has not yet been determined. Plaintiff reserves the right to supplement or amend his response to these Interrogatories.

3. Plaintiff reserves all objections to the admissibility and relevance of any information produced in response to these Interrogatories. Identification of any information does not constitute an admission by Plaintiff that such information is relevant or material to this action.

4. In addition to the responses below, Plaintiff refers IDOC to all grievances Plaintiff filed while in IDOC custody and all responses thereto by IDOC, all of which are available in IDOC's possession.

5. Plaintiff responds to these Interrogatories subject to the limitations created by Plaintiff's hearing loss and IDOC's failure to provide appropriate accommodations that would have allowed Plaintiff to have effective expressive and receptive communication.

**Interrogatory 1**

State the name and address of each individual (other than an attorney) who has provided any information to the Plaintiff which was used to answer any Interrogatory.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 1 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Subject to the limitations created by Plaintiff's hearing loss and IDOC's failure to provide appropriate accommodations that would have allowed Plaintiff to have effective expressive and receptive communication, Plaintiff received information from numerous

2

IDOC personnel at the IDOC Reception and Classification Center and at the correctional facilities where he has resided since January 1, 2007 in regards to interactions which are responsive to these Interrogatories. It is impossible for Plaintiff to recall the names of all individuals with whom he has interacted regarding the subject matter of these Interrogatories since January 1, 2007. The individuals with whom Plaintiff interacted regarding the subject matter of these Interrogatories include Wexford medical staff and personnel; instructors in various educational, vocational, substance abuse programs, and work programs who may or may not be IDOC employees; religious services providers at IDOC facilities; medical personnel encountered prior to Plaintiff's incarceration; and all IDOC staff encountered with respect to the subject matter of these Interrogatories. Plaintiff also obtained information from former cellmates and counselors, names unknown, but has lived in the healthcare unit at Shawnee Correctional Center since about May 2012 and has no cellmate and does not know the name of his counselor.

**Interrogatory 2**

State whether the Plaintiff is able to communicate with individuals working at the IDOC or any of the prisons or facilities operated by the IDOC through writing. If the answer to this interrogatory is in the negative, state why the Plaintiff believes he is not able to communicate through writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 2 as overly broad, vague and unduly burdensome.

Subject to the foregoing objections, Plaintiff states that, while "communicate" is a broad and vague term, generally "communicate" is a concept that involves both one party attempting to convey something and the other party understanding what is being conveyed. When Plaintiff has attempted to convey something to individuals working at the IDOC or any of the prisons or facilities operated by the IDOC, in some instances he believes that the party to which he is conveying something may have understood him at least in part, but in many instances he is unable to determine if the party has understood what he was conveying, and in many other instances he believes that the party has not understood what he has attempted to convey. Likewise, when individuals working at the IDOC or any of the prisons or facilities operated by the IDOC have attempted to convey something to Plaintiff, in some instances Plaintiff believes that he may have understood (at least in part) what the party was conveying, but in many instances he has been unable to determine if he has understood what the party was conveying, and in many other instances he believes that he has not understood what the other party was attempting to convey. Plaintiff further states that, even in instances where he has been able to "communicate" at some level with individuals working at the IDOC or any of the prisons or facilities operated by the IDOC, such communications often have not been "effective communication," within the meaning of that term generally or under the Americans with Disabilities Act.

3

Whether Plaintiff is able to communicate effectively in writing depends upon the specific circumstances and purpose of the communication. In some instances, such as in some cases where Plaintiff is making a short and simple request to IDOC staff in a non-emergency setting without any other complicating circumstances, Plaintiff can communicate effectively with IDOC staff in writing. IDOC staff almost never write back to him when Plaintiff chooses to write notes. Plaintiff sometimes writes notes because IDOC staff at times misinterpret his tone. Further, in many other instances, such as for longer or more complex communications, in emergency situations, and in other circumstances, communication through writing becomes difficult and is not effective.

**Interrogatory 3**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a meal because of his hearing loss, including the facility where this occurred, the approximate date, which daily meal was missed, the name and title of any individual that the Plaintiff informed that a meal was missed, the approximate date when such communication occurred, and whether the communication was in person or in writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 3 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall all of the specific dates, individuals and details involved when he missed a meal because of his hearing loss. Nor would Plaintiff necessarily know in all instances when he missed a meal because of his hearing loss, as he may have missed a meal and was unaware that the meal was missed because he was not made aware of the announcement for the meal by IDOC personnel. In any event, Plaintiff believes that he has missed a number of meals due to his inability to hear, perhaps the equivalent of 10 to 15 meals since being incarcerated at Big Muddy Correctional Center in 2003. Plaintiff was transferred to Shawnee in May 2012 and believes that he missed about 5 to 6 meals at Shawnee due to his hearing loss. Plaintiff does not recall complaining to staff about missing meals due to hearing loss because on other occasions that he has complained to prison staff about not hearing something, they have replied that they know that he can hear. He does not recall all of the names of the prison staff who have stated this to him but he does recall Dr. Larson at Big Muddy stating this to him.

See also document identified as: DB000001-DB000015.

**Interrogatory 4**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a visit because of his hearing loss, including the facility where this occurred, the approximate date, who the visitor(s) was (were), the name and title of any individual that the Plaintiff

informed that a visit was missed, the approximate date when such communication occurred, and whether the communication was in person or in writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 4 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall the specific dates and all individuals and details involved when he missed a visit because of his hearing loss. Nor would Plaintiff necessarily know in all instances when he missed a visit because of his hearing loss, as he may have missed a visit and was unaware that the visit was missed because he was not made aware of the announcement for the visit by IDOC personnel. Plaintiff believes that he missed a visit from his mother and his daughter in approximately August 2011 due to his hearing loss.

**Interrogatory 5**

State each time since January 1,2007 (if any) that the Plaintiff requested an "auxiliary aid" as defined by the Plaintiff in paragraph 39 of his Complaint, with the exception of a request for sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, what "auxiliary aid" what [sic] requested, the circumstances for which the request was made, whether the request was in writing or in person, and whether he received the "auxiliary aid."

