UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RALPH HOLMES, *et al.*, | |
| Plaintiffs, | **Case No. 11 CV 2961** |
| v. | **Honorable Marvin E. Aspen** |
| SALVADOR A. GODINEZ, | |
| Defendant. | |

**PLAINTIFFS' APPEAL FROM
MAGISTRATE JUDGE'S DISCOVERY ORDER**

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure, Plaintiffs file this appeal from the Magistrate Judge's order entered on February 9, 2017 (Dkt. 386), which denied in large part Plaintiffs' request for supplemental discovery into the current practices of Defendant in accommodating the needs of deaf and hard of hearing prisoners to allow for effective communication. The Magistrate Judge's order should be overturned because it is both contrary to law and clearly erroneous, as it misinterprets the scope of discovery permitted by the Federal Rules of Civil Procedure, violates the fundamental requirements of due process, and is contrary to this Court's opinion and order entered on August 2, 2016 (Dkt. 342).

**I.     Introduction**

Plaintiffs, who are deaf or hard of hearing inmates confined to prisons operated by the Illinois Department of Corrections ("IDOC"), allege that IDOC has violated their statutory and constitutional rights by failing to provide adequate accommodations for their hearing disabilities, which has prevented Plaintiffs from being able to communicate effectively in the prison environment.  As part of the preparation for trial of this case, Plaintiffs filed a motion *in limine* (Dkt. 324) seeking to limit the evidence the parties could introduce at trial to evidence of acts,

events, or omissions that occurred during the time period for which discovery was permitted—i.e., through the close of fact discovery on September 12, 2014. Defendant opposed this motion, arguing that it should be permitted to introduce evidence relating to alleged events and improvements in IDOC's treatment of deaf and hard of hearing inmates that transpired or were put into place after September 12, 2014, even though Plaintiffs had no opportunity for discovery of those issues. The Court accepted Defendant's position, allowing evidence at trial regarding the post-September 12, 2014 period, but also ordering supplemental discovery into that period:

> [T]o avoid any potential prejudice to either party, discovery will also be reopened for sixty days to allow the parties to inquire into any current prison conditions.

Dkt. 342 at 7. The Court also specifically ordered that Plaintiffs be allowed to depose 11 newly identified witnesses on IDOC's trial witness list, who IDOC had not disclosed or identified as witnesses until well after discovery had closed. *Id.*

## II. Plaintiffs' Unsuccessful Attempts to Obtain Discovery Relating to the Post-September 2014 Period

Despite what Plaintiffs view as the unambiguous language in the Court's order permitting supplemental discovery as to ***any*** current prison conditions, Defendant responded to the order by refusing Plaintiffs' request to update its previous responses to discovery for the post-September 12, 2014 period, refusing to allow depositions of IDOC employees requested by Plaintiffs, and insisting that the only discovery to which it would agree for the post-September 12, 2014 period was discovery related to a few selected items hand-picked by Defendant, which Defendant claimed showed ***improvements*** Defendant claimed to have made since the close of discovery. Defendant took the position that Plaintiffs were barred from conducting any discovery Plaintiffs requested for the post-September 12, 2014 period, which might uncover instances where the

2

accommodations provided to deaf and hard of hearing prisoners had not improved or had even gotten *worse* since the close of discovery.

Plaintiff thus moved to compel Defendant to update its prior discovery responses so as to account for the post-September 2014 period as to all matters fit for discovery in this case, not simply those favorable to Defendant. (Doc. 343.) This Court referred that motion to the Magistrate Judge (Doc. 345) and subsequently broadened the referral to include general supervision of all discovery relating to the post-September 12, 2014 period. *See* Dkt. 353. Since that referral, the parties have appeared before the Magistrate multiple times, and have filed several briefs on the appropriate scope of such supplemental discovery.

Unfortunately, the Magistrate Judge now has not only declined to order Defendant to generally update its discovery responses to cover the post-September 2014 period, but also has generally allowed Defendant to pick and choose what discovery it will allow and what evidence it will offer to support its defense case for that period, without granting Plaintiffs equal ability to discover information for the period that might support Plaintiffs' claims. This has created a grossly unfair state of affairs with respect to discovery and trial: this Court has ordered that the post-September 12, 2014 period is relevant at trial; Plaintiffs bear the burden of proof and will now be seeking to show at trial Defendants' unlawful conduct not only for the period up to the close of initial discovery, but also for the post-September 12, 2014 period; Defendants hold virtually all of the relevant documents and other information that would help prove Plaintiffs' claims; and Plaintiffs have been barred from taking even remotely adequate discovery of such relevant documents and information in the post-September 12, 2014 period, thereby unduly prejudicing their ability to obtain evidence to establish their claims.

