UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RALPH HOLMES, *et al.,* on behalf of themselves and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | Case No. 11 C 2961 |
| v. ) ) | Magistrate Judge Young B. Kim |
| ROB JEFFREYS, Acting Director of Illinois Department of Corrections, ) ) ) ) | |
| Defendant. ) | |

**DEFENDANT'S STATUS REPORT TO THE COURT**

Defendant, Rob Jeffreys, as Acting Director of the Illinois Department of Corrections, by and through his Attorney, Kwame Raoul, Attorney General for the State of Illinois, and pursuant to its continuing obligation under the Settlement Agreement, entered July 26, 2018 ("Agreement"), hereby submits the instant Status Report to the Court. This status report contains information and data collected regarding the Illinois Department of Corrections's ("IDOC") compliance with the Agreement during the months of July, August, and September 2019. The Department states as follows:

**SECTION IV**
**IDENTIFYING DEAF AND HARD OF HEARING OFFENDERS THROUGH HEARING SCREENING AND AUDIOLOGICAL EVALUATIONS**

The IDOC conducts a physical examination of all offenders upon admission to a reception or classification center ("R&C"). The IDOC requires, in compliance with the Agreement, that upon admission to a Reception and Classification facility, each offender, shall on the day of intake be observed by trained staff for auditory ability and staff shall document the findings on the Offender Medical History form (DOC0092). IDOC Administrative Directive No. 04.03.101 §§

1

II(G)(1)(c)(2)(d). There were 4,890 offenders admitted into one of IDOC's four Reception and Classification Centers during the instant reporting period. Offenders who self-report as deaf or hard of hearing or who have been determined to have hearing loss during their Intake Physical Examination are provided hearing screenings as required under the settlement.

In compliance with the Agreement, offenders can request to receive a Hearing Screening and, if an offender makes such a request, the offender is to receive such a screening within thirty (30) days. On September 26, 2019, the IDOC sent a memorandum to all Health Care Unit Administrators reminding the facilities of the thirty (30) day requirement for conducting hearing screenings. [Exhibit G]. Notices regarding hearing screenings were prominently displayed in IDOC facility living units and medical units. Further, the Department adopted procedures that require offenders whose Hearing Screenings determined that they may be Deaf or Hard of Hearing be referred to an audiologist for an Audiological Evaluation within the timeframes set out in the Agreement. IDOC documents and maintains in the offender's medical file the results of all Hearing Screenings and Audiological Evaluations which include a record containing a description of the determination made as to the type, degree, and configuration of any hearing loss or hearing level. IDOC notes in Offender 360, its centralized database, offenders classified as Deaf or Hard of Hearing.

## SECTION V
## CREATION AND MAINTANCE OF A CRENTRALIZED DATABASE OF DEAF AND HARD OF HEARING OFFENDERS

The IDOC maintains a centralized database for offenders containing an entry for each Deaf or Hard of Hearing offender, including the name of the offender and facility at which the Deaf and Hard of Hearing is housed.

IDOC is actively working towards compliance with the requirements of Section V, Paragraph 40(c), (d), and (e). Changes to the Offender 360 program that would permit Offender 360 to maintain information regarding identification cards, communication plans, and the provision of auxiliary aids and services are in the final stages of development.

## SECTION VI
## DEAF AND HARD OF HEARING OFFENDER IDENTIFICATION CARD

All offenders identified as Deaf or Hard of Hearing are offered the opportunity to have an IDOC-issued offender identification card that clearly indicates the offender is Deaf or Hard of Hearing in compliance with this Section of the Agreement. The Deaf or Hard of Hearing designation is placed upon the back of offender identification cards. See Exhibit E.

## SECTION VII
## DEAF AND HARD OF HEARING OFFENDER
## AUXILIARY AIDS AND SERVICES ASSESSMENT

The IDOC entered into a contract with the Chicago Hearing Society to retain one or more Qualified Specialists who will perform an Auxiliary Aids and Services assessment for every offender identified as Deaf or Hard of Hearing. The Qualified Specialists are completing Auxiliary Aids and Services Assessments for offenders identified as Deaf or Hard of Hearing. IDOC has also retained the Chicago Hearing Society for purposes of retaining a Certified Deaf Interpreter ("CDI") for the Auxiliary Aids and Services Assessment when a Deaf or Hard of Hearing offender has no proficiency in either English or American Sign Language, or when the Qualified Specialist determines that a CDI is necessary.

The Qualified Specialists from the Chicago Hearing Society are consulting with the Facility ADA Coordinators and the Deaf or Hard of Hearing offenders. The Qualified Specialists are memorializing their determinations regarding the specific Auxiliary Aids and/or Services the

offender needs to communicate effectively. The determinations of the Qualified Specialists are being documented in the offender's Communication Plan. Further, the IDOC is following the determinations of the Qualified Specialists as required by the Agreement.

