UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RALPH HOLMES, *et al.,* on behalf of themselves and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | Case No. 11 C 2961 |
| v. ) ) | Magistrate Judge Young B. Kim |
| ROB JEFFREYS, Acting Director of Illinois Department of Corrections, ) ) ) ) | |
| Defendant. ) | |

## DEFENDANT'S STATUS REPORT TO THE COURT

The ILLINOIS DEPARMENT OF CORRECTIONS, by and through its counsel, Kwame Raoul, Attorney General for the State of Illinois, and pursuant to its continuing obligation under the Settlement Agreement, entered July 26, 2018 ("Agreement"), hereby submits the instant Status Report to the Court. This status report contains information and data collected regarding the Illinois Department of Corrections' ("IDOC") compliance with the Agreement during the months of October, November, December 2019 and January 2020. The Department states as follows:

## SECTION IV

### IDENTIFYING DEAF AND HARD OF HEARING OFFENDERS THROUGH HEARING SCREENING AND AUDIOLOGICAL EVALUATIONS

The IDOC conducts a physical examination of all offenders upon admission to a reception or classification center ("R&C"). The IDOC requires, in compliance with the Agreement, that upon admission to a Reception and Classification facility, each offender shall on the day of intake be observed by trained staff for auditory ability. Staff shall document the findings on the Offender Medical History form (DOC0092). IDOC Administrative Directive No. 04.03.101 §§ II(G)(1)(c)(2)(d). Offenders who self-report as deaf or hard of hearing or who have been

1

determined to have hearing loss during their Intake Physical Examination are provided hearing screenings as required under the settlement.

In compliance with the Agreement, offenders can request to receive a Hearing Screening and, if an offender makes such a request, the offender is to receive such a screening within thirty (30) days. IDOC sent a memorandum to all Health Care Unit Administrators reminding the facilities of the thirty (30) day requirement for conducting hearing screenings. Notices regarding hearing screenings were prominently displayed in IDOC facility living units and medical units. Further, the Department adopted procedures that require offenders whose Hearing Screenings determined that they may be Deaf or Hard of Hearing be referred to an audiologist for an Audiological Evaluation within the timeframes set out in the Agreement. IDOC documents and maintains in the offender's medical file the results of all Hearing Screenings and Audiological Evaluations which include a record containing a description of the determination made as to the type, degree, and configuration of any hearing loss or hearing level. IDOC notes in Offender 360, its centralized database, offenders classified as Deaf or Hard of Hearing.

## SECTION V

## CREATION AND MAINTANCE OF A CRENTRALIZED DATABASE OF DEAF AND HARD OF HEARING OFFENDERS

The IDOC maintains a centralized database for offenders containing an entry for each Deaf or Hard of Hearing offender, including the name of the offender and facility at which the Deaf and Hard of Hearing is housed.

IDOC is actively working towards compliance with the requirements of Section V, Paragraph 40(c), (d), and (e). Changes to the Offender 360 program permits Offender 360 to maintain information regarding identification cards, communication plans, and the provision of

2

auxiliary aids and services. To date, over 600 communication plans have been entered into the system for offenders.

## SECTION VI

### DEAF AND HARD OF HEARING OFFENDER IDENTIFICATION CARD

All offenders identified as Deaf or Hard of Hearing are offered the opportunity to have an IDOC-issued offender identification card that clearly indicates the offender is Deaf or Hard of Hearing in compliance with this Section of the Agreement. The Deaf or Hard of Hearing designation is placed upon the back of offender identification cards. See monthly ADA Reports contained in Exhibit A.

## SECTION VII

### DEAF AND HARD OF HEARING OFFENDER
### AUXILIARY AIDS AND SERVICES ASSESSMENT

The IDOC entered into a contract with the Chicago Hearing Society to retain one or more Qualified Specialists who will perform an Auxiliary Aids and Services assessment for every offender identified as Deaf or Hard of Hearing. The Qualified Specialists are completing Auxiliary Aids and Services Assessments for offenders identified as Deaf or Hard of Hearing. IDOC has also retained the Chicago Hearing Society for purposes of retaining a Certified Deaf Interpreter ("CDI") for the Auxiliary Aids and Services Assessment when a Deaf or Hard of Hearing offender has no proficiency in either English or American Sign Language, or when the Qualified Specialist determines that a CDI is necessary.

The Qualified Specialists from the Chicago Hearing Society are consulting with the Facility ADA Coordinators and the Deaf or Hard of Hearing offenders. The Qualified Specialists are memorializing their determinations regarding the specific Auxiliary Aids and/or Services the offender needs to communicate effectively. The determinations of the Qualified Specialists are

being documented in the offender's Communication Plan. Further, the IDOC is following the determinations of the Qualified Specialists as required by the Agreement.

