UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RALPH HOLMES, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROB JEFFREYS, Acting Director of Illinois Department of Corrections,<br><br>Defendant. | No. 11 CV 2961<br><br>Magistrate Judge Young B. Kim<br><br>June 8, 2020 |

**MEMORANDUM OPINION and ORDER**

Before the court is Plaintiffs' motion to enforce the parties' settlement agreement ("Settlement") with respect to Audiological Evaluations and for an order of appropriate relief and sanctions. For the following reasons, the motion is granted:

**Background**

In the underlying class action Plaintiffs alleged that the Illinois Department of Corrections ("IDOC") unlawfully denied them and "other deaf and hard of hearing inmates in IDOC custody the assistance they need to communicate effectively and participate in IDOC programs and services." (R. 446-2, Settlement ¶ 2.) In July 2018 the parties reached an agreement to settle their dispute, which they believed would "benefit deaf and hard of hearing inmates who are confined in IDOC correctional facilities." (Id. ¶ 5.) During settlement discussions, the parties

"vigorously" negotiated aspects relating to Audiological Evaluations. (R. 539, Pls.' Mot. at 3.)

The Settlement defines "Audiological Evaluation" as "a procedure performed by a licensed audiologist to measure the type, degree, configuration, and level of a person's hearing loss through audiological tests that result in an audiogram." (R. 446-2, Settlement ¶ 14.) An Audiological Evaluation "measure[s] the level of hearing rather than . . . whether a person may be deaf or hard of hearing." (Id.) The Settlement requires IDOC to request a report from each audiologist performing an Audiological Evaluation setting forth: "(1) the level and nature of hearing loss in each ear of the person subject to the evaluation; and (2) whether the person subject to the evaluation would benefit from a hearing aid in the person's left ear, right ear, both ears, or neither ear." (Id.)

The Settlement includes a number of provisions designed to "identify[] deaf and hard of hearing inmates through Hearing Screening[s] and Audiological Evaluations." (Id. ¶¶ 32-38.) One of these provisions requires IDOC to "adopt a policy and procedure" to ensure that inmates whose Hearing Screenings show that they may be deaf or hard of hearing are "referred to an audiologist for an Audiological Evaluation at the earlier of (1) [30] days after arrival to their home facility; or (b) 45 days after being admitted into IDOC custody." (Id. ¶ 36; see also id. ¶ 25 (defining "Hearing Screening").) In the event an inmate is transferred, the period may be extended by 14 days. (Id. ¶ 36.)

2

Plaintiffs claim that contrary to the terms of the Settlement, IDOC has employed licensed hearing instrument dispensers ("LHIDs") instead of licensed audiologists for Audiological Evaluations. (R. 539, Pls.' Mot. at 1, 3, 10-12.) An LHID is trained in "the practice of fitting, dispensing, or servicing hearing aid instruments." (R. 540-1, Cavitt Decl. ¶ 17 (internal quotations omitted).) An audiologist, by contrast, is trained in the practice of "screening, identification, measurement, monitoring, testing, appraisal, prediction, interpretation, habilitation, rehabilitation, [and] instruction relating to audiologic or vestibular disorders, including hearing and disorders of hearing." (Id. ¶ 18 (quoting 225 ILCS 110/3(g) (internal quotations omitted)).) IDOC's use of LHIDs was "extensive" and occurred in 700 or more evaluations of Class Members[1] from 26 IDOC facilities during the first year of the Settlement's implementation, according to Plaintiffs' estimates. (R. 539, Pls.' Mot. at 4, 10.)

IDOC admits that it retained LHIDs to perform Audiological Evaluations of Class Members for about a year after the court approved the Settlement. (R. 548, IDOC's Resp. at 1; see also R. 454, Order Approving Settlement.) But it says that, as of July 2019, it discontinued the practice of employing LHIDs.[2] (R. 548, IDOC's

---

[1] The Settlement defines "Class Members" as "all current and future deaf or hard of hearing individuals incarcerated within IDOC who require accommodations . . . to communicate effectively to adequately access programs or services available to individuals incarcerated within IDOC." (R. 446-2, Settlement ¶ 20.)

