**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RALPH HOLMES, *et al.,* on behalf of themselves and all others similarly situated, ) ) ) | |
| Plaintiffs, ) | Case No. 11 C 2961 |
| ) | |
| v. ) | Magistrate Judge Young B. Kim |
| ) | |
| ROB JEFFREYS, Acting Director of Illinois Department of Corrections, ) ) ) | |
| Defendant. ) | |

<u>**DEFENDANT'S STATUS REPORT TO THE COURT**</u>

NOW COMES, the ILLINOIS DEPARTMENT OF CORRECTIONS, by and through its Attorney, Kwame Raoul, Attorney General for the State of Illinois, and pursuant to its continuing obligation under the Settlement Agreement, entered July 26, 2018 ("Agreement"), hereby submits the instant Status Report to the Court. This status report contains information and data collected regarding the Illinois Department of Corrections' ("IDOC") compliance with the Agreement during the months of February, March, April, and May, 2020. The Department states as follows:

<u>**SECTION IV**</u>

**IDENTIFYING DEAF AND HARD OF HEARING OFFENDERS THROUGH HEARING SCREENING AND AUDIOLOGICAL EVALUATIONS**

The IDOC conducts a physical examination of all offenders upon admission to a reception or classification center ("R&C"). The IDOC requires, in compliance with the Agreement, that upon admission to a Reception and Classification facility, each offender shall, on the day of intake, be observed by trained staff for auditory ability. Staff shall document the findings on the Offender Medical History form (DOC0092). IDOC Administrative Directive No. 04.03.101 §§ II(G)(1)(c)(2)(d). Offenders who self-report as deaf or hard of hearing or who have been determined to have hearing loss during their Intake Physical Examination are provided hearing screenings as required under the Agreement.

In compliance with the Agreement, offenders can request to receive a Hearing Screening and, if an offender makes such a request, the offender is to receive such a screening within thirty (30) days. IDOC has reminded all Health Care Unit Administrators of the thirty- (30) day requirement for conducting hearing screenings and class counsel acknowledges high compliance rates. Notices regarding hearing screenings were prominently displayed in IDOC facility living units and medical units. Further, the Department adopted procedures that require offenders whose Hearing Screenings determined that they may be Deaf or Hard of Hearing be referred to an audiologist for an Audiological Evaluation within the timeframes set out in the Agreement. The scheduling of all medical appointments has been impacted by the COVID-19 global pandemic and precautions required within the facilities.

IDOC documents and maintains in the offender's medical file the results of all Hearing Screenings and Audiological Evaluations which include a record containing a description of the determination made as to the type, degree, and configuration of any hearing loss or hearing level. IDOC notes in Offender 360, its centralized database, offenders classified as Deaf or Hard of Hearing. (Exhibit B).

## SECTION V

### CREATION AND MAINTANCE OF A CENTRALIZED DATABASE OF DEAF AND HARD OF HEARING OFFENDERS

The IDOC maintains a centralized database for offenders containing an entry for each Deaf or Hard of Hearing offender, including the name of the offender and facility at which the Deaf and Hard of Hearing offender is housed.

IDOC is actively working towards compliance with the requirements of Section V, Paragraph 40(c), (d), and (e). Changes to the Offender 360 program permits Offender 360 to maintain information regarding identification cards, communication plans, and the provision of auxiliary aids and services. More than 800 communication plans have been entered into the system for offenders. The Court recently entered an order requiring the remainder of the plans be entered by October 2020 and going forward thereafter. IDOC continues to work toward compliance with that Order.

## SECTION VI

### DEAF AND HARD OF HEARING OFFENDER IDENTIFICATION CARD

All offenders identified as Deaf or Hard of Hearing are offered the opportunity to have an IDOC-issued offender identification card that clearly indicates the offender is Deaf or Hard of Hearing in compliance with this Section of the Agreement. The Deaf or Hard of Hearing designation is placed upon the back of offender identification cards. See monthly ADA Reports contained in Exhibit A.

## SECTION VII

### DEAF AND HARD OF HEARING OFFENDER
### AUXILIARY AIDS AND SERVICES ASSESSMENT

The IDOC entered into a contract with the Chicago Hearing Society to retain one or more Qualified Specialists who will perform an Auxiliary Aids and Services assessment for every offender identified as Deaf or Hard of Hearing. The Qualified Specialists are completing Auxiliary Aids and Services Assessments for offenders identified as Deaf or Hard of Hearing. IDOC has also retained the Chicago Hearing Society for purposes of retaining a Certified Deaf Interpreter ("CDI") for the Auxiliary Aids and Services Assessment when a Deaf or Hard of Hearing offender has no proficiency in either English or American Sign Language, or when the Qualified Specialist determines that a CDI is necessary.

