**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RALPH HOLMES, *et al.,* on behalf of themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 11 C 2961 |
| v. | ) ) | Magistrate Judge Young B. Kim |
| ROB JEFFREYS, Acting Director of Illinois Department of Corrections, | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S STATUS REPORT TO THE COURT**

Defendant Rob Jeffreys, Acting Director of the Illinois Department of Corrections, by and through his attorney, Kwame Raoul, Attorney General for the State of Illinois, and pursuant to his continuing obligation under the Settlement Agreement, entered July 26, 2018 ("Agreement"), hereby submits the instant Status Report to the Court. This status report contains information and data collected regarding the Illinois Department of Corrections' ("IDOC") compliance with the Agreement during the months of June, July, August, and September 2020. Additionally, the report includes information requested by the Court in its October 30, 2020, Order (d/e 633) as modified on November 25, 2020 (d/e 639). Director Jeffreys states as follows:

**SECTION IV**

**IDENTIFYING DEAF AND HARD OF HEARING OFFENDERS THROUGH HEARING SCREENING AND AUDIOLOGICAL EVALUATIONS**

The IDOC conducts a physical examination of all offenders upon admission to a reception or classification center ("R&C"). The IDOC requires, in compliance with the Agreement, that upon admission to a Reception and Classification facility, each offender shall, on the day of intake, be observed by trained staff for auditory ability. Staff shall document the findings on the Offender Medical History form (DOC0092). IDOC Administrative Directive No. 04.03.101 §§ II(G)(1)(c)(2)(d). Offenders who self-report

as deaf or hard of hearing or who have been determined to have hearing loss during their Intake Physical Examination are provided hearing screenings as required under the Agreement.

In compliance with the Agreement, offenders can also request to receive a Hearing Screening at any time and, if an offender makes such a request, the offender is to receive such a screening within thirty (30) days of receipt of the request. IDOC has continually reminded all Health Care Unit Administrators of the thirty-day requirement for conducting hearing screenings and class counsel acknowledges high compliance rates. Notices regarding hearing screenings were prominently displayed in IDOC facility living units and medical units. Further, the Department adopted procedures that require offenders whose Hearing Screenings determined that they may be Deaf or Hard of Hearing be referred to an audiologist for an Audiological Evaluation within the timeframes set out in the Agreement. The scheduling of all medical appointments has continued to be impacted by the COVID-19 global pandemic and precautions required within the facilities.

IDOC documents and maintains in the offender's medical file the results of all Hearing Screenings and Audiological Evaluations which include a record containing a description of the determination made as to the type, degree, and configuration of any hearing loss or hearing level. IDOC notes in Offender 360, its centralized database, offenders classified as Deaf or Hard of Hearing. (Exhibit B). In addition, each facility documents the date of the hearing screening and the date of the request in order for IDOC and class counsel to monitor compliance in this Section. The monthly ADA Reports contained within Exhibit A document the date of hearing screening requests and hearing screenings. Prior to submission of the reports with each status report, IDOC Legal spends considerable time looking at every document and report provided to class counsel to ensure accuracy. If any information is missing at the time the report is submitted to IDOC Legal, the facility is contacted and every measure is taken not only to acquire any missing information but to resolve any reporting issues for future reports.

Class counsel has previously raised some concerns with individual facilities missing the 30-day deadline to conduct a hearing screening and/or the 30-day deadline to refer an offender to an audiologist following a failed hearing screening. The COVID-19 global pandemic has impacted every facility within

the Department in a number of ways, including by, at times, limiting the ability of offenders to move from their housing unit to the healthcare unit for a hearing screening or consultation required to generate a referral. The facilities are aware of the deadlines in the Agreement and make every effort to comply with those deadlines without jeopardizing the health and safety of the offender population as a whole. Additionally, as noted IDOC Legal monitors these requirements when reviewing the facility monthly reports and raises systemic issues if they are identified.

