IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RALPH HOLMES, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROB JEFFREYS, Director, Illinois Department of Corrections,<br><br>Defendants. | Case no. 11 C 2961<br><br>Honorable Magistrate Judge Young B. Kim |

**DEFENDANT'S STATUS REPORT TO THE COURT**

Defendant Rob Jeffreys, Director of the Illinois Department of Corrections, by and through his attorney, Kwame Raoul, Attorney General for the State of Illinois, and pursuant to his obligation under the Extended Provisions and Modified Extended Provisions of the Settlement Agreement, entered July 26, 2018 and extended on June 21, 2022, ("Agreement") hereby submits the instant Status Report to the Court. This status report contains information and data collected regarding the Illinois Department of Corrections' ("IDOC") compliance with the requirements related to ASL Interpreters contained in the Agreement during June 2022. Defendant states as follows:

**SECTION VII**

**DEAF AND HARD OF HEARING INMATE
AUXILIARY AIDS AND SERVICES ASSESSMENT**

IDOC has retained the Chicago Hearing Society ("CHS") for purposes of retaining a Certified Deaf Interpreter ("CDI") for the Auxiliary Aids and Services Assessment when a Deaf or Hard of Hearing individual in custody has no proficiency in either

English or American Sign Language, or when the Qualified Specialist determines that a CDI is necessary. There is one ASL user whose communication plan indicates the need for a CDI. This individual was recently transferred to Menard Correctional Center. Menard reports it has secured an appropriate interpreter for this individual and he continually refuses to come out of his cell to speak to anyone. The logs also reflect these refusals. IDOC will continue to watch this specific user to be sure the facility is in compliance with this requirement.

The Qualified Specialists memorialize their determinations regarding the specific Auxiliary Aids and/or Services the individual in custody needs to communicate effectively. The determinations of the Qualified Specialists are documented in the individual in custody's Communication Plan. Further, the IDOC follows the determinations of the Qualified Specialists as required by the Agreement.

## SECTION IX

**PROVISION AND MAINTENANCE OF QUALIFIED INTERPRETERS TO DEAF AND HARD OF HEARING INMATES AND IMPLEMENTATION OF COMMUNICATION PLAN**

The IDOC provides Deaf and Hard of Hearing individuals in custody, at no cost to the individual in custody and subject to the limitations of Paragraph 65 of the Agreement, any Qualified Interpreters provided for in the individual in custody's Communication Plan.

Class counsel has raised issues regarding ASL interpreters. As reported to the Court previously, the Department takes this issue very seriously and is making every effort to try to provide interpreters to individuals in custody when interpreters are needed. As a reminder to staff, the Department continues to give direction statewide that ASL users do

not need to request interpreters for any high stakes interactions and that an interpreter should be automatically provided.

During the current reporting period, an extensive review of the interpreter logs for June 2022 was conducted and compared to documentation being produced in the attached exhibits as provided in Paragraph 89 of the Agreement. The following information was noted during this review:

*Big Muddy Correctional Center*

Big Muddy had two ASL users housed there during the relevant reporting period. The logs for the ASL users reflect use of Propio for the SDP program both users attend and VRI for medical/mental health appointments. The logs contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries ("CHAMPS") entries for the ASL users were reviewed. The interactions noted did not involve substantial conversation and do not qualify as high-stakes interactions. A couple interactions discussed aids and services, but were not in the context of developing a communication plan and, therefore, did not require an interpreter per the Agreement. The assignment history, attendance records, disciplinary cards, MHP database, crisis watch trackers, and SDP sign-in sheets were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

Issues identified at Big Muddy during the reporting period reflect no interpreters provided for a couple medical/dental appointments. Staff in the health care unit were reeducated about the requirement to provide interpreting services for dental and medical appointments. For religious services, the ASL user refused the ASL interpreter.

*Danville Correctional Center*

Danville Correctional Center has one ASL user housed there during the reporting period.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The CHAMPS entries for the ASL user were reviewed. The interactions noted did not involve substantial conversation and do not qualify as high-stakes interactions. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation. For this month, this individual did not have any high-stakes interactions requiring an interpreter.

The Statewide ADA Compliance Officer has been working with Danville to ensure expectations are communicated clearly and are followed. IDOC will continue to monitor Danville's provision of ASL interpreters for the individual now housed there.

### *Dixon Correctional Center*

Dixon had five ASL users housed there during the relevant reporting period. The logs for the ASL users reflect use of interpreters and contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The CHAMPS entries for the ASL users were reviewed. The interactions noted did not involve substantial conversation and do not qualify as high-stakes interactions. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

Issues identified at Dixon during the prior reporting period reflected a lack of interpreters provided for mental health appointments, but this month's reporting reflects consistent usage of interpreters for these appointments. There were two incidents of a more emergent nature where an interpreter could not be utilized as the patient requested a crisis watch and there would be a risk in waiting for an interpreter to be secured. Otherwise, interpreters were provided for all mental health appointments. There were two medical appointments for one individual that do not reflect the use of an interpreter. The staff responsible was reeducated on the requirement to provide ASL interpreters. The Department expects to see continued improvement in the next report.

*East Moline Correctional Center*

On June 30, 2022[1], a communication plan was provided to IDOC for a patient at East Moline who is a newly-designated ASL user. That communication plan is provided with Exhibit A. Full reporting for this individual will be included in the report for July 2022 data.

