UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RALPH HOLMES, *et al.,* on behalf of themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 11 C 2961 |
| v. | ) ) | Magistrate Judge Young B. Kim |
| ROB JEFFREYS, Director, Illinois Department of Corrections, | ) ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S STATUS REPORT TO THE COURT**

Defendant Rob Jeffreys, Director of the Illinois Department of Corrections, by and through his

attorney, Kwame Raoul, Attorney General for the State of Illinois, and pursuant to his obligation under the

Extended Provisions and Modified Extended Provisions of the Settlement Agreement, entered July 26, 2018

and extended on June 21, 2022, ("Agreement") hereby submits the instant Status Report to the Court. This

status report contains information and data collected regarding the Illinois Department of Corrections'

("IDOC") compliance with the requirements related to ASL Interpreters contained in the Agreement during

July 2022. Defendant states as follows:

**SECTION VII**

**DEAF AND HARD OF HEARING INMATE
AUXILIARY AIDS AND SERVICES ASSESSMENT**

IDOC has retained the Chicago Hearing Society ("CHS") for purposes of retaining a Certified

Deaf Interpreter ("CDI") for the Auxiliary Aids and Services Assessment when a Deaf or Hard of Hearing

individual in custody has no proficiency in either English or American Sign Language, or when the

Qualified Specialist determines that a CDI is necessary. There is one ASL user whose communication

plan indicates the need for a CDI. This individual is housed at Menard Correctional Center. Menard has

worked to secure an appropriate interpreter for this class member. The interpreter secured has worked

with the class member in the past, is a Child of Deaf Adult (CODA), and communicates with ease and

fluently with this class member. The interpreter is scheduled to come weekly to interpret for all of this class member's appointments. While the class member was recently refusing to speak to anyone and on crisis watch, he is not refusing the appointments as before and been removed from crisis watch. IDOC will continue to watch this specific user to be sure the facility remains in compliance with this requirement.

The Qualified Specialists memorialize their determinations regarding the specific Auxiliary Aids and/or Services the individual in custody needs to communicate effectively. The determinations of the Qualified Specialists are documented in the individual in custody's Communication Plan. Further, the IDOC follows the determinations of the Qualified Specialists as required by the Agreement.

## SECTION IX

### PROVISION AND MAINTENANCE OF QUALIFIED INTERPRETERS TO DEAF AND HARD OF HEARING INMATES AND IMPLEMENTATION OF COMMUNICATION PLAN

The IDOC provides Deaf and Hard of Hearing individuals in custody, at no cost to the individual in custody and subject to the limitations of Paragraph 65 of the Agreement, any Qualified Interpreters provided for in the individual in custody's Communication Plan.

Class counsel has raised issues regarding ASL interpreters. As reported to the Court previously, the Department takes this issue very seriously and is making every effort to try to provide interpreters to individuals in custody when interpreters are needed. As a reminder to staff, the Department continues to give direction statewide that ASL users do not need to request interpreters for any high stakes interactions and that an interpreter should be automatically provided.

During the current reporting period, an extensive review of the interpreter logs for July 2022 was conducted and compared to documentation being produced in the attached exhibits as provided in Paragraph 89 of the Agreement. The following information was noted during this review:

*Big Muddy Correctional Center*

2

Big Muddy had two ASL users housed there during the relevant reporting period. The logs for the ASL users reflect use of VRI for medical/mental health appointments. The logs contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL users were reviewed. The interactions noted did not involve substantial conversation and do not qualify as high-stakes interactions. A couple interactions discussed aids and services, but were not in the context of developing a communication plan and, therefore, did not require an interpreter per the Agreement. The assignment history, attendance records, disciplinary cards, MHP database, crisis watch trackers, and SDP sign-in sheets were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

Issues identified at Big Muddy during the reporting period relate to religious services. During this reporting month, the interpreter was not used because the system was being relocated closer to the speaker for the interpreter to better hear. This will allow individuals who require ASL service to sit in the front row so that they can see the interpreter on the computer screen. Additionally, training and internet access will be provided to staff to ensure all shifts have chapel services covered.

