UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RALPH HOLMES, *et al.,* on behalf of themselves and all others similarly situated, | ) ) | |
| Plaintiffs, | ) | Case No. 11 C 2961 |
| v. | ) ) | |
| | ) | Honorable Judge Young B. Kim |
| ROB JEFFREYS, Acting Director of Illinois Department of Corrections; *et al.*, | ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' PETITION FOR AN AWARD OF
ATTORNEYS' FEES AND COSTS AND OTHER RELIEF**

Pursuant to the Court's September 9, 2022 order (Dkt. 790), Class Counsel files this petition seeking an award of the attorneys' fees and costs incurred in investigating and litigating the violations of the Settlement Agreement in this case ("Settlement") by the Illinois Department of Corrections ("IDOC"), as found by this Court per its order on June 8, 2020 (Dkt. 573) ("June 8, 2020 Order"), the Seventh Circuit's Order on March 16, 2021 ("Seventh Circuit decision"), and this Court's orders dated July 26, 2022 (Dkt. 777) ("July 26, 2022 Order") and August 3, 2022 (Dkt. 780) ("August 3, 2022 Order"). In addition, Plaintiffs seek direct compensation for Plaintiffs for IDOC's violations of the Settlement as reflected in the July 26, 2022 and August 3, 2022 Orders.

**I.     Petition for Attorneys' Fees and Costs**

   **A.     Petition Seeks Attorneys' Fees for Three Distinct Periods**

Plaintiffs request that the Court enter orders requiring IDOC to pay Class Counsel's attorneys' fees and costs relating to three distinct periods, as follows:

> (1) **Up Through June 8, 2020:** Fees and costs up through June 8, 2020 that were incurred by Class Counsel in connection with investigating and litigating Plaintiffs' Motion to Enforce that was filed in March 2020 (Dkt. 539) and decided by the Court on June 8, 2020. The Court's September 4, 2020 Order (Dkt. 614) already awarded theses fees, but IDOC has yet to pay the fees.

1

(2) **June 9, 2020 through March 16, 2021:** Fees and costs from June 9, 2020 through March 16, 2021 that were incurred by Class Counsel in connection with litigating Defendant's appeal of the Court's June 8, 2020 Order on Plaintiffs' March 2020 Motion to Enforce, which the Seventh Circuit decided on March 16, 2021.

(3) **March 17, 2021 through August 3, 2022:** Fees and costs during the period from March 17, 2021 through August 3, 2022 that were incurred by Class Counsel in connection with (a) investigating, including through formal discovery ordered by the Court and other means, whether IDOC used best efforts relating to its Settlement obligations concerning Audiological Evaluations; and (b) litigating that issue, including through Plaintiffs' Motion to Find IDOC in Violation of the Settlement (Dkt. 701), which was filed on November 24, 2021 and decided on July 26, 2022 and August 3, 2022, and which was the subject of a hearing on May 18-19, 2021.

### B.     Fees and Costs for the Period Up Through June 8, 2020

Based on Plaintiffs' Motion to Enforce filed in March 2020, this Court entered its June 8, 2020 Order finding that IDOC had violated the terms of the Settlement. In its June 8 Order, the Court, pursuant to the terms of the Settlement, ordered that IDOC should pay Class Counsel's fees and costs incurred in investigating and litigating the Settlement violations.[1]

On September 4, 2020, based on Plaintiffs' fee petition, this Court entered an order ("September 4, 2020 Order") awarding Plaintiffs fees in the amount of $52,357.50 and costs in the amount of $1,741.35 (Dkt. 615). This Court stated that it would "set a deadline for payment of these fees and costs after the resolution of the pending appeal, if necessary." (Dkt. 614.) IDOC ultimately appealed the September 4 Order as well, and the two appeals of the June 8, 2020 Order and the

