UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RALPH HOLMES, *et al.,* on behalf of themselves and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | Case No. 11 C 2961 |
| v. ) ) ) | Magistrate Judge Young B. Kim |
| ROB JEFFREYS, Director, Illinois Department of Corrections, ) ) ) ) | |
| Defendant. ) | |

**DEFENDANT'S STATUS REPORT TO THE COURT**

Defendant Rob Jeffreys, Director of the Illinois Department of Corrections, by and through his attorney, Kwame Raoul, Attorney General for the State of Illinois, and pursuant to his obligation under the Extended Provisions and Modified Extended Provisions of the Settlement Agreement, entered July 26, 2018 and extended on June 21, 2022, ("Agreement") hereby submits the instant Status Report to the Court. This status report contains information and data collected regarding the Illinois Department of Corrections' ("IDOC") compliance with the requirements related to ASL Interpreters contained in the Agreement during September 2022. Defendant states as follows:

**SECTION VII**

**DEAF AND HARD OF HEARING INMATE
AUXILIARY AIDS AND SERVICES ASSESSMENT**

IDOC has retained the Chicago Hearing Society ("CHS") for purposes of retaining a Certified Deaf Interpreter ("CDI") for the Auxiliary Aids and Services Assessment when a Deaf or Hard of Hearing individual in custody has no proficiency in either English or American Sign Language, or when the Qualified Specialist determines that a CDI is necessary. There is one

ASL user whose communication plan indicates the need for a CDI. This individual is housed at Menard Correctional Center. Menard has worked to secure an appropriate interpreter for this class member. The interpreter secured has worked with the class member in the past, is a Child of Deaf Adult (CODA), and communicates with ease and fluently with this class member. The interpreter is scheduled to come weekly to interpret for all of this class member's appointments and is working well. IDOC will continue to watch this specific user to be sure the facility remains in compliance with this requirement.

The Qualified Specialists memorialize their determinations regarding the specific Auxiliary Aids and/or Services the individual in custody needs to communicate effectively. The determinations of the Qualified Specialists are documented in the individual in custody's Communication Plan. Further, the IDOC follows the determinations of the Qualified Specialists as required by the Agreement.

## SECTION IX

### PROVISION AND MAINTENANCE OF QUALIFIED INTERPRETERS TO DEAF AND HARD OF HEARING INMATES AND IMPLEMENTATION OF COMMUNICATION PLAN

The IDOC provides Deaf and Hard of Hearing individuals in custody, at no cost to the individual in custody and subject to the limitations of Paragraph 65 of the Agreement, any Qualified Interpreters provided for in the individual in custody's Communication Plan.

Class counsel has raised issues regarding ASL interpreters and anticipates filing a motion to enforce. As reported to the Court previously, the Department takes this issue very seriously and is making every effort to try to provide interpreters to individuals in custody when interpreters are needed. These efforts have resulted in high rates of compliance during the reporting month. As a reminder to staff, the Department continues to give direction statewide that ASL users do not need

to request interpreters for any high stakes interactions and that an interpreter should be automatically provided. The parties previously agreed to extend the portions of the Agreement in this case in order "to allow IDOC additional time to implement a solution and develop a track record that it is consistently providing Qualified Interpreters." That is exactly what has happened. As part of that Agreement, the parties agreed the class would not file a motion to enforce or engage in any discovery regarding interpreters until October 1, 2022 (d/e 769) to allow for the implementation of the solution to bear fruit. The class was to file a motion to enforce the terms on October 28, 2022, but has requested additional time to do so. The documentation for September, however, is clear that there is no need for a motion to enforce as the Department has shown progress and now shows compliance with the requirements.

During the current reporting period, an extensive review of the interpreter logs for September 2022 was conducted and compared to documentation being produced in the attached exhibits as provided in Paragraph 89 of the Agreement. Based on the information detailed below, the facilities have used best efforts to resolve any issues that have arisen in the provision of ASL interpreters. During September, ASL users had a total of 67 high-stakes interactions and 54 of those interactions involved an interpreter. As outlined below, Big Muddy, Menard, Robinson, Taylorville and Western are 100% compliant. Danville was partially compliant in September but was fully compliant after corrective action was implemented during the month. Dixon has the most users and most interactions and has users who have daily and/or last minute interactions that require an interpreter. For the vast majority of the ten (out of 34) interactions without an interpreter at Dixon, the lack of an interpreter was not due to any fault of the facility or staff as described in more detail below. Of all interactions in September, only one interaction involved a pre-scheduled appointment without a corresponding interpreter scheduled in advance.

