UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RALPH HOLMES, *et al.,* on behalf of themselves and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | Case No. 11 C 2961 |
| v. ) ) | Magistrate Judge Young B. Kim |
| ROB JEFFREYS, Director, ) Illinois Department of Corrections, ) ) | |
| Defendant. ) | |

**DEFENDANT'S STATUS REPORT TO THE COURT**

Defendant Rob Jeffreys, Director of the Illinois Department of Corrections, by and through his attorney, Kwame Raoul, Attorney General for the State of Illinois, and pursuant to his obligation under the Extended Provisions and Modified Extended Provisions of the Settlement Agreement, entered July 26, 2018 and extended on June 21, 2022, ("Agreement") hereby submits the instant Status Report to the Court. This status report contains information and data collected regarding the Illinois Department of Corrections' ("IDOC") compliance with the requirements related to ASL Interpreters contained in the Agreement during October 2022. Defendant states as follows:

**SECTION VII**

**DEAF AND HARD OF HEARING INMATE
AUXILIARY AIDS AND SERVICES ASSESSMENT**

IDOC has retained the Chicago Hearing Society ("CHS") for purposes of retaining a Certified Deaf Interpreter ("CDI") for the Auxiliary Aids and Services Assessment when a Deaf or Hard of Hearing individual in custody has no proficiency in either English or American Sign Language, or when the Qualified Specialist determines that a CDI is necessary. There is one ASL user whose communication plan indicates the need for a CDI. This individual is housed at Menard Correctional Center. Menard has worked to secure an appropriate interpreter for this class member. The interpreter secured has worked with the class member in the past, is a Child of Deaf Adult (CODA), and communicates with ease and

fluently with this class member. The interpreter is scheduled weekly to interpret for all of this class member's appointments and is working well. IDOC will continue to watch this specific user to be sure the facility remains in compliance with this requirement.

The Qualified Specialists memorialize their determinations regarding the specific Auxiliary Aids and/or Services the individual in custody needs to communicate effectively. The determinations of the Qualified Specialists are documented in the individual in custody's Communication Plan. Further, the IDOC follows the determinations of the Qualified Specialists as required by the Agreement.

## SECTION IX

### PROVISION AND MAINTENANCE OF QUALIFIED INTERPRETERS TO DEAF AND HARD OF HEARING INMATES AND IMPLEMENTATION OF COMMUNICATION PLAN

The IDOC provides Deaf and Hard of Hearing individuals in custody, at no cost to the individual in custody and subject to the limitations of Paragraph 65 of the Agreement, any Qualified Interpreters provided for in the individual in custody's Communication Plan.

Class counsel has raised issues regarding ASL interpreters and recently filed a motion to enforce. As reported to the Court previously, the Department takes this issue very seriously and is making every effort to try to provide interpreters to individuals in custody when interpreters are needed. These efforts have resulted in high rates of compliance during the reporting month. As a reminder to staff, the Department continues to give direction statewide that ASL users do not need to request interpreters for any high stakes interactions and that an interpreter should be automatically provided. The parties previously agreed to extend the portions of the Agreement in this case in order "to allow IDOC additional time to implement a solution and develop a track record that it is consistently providing Qualified Interpreters." That is exactly what has happened. As part of that Agreement, the parties agreed the class would not file a motion to enforce or engage in any discovery regarding interpreters until October 1, 2022 (d/e 769) to allow for the implementation of the solution to bear fruit. The class filed the motion on November 4, 2022 (d/e 803). The documentation for October, however, is clear that there is no need for a motion to enforce as the Department has shown progress and now shows substantial compliance with the requirements.

During the current reporting period, an extensive review of the interpreter logs for October 2022 was conducted and compared to documentation being produced in the attached exhibits as provided in Paragraph 89 of the Agreement. Based on the information detailed below, the facilities have used best efforts to resolve any issues that have arisen in the provision of ASL interpreters. During October, ASL users had a total of 54 high-stakes interactions[1] and 51 of those interactions involved an interpreter. As outlined below, Big Muddy, Danville, Dixon, Menard, and Robinson are 100% compliant. The Taylorville user only had one interaction and the interpreting service cancelled the interpreter on the morning of the interaction preventing Taylorville from seeking another interpreter. As the lack of interpreter was not due to any action or inaction of the facility and could not be remedied with such short notice, Taylorville should also be considered in compliance. Western had two nurse sick calls without an interpreter provided and corrective action is noted below. Despite a few issues at these two facilities, the Department is substantially compliant with 94% of high stakes interactions involving an interpreter.

