UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RALPH HOLMES, *et al.,* on behalf of themselves and all others similarly situated, | ) ) ) No. 11 CV 2961 ) ) |
| Plaintiffs, | ) ) |
| v. | ) Magistrate Judge Young B. Kim ) |
| ROB JEFFREYS, Acting Director of Illinois Department of Corrections, | ) ) ) December 23, 2022 |
| Defendant. | ) ) |

**MEMORANDUM OPINION and ORDER**

Before the court is Plaintiffs' petition for fees and costs and other relief. For the following reasons, the petition is granted in the total amount of $422,342.75 in fees and $15,020.92 in costs and denied as to other relief requested:

**Background**[1]

Plaintiffs' current petition, (R. 795, Pls.' Pet.), relates to their continued effort to enforce a provision in the parties' Settlement Agreement ("Settlement") requiring the Illinois Department of Corrections ("IDOC") to adopt within 90 days of the effective date of the Settlement:[2]

> a policy and procedure pursuant to which inmates whose Hearing Screenings determine that they may be Deaf or Hard of Hearing must

---

[1] The court's June 2020 and August 2022 opinions provide a more complete description of the allegations underlying this action. (See R. 573; R. 780.)

[2] The Settlement defines its effective date as the date on which it is "approved and entered" by the court, (R. 446-2, Settlement ¶ 23), which occurred on July 26, 2018, (R. 454).

> be referred to an audiologist for an Audiological Evaluation at the earlier of: (a) [30] days after arrival to their home facility; or (b) 45 days after being admitted into IDOC custody.

(R. 446-2, Settlement ¶ 36 ("Referral Provision").) Plaintiffs moved to enforce this Referral Provision on March 6, 2020, arguing that during the first year of the Settlement IDOC violated it by employing licensed hearing instrument dispensers ("LHIDs") instead of audiologists to perform Audiological Evaluations. (R. 539, Pls.' Mot. to Enforce; see also R. 501, Pls.' Resp. to Status Rep. at 8; R. 606, Sept. 17, 2019 Hr'g Tr. at 42-45.) Plaintiffs also asserted that qualifying inmates were experiencing unreasonable delays in receiving Audiological Evaluations. (Id.) On June 8, 2020, this court granted the motion to enforce, ruling that IDOC had violated the Referral Provision from July 2018 to July 2019 by: (1) using LHIDs to perform Audiological Evaluations; and (2) failing to send qualifying inmates for such evaluations within a reasonable period of 90 days ("90-Day Requirement"). (R. 573; see also R. 446-2, Settlement ¶ 14.) Plaintiffs then petitioned the court for fees and costs associated with the March 2020 motion, (R. 600, Pls.' Amend. Pet.), and the court awarded Plaintiffs $52,357.50 in fees and $1,741.35 in costs, (R. 615).

In its order addressing Plaintiffs' initial petition for fees and costs, the court noted that in settling the underlying case Plaintiffs and the court accepted the burden of monitoring the implementation of changes IDOC agreed to make in the Settlement for the benefit of hard-of-hearing inmates. (R. 615.) Plaintiffs had not preferred this system of self-monitoring but accepted the responsibility in order to settle the case and avoid further litigation. (Id.) After the court granted Plaintiffs'

motion to enforce and their related petition for fees and costs, IDOC appealed, triggering a more protracted and time-intensive investigation—including fact discovery and an evidentiary hearing—and eventually a follow-on motion for enforcement.

As to IDOC's appeal, on March 16, 2021, the Seventh Circuit affirmed the court's award of fees to Plaintiffs based on IDOC's "substantial non-compliance" with the Settlement. *Holmes v. Godinez*, 991 F.3d 775, 779, 783-85 (7th Cir. 2021). But the Seventh Circuit vacated the court's 90-Day Requirement, reasoning that "there are no provisions in the Settlement requiring IDOC to ensure that audiological evaluations are completed within a set timeframe." *Id.* at 782-84. Nevertheless, the Seventh Circuit found that "based on the meaning of the word 'refer'" as used in the Referral Provision, IDOC still "ha[d] *some* obligation regarding the completion of the evaluations," and accordingly that it must use its "best efforts" to "actually 'send' its inmates in need to an audiologist so that the evaluations can be performed." *Id.* at 782-85 (emphasis in original). The Seventh Circuit likened a "best efforts undertaking" to "the exercise of good faith implied in all contracts" under Illinois law and stated that "IDOC can't sit on its hands." *Id.* at 782-83.

