**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RALPH HOLMES, *et al.,* on behalf of themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 11 C 2961 |
| v. | ) ) | Magistrate Judge Young B. Kim |
| ROB JEFFREYS, Director, Illinois Department of Corrections, | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S STATUS REPORT TO THE COURT**

Defendant Rob Jeffreys, Director of the Illinois Department of Corrections, by and through his attorney, Kwame Raoul, Attorney General for the State of Illinois, and pursuant to his obligation under the Extended Provisions and Modified Extended Provisions of the Settlement Agreement, entered July 26, 2018, and extended on June 21, 2022, ("Agreement") hereby submits the instant Status Report to the Court. This status report contains information and data collected regarding the Illinois Department of Corrections' ("IDOC") compliance with the requirements related to ASL Interpreters contained in the Agreement during November 2022. Defendant states as follows:

**SECTION VII**

**DEAF AND HARD OF HEARING INMATE**
**AUXILIARY AIDS AND SERVICES ASSESSMENT**

IDOC has retained the Chicago Hearing Society ("CHS") for purposes of retaining a Certified Deaf Interpreter ("CDI") for the Auxiliary Aids and Services Assessment when a Deaf or Hard of Hearing individual in custody has no proficiency in either English or American Sign Language, or when the Qualified Specialist determines that a CDI is necessary. There is one ASL user whose communication plan indicates the need for a CDI. This individual is housed at Menard Correctional Center. Menard has worked to secure an appropriate interpreter for this class member. The interpreter secured has worked with the class member in the past, is a Child of Deaf Adult (CODA), and communicates with ease and

1

fluently with this class member. The interpreter is scheduled weekly to interpret for all of this class member's appointments and is working well. IDOC will continue to watch this specific user to be sure the facility remains in compliance with this requirement.

The Qualified Specialists memorialize their determinations regarding the specific Auxiliary Aids and/or Services the individual in custody needs to communicate effectively. The determinations of the Qualified Specialists are documented in the individual in custody's Communication Plan. Further, the IDOC follows the determinations of the Qualified Specialists as required by the Agreement.

<u>**SECTION IX**</u>

**PROVISION AND MAINTENANCE OF QUALIFIED INTERPRETERS TO DEAF AND HARD OF HEARING INMATES AND IMPLEMENTATION OF COMMUNICATION PLAN**

The IDOC provides Deaf and Hard of Hearing individuals in custody, at no cost to the individual in custody and subject to the limitations of Paragraph 65 of the Agreement, any Qualified Interpreters provided for in the individual in custody's Communication Plan.

As reported to the Court previously, the Department takes this issue very seriously and is making every effort to try to provide interpreters to individuals in custody when interpreters are needed. These efforts have resulted in high rates of compliance during the reporting month. As a reminder to staff, the Department continues to give direction statewide that ASL users do not need to request interpreters for any high stakes interactions and that an interpreter should be automatically provided. The parties previously agreed to extend the portions of the Agreement in this case in order "to allow IDOC additional time to implement a solution and develop a track record that it is consistently providing Qualified Interpreters." That is exactly what has happened.

During the current reporting period, an extensive review of the interpreter logs for November 2022 was conducted and compared to documentation being produced in the attached exhibits as provided in Paragraph 89 of the Agreement. Based on the information detailed below, the facilities have used best efforts to resolve any issues that have arisen in the provision of ASL interpreters. During November, ASL

users had a total of 55 high-stakes interactions[1] and 48 of those interactions involved an interpreter. As outlined below, Danville, Menard, and Taylorville are 100% compliant. Despite a few issues at the remaining facilities, the issues are sporadic, not systemic, and are resolved when they arise. The Department provided an interpreter for 87% of the high stakes interactions in November.

The following information was noted during this review:

<u>*Big Muddy Correctional Center*</u>

Big Muddy had two ASL users housed there during the relevant reporting period. The logs contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction, or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL users were reviewed and any high stakes interactions were included with the log. The assignment history, attendance records, disciplinary cards, MHP database, crisis watch trackers, and SDP sign-in sheets were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

During this reporting period (November 2022) there were ten high stakes interactions for the two ASL users at Big Muddy and all but one of the ten interactions involved an interpreter. The users also attended chapel on multiple occasions and chose to refuse the interpreting services offered to them every time. The users and their counsel claim the remote interpreting provided for chapel is not their preferred method because, while it picks up the preacher and anyone near the equipment, it does not pick up all audience conversation. The users, instead of utilizing the interpreter for at least the majority of the services, refused the interpreter entirely. The refusal of the provided interpreter, who does effectively interpret the preacher during the services, is puzzling. A previous request from the users for other individuals in custody

---

[1] This number does not include the religious services at Big Muddy where the ASL users refused the interpreter provided for every interaction.

interpret the services could not be accommodated as it is prohibited in the Agreement. While that request could not formally be the accommodation offered by the facility, the users continue to choose to use those around them to interpret for them despite remote interpreting being offered. The facility will continue to offer remote interpreting for religious services and will explore other options for improving the effectiveness of the remote interpreting offered; however, working to improve a service that is always refused becomes difficult.