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 5 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall the specific dates and all individuals and details involved when he requested an "auxiliary aid" as defined by the Plaintiff in paragraph 39 of his Complaint. However, Plaintiff recalls the following:

Hearing aid/amplifier: When Plaintiff was at Big Muddy Correctional Center and discussed his need for hearing aids with Dr. Larson, Dr. Larson acknowledged that Plaintiff had a hearing problem. However, Dr. Larson said that the State has to be budget conscious and does not want to invest any more money in Plaintiff than it has to. Plaintiff never received hearing aids and was told that they were too expensive.

Plaintiff brought both Dr. Larson and Dr. Sheppard at Big Muddy a copy of an advertisement for Magni Ear on three to four different occasions beginning approximately six or seven years ago. Plaintiff asked his doctors if he could try this

device if corrective surgery was not an option. The doctors stated that the Magni Ear would not work for a person like Plaintiff. Plaintiff told them that he can hear some things, but not distant noises and not clearly. A copy of the advertisement for Magni Ear is provided with Plaintiff's response.

Transcription service: Plaintiff requested transcription service at Big Muddy. He made the request when he learned that his mother and daughter had been turned away for a visit around August 2011. He requested it from his female counselor at 2-House for a meeting. This was in approximately September 2011. The service was not provided.

TTY: Plaintiff asked for TTY approximately 7 years ago while at Big Muddy. They did not provide him with TTY. Plaintiff filed a grievance about the failure to provide TTY, but did not receive a response.

Closed captioning: At both Big Muddy and Shawnee, Plaintiff requested on numerous occasions that guards turn on the closed captioning on the common area televisions, but the guards said that they did not know how to do that and the closed captioning was not turned on. Plaintiff does not recall the names of the guards.

See also documents identified as: DB 000001-DB000033.

**Interrogatory 6**

State each time since January 1, 2007 (if any) that the Plaintiff requested a sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, the circumstances for which the request was made, whether the request was in writing or in person, whether he received a sign language interpreter and if not, whether another form of communication was used during the circumstances.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 6 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall specific dates and all individual details involved in each incident in which he requested a sign language interpreter. Plaintiff asked for a qualified interpreter for grievance meetings. He was at a grievance meeting in approximately January 2012 when there were 5 to 6 people talking at once and he could not hear them due to his hearing loss. He told the people at the meeting that he could not hear and requested an interpreter. Lt. Hemsley stated that Plaintiff was faking an inability to hear.

On or about April 2012, Plaintiff asked the person who wrote up the paperwork regarding his release in September 2014, for an interpreter. He believes that this person was named Mike Sanders, a prison case worker at Big Muddy.

Plaintiff asked for an interpreter in the Big Muddy health care unit in order to better communicate with his health care providers regarding his health care needs. He asked the nurses and physical therapists Caroline and Nancy Colp for an interpreter in 2007, 2008 and 2009 and they were never provided.

Plaintiff has asked for interpreters on other occasions as well, often in interviews with multiple people in the room all talking at once, but he cannot recall the names of the persons involved or the dates.

See also documents identified as: DB 000001-DB000015.

**Interrogatory 7**

State each time (if any) that the Plaintiff believes he was disciplined for taking an action or not taking an action because he could not hear orders made by IDOC personnel, including the facility where this occurred, the approximate date, the name and title of the individual who gave the order, the circumstances during which the order was given, and what discipline the Plaintiff received.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 7 as overly broad and unduly burdensome. Plaintiff further objects as the question is not limited in time and is oppressive. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall specific dates and all individual details involved in each incident in which he was disciplined for taking an action or not taking an action because he could not hear orders made by IDOC personnel.

Librarian Wilson at Big Muddy wrote Plaintiff up around late 2009 for not following an order that he could not follow because he did not understand it due to his hearing loss. Plaintiff attempted to enter this as a defense via an affidavit at the adjustment committee hearing but IDOC staff person, Mr. Russell, refused his request to enter the affidavit in his defense. Plaintiff also requested, but was denied, a qualified interpreter for the hearing on the charges.

There were several other occasions when Plaintiff received a ticket because he did not hear the prison staff's order. He cannot recall dates or occasions or prison staff names, but the tickets should reflect when this occurred since in his defense he would write on the tickets that he did not hear the order. This occurred both at Big Muddy and at Shawnee.

See also documents identified as: DB000001-DB000015.

**Interrogatory 8**

State whether the Plaintiff informed an IDOC employee or anyone else working at a Reception and Classification Center that the Plaintiff was deaf or hard of hearing when the Plaintiff first entered the Illinois corrections system, including the name and title of the individual informed, and how the Plaintiff informed the individual of this fact. If the Plaintiff has had multiple admissions to the correctional system, please answer this interrogatory for each admission to a Reception and Classification Center.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 8 as overly broad and unduly burdensome. Plaintiff further objects that this question is not limited in time and is thereby also oppressive. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall all of the specifics of all communications he had with IDOC personnel when he first entered the Illinois corrections system.

Upon arrival at Shawnee Plaintiff's medical care was being handled by Dr. Larson and Dr. Sheppard and he knew them from his previous admission at Big Muddy. As a result, staff at Shawnee were aware of Plaintiff's hearing impairment. Plaintiff told the medical director at Big Muddy about his hearing impairment when he arrived at Big Muddy.

**Interrogatory 9**

State each time (if any) since January 1, 2007 that the Plaintiff believes he was injured or did not receive medical treatment because he could not effectively communicate with medical personnel at any prison or facility operated by the IDOC (including mental health personnel), including the facility where the incident occurred, the approximate date of the incident, the medical staff involved, how the Plaintiff and the medical staff attempted to communicate with each other, what injury occurred or what treatment the Plaintiff sought, and whether the Plaintiff received medical care for the same issues at a later time, supplying the date and location of that medical care.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 9 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he may have been injured or did not receive medical treatment because he could not effectively communicate with medical personnel at any prison or facility operated by the IDOC.

See also documents identified as: DB000001-DB000033.

**Interrogatory 10**

State whether the Plaintiff has received an IDOC orientation manual for any facility, what facility that was, the approximately date that he received the manual, and state whether Plaintiff was able to read the manual. If the Plaintiff was unable to read the manual, state the reason(s) why he could not read it.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 10 as overly broad and unduly burdensome, including because it is not limited in time. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff received an IDOC manual in March 2002 and was able to read it.