As a first step in supplemental discovery, on November 17, 2016, the Magistrate Judge ordered Defendant to produce only certain discrete records for the post-September 12, 2014 period, concerning a very limited subset of topics, including specifically the identification and training of IDOC facility ADA coordinators, identification of deaf and hard of hearing inmates, and inmate grievances and disciplinary incidents. Dkt. 366. The Court also permitted Plaintiffs to depose Alan Pasley, the IDOC Program Compliance Officer, whose job responsibilities include ensuring system-wide compliance with the Americans with Disabilities Act. *Id.*

Pursuant to the Magistrate Judge's November 17 order, Plaintiffs deposed Mr. Pasley, who testified that, since he assumed his position in September 2016, all of the facility-level ADA coordinators had been fully trained with a training program he personally updated, guards and other IDOC employees had completed cycle training, and ADA coordinators were meeting with all newly admitted deaf and hard of hearing prisoners who needed an accommodation to develop a mutually agreed upon communication plan for each of them. A. Pasley (12/20/2016) Dep. Tr. ("A. Pasley Dep. Tr.") 15:11-18, 19:2-10:15, 80:15-19, 127:11-128:9. He also stated that the private company providing medical services to prisoners (Wexford Health Sources) was responsible for determining the extent of hearing loss and for accommodating the needs of all prisoners during medical exams and procedures. *Id.* at 88:9-15, 131:21-132:1. However, Mr. Pasley admitted that he has no knowledge of what accommodations were actually being provided to deaf and hard of hearing inmates, either by IDOC or by Wexford. *Id.* at 55:6-11, 88:9-20, 94:18-22, 94:23-95:4, 96:24-97:6, 133:12-15.

During his deposition, Mr. Pasley identified 13 specific categories of documents which would demonstrate the extent to which Plaintiffs have been provided with accommodations required to permit them to effectively communicate, and thus able to participate in all programs

4

available to non-hearing impaired prisoners. *See, e.g.*, *id.* at 16:11-14 (documents concerning specialized staff training on ADA issues); 149:8-13 (documents re ADA coordinator turnover at IDOC); 102:4-103:3 (documents concerning whether ASL interpreters were provided to inmates whose communication plans provide interpreters as an accommodation); 32:3-33:6 (documents concerning IDOC offers for alternative accommodations); 36:23-37:4 (same); 54:2-6 (documents concerning decisions on interpreter requests); 60:2-18 (documents concerning interpreter contracts and requests); 66:16-67:18 (documents concerning communication plan adjustments); 84:20-85:18 (documents discussing an inmate's challenges communicating); 122:1-16 (documents concerning inmate complaints); 128:19-23 (documents concerning "cell extractions"). In most cases, Mr. Pasley testified that these documents should be maintained by the ADA coordinator at each prison, and thus could be readily located.

Plaintiffs filed a motion seeking production of the specific documents identified by Mr. Pasley. Dkt. 376. Defendant responded that none of these documents should be produced, incredibly reiterating its untenable contention that the only discovery which should be permitted into the post-September 12, 2014 period was discovery related to certain hand-picked documents and testimony that Defendant wants to offer about ***improvements*** Defendant claims to have made since September 12, 2014, not discovery into any documents and testimony evidence that might support Plaintiffs' claims or challenge Defendant's evidence.

During argument on this motion (Tr. January 12, 2017), the Magistrate Judge suggested that he agreed that all of the documents sought by Plaintiffs should fairly be subject to discovery, in light of Defendant's stated position that it intended to put on at trial evidence rebutting allegations that deaf and hard of hearing inmates were denied needed accommodations in particular circumstances (Tr. January 12, 2017, p. 25, lines 10-18):

5

> THE COURT: No, I guess the point -- I should be more specific in my question, that IDOC will rebut evidence of [IDOC's] noncompliance [with the law] when [such evidence is] presented [by Plaintiffs for the post-September 12, 2014 period].
>
> MR. LOVELLETTE: Yes. Specific instances, yes, probably from an ADA coordinator who will testify, no, he was not given this specific accommodation, but he was given this one.
>
> THE COURT: I feel like then the information generated after September 2014 is fair game.