Thus far, approximately [777] offenders have been assessed by the Chicago Hearing Society at the following facilities: Big Muddy River, Centralia, Crossroads ATC, Decatur, Dixon, East Moline, Fox Valley ATC, Graham, Hill, Illinois River, Jacksonville, Joliet TC, Lawrence, Lincoln, Logan, Menard, North Lawndale ATC, Peoria ATC, Pinckneyville, Pontiac, Shawnee, Sheridan, Stateville, Stateville NRC, Taylorville, Vandalia and Western. Communication plans completed by the specialists are included with the facility submission. See Exhibit A.

## SECTION VIII
## AUXILIARY AIDS AND SERVICES PRIOR TO THE AUXILIARY AIDS AND SERVICES ASSESSMENT

Prior to the completion of the Auxiliary Aids and Services Assessment for Deaf or Hard of Hearing offender, IDOC is providing preliminary accommodations as required by the Agreement. Preliminary accommodations for the Deaf and Hard of Hearing are identified through an interactive dialogue between the offender and the Facility ADA Coordinator. Through interactive dialogue, Communication Plans are being completed by the ADA Coordinators prior to the completion of an Auxiliary Aids and Services Assessment.

Accommodations for offenders can include the following: vibrating watches, over the ear headphones, Video Relay Service phone calls, TTY phone calls, white boards, and, in select cases, a personal attendant.

## SECTION IX
## PROVISION AND MAINTENANCE OF AUXILIARY AIDS AND SERVICES TO DEAF AND HARD OF HEARING OFFENDERS AND IMPLEMENTATION OF COMMUNICATION PLAN

The IDOC provides Deaf and Hard of Hearing offenders, at no cost to the offender and subject to the limitations of Paragraph 65 of the Agreement, the Auxiliary Aids and Services provided for in the offender's Communication Plan. IDOC exercises reasonable efforts to secure, in a timely manner, hearing aids for those offenders whose Auxiliary Aids and Services Assessment indicate they should be provided a hearing aid or aids. The IDOC maintains an adequate supply of readily available hearing aid batteries. Further, the IDOC continues to engage in the interactive process with those offenders identified as Deaf or Hard of Hearing for purposes of maintenance of Auxiliary Aids and Services.

The IDOC has received reports of lost and stolen Auxiliary Aids and Services provided in the offender's Communication Plan. Accommodations that are lost or stolen are replaced pursuant to the restrictions of Paragraph 65 of the Agreement.

## SECTION X
## IDOC STAFF TRAINING ON MATTERS REGARDING DEAF AND HARD OF HEARING OFFENDERS

The IDOC Training Academy created and updated training materials addressing the topics required under the Agreement. The training materials (previously disclosed to Plaintiffs) are presented in annual Cycle Training, Pre-Service Orientation Training, ADA Coordinator Training and Cadet Training. A total of 328 IDOC employees received training in one of the various training sessions during the instant reporting period. An ADA Coordinator Training took place on November 21, 2019, and approximately ten additional persons were present. All current ADA Coordinators have received this training. IDOC will provide this training to five additional persons who are back-up coordinators.

## SECTION XI
## ORIENTATION

The facility orientation manuals were updated to include information about the rights of Deaf and Hard of Hearing offenders. Offenders attending orientation who are Deaf or Hard of Hearing are provided a subsequent orientation session. If the offender communicates through American Sign Language, then during the second, separate orientation session, IDOC will provide a Qualified Interpreter to assist the offender in understanding the orientation content provided orally.

## SECTION XII
## COMMUNICATION DEVICES/TECHNOLOGIES FOR DEAF AND HARD OF HEARING OFFENDERS

Video Remote Interpretation (VRI) equipment and translation services are available in all IDOC facility healthcare units. Deaf or hard of hearing offenders who need assistance interpreting medical or mental health information have access to this service. All IDOC correctional facilities maintain a Video Relay Service (VRS) phone. Facilities housing the Deaf and Hard of Hearing possess two TTY machines. The TTY equipment can access publicly available relay service numbers. The volume on all IDOC housing unit phones is set to 65 decibels or higher and background noise cancellation is activated on the phones. Offenders who utilize TTY or VRS phones are given three times the amount of time usually allotted to non-hearing-impaired offenders at no expense to the user. Data is being collected regarding TTY and VRI usage as required by the Settlement. See Exhibit B.

## SECTION XIII
## TELEVISION FOR DEAF AND HARD OF HEARING OFFENDERS

New televisions purchased by IDOC for offender use support open or closed captioning as required by the Agreement. In addition, offenders may purchase televisions that support open or closed captioning. Facilities ensure that closed captioning is activated on movies shown through the IDOC system and on televisions in common areas as required by the settlement. Facilities are

now required to monitor the use of closed captioning. The Backup DAO Unscheduled Inspection Report (DOC0481) includes a field for monitoring of closed captioning. See Exhibit H. IDOC provides Deaf and Hard of Hearing offenders over the ear headphones, free of charge, in accordance with the settlement agreement.