During the instant reporting period, 338 offenders were assessed by the Chicago Hearing Society. Since March 2019, 1164 assessments have been completed at the following facilities: Big Muddy River, Centralia, Crossroads ATC, Decatur, Dixon, East Moline, Fox Valley ATC, Graham, Hill, Illinois River, Jacksonville, Joliet TC, Lawrence, Lincoln, Logan, Menard, North Lawndale ATC, Peoria ATC, Pinckneyville, Pontiac, Shawnee, Sheridan, Stateville, Stateville-NRC, Taylorville, Vandalia and Western. Communication plans completed by the specialists are included with the facility monthly submission. See Exhibit A.

## SECTION VIII

### AUXILIARY AIDS AND SERVICES PRIOR TO THE AUXILIARY AIDS AND SERVICES ASSESSMENT

Prior to the completion of the Auxiliary Aids and Services Assessment for a Deaf or Hard of Hearing offender, IDOC is providing preliminary accommodations as required by the Agreement. Preliminary accommodations for the Deaf and Hard of Hearing are identified through an interactive dialogue between the offender and the Facility ADA Coordinator. Through interactive dialogue, Communication Plans are being completed by the ADA Coordinators prior to the completion of an Auxiliary Aids and Services Assessment. Since March 2019, the Department has given more than 1000 over the ear headphones and 850 watches to deaf and hard of hearing offenders as accommodations.

Accommodations for offenders include, but are not limited to, the following: vibrating watches, over the ear headphones, Video Relay Service phone calls, TTY phone calls, white boards, and, in select cases, a personal attendant.

## SECTION IX

### PROVISION AND MAINTENANCE OF AUXILIARY AIDS AND SERVICES TO DEAF AND HARD OF HEARING OFFENDERS AND IMPLEMENTATION OF COMMUNICATION PLAN

The IDOC provides Deaf and Hard of Hearing offenders, at no cost to the offender and subject to the limitations of Paragraph 65 of the Agreement, the Auxiliary Aids and Services provided for in the offender's Communication Plan. IDOC exercises reasonable efforts to secure, in a timely manner, hearing aids for those offenders whose Auxiliary Aids and Services Assessment indicate they should be provided a hearing aid or aids. The IDOC maintains an adequate supply of readily available hearing aid batteries. Further, the IDOC continues to engage in the interactive process with those offenders identified as Deaf or Hard of Hearing for purposes of maintenance of Auxiliary Aids and Services.

The IDOC has received reports of lost and stolen Auxiliary Aids and Services provided in the offender's Communication Plan. Accommodations that are lost or stolen are replaced pursuant to the restrictions of Paragraph 65 of the Agreement.

## SECTION X

### IDOC STAFF TRAINING ON MATTERS REGARDING DEAF AND HARD OF HEARING OFFENDERS

The IDOC Training Academy created and updated training materials addressing the topics required under the Agreement. The training materials (previously disclosed to Plaintiffs) are presented in annual Cycle Training, Pre-Service Orientation Training, ADA Coordinator Training and Cadet Training. A total of 2782 IDOC employees received training in one of the various training sessions during the instant reporting period. An ADA Coordinator Training was held November 21, 2019 and had 21 attendees. Approximately 2381 employees received ADA training through "Cycle Training Day 2," Pre-Service Orientation Training had 103 employees and 278

new correctional cadets received training. A recording of an ADA Curriculum Update webinar from the training academy was posted on the employee Intranet accessible to staff.

## SECTION XI

## ORIENTATION

The facility orientation manuals were updated to include information about the rights of Deaf and Hard of Hearing offenders. Offenders attending orientation who are Deaf or Hard of Hearing are provided a subsequent orientation session. If the offender communicates through American Sign Language, then during the second, separate orientation session, IDOC will provide a Qualified Interpreter to assist the offender in understanding the orientation content provided orally.

## SECTION XII

## COMMUNICATION DEVICES/TECHNOLOGIES FOR DEAF AND HARD OF HEARING OFFENDERS

Video Remote Interpretation (VRI) equipment and translation services are available in all IDOC facility healthcare units. Deaf or hard of hearing offenders who need assistance interpreting medical or mental health information have access to this service. All IDOC correctional facilities maintain a Video Relay Service (VRS) phone. Facilities housing the Deaf and Hard of Hearing possess two TTY machines. The TTY equipment can access publicly available relay service numbers. The volume on all IDOC housing unit phones is set to 65 decibels or higher and background noise cancellation is activated on the phones. Offenders who utilize TTY or VRS phones are given three times the amount of time usually allotted to non-hearing-impaired offenders at no expense to the user. Data is being collected regarding TTY and VRI usage as required by the Settlement. See monthly facility reports contained in Exhibit A.