[2] This is surprising to the court because based on its discussion with Wexford Health Services, Inc., (see R. 514), the court was under the impression that as of November 2019 Wexford was still using LHIDs in those facilities where Wexford experienced difficulties securing audiologists.

3

Resp. at 1-2.) In January 2020 IDOC reported that it was "in compliance with [the Settlement's] mandate" that licensed audiologists be used for Audiological Evaluations. (Id. at 2; see also R. 540-6, Jan. 10, 2020 Hearing Tr. at 19-22.) Plaintiffs assert that, while IDOC may no longer permit the use of LHIDs to conduct Audiological Evaluations, it is not completing such evaluations in a reasonable time period. (R. 539, Pls.' Mot.) Plaintiffs move the court to enforce the Settlement and for sanctions.

**Analysis**

Plaintiffs allege that IDOC has breached the Settlement by failing to ensure that licensed audiologists conduct Audiological Evaluations and by allowing "excessive delays" of up to eight months between Hearing Screenings and Audiological Evaluations. (R. 539, Pls.' Mot. at 10-15.) Given IDOC's non-compliance, Plaintiffs seek an order: (1) finding that IDOC violated the Settlement by allowing LHIDs to be used to perform Audiological Evaluations; (2) requiring Audiological Evaluations to be conducted within 60 days following a failed Hearing Screening; and (3) sanctioning IDOC by requiring it to pay attorneys' fees and costs associated with Plaintiffs' investigation, analysis, and litigation of non-compliance matters raised in the current motion. (Id. at 1, 15.) IDOC responds that because it is now compliant with the requirement that licensed audiologists must conduct Audiological Evaluations, Plaintiffs' motion is moot and the court does not have the authority to enter the order Plaintiffs seek. (R. 548, IDOC's Resp. at 3 (citing

4

R. 446-2, Settlement ¶ 93).) IDOC further argues that the Settlement does not specify a timing requirement for Audiological Evaluations. (Id. at 1.)

### A. The Court's Authority

IDOC argues that the Settlement permits the court to enter a compliance-related order only where "necessary to ensure" that IDOC complies with the terms of the agreement. (R. 548, IDOC's Resp. at 2 (citing R. 446-2, Settlement ¶ 93).) IDOC says it is now compliant with the Settlement's provision requiring licensed audiologists to perform Audiological Evaluations, thereby negating the need for such an order. (Id.) IDOC further contends that the Settlement does not include any language permitting sanctions to be imposed. (Id. at 3.)

The court rejects IDOC's argument that it lacks the authority to grant the relief Plaintiffs seek in their motion. The court has "the inherent or equitable power summarily to enforce an agreement to settle a case before it." *Voso v. Ewton*, No. 16 CV 190, 2017 WL 365610, at *2 (N.D. Ill. Jan. 25, 2017) (internal citation omitted). Here the court explicitly retained jurisdiction to "oversee, supervise, and enforce the terms and conditions of [the Settlement], to resolve disputes arising out of or relating to [the Settlement], and for such other actions as may be necessary or appropriate for execution, construction, or implementation of [the Settlement]." (R. 446-2, Settlement ¶ 102; see also R. 454, Order.) The Settlement's compliance-related provisions further state that if the court decides that IDOC "has been in substantial non-compliance" with the Settlement, the court "has the power to enter, and shall enter, whatever orders are necessary to ensure compliance with the terms

5

of the Settlement." (R. 446-2, Settlement ¶ 93.) This power includes ordering "equitable or injunctive relief" and an award of reasonable attorneys' fees incurred by Plaintiffs to investigate and litigate IDOC's non-compliance. (Id.)

IDOC admits that it was not compliant for about a year with the Settlement's requirement that licensed audiologists be retained to conduct Audiological Evaluations. (R. 548, IDOC's Resp. at 1-2.) During a hearing before the court on January 10, 2020, IDOC's counsel reported that it discontinued the practice in 2019. (R. 548, IDOC's Resp. 2-3; see also R. 540-6, 01/10/20 Hearing Tr. at 19-20.) It matters not that, according to IDOC, it is no longer violating the Settlement. (Id.) Instead, what matters is that IDOC was in "substantial non-compliance" with the Settlement for a prolonged period. (R. 446-2, Settlement ¶¶ 93, 94.) Also, IDOC's current use of licensed audiologists to perform evaluations is a separate issue from the timeliness of these evaluations. Accordingly, the court has the power to grant the relief Plaintiffs seek here.