The Qualified Specialists from the Chicago Hearing Society consult with the Facility ADA Coordinators and the Deaf or Hard of Hearing offenders. The Qualified Specialists memorialize their determinations regarding the specific Auxiliary Aids and/or Services the offender needs to communicate effectively. The determinations of the Qualified Specialists are documented in the offender's Communication Plan. Further, the IDOC follows the determinations of the Qualified Specialists as required by the Agreement.

During the instant reporting period, 49 offenders were assessed by the Chicago Hearing Society, all in February. Additional assessments have been stayed because of the COVID-19 global pandemic. Discussions with the Chicago Hearing Society and IDOC Office of Health Services about how best to resume assessments during COVID-19 remain ongoing.

## SECTION VIII

## AUXILIARY AIDS AND SERVICES PRIOR TO THE AUXILIARY AIDS AND SERVICES ASSESSMENT

Prior to the completion of the Auxiliary Aids and Services Assessment for a Deaf or Hard of Hearing offender, IDOC is providing preliminary accommodations as required by the Agreement. Preliminary accommodations for the Deaf and Hard of Hearing are identified through an interactive dialogue between the offender and the Facility ADA Coordinator. Through interactive dialogue, Communication Plans are being completed by the ADA Coordinators prior to the completion of an Auxiliary Aids and Services Assessment.

In late June 2020, the Department received a shipment of 1500 "VibraLite" watches which allow offender to set multiple alarms. The watches were offered to all Deaf and Hard of Hearing offenders statewide in early July 2020. Since March 2019, the Department has given more than 1340 over the ear headphones and 2350 vibrating watches to Deaf and Hard of Hearing offenders as accommodations.

Accommodations for offenders include, but are not limited to, the following: vibrating watches, over the ear headphones, Video Relay Service phone calls, TTY phone calls, white boards, and, in select cases, a personal attendant.

## SECTION IX

## PROVISION AND MAINTENANCE OF AUXILIARY AIDS AND SERVICES TO DEAF AND HARD OF HEARING OFFENDERS AND IMPLEMENTATION OF COMMUNICATION PLAN

The IDOC provides Deaf and Hard of Hearing offenders, at no cost to the offender and subject to the limitations of Paragraph 65 of the Agreement, the Auxiliary Aids and Services provided for in the offender's Communication Plan. IDOC exercises reasonable efforts to secure, in a timely manner, hearing aids for those offenders whose Auxiliary Aids and Services Assessment indicate they should be provided a hearing aid(s). The IDOC maintains an adequate supply of readily available hearing aid batteries. Further, the IDOC continues to engage in the interactive process with those offenders identified as Deaf or Hard of Hearing for purposes of maintenance of Auxiliary Aids and Services.

The IDOC has received reports of lost and stolen Auxiliary Aids and Services provided in the offender's Communication Plan. Accommodations that are lost or stolen are replaced pursuant to the restrictions of Paragraph 65 of the Agreement.

## SECTION X

### IDOC STAFF TRAINING ON MATTERS REGARDING DEAF AND HARD OF HEARING OFFENDERS

The IDOC Training Academy created and updated training materials addressing the topics required under the Agreement. The training materials (previously disclosed to Plaintiffs) are presented in annual Cycle Training, Pre-Service Orientation Training, ADA Coordinator Training and Cadet Training. An ADA Coordinator Training was held February 20, 2020 and had 12 attendees. Approximately 99 employees received ADA training through "Cycle Training Day 2," Pre-Service Orientation Training had 30 employees and 135 new correctional cadets received training.

## SECTION XI

### ORIENTATION

The facility orientation manuals were long-ago updated to include information about the rights of Deaf and Hard of Hearing offenders. Offenders attending orientation who are Deaf or Hard of Hearing are provided a subsequent orientation session. If the offender communicates through American Sign Language, then during the second, separate orientation session, IDOC will provide a Qualified Interpreter to assist the offender in understanding the orientation content provided orally.