The Court's June 8, 2020, Order regarding the timeframe for conducting an audiological evaluation by an outside provider is presently on appeal and stayed by the Seventh Circuit. As noted at each hearing where the timing of audiology appointments was discussed, IDOC has been working directly with Wexford to address the wait times for audiology appointments. As part of these consultations, Wexford obtained a list of all audiologists in the state of Illinois and attempted to reach all 767 audiologists with an Illinois address.[1] Wexford made contact with 616 of the 767 audiologists to inquire about whether they were willing to partner with Wexford to provide services to the offender population. After removing those who were deceased, moved out of state, were retired or not working, were already providing services, or those who were immediately not interested, 126 audiologists expressed some interest in continuing to discuss potentially providing services to the offender population. After additional discussions with those who expressed some interest, only 13 audiology groups have indicated a continued interest in seeing IDOC patients with three being mobile providers only willing to see offenders at the Northern-most facilities (i.e., Stateville) and most being located in the northern portion of the state. Wexford is negotiating contract terms and working to bring them on board. In the areas of the state with the highest need, the central and southern portion of the state, Wexford has not identified adequate providers for the offender population even after contacting every audiologist in the state. These efforts clearly show IDOC and Wexford are exhausting all avenues available to them to bring audiologists on board and get offenders seen as quickly as possible.

---

[1] There were another 137 audiologists on the list without an Illinois address that were not contacted.

## SECTION V

**CREATION AND MAINTANCE OF A CENTRALIZED DATABASE OF DEAF AND HARD OF HEARING OFFENDERS**

The IDOC maintains a centralized database for offenders containing an entry for each Deaf or Hard of Hearing offender, including the name of the offender and facility at which the Deaf and Hard of Hearing offender is housed, indicating compliance with paragraph 40 of this Section. Offenders with a communication plan completed by the Chicago Hearing Society are entered into Offender 360 promptly and regularly and are then approved by the facility ADA Coordinators.

## SECTION VI

**DEAF AND HARD OF HEARING OFFENDER IDENTIFICATION CARD**

All offenders identified as Deaf or Hard of Hearing are offered the opportunity to have an IDOC-issued offender identification card that clearly indicates the offender is Deaf or Hard of Hearing in compliance with this Section of the Agreement. The Deaf or Hard of Hearing designation is placed upon the back of offender identification cards.

## SECTION VII

**DEAF AND HARD OF HEARING OFFENDER
AUXILIARY AIDS AND SERVICES ASSESSMENT**

The IDOC entered into a contract with the Chicago Hearing Society ("CHS") to retain one or more Qualified Specialists who will perform an Auxiliary Aids and Services Assessment for every offender identified as Deaf or Hard of Hearing. The Qualified Specialists are completing Auxiliary Aids and Services Assessments for offenders identified as Deaf or Hard of Hearing by an audiologist. IDOC has also retained the CHS for purposes of retaining a Certified Deaf Interpreter ("CDI") for the Auxiliary Aids and Services Assessment when a Deaf or Hard of Hearing offender has no proficiency in either English or American Sign Language, or when the Qualified Specialist determines that a CDI is necessary.

The Qualified Specialists from the CHS are asked to consult with the Facility ADA Coordinators and the Deaf or Hard of Hearing offenders. The Qualified Specialists memorialize their determinations regarding the specific Auxiliary Aids and/or Services the offender needs to communicate effectively. The

4

determinations of the Qualified Specialists are documented in the offender's Communication Plan. Further, the IDOC follows the determinations of the Qualified Specialists as required by the Agreement.

Because of the COVID-19 pandemic preventing CHS from conducting assessments in person at the facilities, IDOC has been working closely with the CHS during the pandemic in order to establish a plan that would enable Qualified Specialists to effectively evaluate offenders during this time of crisis. The contract with CHS was amended and a test of virtual assessments was set up at Taylorville in September. Virtual assessments allow CHS to evaluate offenders without coming inside of the facility. The ability to conduct virtual assessments remain limited for any facility with limited movement due to its current COVID-19 situation but remains an effective solution to reduce the backlog of CHS appointments caused by the pandemic. Since September 25, 2020, IDOC and CHS have completed 211 virtual assessments. See Exhibit E. Additional assessments were scheduled during this time but due to spikes in COVID-19 isolations and quarantines, many had to be rescheduled for the health and safety of the offenders and facility staff. IDOC continues to work with CHS to schedule and reschedule as many assessments as possible.