*Menard Correctional Center*

Menard Correctional Center had one ASL user housed there during the relevant reporting period after transfer from Western Illinois Correctional Center. The documentation reviewed reflects continued refusals to interact with staff including mental health and the adjustment committee. Documentation also reflects interpreters being secured for these interactions only to have the user refuse the contact altogether.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The CHAMPS entries for the ASL user were reviewed. The interactions noted did not involve substantial conversation and do not qualify as high-stakes interactions. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

---

[1] The communication plan is dated June 10, 2022, but not provided to IDOC until June 30, 2022.

*Taylorville Correctional Center*

Taylorville Correctional Center had one ASL user housed there during the relevant reporting period. The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The CHAMPS entries for the ASL user were reviewed. The interactions noted did not involve substantial conversation and do not qualify as high-stakes interactions. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation. For this month, this individual did not have any high-stakes interactions requiring an interpreter.

A review of Taylorville's documentation did not reveal any issues and appropriate reporting and use of interpreters.

*Western Illinois Correctional Center*

Western Illinois had four ASL users housed there during the relevant reporting period, although one of the four transferred to Menard in mid-June 2022. The logs for the ASL users reflect use of interpreters for medical and mental health appointments and disciplinary hearings. The logs contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The CHAMPS entries for the ASL users were reviewed. The interactions noted did not involve substantial conversation and do not qualify as high-

stakes interactions. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

Issues identified at Western Illinois during the reporting period reflect no interpreters provided for medical or mental health appointments in the early part of June. IDOC has engaged in continued discussions regarding the requirement to provide ASL interpreters for medical and mental health appointments. After reeducation early in the month, interpreters are reflected for later contacts. Western also reflected the lack of an interpreter for religious services. The facility is working to provide ASL interpreters for religious services. The Department expects to see continued improvement in the next report.

## SECTION XI

## ORIENTATION

The facility orientation manuals were long-ago updated to include information about the rights of Deaf and Hard of Hearing individuals in custody. Individuals in custody attending orientation who are Deaf or Hard of Hearing are provided a subsequent orientation session. If the individual in custody communicates through American Sign Language, then during the second, separate orientation session, IDOC will provide a Qualified Interpreter to assist the individual in custody in understanding the orientation content provided orally.

## SECTION XII

## COMMUNICATION DEVICES/TECHNOLOGIES
## FOR DEAF AND HARD OF HEARING INMATES

Video Remote Interpretation ("VRI") equipment and translation services are available in all IDOC facility healthcare units. Deaf or hard of hearing individuals in custody who need assistance interpreting medical or mental health information have access to this service. In response to class counsel's concerns, the Department has reiterated this requirement for ASL users. As noted in the logs, VRI is being used for medical and mental health appointments at some facilities while other facilities need improvement in this area. As noted above, IDOC continues to work directly with these facilities to communicate expectations and expects continued improvement.

## SECTION XVI

## HAND RESTRAINTS REGARDING DEAF AND HARD OF HEARING INMATES

On September 21, 2018, a directive was sent out to all facilities by the Chief of Operations regarding the use of hand restraints on deaf and hard of hearing individuals in custody. A copy of this directive was previously provided to Plaintiffs' counsel.

## SECTION XIX

## MONITORING AND REPORTING

The Agreement requires reporting of compliance every 30 days. This report satisfies that requirement. Additionally, the attachments to this report are organized as follows:

Exhibit A is one .zip drive containing June 2022 facility reports with subfolders per facility and per ASL User. Included and organized within these folders are:

- Communication Plans ("ComPlan") for all communication plans completed during the reporting month, both by CHS virtually and any interim plans completed by the facility for ASL users to the extent there were any;

- Grievances ("Griev") filed during the reporting month which, if true, would constitute a violation of the terms of the Agreement related to ASL users and interpreters;[2]

- Interpreter Logs ("Interp") which log use of interpreters for high-stakes interactions whether through an in-person interpreter or VRI;

- Call passes logged into the O360 system for all ASL users with added notations as to whether the call pass interaction took place and/or whether it qualified as a high-stakes interaction;

- Cumulative counseling summaries ("CHAMPS") documentation for the ASL users to the extent there were entries in the reporting month;

- Group therapy sign-in sheets applicable to ASL users from the SDP treatment programs at Big Muddy Correctional Center;

- Attendance records logged into the O360 system for ASL users to the extent there were any during the reporting month;

- Assignment history logged into the O360 system for ASL users for the reporting month;

---

[2] If a response to the grievance is not provided, the lack of response is due to the grievance not reaching the 2nd level for a response or a response being provided after the report is submitted.

- Disciplinary cards to the extent discipline was issued against ASL users during the reporting month;[3]

- Selections of the MHP Databased for any ASL users on the mental health caseload; and

- Selections of the Crisis Watch Trackers for any ASL users on crisis watch during the reporting month.

Exhibit B contains a listing of all individuals in custody identified as Deaf or Hard of Hearing and being an ASL user and the location where each individual in custody was housed during the reporting period.

Exhibit C contains a list of ADA coordinators at each facility.

Dated: August 1, 2022

Respectfully submitted,

KWAME RAOUL
Illinois Attorney General

/s *Nicholas S. Staley*
Nicholas S. Staley
Assistant Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-7202
nicholas.staley@ilag.gov

*Counsel for Defendant*

---

[3] The ticket is not necessarily heard during the same month as the incident. Therefore, a ticket issued in March, for example, may not appear on the interpreter log until April.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing **DEFENDANT'S STATUS REPORT TO THE COURT** was served on all counsel of record on August 1, 2022, by filing a copy of the same through the Court's CM/ECF filing system.

/s/ *Nicholas S. Staley*