*Danville Correctional Center*

Danville Correctional Center has one ASL user housed there during the reporting period.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summary (CHAMPS) entries for the ASL user were reviewed. The interactions noted did not involve substantial conversation and do not qualify as high-stakes interactions. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were

also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

The Statewide ADA Compliance Officer has been working with Danville to ensure expectations are communicated clearly and are followed. The logs reflect the use of pen and paper for three meetings with the ASL user. Since then, staff have all been provided the information for accessing Propio remote interpreting. IDOC will continue to monitor Danville's provision of ASL interpreters for the individual now housed there and expects to see improvement in future reports.

*Dixon Correctional Center*

Dixon had five ASL users housed there during the relevant reporting period, however, one of the five individuals paroled in July 2022. The logs for the ASL users reflect use of interpreters and contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL users were reviewed. The interactions noted did not involve substantial conversation and do not qualify as high-stakes interactions. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

Issues identified at Dixon during this reporting period reflected a lack of interpreters provided for some medical appointments for two ASL users and for religious services for one ASL user. Regarding the medical appointments, the Health Care Unit Administrator is working with the medical providers to obtain a portable system to interpret so that it can be moved across medical disciplines at the facility. For religious

services, the facility has requested additional interpreter services from one of their providers. Dixon is also working to add internet lines to allow for remote interpreting in the chapel. The Department expects to see continued improvement in the next report.

*Hill Correctional Center*

On June 30, 2022[1], a communication plan was provided to IDOC for a patient at East Moline who is a newly-designated ASL user. East Moline was notified of this communication plan requiring ASL services on July 5th and he transferred to Hill on July 7th.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL users were reviewed. The interactions noted did not involve substantial conversation and do not qualify as high-stakes interactions. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

Hill did not provide interpreters for this individual in July. Hill had not previous housed an ASL User and this class member was transferred to Hill during the reporting month. East Moline, his prior facility, had also just learned of his status as an ASL user right before his transfer. Since the transfer, Hill has been working with the Statewide ADA Compliance Officer to ensure interpreters are being provided. The Department expects to see continued improvement in the next report.

*Menard Correctional Center*

---

[1] The communication plan is dated June 10, 2022, but not provided to IDOC until June 30, 2022.

Menard Correctional Center had one ASL user housed there during the relevant reporting period. The documentation reviewed reflects interpreters used for meetings with IDOC staff, counselors, and medical/mental health.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL user were reviewed. The interactions noted did not involve substantial conversation and do not qualify as high-stakes interactions. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

A review of Menard's documentation did not reveal any issues and appropriate reporting and use of interpreters.

*Taylorville Correctional Center*

Taylorville Correctional Center had one ASL user housed there during the relevant reporting period. The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL user were reviewed. The interactions noted did not involve substantial conversation and do not qualify as high-stakes interactions. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

A review of Taylorville's documentation did not reveal any issues and appropriate reporting and use of interpreters.

*Western Illinois Correctional Center*

Western Illinois had three ASL users housed there during the relevant reporting period. The logs contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL users were reviewed. The interactions noted did not involve substantial conversation and do not qualify as high-stakes interactions. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

Issues identified at Western Illinois during the reporting period reflect no interpreters provided for one individual's eye doctor and dental appointments. IDOC has engaged in continued discussions regarding the requirement to provide ASL interpreters for *all* medical appointments. The Health Care Unit Administrator is, again, addressing the issue to ensure interpreters are provided for all medical appointments. Western also reflected the lack of an interpreter for religious services during July, but the facility has since secured an interpreter to come to religious services every week. The Department expects to see continued improvement in the next report.