---

[1] The Court initially ordered Plaintiffs to file a fee petition by July 17, 2020. However, on July 8, 2020, IDOC filed a Notice of Appeal, appealing the Court's June 8, 2020 Order. (Dkt. 585.) Following the filing of the Notice of Appeal, on July 14, 2020, this Court entered an order stating, "the class is no longer required to file its fee petition by July 17, 2020" and instructing Class Counsel to "log attorney hours incurred in connection with the appeal and include these hours in the fee petition if filed [after the appeal]." (Dkt. 590.) After the parties conferred with the Court and IDOC expressed an interest in simultaneously appealing both the June 8, 2020 Order and any fees awarded in connection with that order, the Court entered an order (Dkt. 595) again directing Plaintiffs to file a fee petition, by August 10, 2020, for the fees and costs Plaintiffs incurred in investigating and litigating IDOC's Settlement violations found in the Court's June 8, 2020 Order. On August 10, 2020, Plaintiffs filed a fee petition setting forth its fees and costs incurred through June 8, 2020 in investigating and litigating the Settlement violations found in the Court's June 8, 2020 Order. (Dkt. 599.) The next day, after noticing that the original petition had some clerical errors, Plaintiffs then filed an amended fee petition. (Dkt. 600.)

September 4, 2020 Order were consolidated in the Seventh Circuit. *See Holmes*, No. 20-02263 (Dkt. 22); *Holmes, et al. v. Godinez*, No. 20-02709 (Dkt. 5). In addition, IDOC filed motions to stay the June 8, 2020 Order, first with this Court (Dkt. 597), which this Court denied (Dkt. 602), and then with the Seventh Circuit, which the Seventh Circuit granted. (Dkt. 611) (S*ee Holmes*, No. 20-0226, 7th Cir. Dkt. 21). During the pendency of the appeal, IDOC did not pay the fees that this Court's September 4, 2020 Order had ordered to be paid.

The Seventh Circuit's decided the appeal on March 16, 2021, affirming this Court's finding that IDOC was in substantial non-compliance with the Settlement and that this Court had authority, pursuant to the Settlement, to award the fees and costs Plaintiffs incurred in investigating and litigating such non-compliance. *Holmes, et al. v. Godinez*, 991 F.3d 775 (7th Cir. 2021). Specifically, the Seventh Circuit ruled against IDOC in several respects. It found that IDOC violated the Settlement by using Licensed Hearing Instrument Dispensers ("LHIDs") instead of licensed audiologists to conduct Audiological Evaluations, and that in doing so IDOC had been in substantial non-compliance with the Settlement. *Id.* at 781-82. The Seventh Circuit also rejected IDOC's position that this Court had no authority to issue fees or costs upon finding substantial non-compliance with the Settlement, finding that it was appropriate for the Court to award reasonable attorney's fees and costs for work expended by Class Counsel in investigating and litigating such non-compliance because that is exactly what the Settlement provides. *Id.* Further, because IDOC did not challenge the amount of the fees and costs awarded, the Seventh Circuit affirmed the full amount of fees and costs awarded by this Court. *Id.* at 785-85. In one respect, the Seventh Circuit agreed with IDOC—it reversed the part of this Court's June 8, 2020 Order imposing a 90-day deadline on IDOC to conduct all Audiological Evaluations. *Id.* at 783-75.

Even though the Seventh Circuit affirmed the award of costs and fees entered by this Court on September 4, 2020, to date IDOC still has not paid these fees and costs. This affirmed fee award

3

rightfully should have been paid immediately following the Seventh Circuit decision. Accordingly, Plaintiffs ask that IDOC be ordered to pay this amount within five business days of the Court's order on this Petition. Plaintiffs further request that the Court order post-judgment interest to be added to the fee award, from June 8, 2020 to the present.

### C. Fees for the Period from June 9, 2020 through March 16, 2021

Plaintiffs seek their fees and costs from June 9, 2020 through March 16, 2021 that were incurred by Class Counsel in connection with litigating Defendant's appeal of the Court's June 8, 2020 Order on Plaintiffs' March 2020 Motion to Enforce.

As a result of IDOC's consolidated appeals, Class Counsel was compelled to spend considerable additional time and resources. The work on these appeals included:

- conducting research and engaging in analytical work regarding, and preparing Plaintiffs' Opposition to IDOC's Motion for Stay of the Court's June 8, 2020 Order Pending Appeal filed in this Court;

- conducting research and engaging in analytical work regarding, and preparing Plaintiffs' Opposition to IDOC's Motion to Stay the June 8, 2020 Order Pending Appeal filed in the Seventh Circuit;

- preparing for and participating in a mandatory Seventh Circuit mediation session;

- conducting research and engaging in analytical work regarding, and preparing Plaintiffs' appellate brief in opposition to IDOC's appeal in the Seventh Circuit;

- conducting research and engaging in analytical work regarding, and preparing to respond to, IDOC's reply brief in support of its appeal; and

- preparing for and conducting the oral argument before the Seventh Circuit.