The following information was noted during this review:

*Big Muddy Correctional Center*

Big Muddy had two ASL users housed there during the relevant reporting period. The logs contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL users were reviewed and any high stakes interactions were included with the log. The assignment history, attendance records, disciplinary cards, MHP database, crisis watch trackers, and SDP sign-in sheets were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

During this reporting period (September 2022) there were 8 high stakes interactions for the two ASL users at Big Muddy and all 8 interactions involved an interpreter. The users had other interactions such as lab work that were not high-stakes and, therefore, no interpreter was required. Big Muddy has resolved previous issues with connectivity, religious services, and failure to utilize interpreters by some staff members and was fully compliant in September 2022.

*Danville Correctional Center*

Danville Correctional Center had one ASL user housed there during the reporting period. The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summary (CHAMPS) entries for the ASL user were

4

reviewed and any high stakes interactions were included with the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

During this reporting period (September 2022), the user had five total interactions. The counselor initially interacted with the ASL user 3 times using pen and paper and not using an interpreter as required. During September, however, and as reported last month, the Department initiated corrective action for this topic. Since then, the counselor interacted with the ASL user two additional times in the month and used an interpreter and continues to do so moving forward, fully resolving this previous issue. IDOC will continue to monitor Danville's use of ASL interpreters for the individual housed there, but believes prior issues were addressed due to oversight and initiated corrective action. There were no other high-stakes interactions for this ASL user.

*Dixon Correctional Center*

Dixon had four ASL users housed there during the relevant reporting period. The logs for the ASL users reflect use of interpreters and contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL users were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed

to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

During the reporting period (September 2022), Dixon ASL users had 34 total high-stakes interactions. Out of the 34 interactions, interpreters were provided for 24 of them, but nearly all of the instances without an interpreter were for reasons outside the Department's or its vendor's control. Dixon users had two interactions involving crisis calls without an interpreter. Crisis calls are situations in which staff must respond quickly to a threat of harm and time spent waiting for an interpreter can be crucial. Staff at Dixon is aware of their ability to attempt Propio or VRI in an emergency but does not always have the time to make this attempt. Communication using an interpreter is ensured at the soonest opportunity following the emergency interaction.

Dixon users had another five interactions where the interpreters were scheduled in advance but the interpreting service advised they could not secure an interpreter or did not connect an interpreter at the time of the appointment. In those scenarios, the facility is not notified until the time of or shortly before the interaction and can either move forward without the interpreter or cancel the interaction altogether. Based on the importance of the medical and mental health appointments where this applies, the facility goes forward with the interaction without an interpreter.

Dixon reports two disciplinary hearings without an interpreter in September 2022. For the first hearing on 9/2/22, the adjustment committee was unaware the user was on the hearing docket for the day prior to the beginning of the hearing, preventing the scheduling of an interpreter in advance. The class member was provided the choice of moving forward with the hearing without

an interpreter or rescheduling. The class member chose to move forward without the interpreter. For the second hearing on 9/29/22, an interpreter was scheduled in advance, but the hearing was delayed for unrelated reasons when a committee member was pulled away to address another matter. At the time of the hearing when it ultimately took place, the class member was notified the interpreter was no longer available and was provided an opportunity to move forward without an interpreter or reschedule. The class member chose to move forward without the interpreter. The adjustment committee is aware of the requirement for an interpreter for these users and makes every effort to secure interpreters in advance of hearings.

Finally, Dixon had one interaction where the medical provider did not secure an interpreter for a medical appointment. This interaction is the only interaction of the 34 total interactions for which the Department has any real control over the lack of an interpreter. The Department and its vendor have worked to ensure all staff members are aware of and follow proper procedures. Use in September improved significantly from August and the Department expects continued high rates of compliance.

*Hill Correctional Center*

Hill Correctional Center houses one ASL user who has refused all interpreting as reported previously. The Department does not intend to report on his high-stakes interactions as he has documented that he does not wish to receive any interpreting services.

*Menard Correctional Center*

Menard Correctional Center had one ASL user housed there during the relevant reporting period. The documentation reviewed reflects interpreters used for high-stakes interactions.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes

interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL user were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

A review of Menard's documentation did not reveal any issues and reflects appropriate reporting and use of interpreters. During the reporting period (September 2022), the ASL user at Menard had 10 high-stakes interactions and all 10 utilized the CODA interpreter. He also had four interactions with medical that were not high stakes as they involved testing or labs without conversation. Menard has worked hard to ensure the ASL user housed there always has an interpreter scheduled for his interactions and remains in compliance.

*Robinson Correctional Center*

Robinson has identified one ASL user during September 2022 even though the individual has not yet had a communication plan completed by Chicago Hearing Society. Upon identifying that the individual was deaf and communicated through ASL, Robinson immediately began providing an interpreter.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction, or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL user were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed

8

to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

During September 2022, this user had 4 interactions and an interpreter was provided for all 4 interactions. While the user had attendance records that seemed to indicate he attended an education program throughout the month, the facility reports he has not attended. This was discussed with him on September 22nd (using an interpreter) and he indicated he was not interested in school. Robinson is in full compliance with the requirements of providing an interpreter.