The following information was noted during this review:

### *Big Muddy Correctional Center*

Big Muddy had two ASL users housed there during the relevant reporting period. The logs contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL users were reviewed and any high stakes interactions were included with the log. The assignment history, attendance records, disciplinary cards, MHP database, crisis watch trackers, and SDP sign-in sheets were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

---

[1] This number does not include the religious services at Big Muddy where the ASL users refused the interpreter provided for every interaction.

During this reporting period (October 2022) there were six high stakes interactions for the two ASL users at Big Muddy and all six interactions involved an interpreter. The users also attended chapel on multiple occasions and chose to refuse the interpreting services offered to them every time. The users and their counsel claim the remote interpreting provided for chapel is not their preferred method because, while it picks up the preacher and anyone near the equipment, it does not pick up all audience conversation. The users, instead of utilizing the interpreter for at least the majority of the services, refused the interpreter entirely. The refusal of the provided interpreter, who does effectively interpret the preacher during the services, is puzzling. A previous request from the users for other individuals in custody interpret the services could not be accommodated as it is prohibited in the Agreement. While that request could not formally be the accommodation offered by the facility, the users continue to choose to use those around them to interpret for them despite remote interpreting being offered. The facility will continue to offer remote interpreting for religious services and will explore other options for improving the effectiveness of the remote interpreting offered; however, working to improve a service that is always refused becomes difficult.

The users had other interactions such as lab work that were not high-stakes and, therefore, no interpreter was required. Big Muddy has resolved previous issues with connectivity, religious services, and failure to utilize interpreters by some staff members and was fully compliant in October 2022.

*Danville Correctional Center*

Danville Correctional Center had one ASL user housed there during the reporting period. The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summary (CHAMPS) entries for the ASL user were reviewed and any high stakes interactions were included with the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

During this reporting period (October 2022), the user had three total interactions and all three utilized an interpreter as required. As noted last month, corrective action resolved a previous issue with a correctional counselor not using an interpreter and the issue remains fully resolved. Danville is fully compliant with the requirements.

*Dixon Correctional Center*

Dixon had four ASL users housed there during the relevant reporting period. The logs for the ASL users reflect use of interpreters and contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL users were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

During the reporting period (October 2022), Dixon ASL users had 11 total high-stakes interactions and all 11 interactions utilized an interpreter. Previous issues are fully resolved and Dixon is 100% compliant with the requirements during the reporting period. The Department expects continued high rates of compliance.

*Hill Correctional Center*

Hill Correctional Center houses one ASL user who has refused all interpreting as reported previously. The Department does not intend to report on his high-stakes interactions as he has documented that he does not wish to receive any interpreting services.

*Menard Correctional Center*

Menard Correctional Center had one ASL user housed there during the relevant reporting period. The documentation reviewed reflects interpreters used for high-stakes interactions.

5

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL user were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

A review of Menard's documentation did not reveal any issues and reflects appropriate reporting and use of interpreters. During the reporting period (October 2022), the ASL user at Menard had 18 high-stakes interactions and all 18 utilized the CODA interpreter. Menard has worked hard to ensure the ASL user housed there always has an interpreter scheduled for his interactions and remains in compliance.

*Robinson Correctional Center*

Robinson houses one ASL user during October 2022 and provides interpreting services even though the individual has not yet had a communication plan completed by Chicago Hearing Society. Upon identifying that the individual was deaf and communicated through ASL, Robinson immediately began providing an interpreter.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction, or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL user were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

During October 2022, this user had two interactions and an interpreter was provided for both interactions. While the user had attendance records that seemed to indicate he attended an education program throughout the month, the facility reports he has not attended but they cannot mark him as absent without risking him being barred from enrolling in this group going forward. Robinson is in full compliance with the requirements of providing an interpreter.

*Taylorville Correctional Center*

Taylorville Correctional Center had one ASL user housed there during the relevant reporting period. The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL user were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

A review of Taylorville's documentation does not typically reveal any issues with the use of interpreters. During the reporting period (October 2022), the user only had one interaction requiring an interpreter and an interpreter was prescheduled for the appointment; however, the provider cancelled the services on the morning of the appointment. This left the facility with the choice of cancelling the interaction or moving forward without an interpreter. The interaction still took place. Taylorville continues to comply with the requirements for ASL interpreters despite the provider cancelling as they continue to schedule interpreters for all interactions and the facility has no control over whether an interpreter cancels.