After the Seventh Circuit issued its opinion, Plaintiffs sought—and the court approved—fact discovery regarding IDOC's efforts to "actually 'send' its inmates to an audiologist" for Audiological Evaluations. (R. 651.) Plaintiffs served discovery requests and notices of deposition on both IDOC and Wexford Health Sources, Inc.

3

("Wexford")—IDOC's outside vendor for inmate healthcare. (R 653; R. 657; R. 671; R. 675; R. 688; R. 693; R. 694; R. 698.) IDOC and Wexford in turn produced documents and witnesses for their depositions. (R. 701, Pls.' Mot. to Find IDOC in Violation of Settlement at 5-8.) Based on this discovery, Plaintiffs filed a follow-on motion to enforce, this time asserting that IDOC failed to exercise best efforts to provide Audiological Evaluations to qualifying inmates. (Id.) In May 2022 this court held an evidentiary hearing on the subject, and two witnesses testified. (R. 776, May 18, 2022 Hr'g Tr.) In orders dated July 26, 2022, (R. 777), and August 3, 2022, (R. 780), the court granted Plaintiffs' follow-on enforcement motion and ordered the parties to confer about fees and remedies, (R. 779).

## Analysis

In the ruling granting Plaintiffs' follow-on motion to enforce—which in essence is a supplement to the March 2020 enforcement motion—the court found that IDOC failed to use best efforts to satisfy its obligations under the Referral Provision during the first two years of the Settlement monitoring period and that it was not until the third year—beginning in late 2020 and continuing in 2021—that IDOC began to make such efforts. (R. 780 at 9-28.) Specifically, after reviewing extensive evidence and testimony, the court determined that during the first two years of the Settlement monitoring period, IDOC did not adequately supervise Wexford to ensure compliance with the Settlement or support Wexford in its effort to address an increased demand for audiological services. (Id.) Nor did IDOC implement measures to maintain adequate staffing of audiologists or arrange for

4

the transportation of inmates to those facilities that had available audiological services so that Audiological Evaluations actually could be performed. (Id.) As a result of IDOC's failure to use best efforts to send qualifying inmates for Audiological Evaluations, these inmates experienced significant and unreasonable delays in receiving the benefits of the Settlement. In light of this ruling, the court on September 9, 2022, ordered Plaintiffs to file their petition for fees, costs, and remedies. Plaintiffs then filed the current petition seeking monetary damages for class members and for attorney fees and costs. (R. 795, Pls.' Pet.)

**A.      Request for Monetary Damages for Class Members**

The court cannot unwind the delays many of the class members have already endured, but it also cannot award monetary damages under the Settlement for past delays. Plaintiffs ask the court to award $100,000 to class members based on IDOC's "long-term, substantial non-compliance with the Settlement with respect to Audiological Evaluations." (R. 795, Pls.' Pet. at 14-15.) For support Plaintiffs cite a Settlement provision allowing the court to enter, after a finding of substantial non-compliance, "whatever orders are necessary to ensure compliance with the terms of the Settlement Agreement, including ordering equitable or injunctive relief." (Id. (citing R. 446-2, Settlement § 93).) But this provision does not authorize the court to award monetary damages under these circumstances, and Plaintiffs cite no other provision that permits such relief. Furthermore, Plaintiffs' demand for compensatory damages lacks development and fails to explain the nexus between the substantial non-compliance with the Referral Provision and the amount sought.

5

Although the court has suggested some form of monetary relief for the class members who endured significant wait times, this was merely a settlement suggestion for purposes of avoiding protracted litigation and not any indication that compensatory damages are available under the Settlement. At bottom, the court is not persuaded that it has the authority to grant compensation to the class members based on the circumstances presented here. Because the Settlement serves as the sole source of this court's authority to enter relief, *see Holmes*, 991 F.3d at 784, the court denies Plaintiffs' request for a monetary award.