One user had one interaction for which an interpreter was not provided for nurse sick call. This is not a systemic issue. All staff are aware of the need to provide interpreters. Whenever there is an issue with a staff member, appropriate action is taken through supervisors and corrective actions where necessary. The users had other interactions such as lab work that were not high-stakes and, therefore, no interpreter was required. Big Muddy has resolved previous issues and was 90% compliant in November 2022.

*Danville Correctional Center*

Danville Correctional Center had one ASL user housed there during the reporting period. The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction, or which did not qualify as a high-stakes interaction. The cumulative counseling summary (CHAMPS) entries for the ASL user were reviewed and any high stakes interactions were included with the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

During this reporting period (November 2022), the user had one interaction and an interpreter was provided as required. Danville is fully compliant with the requirements.

*Dixon Correctional Center*

Dixon had five ASL users housed there during the relevant reporting period, although one of the five transferred to Joliet Treatment Center in early November and is reported in that section below. The logs for the ASL users reflect use of interpreters and contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction, or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL users were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

During the reporting period (November 2022), Dixon ASL users had 14 total high-stakes interactions and 10 of the 14 interactions utilized an interpreter. One user transferred into Dixon (previously having been discharged from his sentence and being reincarcerated recently) in November. During his initial orientation it was not readily apparent to staff that he was an ASL user requiring an interpreter and one was not provided for the initial meeting. An interpreter was provided for the medical appointments and the issue was quickly resolved. Another user attended nurse sick call in November and the medical notes do not reflect the use of an interpreter. This issue has been raised with the facility for corrective action. Another user participated in two vocational classes during the reporting month and vocational staff were not able to locate a willing in-person interpreter and are working to obtain the required data/internet lines in the classroom to allow for remote interpreting. With new staff starting frequently, staff will need to be frequently reminded of their obligations for the ASL users. The facility has recently notified all staff again of the requirements and will continue to give this issue the attention required to ensure interpreters are provided.

*Hill Correctional Center*

Hill Correctional Center houses one ASL user who has refused all interpreting as reported previously. The Department does not intend to report on his high-stakes interactions as he has documented that he does not wish to receive any interpreting services.

*Joliet Treatment Center*

During the reporting month, an ASL user was transferred from Dixon to Joliet Treatment Center. The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction, or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL user were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

Unfortunately, Joliet Treatment Center reports not having been notified that the individual in custody transferring was an ASL user who required interpretation. As a result, they did not provide interpreting services to this user. Once it was learned within a few days of transferring in that he was an ASL user, the facility could then not secure a laptop to use interpreting services. The user is housed in the Behavior Management Unit of the facility where there is no healthcare unit and, therefore, no access to the established VRI systems in that unit. A laptop has since been secured for use to interpret and all departments in the facility have been informed of their expectations. The facility instituted a corrective action plan right away. The Department will continue to give this issue the attention required to ensure interpreters are provided.

*Menard Correctional Center*

Menard Correctional Center had one ASL user housed there during the relevant reporting period. The documentation reviewed reflects interpreters used for high-stakes interactions.

6

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction, or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL user were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

A review of Menard's documentation did not reveal any issues and reflects appropriate reporting and use of interpreters. During the reporting period (November 2022), the ASL user at Menard had 13 high-stakes interactions and all 13 utilized the CODA interpreter. Menard has worked hard to ensure the ASL user housed there always has an interpreter scheduled for his interactions and remains in compliance.

*Robinson Correctional Center*

Robinson houses one ASL user during November 2022 and provides interpreting services even though the individual has not yet had a communication plan completed by Chicago Hearing Society. Upon identifying that the individual was deaf and communicated through ASL, Robinson immediately began providing an interpreter.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction, or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL user were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

During November 2022, this user had two interactions and an interpreter was provided for one of the two interactions. The one interaction for which an interpreter was not provided was a nurse sick call appointment. All staff are aware of the need to provide interpreters. Whenever there is an issue with a staff member, appropriate action is taken through supervisors and corrective actions where necessary. This issue is not systemic and not expected to repeat. Additionally, while the user had attendance records that seemed to indicate he attended an education program throughout the month, the facility reports he has not attended but they cannot mark him as absent without risking him being barred from enrolling in this group going forward. The issue with one interaction not involving an interpreter is not systemic but has been addressed with the facility to ensure compliance.

*Taylorville Correctional Center*

Taylorville Correctional Center had one ASL user housed there during the relevant reporting period. The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction, or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL user were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter log reflects all high-stakes interactions identified through a review of the relevant documentation.

During the reporting period (November 2022), the user only had one interaction requiring an interpreter and an interpreter was provided. Taylorville continues to comply with the requirements for ASL interpreters.