**Interrogatory 11**

State each time (if any) since January 1, 2007 that the Plaintiff was unable to attend or participate in an educational, vocational or substance abuse treatment program because he is deaf or hard of hearing. For each such time, state the facility where this occurred, the approximate date, what educational or vocational or substance abuse treatment program the Plaintiff sought to attend or participate in, and list the individual(s) (if any) that the Plaintiff informed that he was unable to attend or participate because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 11 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he was unable to attend or participate in an educational, vocational or substance abuse treatment program because he is deaf or hard of hearing. Nor would Plaintiff necessarily know of all such instances, as he may have been denied such opportunities without his knowledge, because he may not have heard of or otherwise been effectively informed of such opportunities. Plaintiff states that he used lipreading while attending some classes and thus he could not fully participate on an equal level with inmates without a hearing impairment.

**Interrogatory 12**

State each time (if any) since January 1, 2007 that the Plaintiff has been unable to earn credit toward his sentence in any way because of his hearing loss, including how the Plaintiff sought to earn the credit, the facility where this occurred, the approximate date, and the individual(s) (if any) that the Plaintiff informed that he was unable to earn credit toward his sentence because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 12 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have been unable to earn credit toward his sentence in any way because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances.

**Interrogatory 13**

State each time (if any) since January 1, 2007 that the Plaintiff has been denied employment or participation in a work program within an IDOC prison or facility because of his hearing loss, including the approximate date, what employment or work program was denied to the Plaintiff, the facility where this occurred, and the individual(s) (if any) that the Plaintiff informed that he was denied employment or participation in a work program because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 13 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

See Plaintiff's Answer to Interrogatory 11. Plaintiff is now unable to work due to serious medical conditions.

**Interrogatory 14**

State how the Plaintiff communicates with his currently assigned Counselor.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 14 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know the name of his current counselor, but knows that he is the counselor of 1-House. Plaintiff communicates to some degree with his current counselor to some extent both orally and in writing. The counselor communicates with him orally. See also Plaintiff's Answer to Interrogatory 2.

## Interrogatory 15

State the name of the Plaintiff's current cell mate, state whether his current cell mate is deaf or hard of hearing, state how the Plaintiff communicates with his current cell mate, state whether any of Plaintiff's cell mates since January 1, 2007 were deaf or hard or hearing, and state how the Plaintiff communicated with the cell mates he has had since January 1, 2007.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 15 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff has been in and out of the health care unit since he arrived at Shawnee around May 2012. He does not know the name of his dorm mates at the health care unit or his various cell mates. Plaintiff is not qualified to diagnose another individual as deaf or hard of hearing, but he does not believe that any of his dorm mates or his cell mates have been hard of hearing or deaf. Plaintiff avoids communicating with his dorm mates and cell mates.

## Interrogatory 16

State each time (if any) since January 1, 2007 that the Plaintiff believes he was denied participation in a religious service because of his hearing loss, including the facility where this occurred, the approximate date, and the name and title of the individua1(s) that the Plaintiff informed that he was being denied participation in a religious service because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 16 as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have been denied participation in a religious service because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances.

Plaintiff missed religious services on various occasions at both Big Muddy and Shawnee because he did not hear the announcement or bells for church. At Big Muddy he missed the announcement for church perhaps 60-70% of the time. He complained to various prison staff about not hearing announcement for church. He also complained to Major Grisham about 2.5 to 3 years ago. At Shawnee Plaintiff missed church perhaps 70-80% of the time due to not hearing the bell. He complained to Dr. Tom Barrett and Barrett said he would bring it up with others involved with religious services, but Plaintiff did not receive any follow up information.

See also documents identified as: DB 000001-DB000015 and DB000030-DB000031.

**Interrogatory 17**

State whether there is a television in the Plaintiff s current cell, whether the television has closed captioning, whether the Plaintiff has turned on the closed captioning and if not, why not, whether the Plaintiff ever requested headphones for the television, the approximate date of the request, the facility where the request for headphones was made, whether the Plaintiff received the requested headphones, and whether the Plaintiff ever bought headphones without making a request for them.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 17 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff has a television and uses closed captioning. Plaintiff has not requested headphones from IDOC. He had personal headphones that he had purchased, but they went missing when he went to the health care unit in approximately September 2012.

**Interrogatory 18**

Since January 1, 2007, state whether the Plaintiff has requested that a television in a common area of a prison have its closed captioning turned on, including the facility where this occurred, the approximate date, the individual(s) to whom the Plaintiff made the request, whether the closed captioning was turned on.

**ANSWER**:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 18 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he requested that a television in a common area of a prison have its closed captioning turned on. See Plaintiff's Answer to Interrogatory 5.

**Interrogatory 19**

State each time (if any) that the Plaintiff has been evacuated from his cell due to any type of emergency situation including but not limited to a drill, including the facility where this occurred, the approximate date, and how the Plaintiff was informed that there was an emergency evacuation.

**ANSWER**:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 19 as unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he may have been evacuated from his cell due to any type of emergency situation. There is no formal mechanism to notify Plaintiff about emergency situations, such as weather emergencies, fires or lockdowns. Plaintiff has not to his knowledge experienced any emergency evacuation or drills at Shawnee. He believes that he experienced emergency evacuations 3-4 times at Big Muddy, and he was notified by hand gestures and verbal orders.

See documents identified as: DB000001-DB000015.

**Interrogatory 20**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a shower because of his hearing loss, including the facility where this occurred, the approximate date, and the names and titles of any individuals he informed that he missed a shower due to his hearing loss.

**ANSWER**:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 20 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does know or recall the specifics of all instances in which he may have missed a shower because of his hearing loss. Nor would Plaintiff necessarily know of any such

13

instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances. Plaintiff may have missed a shower and was unaware that the shower was missed because he was not made aware of the announcement for the shower by IDOC personnel.

See documents identified as: DB000001-DB000015.

## Interrogatory 21

State each time (if any) since January 1, 2007 that the Plaintiff believes his request to be transferred to a different IDOC facility was denied because the Plaintiff was deaf or hard of hearing, including the facility from which the Plaintiff asked to be transferred, the facility to which the Plaintiff asked to be transferred, the approximate date of the request, and the individual(s) (if any) that the Plaintiff informed that his request was denied because of his hearing loss.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 21 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information. Plaintiff has not formally requested a transfer to a different facility since January 1, 2007.