Nonetheless, the Magistrate Judge ultimately refused to require Defendant to produce the documents identified by Mr. Pasley. Instead, as described in greater detail below, through the order that is the subject of the present appeal, the Magistrate Judge ordered that many of those categories of documents need not be produced at all, whereas other documents should be produced but only as to a maximum of three prisoners per prison.[1]

### III. The Magistrate Judge's Order Is Contrary to Law and Clearly Erroneous

The Magistrate Judge's Order unduly and unfairly limits Plaintiffs' ability to explore the treatment of deaf and hard of hearing inmates by IDOC during the post-September 2014 period, while allowing IDOC to cherry-pick evidence of supposed changes which it believes are helpful to the defense. This one-sided ruling unfairly prejudices Plaintiffs' ability to prove their case, and completely ignores this Court's specific directive allowing discovery as to "***any*** current prison conditions," (emphasis added). Further, this sort of one-sided discovery violates the basic precepts of discovery under the Federal Rules of Civil Procedure, which are meant to put the parties on an equal footing before trial, with "full and adequate preparation" achieved through "liberal

---

[1] According to a list provided by Defendant of deaf and hard of hearing prisoners who entered the Department of Corrections since September 2014, there are more than three prisoners at each of the following prisons: Big Muddy, Dixon, Lawrence, Robinson, and Vienna. Thus, rather than 47 prisoners, Plaintiffs are limited to discovery regarding only 34 prisoners. And of course, Plaintiffs are completely foreclosed from determining whether the dozens of prisoners admitted to the system prior to September 2014 are receiving the required accommodations.

6

discovery" that should "eliminat[] unfair surprise." *Carter Prods. v. Eversharp*, 360 F.2d 868, 872 (7th Cir. 1966). Rule 26(b), in particular, specifically provides for "discovery regarding ***any*** nonprivileged matter that is relevant to ***any*** party's claim or defense…." Fed. R. Civ. P. 26(b) (emphasis added). Rather than follow this clear directive, the Magistrate Judge limited discovery to matters relevant only to Defendant's defense that it provided accommodations, but not to Plaintiffs' claim that Defendant failed to accommodate the communication needs of deaf and hard of hearing prisoners. Finally, the due process clause of the Fourteenth Amendment requires that plaintiffs and defendants be given an equal chance to prove their claims, rather than allowing either side to unilaterally cherry-pick discovery of only those facts which are favorable to it.

Examination of the specific categories of documents at issue in this appeal demonstrates more fully the unfair prejudice of the Magistrate Judge's ruling:

**a.  IDOC Incident Reports**: Mr. Pasley testified that IDOC incident reports are supposed to be completed by any staff person who determines that an inmate has a problem with hearing or communication. Pasley Dep. Tr. 78:23-79:5; 85:6-15. Those incident reports are forwarded to the shift commander and then to the warden and, from there, are distributed to the ADA coordinator. *Id*. at 79:6-15. Mr. Pasley testified that incident reports are the primary method that IDOC uses to identify prisoners who require an accommodation to effectively communicate and participate in prison programs. *Id*. at 78:23-79:5. These incident reports are relevant to Plaintiffs' case, as they will both assist in determining whether all members of the Plaintiff class have been included in the identification list(s) provided by Defendant, and disclose whether the accommodations requested or needed by prisoners were in fact provided, and how deaf and hard of hearing inmates have been treated in the post-September 12, 2014 period. Mr. Pasley testified

7

that the ADA coordinators should maintain files of those incident reports in their offices. *Id*. at 78:23-79:18; 129:4-21.

The Magistrate Judge's order disallows Plaintiffs to obtain any of these incident reports, on the ground that Defendant had already produced a list of 47 prisoners which it claimed were all of the deaf and hard of hearing prisoners entering IDOC after September 12, 2014. However, Plaintiffs are not required to accept the unsworn statement of Defendant's counsel that the summary he provided is complete and accurate. In fact, pursuant to Rule 1006 of the Federal Rules of Evidence, summaries are admissible *only* if the underlying documents have been made available for inspection and copying. *See* Fed. R. Evid. 1006. There is no justification for compelling Plaintiffs to accept Defendant's attorney's representations regarding the completeness of the summary list of deaf and hard of hearing prisoners he provided, while barring Plaintiffs from examining the underlying documents which Defendant's own witness testified should provide an accurate accounting of every prisoner identified as requiring an accommodation. Alternatively, if there are names on the list provided by Defendant's attorney for which there are *not* corresponding incident reports, then that would be evidence that defendants are *not* accurately identifying all prisoners in need of accommodations. Plaintiffs therefore request production of all incident reports identifying prisoners who are deaf or hard of hearing completed by any IDOC staff person since September 12, 2014.