## SECTION XIV
## VISUAL AND TACTILE ALERT NOTIFICATIONS FOR DEAF AND HARD OF HEARING OFFENDERS

The Agreement requires IDOC to begin making reasonable efforts to provide Deaf and Hard of Hearing offenders with a safe and effective tactile notification system that will advise them of events such as the arrival of visitors, commencement of meals, showers, yard time, medical appointments, evacuations, and emergencies.

The IDOC has installed strobes at Jacksonville Correctional Center to act as a visual notification system for warning shots. The strobes have been tested and were visible during daylight hours. The facility is currently working on identifying procedures for activating the strobes and will need to conduct training on the visual notification system with the Deaf and Hard of Hearing offenders. Jacksonville Correctional Center recently tested "belt pagers" to act as a tactile notification system to the Deaf and Hard of Hearing offenders for certain events. The facility is still working on the logistics of the system and should have a plan for implementation in the near future.

## XV
## EQUAL ACCESS TO PRISON EMPLOYMENT

IDOC does not deny assignment opportunities to an otherwise qualified Deaf or Hard of Hearing offender unless, after conducting an individualized assessment, including consultation with the offender, it is determined that the Deaf or Hard of Hearing offender cannot perform the essential functions of the position with or without a reasonable accommodation. Facilities are

required to log the reason for any assignment being denied to a Deaf or Hard of Hearing offender. See Exhibit D.

## SECTION XVI
## HAND RESTRAINTS REGARDING DEAF AND HARD OF HEARING OFFENDERS

On 9/21/2018 a directive was sent out to all facilities by the Chief of Operations regarding the use of hand restraints on deaf and hard of hearing offenders. A copy of this directive was previously provided to plaintiffs' counsel.

## SECTION XVII.
## FACILITY AND CELL ASSIGNMENTS AND TRANSFERS OF DEAF AND HARD OF HEARING OFFENDERS

Deaf and Hard of Hearing offenders are not transferred solely because of their Deaf or Hard of Hearing status to a higher security prison, or to a prison which does not offer comparable programing. Direction was sent to all facilities by the Transfer Coordinator's Office regarding the requirements in this section related to the transfer of Deaf and Hard of Hearing offenders. Further, requests by Deaf and Hard of Hearing offenders to be housed with another Deaf or Hard of Hearing offender are considered. IDOC previously tendered a copy of the direction provided by the Transfer Coordinator's Office.

## SECTION XVIII
## CREATION AND DISSEMINATION OF MATERIALS MEMORIALIZING DEAF AND HARD OF HEARING OFFENDERS' RIGHTS

The facility orientation manuals were updated to include information about the rights of Deaf and Hard of Hearing offenders.

## SECTION XIX
## MONITORING AND REPORTING

The Agreement requires reporting of compliance every 120 days. This report satisfies that requirement. Additionally, the attachments to this report contain additional information as noted below.

Exhibit A contains July, August, and September records, specifically: 5% of all intake records for Graham, Logan, Menard and Stateville NRC, copies of Communication Plans, copies of Hearing Screenings, copies of Audiological Evaluation reports, and copies of all grievances (with responses) filed alleging facts that, if true, would be violations of this Agreement.

Exhibit B contains July, August, and September interpreter logs and VRI, TTY and VRS call logs.

Exhibit C contains a listing of all offenders identified as Deaf or Hard of Hearing and the location where each offender is housed as of November 1, 2019.

Exhibit D contains July, August, and September facility reports of the number of intakes at R&Cs, the number of offenders who have gone through a periodic physical examination (all offenders going through a periodic examination are given a hearing screening, and therefore no offenders are refused a hearing screening at this type of appointment), the number of grievances specific to this Agreement received, whether interpreters or TTY machines were utilized, and whether any offenders were denied employment.

Exhibit E includes July, August, and September reports of the offenders who requested a Hearing Screening, whether they received the requested Hearing Screening, and why any offenders did not receive the requested Hearing Screening. It also contains information reflecting the identification of each offender who, based on a Hearing Screening after the date of this Agreement, was found to require an Audiological Evaluation (and any subsequent steps to provide this evaluation).

9

Exhibit F contains a list of ADA coordinators at each facility.

Exhibit G contains the September 26, 2019, memorandum regarding hearing screenings.

Exhibit H contains IDOC Form DOC0481.

Dated: November 25, 2019                                Respectfully submitted,

                                                                              KWAME RAOUL
Illinois Attorney General

/s *Michael D. Arnold*_____
Michael D. Arnold
Assistant Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-3720
marnold@atg.state.il.us

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing **DEFENDANT'S STATUS REPORT TO THE COURT** was served on all counsel of record on November 25, 2019, by filing a copy of the same through the Court's CM/ECF filing system.

/s/ *Michael D. Arnold*