## SECTION XIII

## TELEVISION FOR DEAF AND HARD OF HEARING OFFENDERS

New televisions purchased by IDOC for offender support open or closed captioning as required by the Agreement. In addition, offenders may purchase televisions that support open or closed captioning. Facilities ensure that closed captioning is activated on movies shown through the IDOC system and on televisions in common areas as required by the settlement. Facilities are now required to monitor the use of closed captioning. The Backup DAO Unscheduled Inspection Report (DOC0481) includes a field for monitoring of closed captioning. See monthly facility reports attached as Exhibit A. IDOC provides Deaf and Hard of Hearing offenders over the ear headphones, free of charge, in accordance with the settlement agreement.

## SECTION XIV

## VISUAL AND TACTILE ALERT NOTIFICATIONS FOR DEAF AND HARD OF HEARING OFFENDERS

The Agreement requires IDOC to begin making reasonable efforts to provide Deaf and Hard of Hearing offenders with a safe and effective tactile notification system that will advise them of events such as the arrival of visitors, commencement of meals, showers, yard time, medical appointments, evacuations, and emergencies.

The IDOC has installed visual notification systems (strobes) for warning shots at twelve facilities: Centralia, Danville, Dixon, Southwestern, Big Muddy, Jacksonville, Lincoln, Menard, Western, Pinckneyville, Robinson, Sheridan, Lawrence, Vandalia, and Taylorville. Additional facilities do not have the capability to fire warning shots and, therefore, strobes will not be installed. The strobes have been tested and were visible during daylight hours. A pager system was set up and tested at Jacksonville Correctional Center. The pager system was functional and there was adequate coverage within the housing unit. However, this pager system presented

administrative issues in that it lacked the ability to keep an electronic log of pages. A second tactile notification pager system, with the capability to automatically log pages to inmates, was ordered and delivered. The system will be installed for testing at Jacksonville Correctional Center when the facility resumes normal operations after the conclusion of the Administrative Quarantine due to the global Covid-19 pandemic.

## SECTION XV

## EQUAL ACCESS TO PRISON EMPLOYMENT

IDOC does not deny assignment opportunities to an otherwise qualified Deaf or Hard of Hearing offender unless, after conducting an individualized assessment, including consultation with the offender, it is determined that the Deaf or Hard of Hearing offender cannot perform the essential functions of the position with or without a reasonable accommodation. Facilities are required to log the reason for any assignment being denied to a Deaf or Hard of Hearing offender. See monthly facility reports attached as Exhibit A.

## SECTION XVI

## HAND RESTRAINTS REGARDING DEAF AND HARD OF HEARING OFFENDERS

On 9/21/2018 a directive was sent out to all facilities by the Chief of Operations regarding the use of hand restraints on deaf and hard of hearing offenders. A copy of this directive was previously provided to plaintiffs' counsel.

## SECTION XVII.

## FACILITY AND CELL ASSIGNMENTS AND TRANSFERS OF DEAF AND HARD OF HEARING OFFENDERS

Deaf and Hard of Hearing offenders are not transferred solely because of their Deaf or Hard of Hearing status to a higher security prison, or to a prison which does not offer comparable programing. Direction was sent to all facilities by the Transfer Coordinator's Office regarding the

requirements in this section related to the transfer of Deaf and Hard of Hearing offenders. Further, requests by Deaf and Hard of Hearing offenders to be housed with another Deaf or Hard of Hearing offender are considered. IDOC previously tendered a copy of the direction provided by the Transfer Coordinator's Office.

## SECTION XVIII

### CREATION AND DISSEMINATION OF MATERIALS MEMORIALIZING DEAF AND HARD OF HEARING OFFENDERS' RIGHTS

The facility orientation manuals were updated to include information about the rights of Deaf and Hard of Hearing offenders.

## SECTION XIX

### MONITORING AND REPORTING

The Agreement requires reporting of compliance every 120 days. This report satisfies that requirement. Additionally, the attachments to this report contain additional information as noted below.