**B.     Audiological Evaluations**

IDOC does not dispute that the Settlement precludes the use of LHIDs to conduct Audiological Evaluations and it admits that for a period of time it violated that provision of the Settlement. Although IDOC reports that it has stopped using LHIDs, Plaintiffs nevertheless ask the court to deem IDOC's prior practice a violation of the Settlement. (R. 539, Pls.' Mot. at 1; R. 551, Pls.' Reply at 4.) To ensure that IDOC does not retreat and reinstate its prior practice, the court confirms that under the terms of the Settlement, IDOC may not permit LHIDs to

6

perform Audiological Evaluations for Class Members. The Settlement clearly defines "Audiological Evaluation" as "a procedure performed by a licensed audiologist." (R. 446-2, Settlement ¶ 14).) Furthermore, Plaintiffs' expert Dr. Kim Cavitt, a licensed audiologist and Doctor of Audiology (AuD), submitted a declaration stating that Illinois law permits only licensed audiologists and physicians to perform the type of evaluation described in the Settlement. (R. 540-1, Cavitt Decl. ¶¶ 5-6, 16-23.) IDOC does not dispute Dr. Cavitt's attestation. (R. 548, IDOC's Resp.)

Dr. Cavitt opined on the possible dangers that could result when LHIDs, rather than audiologists, perform audiological testing. (R. 540-1, Cavitt Decl.) According to her, the use of LHIDs to conduct Audiological Evaluations could cause Class Members to experience "misdiagnosis or under-diagnosis of otologic or other otolaryngologic medical or surgical conditions," resulting in balance issues, overutilization of hearing aids, and lack of comprehensive care, remediation, and access to other treatment options. (Id. ¶ 25.) She further attests that LHIDs are not educated, trained, or licensed to practice audiology, which requires a master's or doctoral degree in audiology, completion of a national audiology examination, and 1,500 hours of supervised clinical experience. (Id. ¶¶ 20-22.) Instead, LHIDs must have only the equivalent of an associate degree with hourly credits in certain courses. (Id. ¶ 23.) Consistent with Dr. Cavitt's concerns, Plaintiffs surveyed 22 Class Members who underwent Audiological Evaluations performed by LHIDs. (R. 539, Pls.' Mot. at 11.) Those Class Members reported various issues following

7

evaluations by LHIDs, including problems with their hearing aids. (R. 540-5, Email from Plaintiffs to Court.)

Thus, the court directs IDOC to employ only licensed audiologists to perform Audiological Evaluations as required by the Settlement. To the extent that a Class Member received an Audiological Evaluation performed by an LHID, has not since been evaluated by an audiologist, and is still in IDOC custody, the court orders IDOC to allow such Class Member to receive an Audiological Evaluation performed by a licensed audiologist by August 28, 2020.

**C.     Timeliness**

Plaintiffs contend that it may take up to eight months for Class Members to receive Audiological Evaluations after failed Hearing Screenings, which they argue is neither reasonable nor medically appropriate. (R. 539, Pls.' Mot. at 2, 10-12.) IDOC responds that the Settlement does not set a time by which Audiological Evaluations must be conducted and asserts that it has not violated any timing requirements. (R. 548, IDOC's Resp. at 1.) Plaintiffs acknowledge that the Settlement sets only a deadline by which IDOC must refer Class Members to an audiologist following a failed Hearing Screening. (R. 539, Pls.' Mot. at 12-13.) But they argue that the Settlement contemplates that Class Members who are referred to an audiologist must receive an Audiological Evaluation within a reasonable time. (Id.) They argue that delays of up to eight months are unreasonable and may cause them significant harm. (Id.)