## SECTION XII

### COMMUNICATION DEVICES/TECHNOLOGIES FOR DEAF AND HARD OF HEARING OFFENDERS

Video Remote Interpretation (VRI) equipment and translation services are available in all IDOC facility healthcare units. Deaf or hard of hearing offenders who need assistance interpreting medical or mental health information have access to this service. All IDOC correctional facilities maintain a Video Relay Service (VRS) phone. Facilities housing the Deaf and Hard of Hearing possess two TTY machines. The TTY equipment can access publicly available relay service numbers. The volume on all IDOC housing

unit phones is set to 65 decibels or higher and background noise cancellation is activated on the phones. Offenders who utilize TTY or VRS phones are given three times the amount of time usually allotted to non-hearing-impaired offenders at no expense to the user. Data is being collected regarding TTY and VRI usage as required by the Settlement. See monthly facility reports contained in Exhibit A.

## SECTION XIII

## TELEVISION FOR DEAF AND HARD OF HEARING OFFENDERS

New televisions purchased by IDOC for offender support open or closed captioning as required by the Agreement. In addition, offenders may purchase televisions that support open or closed captioning. Facilities ensure that closed captioning is activated on movies shown through the IDOC system and on televisions in common areas as required by the settlement. Facilities are now required to monitor the use of closed captioning. The Backup DAO Unscheduled Inspection Report (DOC0481) includes a field for monitoring of closed captioning. See monthly facility reports attached as Exhibit A. If the inspection determines there is an issue with closed captioning, the issue is resolved or investigated further. IDOC provides Deaf and Hard of Hearing offenders over the ear headphones, free of charge, in accordance with the settlement agreement.

## SECTION XIV

## VISUAL AND TACTILE ALERT NOTIFICATIONS FOR DEAF AND HARD OF HEARING OFFENDERS

The Agreement requires IDOC to begin making reasonable efforts to provide Deaf and Hard of Hearing offenders with a safe and effective tactile notification system that will advise them of events such as the arrival of visitors, commencement of meals, showers, yard time, medical appointments, evacuations, and emergencies.

The IDOC has installed visual notification systems (strobe lights) for outdoor warning shots at all facilities that have the capability to fire warning shots. Additional facilities do not have the capability to fire warning shots and, therefore, strobes will not be installed. The strobes have been tested and were visible during daylight hours.

6

IDOC has taken a number of approaches to providing tactile notifications to offenders. First, all Deaf and Hard of Hearing offenders were offered a new tactile watch that allow the offender to set 12 separate alarms. This watch, coupled with readily available schedules, provides all offenders who accepted it with a safe and effective tactile alert system for being notified of any appointments and programming as desired.

Additionally, another tactile notification pager system was ordered for each facility and is arriving in several shipments directly to the sites. A number have already arrived or shipped, and other shipments are expected over the next few months. The system was installed for testing at Jacksonville Correctional Center and has been found to be successful. The pager system will provide another safe and effective tactile notification system in addition to that already in place. To operate the paging system, each facility was provided with standalone PCs and monitors. Additionally, when their system(s) ships, the facility is provided with detailed instructions regarding operation and use. IDOC has also requested a training video from the vendor.

## SECTION XV

## EQUAL ACCESS TO PRISON EMPLOYMENT

IDOC does not deny assignment opportunities to an otherwise qualified Deaf or Hard of Hearing offender unless, after conducting an individualized assessment, including consultation with the offender, it is determined that the Deaf or Hard of Hearing offender cannot perform the essential functions of the position with or without a reasonable accommodation. Facilities are required to log the reason for any assignment being denied to a Deaf or Hard of Hearing offender. See monthly facility reports attached as Exhibit A.

## SECTION XVI

## HAND RESTRAINTS REGARDING DEAF AND HARD OF HEARING OFFENDERS

On September 21, 2018, a directive was sent out to all facilities by the Chief of Operations regarding the use of hand restraints on deaf and hard of hearing offenders. A copy of this directive was previously provided to plaintiffs' counsel.

7

## SECTION XVII.

**FACILITY AND CELL ASSIGNMENTS AND TRANSFERS OF DEAF AND HARD OF HEARING OFFENDERS**

Deaf and Hard of Hearing offenders are not transferred solely because of their Deaf or Hard of Hearing status to a higher security prison, or to a prison which does not offer comparable programing. Direction was sent to all facilities by the Transfer Coordinator's Office regarding the requirements in this section related to the transfer of Deaf and Hard of Hearing offenders. Further, requests by Deaf and Hard of Hearing offenders to be housed with another Deaf or Hard of Hearing offender are considered. IDOC previously tendered a copy of the direction provided by the Transfer Coordinator's Office.