In the meantime, all hearing-impaired offenders have preliminary communication plans or some kind of documentation for their accommodations while awaiting an assessment by a Qualified Specialist. Over 1,400 communication plans have been finalized with the help of CHS and have been entered into the system.

## SECTION VIII

## AUXILIARY AIDS AND SERVICES PRIOR TO THE AUXILIARY AIDS AND SERVICES ASSESSMENT

Prior to the completion of the Auxiliary Aids and Services Assessment for a Deaf or Hard of Hearing offender, facilities provide preliminary accommodations as required by the Agreement. Preliminary accommodations for the Deaf and Hard of Hearing are identified through an interactive dialogue between the offender and the Facility ADA Coordinator. Through this interactive dialogue, interim Communication Plans or other documentation is completed by the ADA Coordinators prior to the completion of an Auxiliary Aids and Services Assessment by CHS in order for any preliminary

accommodations to be provided. Deaf or Hard of Hearing offenders are not denied accommodations during the wait for a CHS appointment.

**SECTION IX**

**PROVISION AND MAINTENANCE OF AUXILIARY AIDS AND SERVICES TO DEAF AND HARD OF HEARING OFFENDERS AND IMPLEMENTATION OF COMMUNICATION PLAN**

The IDOC provides Deaf and Hard of Hearing offenders, at no cost to the offender and subject to the limitations of Paragraph 65 of the Agreement, the Auxiliary Aids and Services provided for in the offender's Communication Plan. IDOC exercises reasonable efforts to secure, in a timely manner, hearing aids for those offenders whose Auxiliary Aids and Services Assessment indicate they should be provided a hearing aid(s). The IDOC maintains an adequate supply of readily available hearing aid batteries. Further, the IDOC continues to engage in the interactive process with those offenders identified as Deaf or Hard of Hearing for purposes of maintenance of Auxiliary Aids and Services.

In late June 2020, the Department received a shipment of 1500 "VibraLite" watches which allow offenders to set multiple alarms. The watches were offered to all Deaf and Hard of Hearing offenders statewide in early July 2020. The Department provides over the ear headphones and vibrating watches to Deaf and Hard of Hearing offenders as accommodations.

Additional accommodations for offenders may include, but are not limited to, the following: American Sign Language interpreters, closed captioned television, tactile notification pagers, Video Relay Service phone calls, TTY phone calls, white boards, and, in select cases, a personal attendant.

The IDOC has received reports of lost and stolen Auxiliary Aids and Services provided in the offender's Communication Plan. Accommodations that are lost or stolen are replaced pursuant to the restrictions of Paragraph 65 of the Agreement.

**SECTION X**

**IDOC STAFF TRAINING ON MATTERS REGARDING DEAF AND HARD OF HEARING OFFENDERS**

The IDOC Training Academy created and updated training materials addressing the topics required under the Agreement. The training materials (previously disclosed to Plaintiffs) are presented in annual

Cycle Training, Pre-Service Orientation Training, ADA Coordinator Training and Cadet Training. COVID-19 continues to impact the ability to provide training. During this reporting period, approximately 658 employees received ADA training through "Cycle Training Day 2" and 202 employees received training through Pre-Service Orientation Training.

**SECTION XI**

**ORIENTATION**

The facility orientation manuals were long-ago updated to include information about the rights of Deaf and Hard of Hearing offenders. Offenders attending orientation who are Deaf or Hard of Hearing are provided a subsequent orientation session. If the offender communicates through American Sign Language, then during the second, separate orientation session, IDOC will provide a Qualified Interpreter to assist the offender in understanding the orientation content provided orally.