## SECTION XI

## ORIENTATION

The facility orientation manuals were long-ago updated to include information about the rights of Deaf and Hard of Hearing individuals in custody. Individuals in custody attending orientation who are Deaf or Hard of Hearing are provided a subsequent orientation session. If the individual in custody communicates

through American Sign Language, then during the second, separate orientation session, IDOC will provide a Qualified Interpreter to assist the individual in custody in understanding the orientation content provided orally.

## SECTION XII

### COMMUNICATION DEVICES/TECHNOLOGIES
### FOR DEAF AND HARD OF HEARING INMATES

Video Remote Interpretation (VRI) equipment and translation services are available in all IDOC facility healthcare units. Deaf or hard of hearing individuals in custody who need assistance interpreting medical or mental health information have access to this service. In response to class counsel's concerns, the Department has reiterated this requirement for ASL users. As noted in the logs, VRI is being used for medical and mental health appointments at some facilities while other facilities need improvement in this area. As noted above, IDOC continues to work directly with these facilities to communicate expectations and expects continued improvement.

## SECTION XVI

### HAND RESTRAINTS REGARDING DEAF AND HARD OF HEARING INMATES

On 9/21/2018 a directive was sent out to all facilities by the Chief of Operations regarding the use of hand restraints on deaf and hard of hearing individuals in custody. A copy of this directive was previously provided to plaintiffs' counsel.

## SECTION XIX

### MONITORING AND REPORTING

The Agreement requires reporting of compliance every 30 days. This report satisfies that requirement. Additionally, the attachments to this report are organized as follows:

Exhibit A is one .zip drive containing July 2022 facility reports with subfolders per facility and per ASL User. Included and organized within these folders are:

- Communication Plans ("ComPlan") for all communication plans completed during the reporting month, both by CHS virtually and any interim plans completed by the facility for ASL users to the extent there were any;

- Grievances ("Griev") filed during the reporting month which, if true, would constitute a violation of the terms of the Agreement related to ASL users and interpreters;[2]

- Interpreter Logs ("Interp") which log use of interpreters for high-stakes interactions whether through an in-person interpreter or VRI;

- Call passes logged into the O360 system for all ASL users with added notations as to whether the call pass interaction took place and/or whether it qualified as a high-stakes interaction;

- Cumulative counseling summaries (CHAMPS) documentation for the ASL users to the extent there were entries in the reporting month;

- Group therapy sign-in sheets applicable to ASL users from the SDP treatment programs at Big Muddy Correctional Center;

- Attendance records logged into the O360 system for ASL users to the extent there were any during the reporting month;

- Assignment history logged into the O360 system for ASL users for the reporting month;

- Disciplinary cards to the extent discipline was issued against ASL users during the reporting month;[3]

- Selections of the MHP Databased for any ASL users on the mental health caseload; and

---

[2] If a response to the grievance is not provided, the lack of response is due to the grievance not reaching the 2nd level for a response or a response being provided after the report is submitted.

[3] The ticket is not necessarily heard during the same month as the incident. Therefore, a ticket issued in March, for example, may not appear on the interpreter log until April. In this reporting month, the disciplinary card for the one ASL user at Menard is provided because it now shows the June discipline. The hearing was in June and reported last month, but the updated disciplinary card is being provided to supplement June's reports.

- Selections of the Crisis Watch Trackers for any ASL users on crisis watch during the reporting month.

Exhibit B contains a listing of all individuals in custody identified as Deaf or Hard of Hearing and being an ASL user and the location where each individual in custody was housed during the reporting period.

Exhibit C contains a list of ADA coordinators at each facility.

Dated: August 30, 2022

Respectfully submitted,

KWAME RAOUL
Illinois Attorney General

/s Michael D. Arnold_____
Michael D. Arnold
Assistant Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-3720
Michael.Arnold@ilag.gov

*Counsel for Defendant*

10

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing **DEFENDANT'S STATUS REPORT TO THE COURT** was served on all counsel of record on August 30, 2022, by filing a copy of the same through the Court's CM/ECF filing system.

/s/ *Michael D. Arnold*