*See* Ex. 1, Declaration of Robert L. Michels ("Michels Declaration"), ¶10; Ex. 2, Declaration of Whitney I. Adams ("Adams Declaration"), ¶8. The appeal work was substantial, at each stage involving thorough research and analysis concerning the standards of review and numerous substantive issues; analysis of case law, applicable court rules, analytical work in addressing IDOC's arguments, the relevant facts and law, and forming Plaintiffs' responses; and brief writing. *Id.*

In determining the dollar amount of Plaintiffs' fees to be awarded for this period, this Court again should rely on the lodestar method, which the Court previously employed when awarding fees in its September 4, 2020 Order, and which courts typically use as the basis for awarding fees. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Blum v. Stenson*, 465 U.S. 886, 888 (1984). When using the lodestar method, the starting point is to multiply the number of hours reasonably expended on a matter by a reasonable hourly rate. There is a presumption that the resulting amount represents the reasonable fee. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S 542, 552-53 (2010) ("[T]he lodestar method yields a fee that is presumptively sufficient to achieve this objective. Indeed, we have said that that the presumption is a 'strong' one."). After determining the lodestar, adjustments to that fee may be made as necessary in a particular case to ensure the fee award is reasonable. *Perdue*, 559 U.S. at 553-54. However, there is a strong presumption that lodestar method yields a reasonable and appropriate fee under the law. *Hensley*, 461 U.S. at 435; *Perdue*, 559 U.S. at 552-53.

The primary attorneys on who worked on the appeal and related matters for Plaintiffs were Robert L. Michels and Whitney I. Adams of Winston & Strawn LLP. Michels Declaration, ¶¶9-14; Adams Declaration"), ¶¶7-11. The time set forth on Exhibit 3 represents time recorded by Mr. Michels and Ms. Adams relating to work on the appeals for which Plaintiffs seek reimbursement in this Petition—a total of 299.2 hours for Mr. Michels and Ms. Adams combined, with 164.9 hours for Mr. Michels and 134.3 hours for Ms. Adams. *Id.* To be clear, although Exhibit 3 sets forth time Mr. Michels and Ms. Adams worked on this matter relating only to the appeal, Exhibit 3 does not set forth the ***entirety*** of Mr. Michels' time or Ms. Adams' time working on the appeal. Michels Declaration, ¶12. Plaintiffs have elected not to petition for the entirety of that time in order to present the Court with what Plaintiffs believe is a fair and streamlined set of time worked on the appeal. *Id.*

Further, Plaintiffs also are not petitioning the Court for fees relating to other members of the Plaintiffs' counsel team who worked on the appeal. *Id.* ¶13. As the Court is well aware, Plaintiffs

5

have been represented during the Settlement monitoring period not just by Winston & Strawn LLP, but also by Equip for Equality ("EFE"), Uptown People's Law Center ("Uptown"), and the National Association of the Deaf ("NAD"). Rachel Weisberg has been lead counsel for EFE, Alan Mills has been lead counsel for Uptown, and Howard Rosenblum has been lead counsel for the NAD. Although lawyers from each of the Plaintiffs' counsel groups participated in significant ways in the appeal work, for purposes of this fee petition, Plaintiffs, consistent with prior guidance from the Court concerning its awarding of fees in this matter, are seeking fees through this Petition for work from June 9, 2020 through March 16, 2021 for only two attorneys: Mr. Michels and Ms. Adams. *Id.*

Ms. Weisberg (who spent over nearly 50 hours on the appeal) and Mr. Mills both made substantial contributions to Plaintiffs' appellate work. In addition, five other Winston lawyers spent a total of over 75 hours assisting Mr. Michels and Ms. Adams on various aspects of the appeal work. Plaintiffs are not petitioning for reimbursement for that time. Thus, in all, while Plaintiffs are petitioning for 299.2 hours of time for Mr. Michels and Ms. Adams worked on the appeal, this does not represent all of the time Mr. Michels and Ms. Adams worked on the appeal, and also does not include at least 125 hours of time worked by other attorneys on the appeal.