*Taylorville Correctional Center*

Taylorville Correctional Center had one ASL user housed there during the relevant reporting period. The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL user were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

A review of Taylorville's documentation does not typically reveal any issues with the use of interpreters. During the reporting period (September 2022), compliance continued with an

9

interpreter being provided for the one interaction during the month. One additional potential interaction with medical, however, was cancelled to be rescheduled later when the nurse did not secure an interpreter. While the interaction did not go forward and is, therefore, not counted in the total interactions, the Department has reported the issue to the vendor to ensure rescheduling is avoided for this reason. Additionally, health care staff are all aware of the requirements through numerous conversations, written direction, and posted notices. Taylorville continues to comply with the requirements for ASL interpreters.

*Western Illinois Correctional Center*

Western Illinois had three ASL users housed there during the relevant reporting period. The logs contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL users were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

During the reporting period (September 2022), Western ASL users had 5 high-stakes interactions and all 5 interactions involved the use of an interpreter. Western has fully resolved past issues with providing interpreters and is fully compliant with the requirements.

**SECTION XI**

## ORIENTATION

The facility orientation manuals were long-ago updated to include information about the rights of Deaf and Hard of Hearing individuals in custody. Individuals in custody attending orientation who are Deaf or Hard of Hearing are provided a subsequent orientation session. If the individual in custody communicates through American Sign Language, then during the second, separate orientation session, IDOC will provide a Qualified Interpreter to assist the individual in custody in understanding the orientation content provided orally.

## SECTION XII

## COMMUNICATION DEVICES/TECHNOLOGIES
## FOR DEAF AND HARD OF HEARING INMATES

Video Remote Interpretation (VRI) equipment and translation services are available in all IDOC facility healthcare units. Deaf or hard of hearing individuals in custody who need assistance interpreting medical or mental health information have access to this service. In response to class counsel's concerns, the Department has reiterated this requirement for ASL users. As noted in the logs, VRI is being used for medical and mental health appointments at some facilities while other facilities need improvement in this area. As noted above, IDOC continues to work directly with these facilities to communicate expectations and expects continued improvement.

## SECTION XVI

## HAND RESTRAINTS REGARDING DEAF AND HARD OF HEARING INMATES

On 9/21/2018 a directive was sent out to all facilities by the Chief of Operations regarding the use of hand restraints on deaf and hard of hearing individuals in custody. A copy of this directive was previously provided to plaintiffs' counsel.

# SECTION XIX

## MONITORING AND REPORTING

The Agreement requires reporting of compliance every 30 days. This report satisfies that requirement. Additionally, the attachments to this report are organized as follows:

Exhibit A is one .zip drive containing September 2022 facility reports with subfolders per facility and per ASL User. Included and organized within these folders are:

- Communication Plans ("ComPlan") for all communication plans completed during the reporting month, both by CHS virtually and any interim plans completed by the facility for ASL users to the extent there were any;

- Grievances ("Griev") filed during the reporting month which, if true, would constitute a violation of the terms of the Agreement related to ASL users and interpreters;[1]

- Interpreter Logs ("Interp") which log use of interpreters for high-stakes interactions;

- Call passes logged into the O360 system for all ASL users with added notations as to whether the call pass interaction took place and/or whether it qualified as a high-stakes interaction;

- Cumulative counseling summaries (CHAMPS) documentation for the ASL users to the extent there were entries in the reporting month;

- Group therapy sign-in sheets applicable to ASL users from the SDP treatment programs at Big Muddy Correctional Center;

---

[1] If a response to the grievance is not provided, the lack of response is due to the grievance not reaching the 2nd level for a response or a response being provided after the report is submitted.

- Attendance records logged into the O360 system for ASL users to the extent there were any during the reporting month;

- Assignment history logged into the O360 system for ASL users for the reporting month;

- Disciplinary cards to the extent discipline was issued against ASL users during the reporting month;[2]

- Selections of the MHP Databases for any ASL users on the mental health caseload; and

- Selections of the Crisis Watch Trackers for any ASL users on crisis watch during the reporting month.

Exhibit B contains a listing of all individuals in custody identified as Deaf or Hard of Hearing and being an ASL user and the location where each individual in custody was housed during the reporting period.

Exhibit C contains a list of ADA coordinators at each facility.

Dated: October 31, 2022

Respectfully submitted,

KWAME RAOUL

Illinois Attorney General

/s *Michael D. Arnold*
Michael D. Arnold
Assistant Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601

---

[2] The ticket is not necessarily heard during the same month as the incident. Therefore, a ticket issued in March, for example, may not appear on the interpreter log until April.

(312) 814-3720
Michael.Arnold@ilag.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing **DEFENDANT'S STATUS REPORT TO THE COURT** was served on all counsel of record on October 31, 2022, by filing a copy of the same through the Court's CM/ECF filing system.

/s/ *Michael D. Arnold*