*Western Illinois Correctional Center*

Western Illinois had three ASL users housed there during the relevant reporting period. The logs contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL users were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

During the reporting period (October 2022), Western ASL users had 13 high-stakes interactions and interpreters were provided for 11 of them. One user had two appointments for nurse sick call where an interpreter was not provided. The nurse involved was counseled, the Warden addressed the issue at a staff meeting, and the vendor was notified and directed to ensure the issue is not repeated. Western does not typically see issues with providing interpreters and will address the rare situation of non-compliance if it arises as it did in October 2022. The Department will continue to monitor compliance.

## SECTION XI

## ORIENTATION

The facility orientation manuals were long-ago updated to include information about the rights of Deaf and Hard of Hearing individuals in custody. Individuals in custody attending orientation who are Deaf or Hard of Hearing are provided a subsequent orientation session. If the individual in custody communicates through American Sign Language, then during the second, separate orientation session, IDOC will provide a Qualified Interpreter to assist the individual in custody in understanding the orientation content provided orally.

## SECTION XII

### COMMUNICATION DEVICES/TECHNOLOGIES
### FOR DEAF AND HARD OF HEARING INMATES

Video Remote Interpretation (VRI) equipment and translation services are available in all IDOC facility healthcare units. Deaf or hard of hearing individuals in custody who need assistance interpreting medical or mental health information have access to this service. In response to class counsel's concerns, the Department has reiterated this requirement for ASL users. As noted in the logs, VRI is being used for medical and mental health appointments at some facilities while other facilities need improvement in this area. As noted above, IDOC continues to work directly with these facilities to communicate expectations and expects continued improvement.

## SECTION XVI

### HAND RESTRAINTS REGARDING DEAF AND HARD OF HEARING INMATES

On 9/21/2018 a directive was sent out to all facilities by the Chief of Operations regarding the use of hand restraints on deaf and hard of hearing individuals in custody. A copy of this directive was previously provided to plaintiffs' counsel.

## SECTION XIX

### MONITORING AND REPORTING

The Agreement requires reporting of compliance every 30 days. This report satisfies that requirement. Additionally, the attachments to this report are organized as follows:

Exhibit A is one .zip drive containing October 2022 facility reports with subfolders per facility and per ASL User. Included and organized within these folders are:

- Communication Plans ("ComPlan") for any communication plans completed during the reporting month, both by CHS virtually and any interim plans completed by the facility for ASL users to the extent there were any;

- Grievances ("Griev") filed during the reporting month which, if true, would constitute a violation of the terms of the Agreement related to ASL users and interpreters;[2]

- Interpreter Logs ("Interp") which log use of interpreters for high-stakes interactions;

- Call passes logged into the O360 system for all ASL users with added notations as to whether the call pass interaction took place and/or whether it qualified as a high-stakes interaction;

- Cumulative counseling summaries (CHAMPS) documentation for the ASL users to the extent there were entries in the reporting month;

- Group therapy sign-in sheets applicable to ASL users from the SDP treatment programs at Big Muddy Correctional Center;

- Attendance records logged into the O360 system for ASL users to the extent there were any during the reporting month;

- Assignment history logged into the O360 system for ASL users for the reporting month;

- Disciplinary cards to the extent discipline was issued against ASL users during the reporting month;[3]

- Selections of the MHP Databases for any ASL users on the mental health caseload; and

- Selections of the Crisis Watch Trackers for any ASL users on crisis watch during the reporting month.

Exhibit B contains a listing of all individuals in custody identified as Deaf or Hard of Hearing and being an ASL user and the location where each individual in custody was housed during the reporting period.

Exhibit C contains a list of ADA coordinators at each facility.

---

[2] If a response to the grievance is not provided, the lack of response is due to the grievance not reaching the 2nd level for a response or a response being provided after the report is submitted.

[3] The ticket is not necessarily heard during the same month as the incident. Therefore, a ticket issued in March, for example, may not appear on the interpreter log until April.

Dated: November 30, 2022

        Respectfully submitted,

        KWAME RAOUL
        Illinois Attorney General

        /s *Michael D. Arnold*
        Michael D. Arnold
        Assistant Attorney General
        100 West Randolph Street, 13th Floor
        Chicago, Illinois 60601
        (312) 814-3720
        Michael.Arnold@ilag.gov

        *Counsel for Defendant*