**B.     Request for Attorney Fees and Costs**

The court finds that Plaintiffs' attorneys should be reimbursed for the time and costs they incurred because their efforts were critical to the court's factual findings and—more importantly—to bring IDOC into compliance with the Settlement. Their work investigating and litigating the enforcement action prompted—at least from the court's perspective—IDOC to act with a level of urgency in trying to become compliant with the Referral Provision. To be sure, Plaintiffs' attorneys first learned of IDOC's improper use of LHIDs in July 2019 and, thereafter, of its failure to ensure qualifying inmates were sent to audiologists for Audiological Evaluations without unreasonable delay. Plaintiffs' attorneys investigated these Settlement violations and moved the court in March 2020, (R. 539, Pls.' Mot. to Enforce), and again in November 2021, (R. 701, Pls.' Mot. to Find IDOC in Violation of Settlement), to enforce the Referral Provision. Through these enforcement actions, IDOC finally began to take steps to "slash[] the number

6

of [qualifying inmates] waiting for audiology appointments." (R. 780 at 18.) In short, the work of Plaintiffs' attorneys spurred IDOC to become compliant with the Referral Provision. (See R. 446-2, Settlement ¶ 93.)

In the petition Plaintiffs seek attorney fees and costs for three periods, during which they investigated and litigated IDOC's efforts to comply with the Referral Provision: (1) from July 26, 2018, the effective date of the Settlement, through June 8, 2020, the date of this court's ruling on the first motion to enforce ("First Period"); (2) from June 9, 2020, through March 16, 2021, the date of the Seventh Circuit's ruling on IDOC's appeal ("Second Period"); and (3) from March 17, 2021, through August 3, 2022, the date of this court's ruling on Plaintiffs' second motion to enforce ("Third Period"). (R. 795, Pls.' Pet.) The court addresses each period in turn.

1. **First Period**

Plaintiffs explain that the First Period relates to the investigation and litigation of issues underlying their initial motion to enforce and seek: (1) the $52,357.60 in fees and $1,741.35 in costs awarded by this court and affirmed by the Seventh Circuit but not yet paid by IDOC; and (2) post-judgment interest on the same amounts because of that nonpayment. (R. 795, Pls.' Pet. at 2-4.) As IDOC points out, however, the court did not order IDOC to pay the outstanding fees and costs by a date certain because Plaintiffs were continuing to investigate and litigate IDOC's best efforts in complying with the Referral Provision. Put differently, even after the Seventh Circuit's decision on appeal, the issue of whether IDOC violated the Referral Provision by failing to use best efforts remained pending. (R. 799,

7

IDOC's Resp. at 1.) Accordingly, Plaintiffs' petition for fees and costs in the amounts specified is again granted, but their request for post-judgment interest is denied.

### 2. Second Period

During the Second Period, Plaintiffs litigated IDOC's appeal of the court's June 8, 2020 order granting their motion to enforce and the September 4, 2020 order awarding attorney fees and costs. Plaintiffs now petition the court for an award of $185,912.00 in attorney fees they incurred in connection with the appeal. (R. 795, Pls.' Pet. at 8.) Previously, the court admonished Plaintiffs that for purposes of evaluating reasonable attorney fees in connection with a motion to enforce the Settlement, it would consider the hours logged by two attorneys and one paralegal. (R. 522.) Although Plaintiffs represent that other members of their legal team also worked on IDOC's appeal, in accordance with the court's directive, Plaintiffs seek fees only for two attorneys—Robert Michels and Whitney Adams. (R. 795, Pls.' Pet. at 8.)

Attorneys Michels and Adams submitted declarations attesting that the appeal required them to perform "substantial" work, including: (1) researching, analyzing, and preparing briefs opposing IDOC's motion to stay and appellate brief; (2) preparing for and participating in the mandatory Seventh Circuit mediation; and (3) preparing for and conducting the oral argument before the Seventh Circuit. (Id. at 4-8 & Exs. 1-2.) In all, the petition specifies the following hours spent and fees sought for the Second Period:

| Attorney | Hours | Hourly Rate | Fee Amount |
|---|---|---|---|
| Michels | 164.9 | $765 | $126,148.50 |
| Adams | 134.3 | $445 | $59,763.50 |
|  |  | Total | $185,912.00 |

In response IDOC asserts that Plaintiffs' fees must be reduced because Plaintiffs' "degree of success" in defending IDOC's appeal is not proportional to the amount it seeks. (R. 799, IDOC's Resp. at 2-4.) In IDOC's view, Plaintiffs "lost half the appeal"—and that half "took up most of the parties' efforts." (Id. at 2.) IDOC points out that it succeeded in staying this court's June 8, 2020 order and prevailing on the merits of the appeal with respect to this court's 90-Day Requirement. (Id. at 2-4.) Given this level of success on appeal, IDOC contends that Plaintiffs should not be awarded fees relating to the stay motion or IDOC's effort to overturn the 90-day deadline. (Id.) IDOC also contests other fees as vague or unrelated to the motion to enforce. (Id. at 3.) As such, IDOC proposes that any fee award to Plaintiffs should amount to no more than $35,436.16. (Id. at 4.)