*Western Illinois Correctional Center*

Western Illinois had three ASL users housed there during the relevant reporting period. The logs contain entries for every high-stakes interaction.

The call passes in the O360 system were reviewed and notes inserted for call passes to indicate any call pass that did not result in an interaction, or which did not qualify as a high-stakes interaction. The cumulative counseling summaries (CHAMPS) entries for the ASL users were reviewed and any high-stakes interactions were included in the log. The assignment history, attendance records, disciplinary cards, MHP database, and crisis watch trackers were also reviewed to ensure any high-stakes interactions were included in the log. To the extent any such documentation was not provided with Exhibit A, there was nothing to report on that topic for that individual in the reporting month. The interpreter logs reflect all high-stakes interactions identified through a review of the relevant documentation.

During the reporting period (November 2022), Western ASL users had 14 high-stakes interactions and interpreters were provided for 13 of them. One user had a minor disciplinary ticket issued and heard in November and an interpreter was not provided. The user requested another individual in custody interpret for him and the adjustment committee members were unaware this was not allowed. They have now been reminded of the requirement. Western does not typically see issues with providing interpreters and will address the rare situation of non-compliance if it arises. The Department will continue to monitor compliance.

## SECTION XI

## ORIENTATION

The facility orientation manuals were long-ago updated to include information about the rights of Deaf and Hard of Hearing individuals in custody. Individuals in custody attending orientation who are Deaf or Hard of Hearing are provided a subsequent orientation session. If the individual in custody communicates through American Sign Language, then during the second, separate orientation session, IDOC will provide a Qualified Interpreter to assist the individual in custody in understanding the orientation content provided orally.

## SECTION XII

## COMMUNICATION DEVICES/TECHNOLOGIES
## FOR DEAF AND HARD OF HEARING INMATES

Video Remote Interpretation (VRI) equipment and translation services are available in all IDOC facility healthcare units. Deaf or hard of hearing individuals in custody who need assistance interpreting medical or mental health information have access to this service. In response to class counsel's concerns, the Department has reiterated this requirement for ASL users. As noted in the logs, VRI is being used for medical and mental health appointments at some facilities while other facilities need improvement in this area. As noted above, IDOC continues to work directly with these facilities to communicate expectations and expects continued improvement.

## SECTION XVI

## HAND RESTRAINTS REGARDING DEAF AND HARD OF HEARING INMATES

On 9/21/2018 a directive was sent out to all facilities by the Chief of Operations regarding the use of hand restraints on deaf and hard of hearing individuals in custody. A copy of this directive was previously provided to plaintiffs' counsel.

## SECTION XIX

## MONITORING AND REPORTING

The Agreement requires reporting of compliance every 30 days. This report satisfies that requirement. Additionally, the attachments to this report are organized as follows:

Exhibit A is one .zip drive containing November 2022 facility reports with subfolders per facility and per ASL User. Included and organized within these folders are:

- Communication Plans ("ComPlan") for any communication plans completed during the reporting month, both by CHS virtually and any interim plans completed by the facility for ASL users to the extent there were any;

- Grievances ("Griev") filed during the reporting month which, if true, would constitute a violation of the terms of the Agreement related to ASL users and interpreters;[2]

- Interpreter Logs ("Interp") which log use of interpreters for high-stakes interactions;

- Call passes logged into the O360 system for all ASL users with added notations as to whether the call pass interaction took place and/or whether it qualified as a high stakes interaction;

- Cumulative counseling summaries (CHAMPS) documentation for the ASL users to the extent there were entries in the reporting month;

- Group therapy sign-in sheets applicable to ASL users from the SDP treatment programs at Big Muddy Correctional Center;

- Attendance records logged into the O360 system for ASL users to the extent there were any during the reporting month;

- Assignment history logged into the O360 system for ASL users for the reporting month;

- Disciplinary cards to the extent discipline was issued against ASL users during the reporting month;[3]

- Selections of the MHP Databases for any ASL users on the mental health caseload; and

- Selections of the Crisis Watch Trackers for any ASL users on crisis watch during the reporting month.

Exhibit B contains a listing of all individuals in custody identified as Deaf or Hard of Hearing and being an ASL user and the location where each individual in custody was housed during the reporting period.

---

[2] If a response to the grievance is not provided, the lack of response is due to the grievance not reaching the 2nd level for a response or a response being provided after the report is submitted.

[3] The ticket is not necessarily heard during the same month as the incident. Therefore, a ticket issued in March, for example, may not appear on the interpreter log until April.

Exhibit C contains a list of ADA coordinators at each facility.

Dated: January 20, 2023

Respectfully submitted,

KWAME RAOUL
Illinois Attorney General

/s Michael D. Arnold
Michael D. Arnold
Assistant Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-3720
Michael.Arnold@ilag.gov

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing **DEFENDANT'S STATUS REPORT TO THE COURT** was served on all counsel of record on January 20, 2023, by filing a copy of the same through the Court's CM/ECF filing system.


<u>/s/ *Michael D. Arnold*</u>