## Interrogatory 22

State each time (if any) since January 1,2007, that the Plaintiff was unable to file a grievance because he was hard of hearing, including the facility where this occurred, the approximate date when this occurred, why the Plaintiff believes his hearing loss was the cause, and the individual(s) that the Plaintiff contacted for assistance in filing a grievance.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 22 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information. Plaintiff has not been unable to file a grievance because he is hard of hearing.

## Interrogatory 23

State each time since January 1,2007 (if any) that the Plaintiff has requested an accommodation not mentioned previously in the answers to these interrogatories from any individual employed by or working at the Illinois Department of Corrections ("IDOC") or any prison or facility operated by the IDOC, which relates to the Plaintiffs hearing loss, including a description of the accommodation, the approximate date the request was made, the facility where the accommodation was requested, all individuals

asked for the accommodation, whether the request was made in writing, and the response to the request for the accommodation.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 23 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have requested an accommodation not mentioned previously in the answers to these interrogatories, or the details of the results of any such request.

Plaintiff requested an ADA cell and the return of the ADA benefits of his former status. See documents identified as: DB0000109 and DB000023. He also requested that guards cease provoking violence and using name calling, threats and intimidation of inmates with disabilities. See documents identified as: DB000030-DB000031.

**Interrogatory 24**

State when the Plaintiff was first diagnosed with hearing loss, who made the diagnosis, the facility or office where this occurred, and the reason for the Plaintiff's hearing loss, if known.

**ANSWER:**

Plaintiff asserts the general objections set forth above. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff first started losing his hearing while he was at Lawrence Correctional Center. Dr. Larson at Big Muddy first diagnosed Plaintiff with hearing loss on or about October 5, 2007. Plaintiff is of the understanding that Dr. Larson believed Plaintiff's Hepatitis C was causing his hearing loss. Dr. Jorenga Chhabra was also involved in this appointment.

**Interrogatory 25**

Before the Plaintiff was sentence to the custody of the IDOC, what (if any) auxiliary aids did the Plaintiff use to communicate with individuals in his family? What auxiliary aids (if any) did the Plaintiff use to communicate with individuals in the community? What auxiliary aids (if any) did the Plaintiff use to communicate at his employment? Does the Plaintiff believe that any of the auxiliary aids that the Plaintiff used before being sentenced to the custody of the IDOC are not available to him within the IDOC system?

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 25 as overly broad and unduly burdensome.  Subject to and without waiving the foregoing objections, Plaintiff provides the following information. Plaintiff's hearing loss began after he was incarcerated so he did not require auxiliary aids prior to his incarceration.

Respectfully submitted,
(as to Objections only)


s/ Amy F. Peterson
Amy F. Peterson
One of the Attorneys for Plaintiff

Robert L. Michels
Nicole E. Wrigley
Kevin P. McCormick
Joseph L. Motto
Mary T. McCarthy
Ryan M Dunigan
Winston & Strawn LLP
35 W. Wacker Dr.
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
rmichels@winston.com
NWrigley@winston.com
KMcCormick@winston.com
JMotto@winston.com
MMcCarthy@winston.com
RDunigan@winston.com

Alan S. Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, Illinois 60640
Telephone: (773) 769-1411
Facsimile: (773) 769-2224
alanmills@comcast.net

Barry C. Taylor
Amy F. Peterson
Laura J. Miller
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Facsimile: (312) 341-0295
BarryT@equipforequality.org
Amy@equipforequality.org
Laura@equipforequality.org

Howard A. Rosenblum
National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
Facsimile: (301) 587-1791
howard.rosenblum@nad.org

*Counsel for Plaintiffs*

## SIGNATURE PAGE

In accordance with 28 U.S.C. § 1746, the undersigned, Daniel Baxter, one of the named plaintiffs in the case of Holmes v Godinez, 11 C 2961, signs this document and declares under penalty of perjury under the laws of the United States of America that Plaintiff's Answers to Defendants' First Set of Interrogatories to Plaintiff Daniel Baxter are true and correct to the best of his knowledge and belief.

_____
Daniel Baxter

18

### CERTIFICATE OF SERVICE

Please take notice that the undersigned, an attorney, on oath, states she served the attached Plaintiff Daniel Baxter's Response to Defendants' First Set of Interrogatories by sending via e-mail and regular mail to Kevin Lovellette, Assistant Attorney General, General Law Bureau, 100 W. Randolph Street, 13th Floor, Chicago, Illinois 60601 and KLovellette@atg.state.il.us on April 8, 2013.


s/ Amy F. Peterson

# EXHIBIT 18

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RALPH HOLMES, DANIEL BAXTER, GEORGE CHILDRESS, HANNIBAL EASON, CURTIS FORSTER, CURTIS HALTERMAN, BILLY JOHNSON, WENDELL LANCASTER, DANIEL LORD, AARON WINFERT, and JASON WRIGHT, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 2961 |
| SALVADOR A. GODINEZ, Acting Director of Illinois Department of Corrections; and L. RACHEL MCKINZIE, American with Disabilities Act Coordinator, Illinois Department of Corrections, | ) ) ) ) ) ) ) ) | Judge Marvin Aspen

Magistrate Sheila Finnegan |
| Defendants. | ) | |

<u>**PLAINTIFF GEORGE CHILDRESS'S RESPONSE TO DEFENDANTS'
FIRST SET OF INTERROGATORIES**</u>

Plaintiff, George Childress, by his attorneys, pursuant to the applicable Rules of Civil Procedure, in response to Defendants' First Set of Interrogatories, states as follows:

<u>**GENERAL STATEMENTS AND OBJECTIONS**</u>

Plaintiff asserts the following general objections, which are incorporated by reference into each of Plaintiff's responses set forth below:

1. Plaintiff objects to the Interrogatories to the extent that they seek information and documents protected from disclosure by the attorney-client privilege, the work product doctrine, and any other applicable privilege or immunity from discovery.

1

2. Plaintiff makes these responses to the best of his current knowledge, information, and belief. Plaintiff reserves the right to produce and rely upon evidence, facts, documents, and information which have not yet been discovered or the relevance of which has not yet been determined. Plaintiff reserves the right to supplement or amend his response to these Interrogatories.

3. Plaintiff reserves all objections to the admissibility and relevance of any information produced in response to these Interrogatories. Identification of any information does not constitute an admission by Plaintiff that such information is relevant or material to this action.