**b.** **IDOC Inmate Request Forms** ("DOC 0286"): Mr. Pasley testified that in addition to staff identification of prisoners in need of accommodation, a prisoner could send an "Inmate Request Form" (which he stated were known as DOC 0286 forms) to his/her counselor requesting an accommodation. A. Pasley Dep. Tr. 22:4-18. Mr. Pasley stated that a copy of any inmate request form requesting an accommodation should be routed to the facility ADA coordinator, and

that coordinators should maintain copies in their office. *Id*. at 79:11-18. Like incident reports, these inmate request forms are highly relevant to Plaintiffs' claims, as they will both assist in determining whether all members of the Plaintiff class have been included in the list(s) provided by Defendant, and disclose whether the accommodations requested or needed by prisoners were in fact provided, and how deaf and hard of hearing inmates have been treated by IDOC in the post-September 12, 2014 period.

The Magistrate Judge's order requires Defendant to produce these forms, but only for those prisoners who Defendant identified as deaf or hard of hearing and who entered the system since September 12, 2014, and, within that already limited subset, for no more than three prisoners from any one prison. This means that Plaintiffs have no way of determining whether those prisoners who entered the system *before* September 12, 2014 have been provided the accommodations they have requested since September 12, 2014, though as noted above, Defendant has stated expressly that it intends to offer at trial evidence rebutting any suggestion any such prisoners have been denied appropriate accommodations. The Magistrate Judge's order provided no explanation for why Plaintiffs should be limited to a subset of documents relating only to newly sentenced prisoners. Plaintiffs therefore request production of all such inmate request forms completed since September 12, 2014.

      **c.**    **IDOC Communication Plans**: Mr. Pasley testified that a communication plan is completed for every prisoner who IDOC staff identifies as needing or requesting a communication-related accommodation. A. Pasley Dep. Tr. 19:6-20:15. Mr. Pasley testified that he has maintained in his office a file of all such plans he has received since September 2016, and that the facility ADA coordinators should each have a similar file for prisoners at their respective institutions going back further than September 2016. *Id*. at 19:10-20:1. These plans are supposed

9

to describe the accommodations the prisoner and the ADA coordinator agree are required for each prisoner to participate in programming. They include hearing aids authorized, special equipment like vibrating watches, and whether an ASL interpreter is required, among other things. Whether such plans exist, whether they are complete, and whether they are being followed goes to the heart of Plaintiffs' case. The plans show how deaf and hard of hearing prisoners are treated, including IDOC's determination, if any, of what their minimum accommodations are supposed to be, and will help show whether Plaintiffs are in fact being provided adequate accommodations in the post-September 12, 2014 period, to allow them to communicate effectively.

Again, the Magistrate Judge's order, without explanation, denied Plaintiffs' request for any plans at all for those prisoners who entered the system prior to September 12, 2014, and limited Plaintiffs to the plans of the 47 people defendant identified as entering the system since September 12, 2014, but no more than three per prison. This limitation completely forecloses Plaintiffs' ability to determine whether the dozens of prisoners who entered the system prior to September 12, 2014 are being provided the accommodation they need for effective communication, and severely limits Plaintiffs' ability to discover how even prisoners who recently entered the system are being treated. Plaintiffs therefore request production of all such communication plans completed since September 12, 2014.

    **d.**    **Inmate Grievances**: Mr. Pasley testified that if an inmate disagrees with his or her communication plan or is not receiving the accommodations that are set forth in the plan or that are otherwise needed, the inmate can file a grievance according to the administrative grievance procedure at the inmate's facility. A Pasley Dep. Tr. 72:2-4. Mr. Pasley testified that ADA coordinators should maintain a separate file for all grievances relating to deaf and hard of hearing

complaints; thus, IDOC would not have to go through each individual's master file to locate relevant grievances. *Id*. at 95:5-96:4.

The Magistrate Judge's order did not address this issue and did not permit discovery of these documents, while providing no reason for denying Plaintiffs these documents. Plaintiffs should receive a copy of all grievances regarding complaints made by deaf or hard of hearing prisoners since September 12, 2014, relating to their access to interpreters, hearing aids, education, mental health, work, or religious programs or services, prison notifications or alerts, or communications with IDOC personnel.