Exhibit A is one .zip drive, containing one folder for each October, November and December and January facility reports[1], with subfolders per facility[2]. Included are:

- Cover pages ("Cover")[3] listing the number of communication plans and the names of those who received them, the number of hearing screenings, the number of audiological evaluations, the number of grievances specific to this Agreement received and the names of those who wrote them, whether interpreters or VRI was

---

[1] Lincoln reported all reports in one lump sum for October through January. They were not asked to resubmit but were asked to correctly report one month at a time going forward. All Lincoln reports are labeled appropriately, but all are contained within the January 2020 folder.
[2] Stateville and Stateville-NRC reports are not complete at the time of submission. Due to the Covid-19 global pandemic and positive covid patients at Stateville, resources cannot be dedicated to completing this reporting at this time.
[3] Naming conventions utilized for all reports in Exhibit A are included in parentheticals.

utilized, whether TTY or VRS machines were utilized, whether offenders were denied a hearing screening during a periodic physical examination, whether the facility denied employment to class members, and, for Reception and Classification Centers, the number of intakes in the reporting month;[4]

- Communication Plans ("ComPlan") for all communication plans completed during the reporting month;

- Hearing Screenings ("HearScn") for all hearing screenings completed during the reporting month;

- Audiological Evaluation results ("Audio")[5] for all audiological evaluations completed during the reporting month;

- Grievances ("Griev") filed during the reporting month which, if true, would constitute a violation of the Agreement;[6]

- VRI/Interpreter Logs ("Interp") which log use of interpreters for high-stakes interactions whether through an in-person interpreter or VRI;[7]

- TTY and VRS logs ("TTYVRS") logging all TTY and/or VRS usage at the facility;

---

[4] The newest version of the cover page with all of this information became effective for January 2020 reports; therefore, October, November, and December reports may include this information in either the new cover page or the previously utilized supplemental ADA report ("SuppRpt"). Future reporting will utilize only the current version of the Cover page for this information.

[5] If facilities combined reporting (such as provided hearing screenings and audiologist reports together), they were not separated as they were provided alphabetically. When that is the case, the naming conventions for those reports are combined (i.e., "HearScn Audio") to clearly note both reports are within the same pdf. This is most common in October due to the new reporting requirements requesting these be separated. This issue has been rectified for future reporting.

[6] There is confusion with some facilities regarding which grievances are required resulting in the submission of grievances that are related to ADA generally and not necessarily specific to *Holmes*. Clarification will be sent out to all facilities; however, the reporting is over-inclusive.

[7] To the extent a facility used an incorrect log (i.e., interpreter log), they were not asked to resubmit, but were specifically notified of the need to use the correct log for all future reporting. Typically, a facility may have submitted the wrong log in one of the earlier months, but not throughout the entire reporting period suggesting the issue has been resolved already. IDOC will continue to track this issue should it arise again.

- Unscheduled Inspection Reports ("DOC0481") which include the inspection of whether televisions had closed captioning;[8]

- Individual Hearing Screening reports ("ADARpt") which includes offenders who requested a Hearing Screening, whether they received the requested Hearing Screening, and why any offenders did not receive the requested Hearing Screening. It also contains information reflecting the identification of each offender who, based on a Hearing Screening after the date of this Agreement, was found to require an Audiological Evaluation (and any subsequent steps to provide this evaluation);

- Accommodations ("Accom") such as watches, headphones, hearing aids, etc. provided to offenders in the reporting month. This report may take the form of pdfs of property receipts or lists of accommodations provided. Additionally, some facilities simply reported this information within the ADA Report in the preceding section;[9]

- 5% of documents for the Intake screenings ("Intake") at the reception and classification centers.

---

[8] To the extent offender information protected via HIPAA or other means was included on the report, it was redacted. Additionally, these were not collected for October 2019 as the form was not updated to include closed-captioning indications until November 1, 2019.

[9] This report began with December 2019 reporting. If a facility does not have an Accommodations report or list accommodation provisions in their ADA Report in their December or January reports, they reported having none in the reporting month.

Exhibit B contains a listing of all offenders identified as Deaf or Hard of Hearing and the location where each offender is housed as of March 2020.

Exhibit C contains a list of ADA coordinators at each facility.

Dated: April 2, 2020                                    Respectfully submitted,

                                                        KWAME RAOUL
                                                        Illinois Attorney General

                                                        /s *Michael D. Arnold*
                                                        Michael D. Arnold
                                                        Assistant Attorney General
                                                        100 West Randolph Street, 13th Floor
                                                        Chicago, Illinois 60601
                                                        (312) 814-3720
                                                        marnold@atg.state.il.us

                                                        *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing **DEFENDANT'S STATUS REPORT TO THE COURT** was served on all counsel of record on April 2, 2020, by filing a copy of the same through the Court's CM/ECF filing system.

/s/ *Michael D. Arnold*