8

The Settlement requires that once a Class Member fails a Hearing Screening, the inmate "must be referred to an audiologist for an Audiological Evaluation" within 30 to 45 days after he or she arrives at their home facility or is taken into IDOC custody. (R. 446-2, Settlement ¶ 36.) IDOC is correct that the Settlement requires a Class Member to be referred within the 30- or 45-day period, not physically evaluated within that time period. (R. 548, IDOC's Resp. at 1.) Nonetheless, to give meaning to the Settlement, the court finds that IDOC must provide Class Members who fail Hearing Screenings an Audiological Evaluation within a reasonable period. If IDOC were required to provide only a referral within a certain period, it could then wait indefinitely to have the Audiological Evaluation completed, flouting the very purpose of the Settlement. In reaching the Settlement the parties expressed their belief that the agreement would benefit IDOC inmates who are deaf or hard of hearing. (R. 446-2, Settlement ¶ 5.) Abiding by only the timing requirement for a referral and then disregarding timing altogether for the evaluation itself, would not benefit such inmates. (See R. 539, Pls.' Mot. at 13.)

As Plaintiffs point out, contracts must be construed to avoid absurd results, such as the one IDOC promotes here. (Id. (citing *Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 860 (7th Cir. 2002)).) Courts apply the absurd results rule "to reject one party's strained, literal reading of contract language in favor of the other party's reasonable, commonsense reading." *BKCAP, LLC v. CAPTECH Franchise Tr. 2000-1*, 572 F.3d 353, 360 (7th Cir. 2009). Here the court finds IDOC's "strained, literal reading" of the Settlement to be unreasonable. *Id.* The court

9

instead adopts Plaintiffs' "commonsense" interpretation that Audiological Evaluations must be performed within a reasonable period. *Id.*; *William B. Tanner Co. v. Sparta-Tomah Broad. Co.*, 716 F.2d 1155, 1158 (7th Cir. 1983) ("It is well accepted that . . . when a contract is silent as to a time for performance, the law implies that it shall be performed within a reasonable time.").

The court must next decide what constitutes a reasonable period to complete an Audiological Evaluation. Plaintiffs favor a 60-day window after a failed Hearing Screening. (R. 539, Pls.' Mot. at 15.) IDOC does not offer a proposed time requirement but claims that it cannot perform Audiological Evaluations more quickly than its current time frame because only a limited number of audiologists is available to perform those evaluations. (R. 548, IDOC's Resp. at 4-10.) For support IDOC submits a declaration from Shannis Stock-Jones, Vice President of Operations for Wexford, IDOC's principal health care vendor. (R. 548-1, Stannis Decl.) She attests that after July 2019 Wexford "stepped up its efforts to identify additional audiologists" but only a limited number of them were willing to assist. (Id. ¶¶ 6-12.) Wexford also considered creating a staff audiologist position, but it was unable to fill that position because of lack of interest. (Id. ¶¶ 2, 16.) However, the information on IDOC's efforts to identify qualified audiologists is limited and lacks substance. Plaintiffs point out in their reply that Wexford did not contact 800 audiologists in Illinois in its efforts to identify more providers or indicate whether a market rate of pay was offered to the potential providers. (R. 551, Pls.' Reply at 14.)

10

While the court appreciates IDOC's difficulties in identifying audiologists to perform Audiological Evaluations, it simply is not reasonable for a Class Member to wait up to eight months after a failed Hearing Screening to receive an Audiological Evaluation. IDOC must not allow the unnecessary delay of proper diagnoses and treatment, or appropriate accommodations, for Class Members. The ability to communicate is essential not only for safety and disciplinary matters, as Plaintiffs assert, but also for the protection of civil rights. (See R. 539, Pls.' Mot. at 13-14.) Accordingly, the court orders IDOC to ensure the completion of Audiological Evaluations within 90 days after Class Members receive a referral to an audiologist.[3] (R. 446-2, Settlement ¶ 36); *see also William B. Tanner Co.*, 716 F.2d at 1158. In setting this time period, the court takes into consideration the on-going public health crisis and its impact on the ability to transfer inmates. To extend the time period any longer would not be reasonable, unless there is compelling reason, because even with this 90-day period deadline, an inmate may have trouble hearing during the first four months of his or her incarceration.