## SECTION XVIII

**CREATION AND DISSEMINATION OF MATERIALS MEMORIALIZING DEAF AND HARD OF HEARING OFFENDERS' RIGHTS**

The facility orientation manuals were updated to include information about the rights of Deaf and Hard of Hearing offenders.

## SECTION XIX

**MONITORING AND REPORTING**

The Agreement requires reporting of compliance every 120 days. This report satisfies that requirement. Additionally, the attachments to this report contain additional information as noted below.

Exhibit A is one .zip drive, containing one folder for each February, March, April and May facility reports, with subfolders per facility. Included and organized within these folders are:

- Cover pages ("Cover")[1] listing the number of communication plans and the names of those who received them, the number of hearing screenings, the number of audiological evaluations, the number of grievances specific to this Agreement received and the names of those who wrote them, whether interpreters or VRI was utilized, whether TTY or VRS machines were utilized, whether offenders were denied a hearing screening during a

---

[1] Naming conventions utilized for all reports in Exhibit A are included in parentheticals.

periodic physical examination, whether the facility denied employment to class members, and, for Reception and Classification Centers, the number of intakes in the reporting month;

- Communication Plans ("ComPlan") for all communication plans completed during the reporting month;

- Hearing Screenings ("HearScn") for all hearing screenings completed during the reporting month;

- Audiological Evaluation results ("Audio") for all audiological evaluations completed during the reporting month;

- Grievances ("Griev") filed during the reporting month which, if true, would constitute a violation of the Agreement;[2]

- VRI/Interpreter Logs ("Interp") which log use of interpreters for high-stakes interactions whether through an in-person interpreter or VRI;

- TTY and VRS logs ("TTYVRS") logging all TTY and/or VRS usage at the facility;

- Unscheduled Inspection Reports ("DOC0481") which include the inspection of whether televisions had closed captioning;[3]

- Individual Hearing Screening reports ("ADARpt") which includes offenders who requested a Hearing Screening, whether they received the requested Hearing Screening, and why any offenders did not receive the requested Hearing Screening. It also contains information reflecting the identification of each offender who, based on a Hearing

---

[2] There is confusion with some facilities regarding which grievances are required resulting in the submission of grievances that are related to ADA generally and not necessarily specific to *Holmes*. Clarification has been sent out to all facilities; however, the reporting may be over-inclusive. Additionally, if a response to the grievance is not provided, there is typically a reason for the lack of response, such as the grievance not reaching the 2nd level for a response or a response being provided after the report is submitted.

[3] To the extent offender information protected via HIPAA or other means was included on the report, it was redacted. If a facility did not provide a report, they did not complete Unscheduled Inspections in the reporting month.

Screening after the date of this Agreement, was found to require an Audiological Evaluation (and any subsequent steps to provide this evaluation);[4]

- Accommodations ("Accom") such as watches, headphones, hearing aids, etc. provided to offenders in the reporting month. This report may take the form of pdfs of property receipts or lists of accommodations provided. Additionally, some facilities simply reported this information within the ADA Report in the preceding section;[5]

- 5% of documents for the Intake screenings ("Intake") at the reception and classification centers.

Exhibit B contains a listing of all offenders identified as Deaf or Hard of Hearing and the location where each offender is housed as of July 2020.

Exhibit C contains a list of ADA coordinators at each facility.

Exhibit D contains the 2020 Annual ADA Reports from each facility.

Dated: July 22, 2020

Respectfully submitted,

KWAME RAOUL
Illinois Attorney General

/s Michael D. Arnold
Michael D. Arnold
Assistant Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-3720
marnold@atg.state.il.us

Counsel for Defendant

---

[4] Please see comments within the reports primarily in column headings for facility-specific explanations when required, including information regarding any blank cells within the spreadsheets.
[5] If a facility does not have an Accommodations report or list accommodation provisions in their ADA Report, they reported having none in the reporting month.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing **DEFENDANT'S STATUS REPORT TO THE COURT** was served on all counsel of record on July 22, 2020, by filing a copy of the same through the Court's CM/ECF filing system.

/s/ *Michael D. Arnold*