**SECTION XII**

**COMMUNICATION DEVICES/TECHNOLOGIES FOR DEAF AND HARD OF HEARING OFFENDERS**

Video Remote Interpretation (VRI) equipment and translation services are available in all IDOC facility healthcare units. Deaf or hard of hearing offenders who need assistance interpreting medical or mental health information have access to this service. At times, the Unscheduled Inspection Reports within the monthly reports (contained within Exhibit A) reflect VRI was not functioning at the time of the inspection. In response to the notation of "No" to this question in the June through September reports, IDOC Legal contacted the facility for clarification. Each facility confirmed VRI was operational and was simply not in use at the time of the inspection.

All IDOC correctional facilities maintain a Video Relay Service (VRS) phone. In August 2020, class counsel expressed various concerns with using the Securus-based VRS systems for attorney calls due to some delays that occurred a few times in getting the attorney's number approved for the system to allow the call. As reported in early September, Securus agreed to immediately process the requests for attorney number additions if they are submitted separately and clearly marked as an attorney number requiring rush

7

processing. The Department also agreed to transition from Securus-based VRS back to the Sorenson VRS system for attorney calls only. The transition process continues despite technical difficulties and COVID-19-related delays. Once complete, will the Sorenson system will eliminate the requirement for approval of the phone number in advance.

Facilities housing the Deaf and Hard of Hearing possess two TTY machines. The TTY equipment can access publicly available relay service numbers. Despite lack of use a second TTY phone for Logan, NRC and Stateville were located. The additional TTY machines were plugged in and the facilities confirmed they are operational per the Court's October 30, 2020, Order. The volume on all IDOC housing unit phones is set to 65 decibels or higher and background noise cancellation is activated on the phones. Offenders utilizing TTY or VRS phones are given three times the amount of time usually allotted to non-hearing-impaired offenders at no expense to the user. Data is being collected regarding TTY and VRS usage as required by the Settlement. See monthly facility reports contained in Exhibit A.

## SECTION XIII

## TELEVISION FOR DEAF AND HARD OF HEARING OFFENDERS

New televisions purchased by IDOC for offenders support open or closed captioning as required by the Agreement. In addition, offenders may purchase televisions that support open or closed captioning. Facilities ensure that closed captioning is activated on movies shown through the IDOC system and on televisions in common areas as required by the settlement. Facilities monitor the use of closed captioning during unscheduled inspections via IDOC form DOC0481. See monthly facility reports attached as Exhibit A. If the inspection determines there is an issue with closed captioning, the issue is resolved or investigated further. To the extent an inspection report indicates the closed captioning was not functioning at the time of the inspection, IDOC reports that except where otherwise noted this is due to the televisions not being on and not due to this feature being inactive. Any issues with closed captioning at the time of an inspection are immediately addressed.

In response to the Court's October 30, 2020, Order as amended on November 25, 2020, regarding the closed captioning being turned off by offenders at East Moline, East Moline has issued a staff memo,

attached hereto as Exhibit D. This memo reminds staff of their obligations to ensure closed captioning remains on at all times. It will be read at roll call and distributed to the facility as a whole. Dayrooms at East Moline remain closed and televisions are off. Once the restriction has been lifted, security staff will check the closed captioning status on televisions and take action to correct any if they are turned off by other offenders. This will take place during scheduled and unscheduled rounds and while officers are assigned to the decks resulting in this being checked in all dorms on each of the three shifts. The newest televisions at East Moline have remotes which will not be readily available to the offenders except by checking them out and the facility is looking to see if universal remotes can be purchased for the current, older televisions. IDOC provides Deaf and Hard of Hearing offenders over the ear headphones, free of charge, in accordance with the settlement agreement.