In terms of the hourly rates to be applied for the fee petition, courts have recognized that a reasonable hourly rate is a rate that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue,* 559 U.S at 552. Courts typically base awarded rates on a number of factors, including the attorney's experience, expertise in the subject matter at issue, and reasonable market rates. *Gautreaux v. Chi. Housing Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). The presumption under the law is that the attorneys' own billing rate or the market rate for similar work is the appropriate billing rate. *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 640 (7th Cir. 2011); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir.1993).

Thus, with respect to the hourly rate to be applied for Mr. Michels and Ms. Adams, there are at least several benchmarks/considerations for the Court to take into consideration. One primary benchmark is Mr. Michels' and Ms. Adams' standard hourly rates for billable matters. During the period of the work on the appeal, Mr. Michels' standard billable hourly rate was $1,164/hour for 2020 and $1,235/hour for 2021. Michels Declaration, ¶23. Ms. Adams' standard billable hourly rate was $760/hour for 2020 and $850/hour for 2021. Adams Declaration, ¶18.

Another consideration is the attorneys' experience. Mr. Michels has been a partner for 25 years at the international law firm of Winston and Strawn LLP and has over 30 years of litigation experience and substantial trial experience, including work as an Assistant U.S. Attorney and work on complex litigation matters, including class action cases. Michels Declaration, ¶¶1–7. Ms. Adams graduated from one of the top law schools in the country, served as a judicial clerk for the esteemed District Court Judge Virginia Kendall of this Court, and has a breadth of litigation experience as a senior associate in the Litigation Department at Winston & Strawn. Adams Declaration, ¶¶1–5.

Yet another benchmark is the Laffey Matrix, which courts often consult in assessing what reasonable hourly attorney rates should be used for fee petition purposes.[2] This Matrix provides that the reasonable hourly rates to charge for the work of Mr. Michels and Ms. Adams during this period would be $914/hour for Mr. Michels and $465/hour for Ms. Adams.

In connection with Plaintiffs' prior fee petition, Plaintiffs sought, and the Court used, a rate of $750/hour for Mr. Michels for fee petition purposes. For that period, Mr. Michels' standard billable rate was $1,105/hour for 2019 and $1,165/hour for 2020, for an average of $1,135/hour. The Laffey

---

[2] The Laffey Matrix (*see* http://www.laffeymatrix.com/see.html) is a matrix of market supported reasonable rates for attorneys and paralegals based on years of experience. The Laffey Matrix derives from the hourly rates allowed by the district court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C.1983), and is updated yearly. The Adjusted Laffey Matrix, which adjusts for inflation using the Legal Services Index of the nationwide CPI, has been found by many courts to provide the superior methodology for attorney fee rates. *See e.g., Makray v. Perez*, 159 F. Supp. 3d 25 (D.D.C. 2016).; *see also Adcock Ladd v. Secretary of Treasury*, 227 F.3d 343, 347 n.3 (6th Cir. 2000); *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011).

Matrix rate for Mr. Michels in that time frame was $899/hour. Thus, the $750/hour used by the Court for Mr. Michels on Plaintiffs' first fee petition was roughly 66% of Mr. Michels' standard billable rate at that time, and 83.42% of the Laffey Matrix rate at that time.

For most of work on the appeal, Mr. Michels' standard billing rate was $1,165/hour. Under the Laffey Matrix, Mr. Michels rate for fee petition purposes for this period would be $914/hour. Using the same percentages as applied in connection with Plaintiffs' last fee petition, 66% of $1,165/hour is $768.90/hour, and 83.42% of $914/hour is $762.45/hour. In light of these benchmarks, and the Court's prior use of $750/hour for Mr. Michels on the prior fee petition, Plaintiffs suggest a rate of $765/hour, which is roughly the average of those two numbers, would be a reasonable hourly rate for Mr. Michels for fee petition purposes for this period.

For Ms. Adams, her standard billable rate for most of this period of the appellate work was $760/hour, and 66% of that rate is $501.60/hour, while her Laffey Matrix rate would be $465/hour, and 83.42% of that rate is $387.90/hour. The average of those numbers yields a reasonable fee petition rate for Ms. Adams of $444.75/hour. Given these benchmarks, Plaintiffs suggest a rate of $445/hour would be a reasonable hourly rate for Ms. Adams for fee petition purposes for this period.