The court disagrees that Plaintiffs' fees should be discounted based on the degree of their success on appeal. IDOC sees the appeal as a standalone matter but participating in the appeal process was a necessary step for Plaintiffs to enforce the Referral Provision. When plaintiffs prosecute matters to recover relief in fee-shifting cases, they not only are entitled to fees associated with the motions or litigation steps on which they succeed but also to reasonable fees associated with all steps necessary to recover relief. Here, Plaintiffs had to litigate IDOC's appeal to enforce the Referral Provision, and they ultimately succeeded—at least before this

9

court. As such, there cannot be a wholesale discount of claimed fees based on the Seventh Circuit's decision vacating the 90-Day Requirement.

That said, the court performed a line-by-line review of the hours Michels and Adams recorded to determine the following reasonable fee award:

| Attorney | Hours | Hourly Rate | Fee Amount |
|---|---|---|---|
| Michels | 119.10 | $765 | $91,111.50 |
| Adams | 104.25 | $445 | $46,391.25 |
| | | Total | $137,502.75 |

For purposes of arriving at this total, the court reviewed the time sheets Michels and Adams recorded for work on the appeal from when IDOC filed its notice of appeal on July 8, 2020, to when the Seventh Circuit issued its decision on March 16, 2021. (R. 795, Pls.' Pet. Exs. 1-2, Ex. 3). The court discounted those attorney hours not related to the appeal (as some of the hours appear to have been related to the general monitoring work Plaintiffs had assumed) or not described well enough for the court to determine whether they were necessary for the appeal. While there is no precise degree of specificity required for Plaintiffs to seek fees here, the court assessed the submitted time sheets critically because Plaintiffs are asking IDOC to pay their attorney fees. Finally, the court discounted hours deemed redundant or duplicative given that multiple attorneys were involved with the appeal.

As to the hourly rates used in calculating the fee award, the court previously awarded Michels a reasonable rate of $750 per hour, (R. 615 at 5), for the work he performed from July 31, 2019, through June 8, 2020, (R. 599, Pls.' Pet. Ex. 1). The proposed rate of $765 per hour for work he performed from July 8, 2020, through

10

March 16, 2021, is reasonable because of his additional experience and because it is significantly reduced from his standard hourly rate of $1,165. (R. 795 at 8.) As for Adams, Plaintiffs propose a rate of $445 per hour. The court also finds this hourly rate to be reasonable because like the rate proposed for Michels, it reflects a significant reduction from Adams's standard market rate of $760 and is below the benchmark set forth in the Laffey Matrix for reasonable attorney rates based on years of experience. (R. 795, Pls.' Pet. at 7-8 & n.2); *see also Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983). Accordingly, Plaintiffs are awarded $137,502.75 in fees for the Second Period of work.

    **3.    Third Period**

During the Third Period, Plaintiffs investigated and litigated whether IDOC used best efforts to send qualifying inmates for Audiological Evaluations in accordance with the Seventh Circuit's guidance. (R. 795, Pls.' Pet. at 9-14.) Plaintiffs now petition the court for an award of an additional $427,087 in attorney fees and $24,067.07 in costs incurred during the Third Period. As before, Plaintiffs seek fees only for Michels and Adams, even though other members of Plaintiffs' legal team assisted them. (Id. at 10-13.)

Michels and Adams submitted declarations attesting that their "best efforts" investigation and litigation required them to: (1) engage in fact discovery, including by preparing and issuing written discovery requests, reviewing and analyzing responses, and taking the depositions of eight witnesses; (2) participate in discovery conferences with IDOC's and Wexford's attorneys and court hearings, including an

11

evidentiary hearing in May 2022; and (3) prepare stipulations and a motion to enforce. (Id. at 9-11 & Exs. 1-2.) In all, the petition specifies the following hours spent and fees sought for the Third Period:

| Attorney | Hours | Hourly Rate | Fee Amount |
|---|---|---|---|
| Michels | 485.3 | $790 | $383,387 |
| Adams | 92 | $475 | $43,700 |
| | | Total | $427,087 |

Plaintiffs also submitted exhibits detailing deposition-related costs incurred during the Third Period, which total $24,067.07, including expenses for court reporters, deposition transcripts, and travel to and from depositions in Southern Illinois and Pittsburgh. (See id. at 13-14 & Exs. 5-6.)