4. In addition to the responses below, Plaintiff refers IDOC to all grievances Plaintiff filed while in IDOC custody and all responses thereto by IDOC, all of which are available in IDOC's possession.

5. Plaintiff responds to these Interrogatories subject to the limitations created by Plaintiff's hearing loss and IDOC's failure to provide appropriate accommodations that would have allowed Plaintiff to have effective expressive and receptive communication.

## Interrogatory 1

State the name and address of each individual (other than an attorney) who has provided any information to the Plaintiff which was used to answer any Interrogatory.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 1 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Subject to the limitations created by Plaintiff's hearing loss and IDOC's failure to provide appropriate accommodations that would have allowed Plaintiff to have effective expressive and receptive communication, Plaintiff received information from numerous

IDOC personnel at the IDOC Reception and Classification Center and at the correctional facilities where he has resided since January 1, 2007 in regards to interactions which are responsive to these Interrogatories. It is impossible for Plaintiff to recall the names of all individuals with whom he has interacted regarding the subject matter of these Interrogatories since January 1, 2007. The individuals with whom Plaintiff interacted regarding the subject matter of these Interrogatories include Wexford medical staff and personnel; instructors in various educational, vocational, substance abuse programs, and work programs who may or may not be IDOC employees; religious services providers at IDOC facilities; medical personnel and hearing specialists encountered prior to Plaintiff's incarceration; and all IDOC staff encountered with respect to the subject matter of these Interrogatories. Plaintiff also obtained information from other named plaintiffs while he was incarcerated at Dixon Correctional Center including Daniel Lord and Wendell Lancaster. He has also obtained information from plaintiff, Jason Wright.

**Interrogatory 2**

State whether the Plaintiff is able to communicate with individuals working at the IDOC or any of the prisons or facilities operated by the IDOC through writing. If the answer to this interrogatory is in the negative, state why the Plaintiff believes he is not able to communicate through writing.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 2 as overly broad, vague and unduly burdensome.

Subject to the foregoing objections, Plaintiff states that, while "communicate" is a broad and vague term, generally "communicate" is a concept that involves both one party attempting to convey something and the other party understanding what is being conveyed. When Plaintiff has attempted to convey something to individuals working at the IDOC or any of the prisons or facilities operated by the IDOC, in some instances he believes that the party to which he is conveying something may have understood him at least in part, but in many instances he is unable to determine if the party has understood what he was conveying, and in many other instances he believes that the party has not understood what he has attempted to convey. Likewise, when individuals working at the IDOC or any of the prisons or facilities operated by the IDOC have attempted to convey something to Plaintiff, in some instances Plaintiff believes that he may have understood (at least in part) what the party was conveying, but in many instances he has been unable to determine if he has understood what the party was conveying, and in many other instances he believes that he has not understood what the other party was attempting to convey. Plaintiff further states that, even in instances where he has been able to "communicate" at some level with individuals working at the IDOC or any of the prisons or facilities operated by the IDOC, such communications often have not been "effective communication," within the meaning of that term generally or under the Americans with Disabilities Act.

3

Whether Plaintiff is able to communicate effectively in writing depends upon the specific circumstances and purpose of the communication. In some instances, such as in some cases where Plaintiff is making a short and simple request to IDOC staff in a non-emergency setting without any other complicating circumstances, Plaintiff can communicate effectively with IDOC staff in writing when IDOC staff will take the time to read the note and respond to it. Written communication is not possible when IDOC staff refuse to read and/or respond to the note. Written communication is not always possible because there are times when paper and pencil are not available. However, in many other instances, such as for longer or more complex communications, in emergency situations, and in other circumstances, communication through writing becomes difficult and is not effective.

## Interrogatory 3

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a meal because of his hearing loss, including the facility where this occurred, the approximate date, which daily meal was missed, the name and title of any individual that the Plaintiff informed that a meal was missed, the approximate date when such communication occurred, and whether the communication was in person or in writing.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 3 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall all of the specific dates, individuals and details involved when he missed a meal because of his hearing loss. Nor would Plaintiff necessarily know in all instances when he missed a meal because of his hearing loss, as he may have missed a meal and was unaware that the meal was missed because he was not made aware of the announcement for the meal by IDOC personnel. In any event, Plaintiff missed over 30 meals, mostly lunch, at Dixon CC because of his hearing loss. Plaintiff is not aware of missing any meals due to his hearing loss at either Jacksonville CC or Graham CC.

## Interrogatory 4

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a visit because of his hearing loss, including the facility where this occurred, the approximate date, who the visitor(s) was (were), the name and title of any individual that the Plaintiff informed that a visit was missed, the approximate date when such communication occurred, and whether the communication was in person or in writing.

4

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 4 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall the specific dates and all individuals and details involved when he missed a visit because of his hearing loss. Nor would Plaintiff necessarily know in all instances when he missed a visit because of his hearing loss, as he may have missed a visit and was unaware that the visit was missed because he was not made aware of the announcement for the visit by IDOC personnel. Plaintiff is not aware that he has missed any visits because of his hearing loss.

**Interrogatory 5**

State each time since January 1,2007 (if any) that the Plaintiff requested an "auxiliary aid" as defined by the Plaintiff in paragraph 39 of his Complaint, with the exception of a request for sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, what "auxiliary aid" what [sic] requested, the circumstances for which the request was made, whether the request was in writing or in person, and whether he received the "auxiliary aid."

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 5 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall the specific dates and all individuals and details involved when he requested an "auxiliary aid" as defined by the Plaintiff in paragraph 39 of his Complaint. However, Plaintiff recalls the following:

Plaintiff has used a hearing aid for many years. When he was at Dixon CC, it broke. He requested that it be fixed and Dixon CC medical staff agreed and sent it out for repair; he waited 6 months to get it back. He had his hearing aid when he transferred to Jacksonville CC. At Jacksonville CC it broke again and he requested that it be fixed. Medical staff at Jacksonville CC agreed and sent it for repair. While it was in process of being repaired Plaintiff was transferred to Graham CC. Subsequent to his transfer the head nurse at Graham CC explained to Plaintiff that his hearing aid had been lost. He was advised that Jacksonville CC mailed the hearing aid directly to Plaintiff but that the mail control at Graham CC returned it to Jacksonville CC. Jacksonville CC medical staff then mailed it to Graham CC medical staff who finally delivered it to Plaintiff.