   **e.**  **IDOC CHAMPS Information**: While the inmate communication plans set forth in general terms what accommodations are required, Mr. Pasley admitted that just because, for example, a plan states that an American Sign Language ("ASL") interpreter is required, that does not mean that one will always be provided to an inmate in any particular situation. A. Pasley Dep. Tr. 45:9-23. Rather, Mr. Pasley acknowledged that ADA Coordinators would generally determine on a case-by-case basis what specific accommodation IDOC will provide for specific interactions. *Id*. at 45:24-46:4. In addition, Mr. Pasley testified that, if an agreed upon accommodation is not actually provided, the inmate may initially raise that concern with his counselor. *Id*. at 46:4-16; 32:3-24. Mr. Pasley testified that, in general, such interactions between a prisoner and a counselor should be memorialized in an IDOC system commonly known as CHAMPS. *Id*. at 32:9-33:13. Mr. Pasley testified that while the text of the CHAMPS entries cannot be searched (at least to his knowledge), all entries for a specific prisoner can be searched. *Id*. at 111:11-112:15. These communications are directly relevant to one of the central claims in Plaintiffs' case—that regardless of what a communication plan says, prisoners, in many instances, are not being provided interpreters or other accommodations which are required for effective communications.

11

The Magistrate Judge's order refuses to allow Plaintiffs to obtain *any* CHAMPS entries for prisoners who are deaf or hard of hearing who entered the system prior to September 2014, and limited the information on more recent prisoners to no more than three prisoners from any one prison. There is no justification for these restrictions. Therefore, Plaintiffs request that the Court order Defendant to produce a copy of *all* CHAMPS entries relating to all deaf and hard of hearing prisoners made since September 12, 2014.

**f.     ADA Coordinator Bulletins**: Mr. Pasley testified that when a prisoner is identified as deaf or hard of hearing, a "bulletin" or memorandum is sent by the facility ADA coordinator to the housing unit, counselors, medical unit, and anyone else who might interact with that prisoner informing them of the prisoner's need for accommodations. A. Pasley Dep. Tr. 47:7-16. Mr. Pasley testified that copies of those memos are maintained by each facility ADA coordinator. *Id*. at 115:6-21.

These bulletins contain information that is highly relevant to Plaintiffs' claims, such as whether these notices are in fact given, whether the list of class members Defendant provided to counsel is complete, and whether the specific accommodations provided for in the bulletins were in fact provided for prisoners who are deaf or hard of hearing. The Magistrate Judge's order neglected to address this issue, ordering no discovery without any explanation. There is no justification for barring Plaintiffs from obtaining this set of easily locatable documents. The Court should thus order Defendant to produce all such bulletins issued since September 12, 2014.

**g.     Emails Concerning Accommodations for Deaf and Hard of Hearing Inmates**: Mr. Pasley testified that at least three types of emails would contain information relating to accommodations requested by, provided to, or needed for deaf and hard of hearing prisoners to communicate effectively. First, counselors, ADA coordinators, and at times, Mr. Pasley, use email

12

to discuss and determine whether IDOC would provide a specific accommodation that is requested, needed, or considered, either generally or in a specific instance. A. Pasley Dep. Tr. 36:13-37:4; 85:6-18. Second, emails may be sent in connection with sending a prisoner who is deaf or hard of hearing to an outside audiologist for testing, and in receiving the results of those tests. Third, there may be emails relating to the installation (and planned installation) of video systems for use in visits at various facilities. Mr. Pasley testified that the intent is to eventually use those systems to provide remote interpreters for deaf and hard of hearing prisoners, rather than (or in addition to) having interpreters physically travel to prisons. *Id*. at 89:22-90:2. In the pre-September 12, 2014 period, Defendant was required to produce emails relating to accommodations requested and provided to deaf and hard of hearing inmates, and such emails provided highly relevant documentation of what accommodations were and were not requested and provided, and, at times, the reasons for the decision. Similarly, the testing of prisoners to determine the extent of their hearing loss is obviously relevant to proving their need for accommodations. Likewise, the use of remote interpreters (or the existence of this capacity or lack thereof) is relevant to Plaintiffs' claims that IDOC is not providing the accommodations required for effective communication.

Without citation to any authority or evidence, the Magistrate Judge's order held that emails would not provide any information beyond that available in the other documents. This is simply not close to accurate or supportable, and there is no basis for this conclusion in the record or otherwise. In fact, discovery in the pre-September 2014 period, including emails produced for that period, shows that there is every reason to believe that highly relevant evidence relating to how deaf and hard of hearing inmates are treated is reflected in IDOC's emails. Those emails often contained admissions that necessary accommodations were not provided, or explained why certain requests for accommodation would not be granted. Understanding IDOC's reasoning is crucial to

13

rebutting claims that IDOC may make at trial that it provided effective communications in all instances. Plaintiffs therefore request all relevant emails for the period since September 12, 2014 be produced (just as they were found relevant and ordered to be produced for the period prior to September 12, 2014).