Given IDOC's assertion that it will encounter difficulties complying with any time limit, the court encourages the parties to work together to craft language to stay the deadline where, despite its best efforts, IDOC is unable to comply with the 90-day deadline. In their motion Plaintiffs detailed their efforts to work with IDOC when audiologists are not available (e.g., by using LHIDs under "strict conditions,"

---

[3] Given that IDOC and Wexford do have the identity of audiologists in Illinois willing to treat an inmate population, IDOC should consider securing their professional services every two months and have the audiologists visit the various correctional facilities to provide the necessary audiological services.

11

including that Class Members must be examined for hearing issues by a licensed physician). (See R. 539, Pls.' Mot. at 6-8.) The parties were unable to reach an agreement, but IDOC now expresses a willingness "to continue this discussion." (Id.) If the parties are unable to reach any resolution, the court's ruling herein controls.

**D. Sanctions**

Plaintiffs ask the court to sanction IDOC for its year-long violation of the Settlement. (R. 539, Pls. Mot. at 1, 3.) Plaintiffs say they learned of IDOC's non-compliance pertaining to Audiological Evaluations through their own monitoring and "concerns raised by Class Members," not through reporting required under the Settlement. (Id. at 3-9.) Even now, Plaintiffs complain that IDOC has not provided them with data showing the full extent to which it allowed LHIDs to perform Audiological Evaluations. (Id. at 4-5.) Plaintiffs' motion details the lengths it took to investigate, analyze, and litigate the improper use of LHIDs to conduct Audiological Evaluations. (Id. at 5-8.) Despite Plaintiffs' efforts, IDOC did not notify them until January 9, 2020, that it had stopped its unauthorized practice months before. (Id.) IDOC's counsel blames an "obvious miscommunication" for the notification delay. (R. 540-6, Jan. 10, 2020 Hearing Tr. at 20.)

As explained above, the court finds that IDOC's year-long violation of the Settlement, during which time it allowed LHIDs instead of audiologists to conduct Audiological Evaluations, constitutes "substantial non-compliance" under the Settlement. (R. 446-2, Settlement ¶¶ 93-94); *see also United States v. Norwood*, ___

Fed. Appx. ___, 2020 WL 2185685, at *2-*3 (7th Cir. May 6, 2020) (ruling that district judge did not abuse his discretion by granting injunctive and other relief as a result of "persistent and serious" violations of federal tax laws). Even after numerous inquiries by Plaintiffs, IDOC failed to provide adequate information to allow Plaintiffs to understand the scope of the non-compliance. (R. 539, Pls.' Mot. at 5-8.) Having determined that IDOC failed to substantially comply with the Settlement's requirement that licensed audiologists perform Audiological Evaluations, the court finds that sanctions are warranted. (R. 446-2, Settlement ¶¶ 93, 94.) The court orders IDOC to pay Plaintiffs' reasonable attorneys' fees and costs to investigate and litigate IDOC's violation. Plaintiffs have until July 17, 2020, to file a petition for fees and costs if the parties are unable to agree on the reasonable amount to be reimbursed.

Also, according to the terms of the Settlement, the court's jurisdiction over this matter does not terminate until at least two years after the effective date of the Settlement.[4] (R. 446-2, Settlement ¶¶ 12, 104.) The court may extend its retention of jurisdiction if IDOC has not substantially complied with any portion of the Settlement. (Id.) Here, IDOC's non-compliance lasted for approximately one year. The court therefore extends its jurisdiction by one year to allow for continued supervision and enforcement of the Settlement as required. (See id.)

---

[4] The court approved the Settlement on July 26, 2018, (R. 454), rendering that date the effective date of the Settlement, (R. 446-2, Settlement ¶ 23).

13

## Conclusion

For the foregoing reasons, Plaintiffs' motion to enforce the Settlement is granted. IDOC is ordered to comply with the Settlement and pay reasonable attorneys' fees and costs. Also, the court extends its jurisdiction to supervise and enforce the Settlement by one year.

**ENTER:**

*[signature]*

**Young B. Kim
United States Magistrate Judge**