## SECTION XIV

## VISUAL AND TACTILE ALERT NOTIFICATIONS FOR DEAF AND HARD OF HEARING OFFENDERS

The Agreement requires IDOC to begin making reasonable efforts to provide Deaf and Hard of Hearing offenders with a safe and effective tactile notification system that will advise them of events such as the arrival of visitors, commencement of meals, showers, yard time, medical appointments, evacuations, and emergencies.

The IDOC has installed visual notification systems (strobe lights) for outdoor warning shots at all facilities that have the capability to fire warning shots. Additional facilities do not have the capability to fire warning shots and, therefore, strobes will not be installed. The strobes have been tested and are visible during daylight hours.

IDOC has taken a number of approaches to providing tactile notifications to offenders. First, all Deaf and Hard of Hearing offenders were offered a new tactile watch (VibraLite) that allows the offender to set 12 separate alarms. This watch, coupled with readily available schedules, provides all offenders who accepted it with a safe and effective tactile alert system for being notified of any appointments and programming as desired.

Additionally, another tactile notification pager system was ordered for each facility and has been installed. To operate the paging system, each facility was provided with standalone PCs and monitors. Each PC is able to send messages to watch "pagers" that offenders wear. The watches both vibrate and send a written message to indicate the reason for the page, such as "medical," "visitor," "yard," etc. All facilities with the exception of Jacksonville[2] report they have passed out the pagers and are utilizing the system when there is movement. Due to current movement restrictions as a result of necessary COVID-19 precautions, many facilities have escorted movement and, therefore, less of a need to utilize the system during medical quarantines with offender movement limited. This has allowed the facilities more time to train staff and test out the system before regular movement and increased need for the system resumes.

## SECTION XV

## EQUAL ACCESS TO PRISON EMPLOYMENT

IDOC does not deny assignment opportunities to an otherwise qualified Deaf or Hard of Hearing offender unless, after conducting an individualized assessment, including consultation with the offender, it is determined that the Deaf or Hard of Hearing offender cannot perform the essential functions of the position with or without a reasonable accommodation. Facilities are required to log the reason for any assignment being denied to a Deaf or Hard of Hearing offender. See monthly facility reports attached as Exhibit A.

---

[2] Jacksonville has not passed out pagers to offenders due to COVID-19 restrictions. Due to Jacksonville's current COVID-19 status, offenders are being consistently moved to new housing units for purposes of quarantine, etc. Pagers are assigned to transmitters placed in the housing units and passing out the pagers now would cause an increase in contact between offenders and staff each time an offender is moved to and from a housing unit. Additionally, the offenders would need to be trained, thereby increasing contacts further. This task is not worth the risk as the pagers would not be utilized without movement in the facility. During the medical quarantine, there is no offender movement in the facility. Meals, medical care, and mental health care are all being provided in the housing units.

**SECTION XVI**

**HAND RESTRAINTS REGARDING DEAF AND HARD OF HEARING OFFENDERS**

On 9/21/2018 a directive was sent out to all facilities by the Chief of Operations regarding the use of hand restraints on deaf and hard of hearing offenders. A copy of this directive was previously provided to plaintiffs' counsel.

**SECTION XVII.**

**FACILITY AND CELL ASSIGNMENTS AND TRANSFERS OF DEAF AND HARD OF HEARING OFFENDERS**

Deaf and Hard of Hearing offenders are not transferred solely because of their Deaf or Hard of Hearing status to a higher security prison, or to a prison which does not offer comparable programing. Direction was sent to all facilities by the Transfer Coordinator's Office regarding the requirements in this section related to the transfer of Deaf and Hard of Hearing offenders. Further, requests by Deaf and Hard of Hearing offenders to be housed with another Deaf or Hard of Hearing offender are considered. IDOC previously tendered a copy of the direction provided by the Transfer Coordinator's Office.

**SECTION XVIII**

**CREATION AND DISSEMINATION OF MATERIALS MEMORIALIZING DEAF AND HARD OF HEARING OFFENDERS' RIGHTS**

The facility orientation manuals were updated to include information about the rights of Deaf and Hard of Hearing offenders.