Thus, for this period (June 9, 2020 through March 16, 2021), Plaintiffs suggest using a rate of $765/hour for Mr. Michels and $445/hour for Ms. Adams. Using those rates, the amount of fees for in this period would be $185,912, as follows:

| Attorney | Hours | Fees at Stand. Billable Rate ($1,165/hr.) ($760/hr.) | Fees at Laffey Matrix Rate ($914/hr.) ($465/hr.) | Suggested Fee Petition Rate ($765/hr.) ($445/hr.) |
|---|---|---|---|---|
| Robert Michels | 164.9 | $192,108.5 | $150,718.60 | $126,148.50 |
| Whitney Adams | 134.3 | $102,068.00 | $62,449.50 | $59,763.50 |
| Total | 299.2 | $294,176.50 | $213,168.10 | $185,912.00 |

Plaintiffs ask the Court to award $185,912 in fees for this period, for work on the appeal.

    **D.**    **Fees and Costs for the Period from March 17, 2021 through August 3, 2022**

Plaintiffs seek their fees and costs from March 17, 2021 through August 3, 2022 that were incurred by Class Counsel in connection with investigating and litigating whether IDOC used best efforts relating to their Settlement obligations concerning Audiological Evaluations.

As the Court is aware, following the Seventh Circuit's decision, this Court directed the parties to address the issue of whether IDOC had used best efforts in connection with its Settlement obligations concerning Audiological Evaluations. The Court ultimately ordered that Plaintiff should take discovery on this issue, and Plaintiffs proceeded with discovery. Plaintiffs' counsel crafted and sent interrogatories and requests to produce to both IDOC and Wexford, engaged in numerous meet-and-confers with IDOC and Wexford concerning their objections and responses to those discovery requests, and reviewed and synthesized the information received. Plaintiffs also spent a great deal of time synthesizing prior information they had received from IDOC's reports, which was not in a user-friendly form, to determine and present to the Court information concerning Audiological Evaluation wait-times and other data. Plaintiffs also took depositions of two IDOC 30(b)(6) witnesses, two Wexford 30(b)(6) witnesses, three other Wexford employees, and one former Wexford employee. The scope of the work was substantial, and included the following:

- meeting and conferring with defense counsel regarding the discovery required to investigate this issue, pursuant to the Court's Order dated March 17, 2021;

- preparing and filing proposed written discovery, including interrogatories and requests for the production of documents to be issued to IDOC and a subpoena to produce documents to be issued to third-party Wexford Health Sources, Inc., pursuant to the Court's Order dated March 23, 2021;

- conferring with IDOC and Wexford counsel regarding IDOC's and Wexford's objections to the proposed written discovery requests and preparing a joint status report on discovery for the Court, pursuant to the Court's April 23, 2021 order;

- participating in several hearings before the Court regarding the proposed discovery requests and Defendant's responses thereto;

- reviewing and analyzing the written responses and documents produced by Defendant in response to the written discovery requests and by Wexford in response to the third-party subpoena;

- engaging in meet-and-confers with defense counsel and counsel for Wexford regarding discovery-related issues;

- preparing for and conducting depositions of two 30(b)(6) witnesses for IDOC (one of whom was deposed over two sessions because the witness cut the first session short for personal reasons), two 30(b)(6) witnesses for Wexford (one of whom was deposed over two sessions due to additional documents produced by Wexford after her initial session), three other Wexford employees (one of whom was deposed over two sessions, again due to the unavailability of certain documents during the first session), and one former Wexford employee;

- engaging in analytical work regarding, and preparing, Plaintiffs' Motion to Find IDOC in Violation of the Settlement (Dkt. 701), including extensive work on preparing multiple charts summarizing relevant data received from IDOC relating to a three-year period, which were filed as exhibits in support of the Motion;

- interviewing witnesses, engaging in analytical work regarding, and otherwise preparing for the evidentiary hearing scheduled by the Court to address disputed facts and afford the parties an opportunity to cross examine witnesses; and

- participating in the evidentiary hearing before the Court on May 18, 2022, and a follow-up hearing before the Court on May 19, 2022.

*See* Michels Declaration, ¶¶15-20; Adams Declaration, ¶¶12-16.