IDOC opposes the petition and asserts that Plaintiffs' fees and costs must be reduced because a "substantial majority" of Plaintiffs' work was "not necessary." (R. 799, IDOC's Resp. at 4-12.) IDOC says it "is at a complete loss as to how Plaintiffs could have reasonably believed that it should have taken more than 700 hours to fully explore the very specific (and non-complex) issue of how many people made how many phone calls to audiologists." (Id. at 4.) IDOC suggests steps Plaintiffs' attorneys could have taken to narrow the scope of discovery regarding the best-efforts inquiry. (Id. at 6.) For example, IDOC says that Plaintiffs could have taken fewer depositions, declined to participate in a court-ordered evidentiary hearing, and spent much less time preparing briefs. (Id. at 8-11.) By striking fees that it deems excessive, IDOC argues Plaintiffs should be allowed to recover only

12

$128,904.30 for Michels's time and $14,796.25 for Adams's time. (Id. at 12.) IDOC also asserts that no more than $3,781.21 in costs should be awarded. (Id.)

Notably, IDOC never moved for a protective order limiting discovery in connection with Plaintiffs' best-efforts inquiry. Any abuse of discovery arguments made at this point are thus untimely. Plus, litigants rarely, if ever, know what information or piece of evidence will resonate with the fact finder, and therefore must cast a wide enough net to gather a reasonable amount of information for their case. Regardless, IDOC significantly understates the work that Plaintiffs had to undertake to determine what measures, if any, IDOC and Wexford were implementing to send qualifying inmates to audiologists for Audiological Evaluations. To be sure, the parties' submissions in connection with the follow-on motion to enforce included nearly 140 exhibits. (See R. 701, Pls.' Mot. to Find IDOC in Violation of Settlement; R. 702, Sealed Docs. to Pls.' Mot.; R. 715, IDOC's Resp.; R. 716, Sealed Doc. to IDOC's Resp.; R. 718, Pls.' Reply.) And because facts were disputed, the court deemed an evidentiary hearing necessary. (R. 726.) That evidentiary hearing helped the court understand what steps Wexford took after the Settlement became effective, the reasons IDOC and Wexford made certain statements to the court, and why Wexford did not take certain actions to address the shortage of audiologists need to perform Audiological Evaluations. The time expended on these filings and proceedings was without doubt substantial and useful. That said, the court agrees with IDOC that some fees Plaintiffs seek are excessive.

13

Keeping with its practice, the court performed a line-by-line review of Michels's and Adams's hours to determine the following reasonable fees to be awarded in this case:

| Attorney | Hours | Hourly Rate | Fee Amount |
|---|---|---|---|
| Michels | 265 | $790 | $209,350 |
| Adams | 48.7 | $475 | $23,132.50 |
| | | Total | $232.482.50 |

In arriving at this amount, the court reviewed the hours they recorded from March 17, 2021, through August 3, 2022, as set forth in their declarations, (R. 795, Pls.' Pet. Exs. 1-2), and the spreadsheet attached as Exhibit 4 to the motion. The court verified that the tasks performed during the Third Period are related to Plaintiffs' motion to enforce and that the hours recorded are reasonable. And the court accepted as reasonable the hourly rates Plaintiffs propose for this period—$790 per hour for Michels and $475 per hour for Adams. (Id. at 12-13.) But like with the Second Period hours, some of the entries lacked sufficient details for the court to accept the tasks as necessary for the enforcement action and some of the entries described redundant tasks. As for costs incurred during the Third Period, the court orders IDOC to reimburse Plaintiffs $13,279.57 in costs related to depositions and transcripts, (see R. 795-6 at 2), but not the amounts related to "realtime & rough services" and travel expenses. Accordingly, the court awards Plaintiffs $232.482.50 in fees and $13,279.57 in costs for the Third Period.

14

## Conclusion

For the foregoing reasons, Plaintiffs' petition is granted in the amount of $422,342.75 in fees and $15,020.92 in costs and denied as to other relief requested.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**