At Dixon CC Plaintiff made three requests that the guards turn on the close captioning. He would have made many more such requests but another deaf inmate usually made the requests before Plaintiff had the opportunity to do so.

**Interrogatory 6**

State each time since January 1, 2007 (if any) that the Plaintiff requested a sign language interpreter, including the facility where this occurred, the approximate date, the name and title of the individual to whom the request was made, the circumstances for which the request was made, whether the request was in writing or in person, whether he received a sign language interpreter and if not, whether another form of communication was used during the circumstances.

**ANSWER**:

Plaintiff has requested qualified interpreters on many occasions relating to medical visits.

When Plaintiff was at Dixon, there was a male nurse who knew some sign language. The process for obtaining a medical appointment involved placing a written request in a box. Each time Plaintiff requested a medical visit he would request that the male nurse who used some sign language would be available to interpret and assist him. Plaintiff had approximately 40 medical visits at Dixon and his health was in a state of progressive decline due to diabetes and kidney failure. During the approximately 40 medical visits at Dixon, the nurse who could use some sign language was present at approximately 5 of those visits. During the other approximately 30 visits the doctor, whose last name Plaintiff believes is Murray, no effort was made to communicate with Plaintiff. On one occasion during the summer of 2009, Plaintiff wrote a note to Dr. Murray to let him know he was in severe distress due to his failing kidneys and that the doctor was giving him too much insulin; the doctor crumpled up the note and threw it away without reading it.

At Jacksonville CC Plaintiff saw the medical staff very frequently, perhaps as many as 400 times. Jacksonville had a lieutenant and two nurses who used some sign language. There were at least 3 occasions when the lieutenant interpreted for Plaintiff and there were many occasions when the nurses who used some sign language were available. When the lieutenant or the nurses were not available, the doctor was good at writing notes and took his time to make sure that he understood Plaintiff's concerns and that Plaintiff understood his plan of care for him. Plaintiff also was admitted to St. John's Hospital on numerous occasions and that hospital always provided an interpreter for Plaintiff when necessary.

Medical staff in the health clinic at Graham CC, nurses and doctors included, will not take any extra time to attempt to communicate with Plaintiff and will not exchange notes. When Plaintiff is forced to attempt to lip read what is being said to him. However, the two doctors at Graham CC are non-native English speaking and it is impossible for him to lip read what they are saying. Plaintiff therefore does not have effective communication with the doctors at Graham. There is one nurse in the dialysis clinic who

learned sign language many years ago but has not practiced much. The result is that at this time Plaintiff is unable to effectively communicate with her.

## Interrogatory 7

State each time (if any) that the Plaintiff believes he was disciplined for taking an action or not taking an action because he could not hear orders made by IDOC personnel, including the facility where this occurred, the approximate date, the name and title of the individual who gave the order, the circumstances during which the order was given, and what discipline the Plaintiff received.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 7 as overly broad and unduly burdensome. Plaintiff further objects as the question is not limited in time and is oppressive. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall specific dates and all individual details involved in each incident in which he was disciplined for taking an action or not taking an action because he could not hear orders made by IDOC personnel.

Plaintiff received one ticket while he was at Dixon CC. One evening assistant warden Transvesto accused him of stealing oranges from the cafeteria. He came with a ticket and Plaintiff tried to write him a note explaining that the medical staff gave him an orange and a peanut butter sandwich in order to control his blood sugar but the assistant warden just crumpled up the note and tossed it aside. Plaintiff believes he received the ticket at least in part due to the ineffective communication between them him and the assistant warden.

## Interrogatory 8

State whether the Plaintiff informed an IDOC employee or anyone else working at a Reception and Classification Center that the Plaintiff was deaf or hard of hearing when the Plaintiff first entered the Illinois corrections system, including the name and title of the individual informed, and how the Plaintiff informed the individual of this fact. If the Plaintiff has had multiple admissions to the correctional system, please answer this interrogatory for each admission to a Reception and Classification Center.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 8 as overly broad and unduly burdensome. Plaintiff further objects that this question is not limited in time and is thereby also oppressive. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff states that it is impossible for him to recall all of the specifics of all communications he had with IDOC personnel when he first entered the Illinois corrections system. When Plaintiff was at Menard CC he was identified as deaf and he was issued an identification card that indicated he was deaf. When he was transferred to Dixon he asked the male staff taking his picture to have "deaf" indicated on his identification card. He was advised he had to ask the warden. Plaintiff asked a female warden at Dixon CC to have "deaf" placed on his identification card but she refused.

## Interrogatory 9

State each time (if any) since January 1, 2007 that the Plaintiff believes he was injured or did not receive medical treatment because he could not effectively communicate with medical personnel at any prison or facility operated by the IDOC (including mental health personnel), including the facility where the incident occurred, the approximate date of the incident, the medical staff involved, how the Plaintiff and the medical staff attempted to communicate with each other, what injury occurred or what treatment the Plaintiff sought, and whether the Plaintiff received medical care for the same issues at a later time, supplying the date and location of that medical care.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 9 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Since Plaintiff has diabetes and must closely monitor his blood sugar levels, he must communicate with doctors and other medical personnel so that he can report any instances where he feels dizzy or otherwise has effects from either too high or too low blood sugar. Medical personnel must be able to effectively communicate with Plaintiff so that he knows whether his blood sugar levels are within the acceptable range. However, due to IDOC's failure to provide Plaintiff with effective communication with medical personnel, Plaintiff has had repeated episodes where his diabetes was uncontrolled, and on at least one occasion Plaintiff went into a diabetic coma as a result of insufficient blood sugar.

Plaintiff believes that Dr. Murray's refusal to exchange notes or to provide an interpreter for him resulted in his kidney disease going undiagnosed which caused his kidney disease to progress to the point that his kidneys failed completely, rendering him dialysis dependent. He believes that if he would have been offered effective communication his condition would have been diagnosed early and would have been treatable with medication rather than dialysis. See also Plaintiff's Answers to Interrogatories 6 and 7.

## Interrogatory 10

State whether the Plaintiff has received an IDOC orientation manual for any facility, what facility that was, the approximately date that he received the manual, and state whether

8

Plaintiff was able to read the manual. If the Plaintiff was unable to read the manual, state the reason(s) why he could not read it.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 10 as overly broad and unduly burdensome, including because it is not limited in time. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff has been provided with an orientation manual at each facility where he has been incarcerated. He was able to read and understand the manuals.