      **h.**      **Written Communications Regarding Deaf and Hard of Hearing Inmates**: Mr. Pasley testified that, aside from emails, he has received letters from individual deaf or hard of hearing prisoners or their family members regarding complaints or concerns about the accommodations provided to them. A. Pasley. Dep. Tr. 61:3-19. Like incident reports, these communications are relevant to Plaintiffs as they will assist in disclosing whether the accommodations requested by prisoners were in fact provided, issues prisoners faced in obtaining accommodations, and IDOC's responses to prisoner complaints.

The Magistrate Judge's order arbitrarily denied access to *all* such communications for people admitted to prison prior to September 12, 2014, and arbitrarily limited Plaintiffs to no more than three prisoners per prison for the more recently admitted group. Defendant should be required to produce all relevant documents for the post-September 12, 2014 period.

      **i.**      **Wexford Documents**: Plaintiffs also request leave to serve a document subpoena on Wexford Health Sources, Inc. Mr. Pasley testified that Wexford was directly responsible for providing any necessary accommodations required to effectively communicate with the inmates it treats. A. Pasley Dep. Tr. 106:10-108:8; 131:21-132:11. Mr. Pasley also testified that Wexford bore sole responsibility for making the determination as to whether an individual should have an audiology test performed. *Id*. at 88:9-15. However, Mr. Pasley had no idea whether IDOC monitored Wexford's compliance with this requirement, nor did he know (other than his general statement that video relays were available in the health care units) what accommodations Wexford

14

actually provided. *Id*. at 88:16-20; 94:18-22; 94:23-95:4. In the period prior to September 12, 2014, Plaintiffs have significant evidence that interpreters and other accommodations were not regularly provided for medical interactions between inmates and Wexford. Plaintiffs are entitled to obtain similar evidence regarding the practices since September 12, 2014.

The Magistrate Judge's order ignored this issue. Plaintiffs thus request leave to issue a subpoena directed to Wexford relating to documents on this issue.

### IV.    Supplemental discovery re the post-September 12, 2014 period generally

To provide the Magistrate Judge with further direction on the scope of supplemental discovery, and to avoid further rulings that unfairly limit the scope of Plaintiffs' discovery for the post-September 12, 2014 period, this Court should enter an order finding that discovery for the post-September 12, 2014 period (whether depositions, document discovery, or written discovery) should not be limited to what Defendant hand-picks to support its case, but should also should encompass areas of evidence that are relevant to Plaintiffs' proof of its claims. Indeed, the principle that should be applied to supplemental discovery is plain and simple: if the discovery was deemed relevant and produced in the pre-discovery period, those same categories of discovery are likewise relevant and should be allowed in the post-September 12, 2014 period. Allowing Defendant to largely dictate the scope of discovery in the supplemental period, and substantially limiting Plaintiffs' discovery in that period, is grossly unfair and will lead to reversible error.

### V.    Conclusion

For the foregoing reasons, Plaintiffs respectfully ask the Court to set aside the Magistrate Judge's February 9, 2017 order and to order Defendant to produce the discovery outlined herein.

Dated:  February 22, 2017                                      Respectfully submitted,

                                                                              /s/  Robert L. Michels

Barry C. Taylor                                                        Robert L. Michels

15

Amy F. Peterson
Laura J. Miller
Rachel Weisberg
Jin-Ho Chung
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Facsimile: (312) 341-0295
BarryT@equipforequality.org
Amy@equipforequality.org
Laura@equipforequality.org
JinHo@equipforequality.org

Howard A. Rosenblum
National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
Facsimile: (301) 587-1791
howard.rosenblum@nad.org

Joseph L. Motto
Andrew C. Sullivan
Joelle L. Ross
Kate Watson Moss
Winston & Strawn LLP
35 W. Wacker Dr.
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
rmichels@winston.com

Alan S. Mills
Uptown People's Law Center
4413 North Sheridan
Chicago, IL 60640
Telephone: (773) 769-1411
Facsimile: (773) 769-2224
alanmills@comcast.net

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on February 22, 2017, a copy of the foregoing was served via CM/ECF on all counsel of record.


By: /s/___Joelle L. Ross_____
One of the Attorneys for Plaintiffs