**SECTION XIX**

**MONITORING AND REPORTING**

The Agreement requires reporting of compliance every 120 days. This report satisfies that requirement. Additionally, the attachments to this report contain additional information as noted below.

Exhibit A is one .zip drive, containing one folder for each June, July, August and September facility reports, with subfolders per facility. Included and organized within these folders are:

- Cover pages ("Cover")[3] listing the number of communication plans and the names of those who received them, the number of hearing screenings, the number of audiological evaluations, the number of grievances specific to this Agreement received and the names of those who wrote them, whether interpreters or VRI was utilized, whether TTY or VRS machines were utilized, whether offenders were denied a hearing screening during a periodic physical examination, whether the facility denied employment to class members, and, for Reception and Classification Centers, the number of intakes in the reporting month;

- Communication Plans ("ComPlan") for all communication plans completed during the reporting month, both by CHS virtually and any interim plans completed by the facility;

- Hearing Screenings ("HearScn") for all hearing screenings completed during the reporting month;

- Audiological Evaluation results ("Audio") for all audiological evaluations completed during the reporting month, along with documentation for ENT appointments and hearing aid pick up;

- Grievances ("Griev") filed during the reporting month which, if true, would constitute a violation of the Agreement;[4]

- VRI/Interpreter Logs ("Interp") which log use of interpreters for high-stakes interactions whether through an in-person interpreter or VRI;

- TTY and VRS logs ("TTYVRS") logging all TTY and/or VRS usage at the facility;

---

[3] Naming conventions utilized for all reports in Exhibit A are included in parentheticals.
[4] There has been confusion with some facilities regarding which grievances are required resulting in the submission of grievances that are related to ADA generally and not necessarily specific to *Holmes*. Clarification was sent out to all facilities; however, the reporting may be over-inclusive. Additionally, if a response to the grievance is not provided, there is typically a reason for the lack of response, such as the grievance not reaching the 2nd level for a response or a response being provided after the report is submitted. These reasons are provided in the relevant Cover page.

- Unscheduled Inspection Reports ("DOC0481") which include the inspection of whether televisions had closed captioning;[5]

- Individual Hearing Screening reports ("ADARpt") which includes offenders who requested a Hearing Screening, whether they received the requested Hearing Screening, and why any offenders did not receive the requested Hearing Screening. It also contains information reflecting the identification of each offender who, based on a Hearing Screening after the date of this Agreement, was found to require an Audiological Evaluation (and any subsequent steps to provide this evaluation);

- Accommodations ("Accom") such as watches, headphones, hearing aids, etc. provided to offenders in the reporting month. This report may take the form of pdfs of property receipts or lists of accommodations provided. Additionally, some facilities simply reported this information within the ADA Report in the preceding section;[6]

- 5% of documents for the Intake screenings ("Intake") at the reception and classification centers.

Exhibit B contains a listing of all offenders identified as Deaf or Hard of Hearing and the location where each offender is housed as of December 4, 2020.

Exhibit C contains a list of ADA coordinators at each facility.

Exhibit D contains a memorandum issued at East Moline as noted in Section XIII above.

Exhibit E contains a list of offenders who have completed virtual assessments with CHS.

---

[5] To the extent offender information protected via HIPAA or other means was included on the report, it was redacted. If a facility did not provide a report, they did not complete Unscheduled Inspections in the reporting month.
[6] If a facility does not have an Accommodations report or list accommodation provisions in their ADA Report, they reported having none in the reporting month.

Dated: December 4, 2020

Respectfully submitted,

KWAME RAOUL
Illinois Attorney General

/s *Michael D. Arnold*
Michael D. Arnold
Assistant Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-3720
marnold@atg.state.il.us

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing **DEFENDANT'S STATUS REPORT TO THE COURT** was served on all counsel of record on December 4, 2020, by filing a copy of the same through the Court's CM/ECF filing system.


/s/ *Michael D. Arnold*