In determining the dollar amount of Plaintiffs' fees to be awarded for this period, this Court again should rely on the lodestar method, starting with the hours worked by Plaintiffs' counsel on this issue and multiplying those hours by a reasonable hourly rate, with the presumption that the resulting amount represents the reasonable fee. Again, the primary attorneys who worked on this issue for Plaintiffs were Mr. Michels and Ms. Adams. *Id.* In fact, for efficiency purposes, and from the Court's past fee ruling that the Court would permit compensation for only two Plaintiffs' lawyers, Plaintiffs' counsel decided to use Mr. Michels to perform the vast majority of this work. The time set forth on Exhibit 4 to this Fee Petition represents time worked by Mr. Michels and Ms. Adams relating to this issue—a total of 577.3 hours for Mr. Michels and Ms. Adams combined, with 485.3 hours for Mr.

Michels and 92 hours for Ms. Adams. *Id.* Although Exhibit 4 sets forth time Mr. Michels and Ms. Adams worked on this matter relating to this issue, Exhibit 4 does not set forth the ***entirety*** of Mr. Michels' time or Ms. Adams' time working on this issue. *Id.* Plaintiffs have elected not to petition for the entirety of that time in order to present the Court with what Plaintiffs believe is a fair and streamlined set of time worked on the appeal during that period. *Id.*

While the time was substantial, it was required and was spread out over a period of a year between the onset of discovery in around April 2021 and the evidentiary hearing in this matter in May 2022. For example, there were a total of eight witnesses deposed. Six of the depositions were all day, two were half days, and there were three other follow-up deposition sessions with witnesses due to missing documents or personal reasons of witnesses not allowing completion of the depositions when initially taken. All of this, combined with the all-day evidentiary hearing in this matter resulted in eight full days—about 65 hours—of testimony. Allowing for equal prep time for that testimony, Plaintiffs' counsel spent roughly 130 hours alone either taking testimony or preparing to take testimony on this issue. Also, during the course of the year the parties had various conferences with the Court and provided the Court updates on where things stood in the investigation or asked the Court to resolve various disputes relating to the investigation. Plaintiffs also spent considerable time with written discovery and following up with IDOC's and Wexford's responses to that document discovery, including reviewing what was produced, synthesizing the information into charts for the Court, and analyzing issues relating to the information. In addition, Plaintiffs spent substantial time briefing this issue, including a lengthy and detailed initial brief with many summary charts and exhibits for the Court, as well as a detailed reply brief. The parties also engaged in significant time on stipulations relating to the issue, which were ultimately presented to the Court.

It should be noted that Plaintiffs are ***not*** petitioning the Court for fees relating to other members of the Plaintiffs' counsel team who worked on investigating and litigating whether IDOC

used best efforts relating to its Settlement obligations concerning Audiological Evaluations, including Ms. Weisberg and Sophia Lau of Equip for Equality, who collectively spent over 120 hours of time investigating and litigating whether IDOC used best efforts relating to its Settlement obligations concerning Audiological Evaluations, and contributed substantially to Plaintiffs' efforts on this issue, as well as Mr. Mills, who also spent significant time and on this issue and made substantial contributions. Michels Declaration, ¶19. Thus, while Plaintiffs are petitioning for 577.3 hours of time for Mr. Michels and Ms. Adams worked investigating and litigating whether IDOC used best efforts relating to its Settlement obligations concerning Audiological Evaluations, this does not represent all of the time Mr. Michels and Ms. Adams worked on the appeal, and also does not include at least 150 hours of time worked by other Plaintiffs' attorneys on this issue. Also, Plaintiffs have not petitioned to recover for any paralegal work.[3]

      With respect to the hourly rates to be applied to the hours worked, during the period covering the work on this issue, Mr. Michels' standard billing rate was $1,235/hour for 2021 and $1,335/hour for 2022. *Id.* ¶23. Ms. Adams' standard billable hourly rate was $850/hour for 2021 and $985/hour for 2022. Adams Declaration, ¶18. However, because the vast majority of the time spent by Plaintiffs on this issue (469 of the 577 hours) was during 2021, Plaintiffs are agreeable to using Mr. Michels' and Ms. Adams' respective 2021 hourly rates during that period as the benchmark for their fee petition rates on this issue. Under the other key benchmark, the Laffey Matrix, Mr. Michels' rate for fee petition purposes for this period would be $919/hour, and Ms. Adams' rate would be $468/hour.