**Interrogatory 11**

State each time (if any) since January 1, 2007 that the Plaintiff was unable to attend or participate in an educational, vocational or substance abuse treatment program because he is deaf or hard of hearing. For each such time, state the facility where this occurred, the approximate date, what educational or vocational or substance abuse treatment program the Plaintiff sought to attend or participate in, and list the individual(s) (if any) that the Plaintiff informed that he was unable to attend or participate because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 11 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he was unable to attend or participate in an educational, vocational or substance abuse treatment program because he is deaf or hard of hearing. Nor would Plaintiff necessarily know of all such instances, as he may have been denied such opportunities without his knowledge, because he may not have heard of or otherwise been effectively informed of such opportunities. When Plaintiff was at Dixon CC he requested that he be allowed to attend cooking school. The request was made to the cooking class instructor. He was never given an answer and believes this was an intentional effort to tacitly deny the request due to the fact that he is deaf and Dixon CC did not want to have to provide him with an interpreter. Plaintiff is aware that another inmate who is deaf advocated constantly to obtain an interpreter for his classes and that this angered Dixon CC staff due to the expense of paying for an interpreter.

**Interrogatory 12**

State each time (if any) since January 1, 2007 that the Plaintiff has been unable to earn credit toward his sentence in any way because of his hearing loss, including how the Plaintiff sought to earn the credit, the facility where this occurred, the approximate date,

9

and the individual(s) (if any) that the Plaintiff informed that he was unable to earn credit toward his sentence because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 12 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have been unable to earn credit toward his sentence in any way because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances. Plaintiff does not believe that he has been denied the opportunity to earn credits toward his sentence due to his deafness because it is his understanding that he is ineligible to earn such credits due to the nature of his conviction.

**Interrogatory 13**

State each time (if any) since January 1, 2007 that the Plaintiff has been denied employment or participation in a work program within an IDOC prison or facility because of his hearing loss, including the approximate date, what employment or work program was denied to the Plaintiff, the facility where this occurred, and the individual(s) (if any) that the Plaintiff informed that he was denied employment or participation in a work program because of his hearing loss. Plaintiff has made no requests for employment due to his poor health.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 13 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information. Plaintiff has made no requests for employment due to his poor health.

**Interrogatory 14**

State how the Plaintiff communicates with his currently assigned Counselor.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 14 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information. Plaintiff does not communicate with his current counselor.

See also Plaintiff's Answer to Interrogatory 2.

## Interrogatory 15

State the name of the Plaintiff's current cell mate, state whether his current cell mate is deaf or hard of hearing, state how the Plaintiff communicates with his current cell mate, state whether any of Plaintiff's cell mates since January 1, 2007 were deaf or hard or hearing, and state how the Plaintiff communicated with the cell mates he has had since January 1, 2007.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 15 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

At Dixon CC Plaintiff asked to have a deaf cellmate and was denied for the reason that he needed to be housed with a hearing person so he could have assistance with fire alarms. He then asked to be moved to unit 42 where other deaf inmates were housed but his counselor was unresponsive to his request. He continued to request to move for a period of 1.5 years to his counselor who did not act on his request. Eventually, another prisoner went to one of the guards he knew and requested that Plaintiff be allowed to move to unit 42; the guard assisted and George Childress was moved to unit 42.

Plaintiff's current roommate is Bud Woodall. Plaintiff is not qualified to diagnose another individual as deaf or hard of hearing, but does not believe that Mr. Woodall is deaf or hard of hearing. Plaintiff does not believe that Mr. Woodall knows sign language. They communicate through written notes. Many of Plaintiff's attempts to communicate with Mr. Woodall were not effective or successful.

## Interrogatory 16

State each time (if any) since January 1, 2007 that the Plaintiff believes he was denied participation in a religious service because of his hearing loss, including the facility where this occurred, the approximate date, and the name and title of the individual(s) that the Plaintiff informed that he was being denied participation in a religious service because of his hearing loss.

## ANSWER:

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 16 as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have been denied participation in a religious service because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances.

11

At Dixon, there sometimes were church services available led by persons who signed but who were not professional interpreters. Those services were not available every week from January 1, 2007 until the time Plaintiff was transferred out of Dixon. Plaintiff has been denied the opportunity to attend religious services at both Jacksonville CC and Graham CC because deaf church services are not offered and interpreters are not provided at the church services.

**Interrogatory 17**

State whether there is a television in the Plaintiff s current cell, whether the television has closed captioning, whether the Plaintiff has turned on the closed captioning and if not, why not, whether the Plaintiff ever requested headphones for the television, the approximate date of the request, the facility where the request for headphones was made, whether the Plaintiff received the requested headphones, and whether the Plaintiff ever bought headphones without making a request for them.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 17 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

The TV in George Childress' cell has closed captioning and it is turned on and he uses it.

**Interrogatory 18**

Since January 1, 2007, state whether the Plaintiff has requested that a television in a common area of a prison have its closed captioning turned on, including the facility where this occurred, the approximate date, the individual(s) to whom the Plaintiff made the request, whether the closed captioning was turned on.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 18 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he requested that a television in a common area of a prison have its closed captioning turned on.

At Dixon CC Plaintiff made three requests that the guards turn on the close captioning. He would have made many more such requests but another deaf inmate usually made the requests before Plaintiff had the opportunity to do so.

**Interrogatory 19**

State each time (if any) that the Plaintiff has been evacuated from his cell due to any type of emergency situation including but not limited to a drill, including the facility where this occurred, the approximate date, and how the Plaintiff was informed that there was an emergency evacuation.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 19 as unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all instances in which he may have been evacuated from his cell due to any type of emergency situation. There is no formal mechanism to notify Plaintiff about emergency situations, such as weather emergencies, fires or lockdowns.

**Interrogatory 20**

State each time since January 1, 2007 (if any) that the Plaintiff believes he missed a shower because of his hearing loss, including the facility where this occurred, the approximate date, and the names and titles of any individuals he informed that he missed a shower due to his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 20 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does know or recall the specifics of all instances in which he may have missed a shower because of his hearing loss. Nor would Plaintiff necessarily know of any such instances, including because his hearing impairment and/or other factors may have prevented him from knowing, discovering, or adequately understanding such instances. Plaintiff may have missed a shower and was unaware that the shower was missed because he was not made aware of the announcement for the shower by IDOC personnel.