      Using the same percentages as applied in connection with Plaintiffs' last fee petition, for Mr. Michels, 66% of $1,235/hour is $815.10/hour, and 83.42% of $919/hour is $766.62/hour. Thus,

---

[3] In connection with Plaintiffs' prior fee petition, the Court ruled Plaintiffs' could recover fees for two attorneys and one paralegal, but because Plaintiffs had not petitioned for reimbursement for any paralegal time, the Court permitted fees for three attorneys, with the fees for Ms. Weisberg set at a paralegal rate. The Court was careful to point out this was not any reflection on Ms. Weisberg's value or abilities but, rather, simply because the Court was "substituting in" Ms. Weisberg for a paralegal for fee petition purposes. September 4, 2020 Order.

12

Plaintiffs suggest a rate of $790/hour, which is roughly the average of those two rates, would be a reasonable hourly rate for Mr. Michels for fee petition purposes for this period. For Ms. Adams, 66% of $850 is $561/hour, and 83.42% of $468 is $390.40/hour. Thus, Plaintiffs suggest a rate of $475/hour, which is roughly the average of those two rates, would be a reasonable hourly rate for Ms. Adams for fee petition purposes for this period. Using those rates, the amount of fees for in this period would be $427,087, as follows:

| Attorney | Hours | Fees at Stand. Billable Rate ($1,235/hr.) ($850/hr.) | Fees at Laffey Matrix Rate ($919/hr.) ($468/hr.) | Suggested Fee Petition Rate ($790/hr.) ($475/hr.) |
|---|---|---|---|---|
| Robert Michels | 485.3 | $599,345.50 | $445,990.70 | $383,387.00 |
| Whitney Adams | 92 | $78,200.00 | $43,056.00 | $43,700.00 |
| Total | 577.3 | $677,545.50 | $489,046.70 | $427,087.00 |

Plaintiffs ask the Court to award $427,087 in fees for this period, relating to the substantial work in investigating and litigating IDOC's failure to use best efforts in connection with its Settlement obligations concerning Audiological Evaluations.

Plaintiffs also ask the Court to award certain significant costs Plaintiffs incurred in connection with their work on this issue, specifically, costs relating to the depositions. The costs of these depositions included costs for the court reporter, the deposition transcripts, the exhibits, and related costs. These costs, which total are reflected in Exhibit 5 to Plaintiffs' Fee Petition, total $18,843.52. Michels Declaration, ¶21. In addition, for the depositions of the five Wexford employees and one former Wexford employee, Plaintiffs' counsel incurred travel costs, due to the deponents being from out of town and Wexford (in four cases) or the witness (in one case) directing that the depositions take place near where the witness lives and works. Id. ¶¶21-22; Adams Declaration, ¶17. One of these depositions occurred in Southern Illinois and five depositions that occurred in Pittsburgh (three in one week and one in a prior week). Id. The travel costs associated with those depositions are reflected on Exhibit 6 to Plaintiffs' Fee Petition. The only travel costs shown on Exhibit 6 are for

airfare, hotel, and cabs/Ubers to/from the airport, not additional expenses for meals or other travel costs. *Id.* The expenses relate to Mr. Michels' travel to Southern Illinois to depose Wexford 30(b)(6) witness Cheri Laurent, Mr. Michels' travel to Pittsburgh to depose two Wexford witnesses (Kathy Ohleger and Janice Seibel) and one former Wexford witness (Cathy Smith), and Ms. Adams' travel to Pittsburgh to depose two Wexford witnesses (Rebecca Burget and Kevin Brueckner. *Id.* [4] Overall, the travel expenses incurred for which Plaintiffs seek reimbursement total $5,223.55.

**II.        Request for Compensation for Plaintiffs**

Plaintiffs believe that Class Members should be compensated for IDOC's long-term, substantial non-compliance with the Settlement with respect to Audiological Evaluations. Denying inmates these evaluations for substantial periods, as was the case for the first three years of the Settlement, resulted in Class Members not receiving their proper accommodations.