Plaintiff is not aware of missing any showers due to his hearing loss.

**Interrogatory 21**

State each time (if any) since January 1, 2007 that the Plaintiff believes his request to be transferred to a different IDOC facility was denied because the Plaintiff was deaf or hard of hearing, including the facility from which the Plaintiff asked to be transferred, the facility to which the Plaintiff asked to be transferred, the approximate date of the request,

13

and the individual(s) (if any) that the Plaintiff informed that his request was denied because of his hearing loss.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 21 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff requested to be transferred to Vienna CC so that he could be closer to his family to facilitate more frequent visits. He was sent to Dixon CC instead. At Dixon he again requested to be sent to Vienna CC. Between June and December of 2011 he made four written requests that he would slip under his counselor's door. His counselor told him that Springfield DOC granted his request. He thought his request was granted because he was put on a bus that he believed was going to Vienna CC and instead he was transferred to Jacksonville CC. He was told by Jacksonville CC staff that Springfield DOC changed plans for him.

**Interrogatory 22**

State each time (if any) since January 1,2007, that the Plaintiff was unable to file a grievance because he was hard of hearing, including the facility where this occurred, the approximate date when this occurred, why the Plaintiff believes his hearing loss was the cause, and the individual(s) that the Plaintiff contacted for assistance in filing a grievance.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 22 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff has a personal helper at Graham CC. He wants to file a grievance against the commissary because commissary staff verbally state to his helper that the two are not allowed in the commissary together. His helper has told him this. His helper is not interested in filing a grievance over it. Plaintiff would like to file a grievance but he believes this would be futile from prior experiences. He anticipates that he will be asked "did you hear the commissary staff say" which will result in his grievance being dismissed because he will have to state "no, because I'm deaf." It is this game-playing due to his deafness that frustrates Plaintiff's access to a meaningful grievance process.

**Interrogatory 23**

State each time since January 1,2007 (if any) that the Plaintiff has requested an accommodation not mentioned previously in the answers to these interrogatories from any individual employed by or working at the Illinois Department of Corrections ("IDOC") or any prison or facility operated by the IDOC, which relates to the Plaintiffs

hearing loss, including a description of the accommodation, the approximate date the request was made, the facility where the accommodation was requested, all individuals asked for the accommodation, whether the request was made in writing, and the response to the request for the accommodation.

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 23 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not know or recall the specifics of all instances in which he may have requested an accommodation not mentioned previously in the answers to these interrogatories, or the details of the results of any such request. Plaintiff does not recall making requests for accommodation not otherwise mentioned in the answers to these interrogatories.

**Interrogatory 24**

State when the Plaintiff was first diagnosed with hearing loss, who made the diagnosis, the facility or office where this occurred, and the reason for the Plaintiff's hearing loss, if known.

**ANSWER:**

Plaintiff asserts the general objections set forth above. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff was first diagnosed with progressive hearing loss in 1969 following his service in the army as a tank driver in Vietnam. In 1978 he had an operation on his ears that made his hearing loss worse resulting in his being unable to hear out of his left ear and in need of a hearing aid in his right ear. Plaintiff was deaf by 1988.

**Interrogatory 25**

Before the Plaintiff was sentence to the custody of the IDOC, what (if any) auxiliary aids did the Plaintiff use to communicate with individuals in his family? What auxiliary aids (if any) did the Plaintiff use to communicate with individuals in the community? What auxiliary aids (if any) did the Plaintiff use to communicate at his employment? Does the Plaintiff believe that any of the auxiliary aids that the Plaintiff used before being sentenced to the custody of the IDOC are not available to him within the IDOC system?

**ANSWER:**

In addition to the general objections set forth above, Plaintiff specifically objects to Interrogatory Number 25 as overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Plaintiff provides the following information.

Plaintiff does not recall the specifics of all auxiliary aids he has used to communicate in the past. Plaintiff communicates with his family through ASL. Plaintiff used a hearing aid in his left ear, which device has been unavailable to him in IDOC for repeated and extended periods of time.

 Plaintiff further affirmatively states that auxiliary aids that he used before being sentenced to IDOC custody are not available to him within the IDOC system.

Respectfully submitted,
(as to Objections only)


s/ Amy F. Peterson
Amy F. Peterson
One of the Attorneys for Plaintiff

Robert L. Michels
Nicole E. Wrigley
Kevin P. McCormick
Joseph L. Motto
Mary T. McCarthy
Ryan M Dunigan
Winston & Strawn LLP
35 W. Wacker Dr.
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
rmichels@winston.com
NWrigley@winston.com
KMcCormick@winston.com
JMotto@winston.com
MMcCarthy@winston.com
RDunigan@winston.com

Alan S. Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, Illinois 60640
Telephone: (773) 769-1411
Facsimile: (773) 769-2224
alanmills@comcast.net

Barry C. Taylor
Amy F. Peterson
Laura J. Miller
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Facsimile: (312) 341-0295
BarryT@equipforequality.org
Amy@equipforequality.org
Laura@equipforequality.org

Howard A. Rosenblum
National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
Facsimile: (301) 587-1791
howard.rosenblum@nad.org

*Counsel for Plaintiffs*

## SIGNATURE PAGE

In accordance with 28 U.S.C. § 1746, the undersigned, George Childress, one of the named plaintiffs in the case of Holmes v Godinez, 11 C 2961, signs this document and declares under penalty of perjury under the laws of the United States of America that Plaintiff's Answers to Defendants' First Set of Interrogatories to Plaintiff George Childress are true and correct to the best of his knowledge and belief.

_George B. Childress_
George Childress

18

## CERTIFICATE OF SERVICE

Please take notice that the undersigned, an attorney, on oath, states she served the attached Plaintiff George Childress's Response to Defendants' First Set of Interrogatories by sending via e-mail and regular mail to Kevin Lovellette, Assistant Attorney General, General Law Bureau, 100 W. Randolph Street, 13th Floor, Chicago, Illinois 60601 and KLovellette@atg.state.il.us on April 17, 2013.


s/ Amy F. Peterson

# EXHIBIT 19

**<u>FILED UNDER SEAL</u>**

# EXHIBIT 20

**<u>FILED UNDER SEAL</u>**