Under the Settlement, when the Court finds that IDOC has been in substantial non-compliance with the Settlement, the Court "has the power to enter, and shall enter, whatever orders are necessary to ensure compliance with the terms of the Settlement agreement." Settlement, ¶93. This is extremely broad language. Moreover, there is nothing that prevents the Court from ordering monetary relief to Plaintiffs, if the Court in its discretion determines that such relief is necessary to ensure compliance with the terms of the Settlement. Currently, the Settlement is still in effect, as the Court, with the agreement of the parties, extended certain ASL-related provisions of the Settlement to remain in effect through January 26, 2023. Thus, the Court has an interest in ensuring that it enters whatever orders it deems are necessary to ensure that IDOC complies with the Settlement going forward, specifically with respect to its extended ASL-related Settlement obligations.

---

[4] Plaintiffs sought a 30(b)(6) deposition of Wexford, and Wexford designated two individuals for the deposition—Kathy Ohleger, whose deposition took place in Pittsburgh, where she lives and works, and Cheri Laurent, whose deposition took place in Southern Illinois, where she lives and works. The other three Wexford employees and the one Wexford former employee were all deposed in Pittsburgh, where they live and work. Wexford counsel directed that, for the convenience of Wexford and the witnesses, these Wexford depositions take place in Pittsburgh and Southern Illinois.

As has been documented in numerous reports to the Court by IDOC and filings by Plaintiffs, IDOC's history of being in non-compliance with the ASL provisions of the Settlement, for over three years, has been abysmal. It mirrors but is frankly worse than IDOC's failure with respect to its Settlement obligations concerning Audiological Evaluations. This conduct, along with IDOC's numerous other failures during the course of the monitoring period, which Plaintiffs have brought to the Court's attention for three-plus years in responding to IDOC's periodic status reports and in other ways, should reasonably lead the Court to conclude that: (1) the steps the Court has taken thus far with respect to IDOC's violations and general poor performance on its Settlement obligations have not resulted in IDOC coming into compliance with its ASL-related Settlement obligations, ***for four years***; and (2) more drastic orders directed against IDOC are necessary in order to give the strongest message to IDOC that further violations of the Settlement with respect to ASL-related provisions will not be tolerated, and to ensure that IDOC comes into compliance with those obligations.

Plaintiffs believe that, given the record before the Court, the Court can reasonably conclude that a significant monetary award to Plaintiffs is needed to ensure IDOC's compliance with the Settlement going forward, as it would signal to IDOC that the Court's patience has run out and that the Court will take significant measures to ensure that IDOC gets the message to promptly come into compliance with the ASL-related provisions. Thus, Plaintiffs request the Court to impose a monetary award to Plaintiffs in the amount of $100,000, to be spread across the Class Members in this matter. If the Court is amenable to this, Plaintiffs would suggest additional procedures to the Court whereby Plaintiffs' counsel would attempt to identify those Plaintiffs most harmed by the IDOC's failures with respect to Audiological Evaluations and ASL provisions of the Settlement, and ensure that those Class Members receive the bulk of the monetary award. Plaintiffs' counsel stands ready to address this issue further with the Court as needed.

Dated: September 26, 2022

        RESPECTFULLY SUBMITTED,

By: /s/ *Robert L Michels*
One of the attorneys for Plaintiffs

| | |
|---|---|
| Barry C. Taylor<br>Laura J. Miller<br>Rachel M. Weisberg<br>Sophia R. Lau<br>Equip for Equality<br>20 North Michigan Avenue, Suite 300<br>Chicago, IL 60602<br>Telephone: (312) 341-0022<br>rachelw@equipforequality.org | Robert L. Michels<br>Whitney I. Adams<br>Winston & Strawn LLP<br>35 W. Wacker Dr.<br>Chicago, IL 60601-9703<br>Telephone: (312) 558-5600<br>rmichels@winston.com |
| Howard A. Rosenblum<br>National Association of the Deaf<br>8630 Fenton Street, Suite 820<br>Silver Spring, MD 20910<br>Telephone: (301) 587-1788<br>howard.rosenblum@nad.org | Alan S. Mills<br>Nicole Schult<br>Uptown People's Law Center<br>4413 North Sheridan<br>Chicago, IL 60640<br>Telephone: (773) 769-1411<br>alanmills@comcast.net |

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on September 26, 2022 , a copy of the foregoing was served via CM/ECF on all counsel of record.

/s/ *Robert L. Michels*
One of the Attorneys for Plaintiffs